JACKSON LEWIS LLP
59 Maiden Lane, 40th Floor
New York, New York 10038
(212) 545-4000
    Diane Windholz (DW 9806)

Attorneys of Record For Defendant

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

Ralph Herrera,                                      07 CV 8426 (JSR)

      Plaintiff,

          v.

Katz Communications, Inc.,

      Defendant.

---

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT AND TO COMPEL ARBITRATION

      Defendant Katz Communications, Inc., by and through its undersigned attorneys, pursuant to the Federal Rules of Civil Procedure, Rules 12(b)(1) and (b)(6) and the Local Rules of this Court, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Complaint and to Compel Arbitration.

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF CONTENTS…………………………………………………………………..i

TABLE OF AUTHORITIES…………………………………………………………..ii-iii

FACTUAL BACKGROUND ............................................................................................ 2

POINT I
THE MANDATORY ARBITRATION AGREEMENT AND ARBITRATION CLAUSE
CONSENTED TO BY PLAINTIFF REQUIRE THAT PLAINTIFF'S CLAIMS IN THIS CASE
BE ARBITRATED. ........................................................................................................... 4

    A.    Federal Law Requires That This Matter Be Referred To Arbitration. ................................ 5

    B.    Agreements to Arbitrate Employment Disputes Are Valid and Enforceable. .................... 6

    C.    The Parties Agreed to Arbitrate and the Claims at Issue Are Covered by the Arbitration
    Agreement and Arbitration Clause. ........................................................................ 7

POINT II
THE ARBITRATION AGREEMENT AND ARBITRATION CLAUSE ARE NOT NULL AND
VOID SINCE THEY DO NOT DEPRIVE PLAINTIFF OF ANY RIGHT OR REMEDY
AVAILABLE UNDER THE LAW. ................................................................................ 10

CONCLUSION............................................................................................................... 11

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

**PAGE**

Bailey v. Chase Securities, Inc.,
88 Fair Empl. Prac. Cas. (BNA) 1446 (S.D.N.Y. May 1, 2002) .................................................7, 9

Chanchani v. Salomon/Smith Barney, Inc.,
85 Fair Empl. Prac. Cas. (BNA) 840 (S.D.N.Y. Mar. 1, 2001) .....................................................5, 8

Circuit City Stores, Inc. v. Adams,
532 U.S. 105 (2001)...........................................................................................................................6

Dean Witter Reynolds Inc. v. Byrd,
470 U.S. 213 (1985)........................................................................................................................5, 7

GMAC Commercial Credit LLC v. Spring Industries, Inc.,
171 F. Supp. 2d 209 (S.D.N.Y. 2001).........................................................................................5, 6, 8

Genesco, Inc. v. T. Kakiuchi & Co.,
815 F.2d 840 (2d Cir. 1987).............................................................................................................7

Gilmer v. Interstate/Johnson Lane Corp.,
500 U.S. 20 (1991)...........................................................................................................................6

Metzler v. Harris Corp., 17 IER Cases (BNA) 588, 592
(S.D.N.Y. Feb. 26, 2001) .................................................................................................................7

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
473 U.S. 614 (1985)..........................................................................................................................7

Moses H. Cone Mem'l Hospital v. Mercury Constn. Corp.,
460 U.S. 1 (1983)..............................................................................................................................5

Perry v. Thomas,
482 U.S. 483 (1987)..........................................................................................................................5

Rajjak v. McFrank and Williams, 17 IER Cases (BNA) 1454 (S.D.N.Y. 2001).......................9

Salim Oleochemicals, Inc. v. M/V Shropshire, et al.,
169 F. Supp. 2d 194 (S.D.N.Y. 2001) 2002 U.S. App. LEXIS 14124 (2d Cir.), cert.
denied, 537 U.S. 1088 (2002) ..........................................................................................................6

## STATE CASES

Fidelity and Guaranty Insurance Co.,
2002 WL 1933780 ..............................................................................................7

Fidelity and Guaranty Insurance Co. v. West Point Realty, Inc.,
02 Civ. 1951, 2002 WL 1933780 (S.D.N.Y. Aug. 21, 2002) ..........................5

Lewis v. Prudential-Bache Securities, Inc.,
179 Cal. App. 3d 935 (1986) ............................................................................9

Meyer v. Starwood Hotels & Resorts Worldwide, Inc., 00 Civ. 8339,
2001 WL 396447 (S.D.N.Y. Apr. 18, 2001)....................................................6

Tuskey v. Volt Info. Sciences, Inc. et al., 00 Civ. 7410, 2001 WL 873204 (S.D.N.Y.
Aug. 3, 2001) ..............................................................................................6, 7

Weiss v. Travex Corp.,
02 Civ. 2380, 2002 WL 1543875 (S.D.N.Y. July 12, 2002) ...........................7

Wright v. SFX Entertainment Inc., et al., 00 Civ. 5354,
2001 WL 103433 (S.D.N.Y. Feb. 7, 2001).................................................6, 7

## FEDERAL STATUTES

9 U.S.C. §3 (emphasis added)..............................................................................5

Section 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §2 ......................5

## MISCELLANEOUS

Richard E. Speidel, Symposium: Securities Arbitration: A Decade After McMahon:
Contract  Theory and Securities Arbitration: Whither Consent?, 62 Brooklyn L. Rev.
1335, 1353-54 (1996).........................................................................................9

Thomas J. Stipanowich, The Quiet Revolution Comes to Kentucky: A Case Study in
Community Mediation, 81 Ky. L.J. 855, 926-27 (1993) ...............................10

## FACTUAL BACKGROUND

Defendant Katz Communications, Inc. (hereinafter referred to as "Katz"), a subsidiary of Clear Channel Communications, Inc.[1], maintains a place of business in New York City. (Complaint, ¶8). On March 15, 2004, Plaintiff commenced employment with Defendant as a Sales Manager (Complaint, ¶9). At that time, as a condition of his employment, Plaintiff signed an arbitration agreement (hereinafter referred to as the "Arbitration Agreement") and an acknowledgment of "Policies Receipt," affirming that he received, read, and understood the Arbitration Agreement and agreed to abide by its terms. (Copies of the "Arbitration Agreement" and "Policies Receipt" are attached hereto as Exhibits "B" and "C," respectively.)

The Arbitration Agreement expressly provides that:

> as a condition of employment with the Company, each employee hereby waives *his/her right to sue* the Company, and the Company hereby waives its right to sue the employee, for any claim or cause of action covered by this Agreement. In Lieu of suing, any such legal dispute may instead be submitted for final and binding resolution by a private, impartial arbitrator. The arbitration shall be governed by the Employment Dispute Resolution Rules of the American Arbitration Association.

(Exhibit "A," p. 1, Scope of the Arbitration Agreement).

The Arbitration Agreement further states that "[e]mployees are still protected by all applicable employment laws, and are merely agreeing to have certain employment-related claims decided by a private arbitrator rather than by a judge or jury. *Employees are not giving up any substantive rights to recover damages.*" (Exhibit "A," p. 1, ¶2).

---

[1] A copy of the subsidiary list from the Securities and Exchange Commission Form 10-K for Clear Channel Communications, Inc. is attached hereto as Exhibit "A."

2

The Arbitration Agreement includes a provision concerning attorneys' fees, which states that:

> each party shall bear his or her own attorneys' fees and other costs not associated with the administration of the arbitration by the AAA. However, if a party is entitled to attorneys' fees under any federal, state or local statute or law, the arbitrator may award those fees pursuant to the governing law, at his or her discretion.

(Exhibit "A," p. 5, ¶9B).

On or about March 7, 2005, Plaintiff entered into an Employment Agreement with Defendant. (A copy of Plaintiff's Employment Agreement is attached hereto as Exhibit "D.") The Employment Agreement includes, among other things, an arbitration clause (the "Arbitration Clause"). The Arbitration Clause states in pertinent part that:

> the parties agree that any dispute, controversy or claim, whether based on contract, tort, statute, discrimination, retaliation, or otherwise, relating to, arising from or connected in any manner to this Agreement, or to the alleged breach of this Agreement, or arising out of or relating to Employee's employment or termination of employment, shall, upon timely written request of either party be submitted to and resolved by binding arbitration.

(Exhibit "C," p. 7, ¶14).

On or about July 13, 2006, Plaintiff's employment was terminated. (Complaint ¶11).

On or about September 28, 2007, Plaintiff filed the instant lawsuit against Defendant alleging violations of the FMLA (Counts I and II), breach of contract (Count III), and a claim for punitive damages (Count IV). Plaintiff alleges in his Complaint that the Arbitration Clause in his employment contract "is null and void as the clause does not merely indicate arbitration as the choice of forum, but deprives Plaintiff of substantive rights and remedies available under law." (Complaint, ¶55).

3

On October 30, 2007, in an attempt to resolve the matter without motion practice, defense counsel faxed a copy of the Arbitration Agreement to Plaintiff's counsel. By letter dated November 8, 2007, Defendant again attempted in good faith to resolve the parties' dispute regarding arbitration. (A copy of the November 8, 2007 letter is attached hereto as Exhibit "E.") Defendant advised Plaintiff's counsel that the Arbitration Agreement allowed for recovery of attorneys' fees and requested that Plaintiff reconsider his position regarding arbitration. In a letter dated November 12, 2007, Plaintiff's counsel maintained that it would not agree to arbitrate Plaintiff's claim. (A copy of Plaintiff's November 12, 2007 letter is attached hereto as Exhibit "F.")

By filing this Complaint, Plaintiff has attempted to disregard the arbitration process and unnecessarily burden this Court's docket. Accordingly, Defendant respectfully requests that the Court dismiss Plaintiff's Complaint and compel Plaintiff to submit his claims to binding arbitration as required by the two Arbitration Agreements he signed. Moreover, Defendant requests that the Court award it reasonable attorneys' fees and costs incurred in making this motion.

## POINT I

### THE MANDATORY ARBITRATION AGREEMENT AND ARBITRATION CLAUSE CONSENTED TO BY PLAINTIFF REQUIRE THAT PLAINTIFF'S CLAIMS IN THIS CASE BE ARBITRATED.

The Court should compel arbitration because (1) arbitration agreements are favored under the Federal Arbitration Act; (2) courts have routinely upheld arbitration agreements in the context of employment disputes; and (3) the parties agreed to arbitrate and the Arbitration Agreement and Arbitration Clause encompass Plaintiff's claims.

4

A.    **Federal Law Requires That This Matter Be Referred To Arbitration.**

In Section 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §2, Congress proclaimed a liberal federal policy favoring arbitration agreements.  See Moses H. Cone Mem'l Hosp. v. Mercury Constn. Corp., 460 U.S. 1, 24 (1983); Perry v. Thomas, 482 U.S. 483, 490 (1987); Fidelity and Guar. Ins. Co. v. West Point Realty, Inc., 02 Civ. 1951, 2002 WL 1933780, at *3 (S.D.N.Y. Aug. 21, 2002)[2]; Chanchani v. Salomon/Smith Barney, Inc., 85 Fair Empl. Prac. Cas. (BNA) 840, 841 (S.D.N.Y. Mar. 1, 2001); GMAC Commercial Credit LLC v. Spring Industries, Inc., 171 F. Supp. 2d 209 (S.D.N.Y. 2001).  Under the FAA, courts are required to "rigorously enforce agreements to arbitrate."  Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221 (1985).

The FAA requires that federal courts stay judicial proceedings if the issues involved in such proceedings are referable to arbitration:

> if any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, **shall** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement....

9 U.S.C. §3 (emphasis added).  Thus, the FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct parties to proceed to arbitration on issues as to which an arbitration agreement exists.  See Dean Witter Reynolds, Inc., 470 U.S. at 218.

---

[2] Copies of unreported decisions cited to herein are attached hereto collectively as Exhibit "G."

**B.**     **<u>Agreements to Arbitrate Employment Disputes Are Valid and Enforceable.</u>**

It is well-settled that agreements to arbitrate claims for employment related matters are valid and enforceable. <u>See</u> <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. 105, 123 (2001) ("The Court has been quite specific in holding that arbitration agreements can be enforced . . . without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law . . . 'by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial, forum.'") (citations omitted); <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20 (1991).

Courts within this Circuit have consistently enforced agreements entered into between employers and employees to arbitrate disputes arising out of the employment relationship or the termination thereof. <u>Tuskey v. Volt Info. Sciences, Inc. et al.</u>, 00 Civ. 7410, 2001 WL 873204 (S.D.N.Y. Aug. 3, 2001); <u>Meyer v. Starwood Hotels & Resorts Worldwide, Inc.</u>, 00 Civ. 8339, 2001 WL 396447 (S.D.N.Y. Apr. 18, 2001); <u>Wright v. SFX Entertainment Inc., et al.</u>, 00 Civ. 5354, 2001 WL 103433, at *4 (S.D.N.Y. Feb. 7, 2001); <u>Chanchani</u>, 85 FEP Cases at 841.

Indeed, this Court has enforced agreements to arbitrate on various occasions. <u>GMAC</u>, 171 F. Supp. 2d 209, 212 (granting defendant's motion to dismiss and compel arbitration based on arbitration clause contained in initial purchase order stating "seller agrees to submit any disputes arising under this Order to binding arbitration"); <u>Salim Oleochemicals, Inc. v. M/V Shropshire, et al.</u>, 169 F. Supp. 2d 194 (S.D.N.Y. 2001) (granting defendants' motion to compel arbitration based on arbitration clause contained in bill of lading); <u>aff'd</u>, 2002 U.S. App. LEXIS 14124 (2d Cir.), <u>cert. denied</u>, 537 U.S. 1088 (2002).

6

C.    **The Parties Agreed to Arbitrate and the Claims at Issue Are Covered by the Arbitration Agreement and Arbitration Clause.**

In considering whether to enforce an arbitration agreement, the United States Supreme Court has established a two-step inquiry, which has been followed by Courts within this Circuit. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-28 (1985); Weiss v. Travex Corp., 02 Civ. 2380, 2002 WL 1543875, at *2 (S.D.N.Y. July 12, 2002); Fidelity and Guar. Ins. Co., 2002 WL 1933780, at *3. First, the Court must determine whether the parties agreed to arbitrate their dispute. Second, the Court must ascertain whether the claims at issue are within the scope of claims covered by the agreement to arbitrate. Mitsubishi, 473 U.S. at 626-28; Weiss, 2002 WL 1543875, at *2; Fidelity and Guarantee Insurance Co., 2002 WL 1933780, at *3; Metzler v. Harris Corp., 17 IER Cases (BNA) 588, 592 (S.D.N.Y. Feb, 26, 2001).[3] Once these inquiries are satisfied, the dispute should be submitted to an arbitral forum.

Courts are required to resolve any doubts about the scope of arbitrable issues in favor of arbitration. See Dean Witter, 470 U.S. at 218; Weiss, 2002 WL 1543875, at *2. ("[t]o determine the scope of the arbitration agreement, 'arbitration clauses must be construed as broadly as possible and arbitration should be ordered' unless there is no 'interpretation that covers the asserted dispute'. [citations omitted]. All questions about 'the scope of arbitrable issues should be resolved in favor of arbitration.'"); Wright, 2001 WL 103433, at *4 (S.D.N.Y.

---

[3] Moreover, "Courts [within this Circuit] traditionally decide two other issues before compelling arbitration: (1) whether the claims brought under a particular statute were intended by Congress to be arbitrable; and (2) whether to stay a case if some of the claims are not arbitrable." Weiss, 2002 WL 1543875, at *2, fn. 2 (citing Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987)). See also Tuskey, 2001 WL 873204, at *2 (S.D.N.Y. Aug. 3, 2001); Wright, 2001 WL 103433, at *2 (S.D.N.Y. Feb. 7, 2001); Bailey v. Chase Secs., Inc., 88 Fair Empl. Prac. Cas. (BNA) 1446 (S.D.N.Y. May 1, 2002).

7

Feb. 7, 2001); <u>Chanchani</u>, 85 Fair Empl. Prac. Cas. (BNA) at 843; <u>GMAC</u>, 171 F. Supp. 2d at 213.

In the instant case, both the Arbitration Agreement and the Arbitration Clause satisfy the Supreme Court's two-part test for enforcing an arbitration agreement. First, it is undisputed that Plaintiff agreed to arbitrate all employment-related claims with Defendant. Plaintiff signed both the Arbitration Agreement and the Employment Agreement containing the Arbitration Clause at the beginning of his employment with Defendant. (<u>See</u> Exhibits "A" and "C.") Plaintiff also signed a "Policies Receipt," demonstrating that he read, understood, and agreed to abide by the terms of the Arbitration Agreement. (<u>See</u> Exhibit "B.")

Second, Plaintiff's claims under the FMLA and for breach of contract are covered by the broad scope of the Arbitration Agreement and Arbitration Clause. The Arbitration Agreement requires Plaintiff to arbitrate "**any** claim that could be asserted by Employee or Company in any state or federal civil court or before an administrative agency [...] for violation of any federal, state or local law, statute, ordinance or regulation, or common law." Additionally, the Arbitration Agreement specifically covers "claims for breach of any contract or covenant." Similarly, the Arbitration Clause in the Employment Agreement encompasses "any dispute, controversy or claim [...]," including those in connection with "Employee's employment or termination of employment." (<u>See</u> Exhibit "A.")

Language similar to that utilized in the Arbitration Agreement and Arbitration Clause has been held by courts in other employment matters to require arbitration. For instance, in <u>Weiss</u>, 2002 WL 1543875, at *3, the court held that an employment agreement that provided any "disputes and/or controversies arising out of [employee's] employment . . . shall be settled by binding arbitration," mandated arbitration of plaintiff's claims against both his employer and

8

his supervisor under Title VII, the New York State Human Rights Law and common law claims.
<u>Weiss</u>, 2002 WL 1543875.  Moreover, the court in <u>Bailey</u>, <u>supra</u>, held that an employment
agreement which stated "[a]ny claim or controversy between [plaintiff] and [Chase] arising out
of ... [plaintiff's] employment or the termination thereof shall be submitted to arbitration,"
evidenced a "clear intent to require that all employment-related disputes between plaintiff and
Chase shall be arbitrated," and, therefore, plaintiff's claims under the Age Discrimination in
Employment Act, the New York State Human Rights Law, and the New York City
Administrative Code were subject to arbitration.  <u>Bailey</u>, 88 Fair Empl. Prac. Cas. (BNA) at
1448-1449.  Similarly, in <u>Rajjak v. McFrank and Williams</u>, 17 IER Cases (BNA) 1454 (S.D.N.Y.
2001), the court found that an arbitration provision that required the arbitration of "any dispute of
any kind between the parties, whether or not arising out of this Agreement," should be construed
broadly to cover any disputes arising out of the employment relationship, including plaintiff's
claims for religious discrimination and retaliation under Title VII.  <u>Id</u>. at 1456-57.

   Finally, the Arbitration Agreement and Arbitration Clause indisputably provide
for a full and fair resolution of the claims raised by Plaintiff.  Significantly, both agreements
provide that Defendant will bear virtually all the costs of the arbitration.  (<u>See</u> Exhibit "C," p. 7,
¶14) ("[t]he Company will bear the actual costs of arbitration [...]"); (<u>See</u> Exhibit "A," p. 5, ¶8)
("[t]he Company will pay for the AAA filing fee and expenses of the arbitrator and AAA for
administering the arbitration, except as expressly provided herein").  Moreover, the forum
selected by the parties, the American Arbitration Association, is widely recognized as an
impartial agency.  See, e.g., <u>Lewis v. Prudential-Bache Secs., Inc.</u>, 179 Cal. App. 3d 935, 945
(1986) (court ordered arbitration before the AAA because that body is completely impartial);
Richard E. Speidel, *Symposium: Securities Arbitration: A Decade After McMahon: Contract*

9

*Theory and Securities Arbitration: Whither Consent?*, 62 Brooklyn L. Rev. 1335, 1353-54 (1996) (if the parties designate a "neutral and respected agenc[y] such as the AAA" it is rare that a party can demonstrate that the proposed arbitration rules or processes are not impartial); Thomas J. Stipanowich, *The Quiet Revolution Comes to Kentucky: A Case Study in Community Mediation*, 81 Ky. L.J. 855, 926-27 (1993) (the AAA assures the parties of "an independent, reputable source of out-of-court dispute resolution").

Given the parties' unmistakable commitment to resolve claims through arbitration and the broad scope of the Arbitration Agreement and Arbitration Clause, Plaintiff's claims should be referred to arbitration. Plaintiff's claims indisputably arise out of his employment or cessation of his employment with Defendant. Accordingly, Plaintiff's claims in this matter should be referred to arbitration in accordance with the agreements he signed.

## POINT II

### THE ARBITRATION AGREEMENT AND ARBITRATION CLAUSE ARE NOT NULL AND VOID SINCE THEY DO NOT DEPRIVE PLAINTIFF OF ANY RIGHT OR REMEDY AVAILABLE UNDER THE LAW.

Plaintiff alleges that the Arbitration Clause in his Employment Agreement is null and void because it deprives him of rights and remedies available under the law, i.e., attorneys', fees. (Complaint, ¶55) This allegation is inaccurate. First the Arbitration Agreement, signed by Plaintiff, specifically states that attorneys' fees may be awarded by the arbitrator if they are otherwise available to Plaintiff by law. See Exhibit "A." The Arbitration Agreement provides that "employees are not giving up any substantive rights to recover damages" and the "arbitrator may award…fees pursuant the governing law, at his or her discretion." See Exhibit "A," ¶¶ 2 and 5.

10

Second, the Arbitration Clause in the Employment Agreement merely states that each party must pay (in the first instance) its own attorneys' fees, but is silent as to whether either party may *__recover__* attorneys' fees.  Significantly, the Arbitration Clause does not prohibit Plaintiff from recovering attorneys' fees that he would otherwise be entitled to by law.  The Arbitration Clause provides that "each side will pay its own attorneys' fees and other costs incurred by their respective attorneys." (emphasis added.)  This statement is not tantamount to a blanket prohibition against the *__recovery__* or award of attorneys' fees.  In fact, the Agreement does not forbid the arbitrator from awarding attorneys' fees to either party nor does Defendant contend otherwise.  Therefore, contrary to Plaintiff's claim, neither the Arbitration Agreement nor the Arbitration Clause deny Plaintiff any right or remedy available under the law.

## CONCLUSION

For the reasons set forth herein, Defendant's Motion to Dismiss the Complaint and to Compel Arbitration should be granted, and Plaintiff should be required to submit his claims to arbitration in accordance with the terms of the Arbitration Agreement and Arbitration Clause.  Moreover, Defendant requests that it be awarded reasonable attorneys' fees and costs incurred in filing this Motion.

11

Respectfully submitted,

JACKSON LEWIS, LLP
59 Maiden Lane, 40th Floor
New York, New York 10038
(212) 545-4000

By: _____
Diane Windholz (DW 9806)

ATTORNEYS FOR DEFENDANT

Dated:    November 19 2007
New York, New York

12

# EXHIBIT A

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**WASHINGTON, DC 20549**

**FORM 10-K**

[x]  Annual report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934
     For the fiscal year ended December 31, 2006, or
[ ]  Transition report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934
     For the transition period from _____ to _____.

**Commission File Number**
**1-9645**

# CLEAR CHANNEL COMMUNICATIONS, INC.

(Exact name of registrant as specified in its charter)

Texas                                                                   74-1787539
(State of Incorporation)                                        (I.R.S. Employer Identification No.)

200 East Basse Road
San Antonio, Texas 78209
Telephone (210) 822-2828
(Address, including zip code, and telephone number,
including area code, of registrant's principal executive offices)

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Name of each exchange on which registered |
|---|---|
| Common Stock, $0.10 par value per share | New York Stock Exchange |

Securities registered pursuant to Section 12(g) of the Act: None.

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.  YES [X] NO [ ]

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Exchange Act. YES [ ] NO [X]

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. YES [X] NO [ ]

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. [ ]

Indicate by checkmark whether the registrant is a shell company (as defined in Exchange Act Rule 12b-2).  YES [ ] NO [X]

As of June 30, 2006, the aggregate market value of the Common Stock beneficially held by non-affiliates of the registrant was approximately $10.0 billion based on the closing sale price as reported on the New York Stock Exchange.  (For purposes hereof, directors, executive officers and 10% or greater shareholders have been deemed affiliates.)

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer.  See definition of "accelerate filer and large accelerated filer" in Rule 12b-2 of the Exchange Act.  Large accelerated filer [X]  Accelerated filer [ ] Non-accelerated filer [ ]

On February 22, 2007, there were 496,173,900 outstanding shares of Common Stock, excluding 130,304 shares held in treasury.

**DOCUMENTS INCORPORATED BY REFERENCE**

Portions of our Definitive Proxy Statement for the 2007 Annual Meeting, expected to be filed within 120 days of our fiscal year end, are incorporated by reference into Part III.

EXHIBIT 21 - Subsidiaries of Registrant, Clear Channel Communications, Inc.

| Name | State of Incorporation |
| --- | --- |
| * See note below | |
| *1567 Media, LLC | DE |
| Ackerley Broadcast Operations, LLC | DE |
| Ackerley Broadcasting of Fresno, LLC | DE |
| Ackerley Ventures, Inc. | WA |
| AK Mobile Television, Inc. | WA |
| AMFM Air Services, Inc. | DE |
| AMFM Broadcasting Licenses, LLC | DE |
| AMFM Broadcasting, Inc. | DE |
| AMFM Holdings, Inc. | DE |
| AMFM Inc. | DE |
| AMFM Internet Holding, Inc. | DE |
| AMFM Michigan, LLC | DE |
| AMFM Operating, Inc. | DE |
| AMFM Radio Group, Inc. | DE |
| AMFM Radio Licenses, LLC | DE |
| AMFM Shamrock Texas, Inc. | TX |
| AMFM Texas Broadcasting, LP | DE |
| AMFM Texas Licenses, LP | DE |
| AMFM Texas, LLC | DE |
| Austin Tower Company | DE |
| Bel Meade Broadcasting Corporation, Inc. | DE |
| Broadcast Architecture, Inc. | MA |
| Broadcast Finance, Inc. | OH |
| Capstar Broadcasting Partners, Inc. | DE |
| Capstar Radio Operating Company | DE |
| Capstar TX, LP | DE |
| CC Broadcast Holdings, Inc. | NV |
| CC Holdings-Nevada, Inc. | NV |
| CC Identity GP, LLC | DE |
| CC Identity Holdings, Inc. | NV |
| CC Licenses, LLC | DE |
| CCB Texas Licenses, LP | TX |
| CCBL FCC Holdings, Inc. | NV |
| CCBL GP, LLC | DE |
| Central NY News, Inc. | WA |
| Christal Radio Sales, Inc. | DE |
| Cine Guarantors II, Inc. | CA |
| Citi GP, LLC | DE |
| Citicasters Co. | OH |
| Citicasters FCC Holdings, Inc. | NV |
| Citicasters Licenses, LP | NV |
| *Clear Channel Adshel, Inc. | DE |
| Clear Channel Aviation, LLC | DE |

| | |
|---|---|
| Clear Channel Broadcasting Licenses, Inc. | NV |
| Clear Channel Broadcasting, Inc. | NV |
| Clear Channel Collective Marketing, LLC | DE |
| Clear Channel Communications, Inc. | TX |
| Clear Channel Company Store, Inc. | NV |
| *Clear Channel Digital Mall Networks, LLC | DE |
| Clear Channel GP, LLC | DE |
| Clear Channel Holdings, Inc. | NV |
| Clear Channel Identity, LP | TX |
| Clear Channel Intangibles, Inc. | DE |
| Clear Channel Investments, Inc. | NV |
| *Clear Channel LA, LLC | DE |
| Clear Channel Management Services, LP | TX |
| Clear Channel Mexico Holdings, Inc. | NV |
| *Clear Channel Outdoor Holdings Company Canada (FKA Eller Holdings Company Canada) | DE |
| *Clear Channel Outdoor Holdings Inc. (FKA Eller Media Corporation) | DE |
| *Clear Channel Outdoor, Inc. | DE |
| Clear Channel Real Estate, LLC | DE |
| Clear Channel Satellite Services, Inc. | DE |
| *Clear Channel Spectacolor, LLC | DE |
| *Clear Channel Taxi Media, LLC | DE |
| Clear Channel Wireless, Inc. | NV |
| *Clear Channel Worldwide Holdings, Inc. | NV |
| Clearmart, Inc. | NV |
| Critical Mass Media | OH |
| *Eller Taxi TV, LLC | DE |
| *Eltex Investment Corp. | DE |
| *Exceptional Outdoor, Inc. | FL |
| *Interstate Bus Shelter, Inc. | PA |
| Jacor Broadcasting Corporation | OH |
| Jacor Broadcasting Of Colorado, Inc. | CO |
| Jacor Broadcasting Of Denver, Inc. | CA |
| Jacor Communications Company | FL |
| Jacor/Premiere Holding, Inc. | DE |
| Katz Communications, Inc. | DE |
| Katz Media Group, Inc. | DE |
| Katz Millennium Sales & Marketing, Inc. | DE |
| *Keller Booth Sumners JV | TX |
| *Kelnic II JV | DE |
| KTZMedia Corporation | DE |
| KVOS TV, Ltd. | BRITISH COLUMBIA |
| Lubbock Tower Company | TX |
| M Street Corp | WA |
| M Street, LLC | OH |
| Oklahoma City Tower Company | DE |
| *Outdoor Management Services, Inc. | NV |
| Premiere Radio Networks, Inc. | DE |
| Radio-Active Media, Inc. | DE |
| *Shelter Advertising Of America, Inc. | DE |

| | |
|---|---|
| Terrestrial RF Licensing, Inc. | NV |
| The New Research Group, Inc. | NV |
| *Transportation Media of Texas JV | TX |
| Radio Computing Services, Inc. | NJ |
| *Clear Channel Airports of Georgia, Inc. | GA |
| *Get Outdoors Florida, LLC | FL |
| Media Monitors, LLC | NY |
| Musicpoint International, LLC | DE |
| *Interspace Services, Inc. | PA |
| *Sunset Billboards, LLC | WA |
| AMFM.com, Inc. | DE |
| Westchester Radio, LLC | DE |
| Duncan American Radio, LLC | IN |
| Radio Impact, LLC | DE |
| *Eller-PW Company, LLC | CA |
| *Clear Channel Brazil Holdco, LLC | DE |
| *Clear Channel Peoples, LLC | DE |
| Clear Channel Mexico, LLC | DE |
| *HCA, Inc. | IL |

| Name | Country Of Incorporation |
|---|---|
| Adcart AB* | Sweden |
| Adshel (Brazil) Ltda* | Brazil |
| Adshel Argentina SRL* | Argentina |
| Adshel Ireland Limited* | Ireland |
| Adshel Ltd.* | United Kingdom |
| Adshel Ltda* | Brazil |
| Adshel NI Ltd.* | United Kingdom |
| Affitalia SRL* | Italy |
| Aircheck India Pvt. Ltd. | India |
| Allied Outdoor Advertising Ltd.* | United Kingdom |
| Arcadia Cooper Properties Ltd.* | United Kingdom |
| Aristex* | Estonia |
| ARN Holdings Pty Ltd. | Australia |
| Barnett And Son Ltd.* | United Kingdom |
| Bk Studi BV* | Netherlands |
| BPS London Ltd.* | United Kingdom |
| BPS Ltd.* | United Kingdom |
| C.F.D. Billboards Ltd.* | United Kingdom |
| CC Cayco Ltd.* | Cayman Islands |
| Clear Channel Haidemenos Media SA* | Greece |
| Clear Channel International BV* | Netherlands |
| Clear Channel International Holdings BV* | Netherlands |
| CC LP BV* | Netherlands |
| Clear Channel Netherlands BV * | Netherlands |
| CCO International Holdings BV * | Netherlands |
| CCO Ontario Holding, Inc.* | Canada |
| China Outdoor Media Investment (HK) Co., Ltd.* | Hong Kong |
| China Outdoor Media Investment, Inc. * | British Virgin Islands |
| City Lights Ltd.* | United Kingdom |

| | |
|---|---|
| Clear Channel Acir Holdings NV | Netherlands Antilles |
| Clear Channel Adshel AS * | Norway |
| Clear Channel Airport Pte Ltd * | Singapore |
| Clear Channel Australia Pty Ltd. | Australia |
| Clear Channel Baltics & Russia Limited * | Russia |
| Clear Channel Baltics And Russia AB * | Sweden |
| Clear Channel Banners Limited * | United Kingdom |
| Clear Channel Belgium SA * | Belgium |
| Clear Channel Brazil Holding Ltda.* | Brazil |
| Clear Channel Communications India Pvt Ltd * | India |
| Clear Channel CP III BV* | Netherlands |
| Clear Channel CP IV BV* | Netherlands |
| Clear Channel CV* | Netherlands |
| Clear Channel Danmark A/S * | Denmark |
| Clear Channel Entertainment of Brazil Ltd. * | Brazil |
| Clear Channel Espana SL * | Spain |
| Clear Channel Espectaculos SL* | Spain |
| Clear Channel Estonia A/S* | Estonia |
| Clear Channel European Holdings SAS * | France |
| Clear Channel Finland Ltd * | Finland |
| Clear Channel France SA* | France |
| Clear Channel (Gibraltar) Ltd. | Gibraltar |
| Clear Channel Hillenaar BV * | Netherlands |
| Clear Channel Holding AG * | Switzerland |
| Clear Channel Holding Italia* | Italy |
| Clear Channel Holdings CV* | Netherlands |
| Clear Channel Holdings, Ltd.* | United Kingdom |
| Clear Channel Hong Kong Ltd.* | Hong Kong |
| Clear Channel Ireland Ltd. * | Ireland |
| Clear Channel Italy Outdoor SRL * | Italy |
| Clear Channel Jolly Pubblicita SPA* | Italy |
| Clear Channel KNR Neth Antilles NV* | Netherlands Antilles |
| Clear Channel Latvia * | Latvia |
| Clear Channel Lietuva* | Lithuania |
| Clear Channel More France SA * | France |
| Clear Channel NI Ltd.* | United Kingdom |
| Clear Channel Norway AS * | Norway |
| Clear Channel Outdoor Company Canada* | Canada |
| Clear Channel Outdoor Limited * | United Kingdom |
| Clear Channel Outdoor Mexico SA de CV * | Mexico |
| Clear Channel Outdoor Mexico, Operaciones SA de CV * | Mexico |
| Clear Channel Outdoor Mexico, Servicios Administrativos, SA de CV * | Mexico |
| Clear Channel Outdoor Mexico, Servicios Corporativos, SA de CV * | Mexico |
| Clear Channel Outdoor Pty Ltd.* | Australia |
| Clear Channel Outdoor Spanish Holdings S.L.* | Spain |
| Clear Channel Overseas Ltd. * | United Kingdom |
| Clear Channel Pacific Pte Ltd. * | Singapore |
| Clear Channel Plakanda GmbH* | Switzerland |
| Clear Channel Poland Sp.Z.O.O. * | Poland |
| Clear Channel Sales AB * | Sweden |

| | |
|---|---|
| Clear Channel Sao Paulo Participacoes Ltda* | Brazil |
| Clear Channel Singapore Pte Ltd.* | Singapore |
| Clear Channel Solutions Ltd.* | United Kingdom |
| Clear Channel South Africa Invest. Pty Ltd.* | South Africa |
| Clear Channel South America S.A.C.* | Peru |
| Clear Channel Sverige AB * | Sweden |
| Clear Channel Tanitim Ve Lierisin AS * | Turkey |
| Clear Channel UK Ltd * | United Kingdom |
| Clear Media Limited* | Bermuda |
| Comurben SA* | Morocco |
| Dauphin Adshel SA * | France |
| Defi Belgique * | Belgium |
| Defi Deutschland GmbH* | Germany |
| Defi France SAS * | France |
| Defi Group Asia* | Hong Kong |
| Defi Group SAS * | France |
| Defi Italia* | Italy |
| Defi Neolux * | Portugal |
| Defi Pologne SP Z.O.o* | Poland |
| Defi Reklam Kft * | Hungary |
| Defi Russie* | Russia |
| Defi Ukraine* | Ukraine |
| Dolis BV* | Netherlands |
| Eirtam Reklaam LIC* | Estonia |
| Eller Holding Company Cayman I* | Cayman Islands |
| Eller Holding Company Cayman II* | Cayman Islands |
| Eller Media Asesarris Y Comercializacion Publicataria* | Chile |
| Eller Media Servicios Publicitarios Ltd* | Chile |
| Epiclove Ltd.* | United Kingdom |
| Equipamientos Urbanos de Canarias SA* | Spain |
| Expoplakat Ltd.* | Sweden |
| Felice Display GmbH * | Switzerland |
| Foxmark UK Ltd. * | United Kingdom |
| France Bus Publicite* | France |
| France Rail Publicite* | France |
| Giganto Holding Cayman* | Cayman Islands |
| Giganto Outdoor SA* | Chile |
| Grosvenor Advertising Ltd.* | United Kingdom |
| Hainan Whitehorse Outdoor Advertising Media Investment Ltd.* | Hong Kong |
| Hillenaar Outdoor Advertising BV* | Netherlands |
| Hillenaar Services BV* | Netherlands |
| Iberdefi (Espagne)* | Spain |
| Idea Piu SP Z.O.o* | Poland |
| Illuminated Awnings Systems Ltd.* | Ireland |
| Infotrak SA* | Switzerland |
| Interpubli Werbe* | Switzerland |
| Interspace Airport Advertising Aruba * | Aruba |
| Interspace Airport Advertising Australia * | Australia |
| Interspace Airport Advertising Costa Rica SA * | Costa Rica |
| Interspace Airport Advertising Curacao NV * | Netherlands Antilles |

| | |
|---|---|
| Interspace Airport Advertising Netherlands Antilles NV * | Netherlands Antilles |
| Interspace Airport Advertising Nevis W.I. * | West Indies |
| Interspace Airport Advertising New Zealand * | New Zealand |
| Kms Advertising Ltd.* | United Kingdom |
| L "Efficience Publicitaire SA* | Belgium |
| L & C Outdoor Comunicacao Visual Ltda.* | Brazil |
| Landimat* | France |
| Mars Reklam Ve Producksiyon AS* | Turkey |
| Maurice Stam Ltd* | United Kingdom |
| Mensa Sp ZO.o. * | Poland |
| Metrabus* | Belgium |
| Ming Wai Holdings Ltd.* | British Virgin Islands |
| MOF Adshel Ltd.* | United Kingdom |
| More Communications Ltd.* | United Kingdom |
| More Media Ltd.* | United Kingdom |
| More O'Ferrall Ltd.* | United Kingdom |
| More O'Ferrall Ireland Ltd. * | Ireland |
| Morebus Ltd.* | United Kingdom |
| Multimark Ltd.* | United Kingdom |
| Nitelites (Ireland) Ltd.* | Ireland |
| Mobiliario Urbano de Nueva Leon SA de CV* | Mexico |
| Outdoor Advertising BV* | Netherlands |
| Outdoor International Holdings BV* | Netherlands |
| Outstanding Media I Norge AS* | Norway |
| Outstanding Media Stockholm AB* | Sweden |
| Paneles Napsa. S.A. * | Peru |
| Parkin Advertising Ltd. * | United Kingdom |
| Plakanda Aida GmbH* | Switzerland |
| Plakanda Awi AG* | Switzerland |
| Plakanda GmbH * | Switzerland |
| Plakanda Management AG* | Switzerland |
| Plakanda Ofex AG* | Switzerland |
| Plakatron AG* | Switzerland |
| Planos AIE* | Spain |
| Postermobile Advertising Ltd.* | United Kingdom |
| Postermobile PLC.* | United Kingdom |
| Procom Publicidade via Publica Ltda* | Chile |
| PTKC Rotterdam BV * | Netherlands |
| Pubbli A SPA* | Italy |
| Publicidade Klimes Sao Paulo Ltda* | Brazil |
| Racklight SA de CV* | Mexico |
| Radio Broadcasting Australia Pty Ltd. | Australia |
| Radio Computing Services (Africa) Pty Ltd. | South Africa |
| Radio Computing Services (NZ) Ltd. | New Zealand |
| Radio Computing Services (SEA) Pte Ltd. | Singapore |
| Radio Computing Services (Thailand) Ltd. | Thailand |
| Radio Computing Services (UK) Ltd. | United Kingdom |
| Radio Computing Services Canada Ltd. | Canada |
| Radio Computing Services of Australia Pty Ltd. | Australia |
| Radio Computing Services Pvt. Ltd. | India |

| | |
|---|---|
| RCS (China) Inc. | China |
| Regentfile Ltd.* | United Kingdom |
| Rockbox Ltd.* | United Kingdom |
| Safir Publicite SAS* | France |
| SARL RCS Europe | France |
| Score Ltd.* | United Kingdom |
| Score Outdoor (Midlands)* | United Kingdom |
| Score Outdoor (N. West) Ltd.* | United Kingdom |
| Score Outdoor (S. West)* | United Kingdom |
| Score Outdoor (Scotland) Ltd* | Scotland |
| Signways Ltd.* | United Kingdom |
| Simon Outdoor Ltd.* | Sweden |
| Sirocco International S.A.* | France |
| Sites International Ltd.* | United Kingdom |
| Sviluppo & Pubblicita Srl* | Italy |
| Taxi Media Holdings Ltd.* | United Kingdom |
| Taxi Media Ltd.* | United Kingdom |
| Team Relay Ltd.* | United Kingdom |
| The Canton Property Co. Ltd.* | United Kingdom |
| The Kildoon Property Co. Ltd.* | United Kingdom |
| Torpix Ltd.* | United Kingdom |
| Town & City Posters Advertising. Ltd.* | United Kingdom |
| Tracemotion Ltd.* | United Kingdom |
| Trainer Advertising Ltd.* | United Kingdom |
| Equipamientos Urbanos Del Sur SL* | Spain |
| Van Wagner Europe Holdings Ltd. * | United Kingdom |
| Van Wagner France SAS* | France |
| Van Wagner UK Ltd. * | United Kingdom |
| Vision Posters Ltd.* | United Kingdom |
| Werab Werbung Hugo Wrage GmbH & Co KG* | Germany |
| Williams Display Excellence AB * | Sweden |
| Pubblicita Zangari SRL* | Italy |

* Following the IPO, Clear Channel Communications owns 89% of these entities.

# EXHIBIT B

# ARBITRATION AGREEMENT

If you and the Company have a legal dispute (i.e., a dispute that could otherwise be brought in court) and we can't resolve it through our Open Door Policy, then we will use arbitration. Private arbitration is a more efficient, less expensive, and usually faster way to resolve disputes than through a traditional lawsuit in state or federal court. Accordingly, we require that new, non-union employees sign an agreement promising that all covered claims as defined in this Agreement, will be submitted to final and binding determination by an impartial arbitrator under the Employment Dispute Resolution Rules of the American Arbitration Association. The Arbitration Agreement becomes effective immediately upon hire or six weeks following the date of close if employee gains Clear Channel/Eller employment by means of a Company acquisition.

Employees are still protected by all applicable employment laws, and are merely agreeing to have certain employment-related claims decided by a private arbitrator rather than by a judge or jury. *Employees are not giving up any substantive rights to recover damages.* All non-union employees are deemed to have agreed to this Arbitration Agreement by accepting or continuing employment with this Company (including raises, promotions, bonuses, etc.).

Arbitration is the procedure used for the resolution of certain covered claims that may arise between the Company and employees. In the interest of a prompt and fair resolution of these claims, each employee is required to enter into this Agreement in exchange for employment with the Company and the Company's agreement to resolve these claims in the same manner.

Many of the disputes or claims that might possibly arise between the Company and an employee could be made the subject of a formal charge or complaint before a state or federal agency and/or the subject of a lawsuit in a state or federal court. In most such cases, either party (the Company or employee) could ultimately have the case tried before a jury upon request.

By this Arbitration Agreement, however, employees give up their right to sue the Company, and the Company is giving up its right to sue employees in court, as well as the right to trial by jury. Instead, the Company and employees hereby agree that any covered legal claim that either may have against or with the other will be submitted solely to a private, impartial arbitrator (a "private judge," so to speak) for a final and binding decision.

## Scope of the Arbitration Agreement

As a condition of employment with the Company, each employee hereby *waives his/her right to sue* the Company, and the Company hereby waives its right to sue the employee, for any claim or cause of action covered by this Agreement. In lieu of suing, any such legal dispute may instead be submitted for final and binding resolution by a private, impartial arbitrator. The arbitration shall be governed by the Employment

1

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

Dispute Resolution Rules of the American Arbitration Association. A copy of these rules is available for each employee to review.

*Nothing in this Agreement is intended to prohibit the Employee from filing a claim or communicating with any governmental agency including the Equal Employment Opportunity Commission or the Department of Labor.*

**Covered Claims:**

This Agreement covers the following potential claims:

1.  Any dispute regarding the arbitrability of any such claim;

2.  Any dispute regarding this Agreement, including but not limited to its enforceability, scope or terms;

3.  Any claim that could be asserted by Employee or Company in any state or federal civil court or before an administrative agency, including without limitation, claims for breach of any contract or covenant, express or implied; assault, battery, invasion of privacy, defamation of character, infliction of emotional distress, tortious interference with contract, or other tort claims, including any claim that an employee was injured or damaged because of the negligence of the Company or any of its employees; and claims for unlawful discharge and/or for violation of any federal, state or local law, statute, ordinance or regulation, or common law;

4.  Any claim for discrimination, including but not limited to discrimination because of sex, pregnancy, race, national or ethnic origin, age, religion, creed, marital status, sexual harassment, sexual orientation, mental or physical disability or medical condition or other characteristics protected by statute;

5.  Any claim of retaliation or discrimination against the Company for opposing the violation of any federal, state or local statute or ordinance, including but not limited to the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, state workers' compensation law or any "whistleblower" law; and

6.  Any claim for commissions, wages, bonuses or any other form of compensation.

**Claims Not Covered:**

This Agreement does not cover:

1.  Claims for workers' compensation benefits.

2.  Claims for unemployment compensation benefits.

2

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

3.   Claims for benefits based upon the Company's employee welfare benefit plans, if the plan contains a final and binding appeal procedure for the resolution of disputes under the plan.

4.   Claims for injunctive and/or other equitable relief, including but not limited to claims to enforce a covenant not to compete or for unfair competition or use or unauthorized disclosure of trade secrets or confidential information as contained in express written agreements.

5.   Wage and hour disputes within the jurisdiction of any state Labor Commissioner.

6.   Any claims not specifically listed as a "Covered Claim".

### Rules Governing the Arbitration

1.   **Demand for Arbitration**

Any party to an Arbitration Agreement may initiate arbitration by serving upon the other party, by certified mail, a written notice containing a specific request to enter into arbitration. The written request shall identify and describe the nature of each claim asserted, the facts upon which each claim is based, and the relief or remedy sought. Written notice to the Employee will be sent to the most recent address contained in the Employee's personnel file. Written notice to the Company shall be sent to:

Clear Channel
General Counsel
200 East Basse
San Antonio, Texas 79209

Promptly after sending or receiving a written request to arbitrate a Covered Claim, the Company shall notify the American Arbitration Association ("AAA") that a demand for arbitration has been made and shall request that the AAA provide the parties with a list of arbitrators, as specified below. If, on the date that an arbitration demand is postmarked, any claim made in the demand would be barred by the applicable statute of limitations, that claim shall be deemed barred for purposes of arbitration.

An arbitration is also initiated by the receipt by AAA of an order from a court compelling arbitration. For purposes of the statute of limitations, the arbitration is deemed initiated on the date that the order compelling arbitration is issued by the court, or as otherwise ordered by the court.

2.   **Selecting an Arbitrator**

The arbitration will be held under the auspices of AAA in or near the city in which the Employee or former Employee, who is party to the arbitration, is or was last employed by the Company. The parties may, however, agree on an alternative location

3

If the AAA does not have an available office with a hearing room in or near such city, the arbitration shall be conducted in a meeting room in a hotel in such city.

Except as otherwise provided in this Agreement, the arbitration shall be in accordance with the AAA's Employment Dispute Resolution Rules that are in effect at the time that the demand for arbitration is made. The arbitrator shall be either a retired judge or an experienced attorney licensed to practice law in the state in which the arbitration is to be convened.

Promptly upon receipt of notice from the Company that arbitration has been initiated, AAA will provide each party with an identical list of eleven (11) arbitrators from its panel of employment dispute arbitrators. (For purposes of arbitrator selection, all defendants, whether or not separately represented, shall be deemed one party). Within ten (10) calendar days from the postmark date on the AAA list, the parties or their representatives will meet or participate in a telephone conference to select an arbitrator. At such time, the parties shall alternately strike the name of an arbitrator on the list (the party initiating arbitration shall strike first) until only one name remains. This remaining name shall be the arbitrator. If a party refuses to timely participate in such a meeting or telephone conference, the other party may select an arbitrator from the list provided by AAA. If the arbitrator designated by this process declines or is unable to serve, the selection process shall be repeated with a new list of eleven (11) arbitrators from AAA.

## 3.     Hearing Date

The arbitrator will promptly set a hearing date and time and will mail written notice to each of the parties at least sixty (60) days in advance of the hearing unless the parties otherwise agree or mutually waive notice.

## 4.     Depositions and Other Discovery

Each party at their own expense shall have the right to take up to three (3) depositions unless the arbitrator, on a showing of good cause, approves additional depositions. Each party also shall have the right to require the production of relevant documents from the other party. Unresolved discovery disputes will be presented to the arbitrator for final resolution. All discovery shall be concluded within 45 days from the date the arbitrator is informed of his or her selection.

## 5.     Witnesses and Exhibits

No later than fifteen (15) days before the arbitration, the parties will exchange lists of witnesses, including any experts, and copies of all exhibits intended to be used at the arbitration. Each party shall have the right to subpoena witnesses and documents for the arbitration as well as documents relevant to the case from third parties.

4

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

6.    **Pre-Hearing Procedures**

The arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person, as the arbitrator deems necessary. The arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure.

7.    **Briefs**

Either party, upon request at the close of the hearing, shall be given leave to file a post-hearing brief. The time for filing such a brief shall be set by the arbitrator.

8.    **Filing Fee**

The Company will pay for the AAA filing fee and expenses of the arbitrator and AAA for administering the arbitration, except as expressly provided herein. The employee shall be responsible for their own attorney's fees, costs, and expenses, such as those incurred in discovery.

9.    **The Arbitration Hearing**

A.    **Conduct of the Hearing**

The arbitrator shall preside at the hearing and rule on the admission and exclusion of evidence and questions of procedure, and exercise other such powers as conferred by statute. Judicial rules relating to the order of proof, the conduct of the hearing and the presentation of admissibility of evidence will not be applicable. The arbitrator shall admit any relevant evidence if it is of the sort that reasonable persons are accustomed to relying upon in the conduct of serious affairs, regardless of the admissibility of such evidence in a court of law.

B.    **The Law the Arbitrator will Apply**

The arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the state law claim arose, or federal law of the circuit in which the federal law claim arose, or both, as applicable to the claim(s) asserted. The arbitrator is without jurisdiction to apply any different substantive law or law of remedies. The arbitrator may not disregard or alter the Company's rules or policies unless the arbitrator determines that a rule or policy violated existing law at the time of the alleged violation. The arbitration shall be final and binding upon the parties, except as provided in this Agreement.

Each party shall bear his or her own attorneys' fees and other costs no associated with the administration of the arbitration by the AAA. However, if a party is entitled to attorneys' fees under any federal, state or local statute or law, the arbitrato may award those fees pursuant to the governing law, at his or her discretion.

5

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

### C.    Failure to Appear for Hearing

Should any party refuse or neglect to appear for, or participate in, the arbitration hearing, the arbitrator shall have the authority to decide the dispute based upon whatever evidence is presented.

### D.    Transcription of Hearing

Either party, at their expense, may arrange for and pay the cost of a court reporter to provide a stenographic record of proceedings.

### E.    Payment of Attorney and Witness Expenses

The parties shall pay its own attorneys' fees, witness fees, discovery costs and other expenses incurred for their own benefit, unless otherwise provided by contract or statute.

## 10.    The Arbitration Award

The arbitrator shall render an award and opinion which is signed and dated and which decides all issues submitted as well as the legal principles supporting each part of the award. Unless the parties and arbitrator agree otherwise, the arbitrator's award shall issue no later than thirty (30) days from the date the arbitration hearing concludes or the post-hearing briefs (if requested) are received, whichever is later. The arbitrator may grant any remedy or relief, legal or equitable, that would have been available had the claim been asserted in court. The award shall include a brief statement of the factual and legal bases for the ruling.

### A.    Reconsideration

Either party shall have the right, within twenty (20) days of issuance of the arbitrator's opinion, to file with the arbitrator a motion to reconsider (accompanied by a supporting brief), and the other party shall have twenty (20) days from the date of the motion to respond. The arbitrator thereupon shall reconsider the issues raised by the motion and, promptly, either confirm or change the decision, which (except as provided by this Agreement) shall then be final and conclusive upon the parties. Each party shall bear his or her own costs and attorneys' fees relating to such a motion for reconsideration and written opinion of the arbitrator, unless the arbitrator orders otherwise.

### B.    Enforcement

Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement. Either party may bring an action to enforce an arbitration award. A party opposing enforcement of an award may also bring an action or counteraction if there are enforcement proceedings pending in any court of

6

competent jurisdiction to set aside the award. In such proceedings, the standard of review will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury.

## Other Provisions

### Exclusive Forum

The Employee understands that this Agreement waives his or her right to a jury trial and waives the right to seek remedies in court.

### Construction of Agreement

Should any provision of this Agreement be found to be unenforceable, such portion will be severed from the Agreement and the remaining portions shall remain in full force and effect.

### Sole and Entire Agreement

This is the complete agreement of the parties on the subject of arbitration of disputes (except for any arbitration agreement in connection with any pension or benefit plan). This Agreement supersedes any prior or contemporaneous oral or written understandings on the subject. No party is relying on any representations, oral or written, on the subject of the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement.

### Voluntary Agreement

The employee's signature on the Arbitration Agreement certifies that the employee has carefully read this agreement and understands its terms. The employee acknowledges that all understandings and agreements between the Company and employee relating to the subjects covered in this agreement are contained in it, and that the employee has entered into this agreement voluntarily and not in reliance on any promises or representations by the Company other than those contained in this agreement itself.

SIGNATURE AND ACKNOWLEDGEMENT:

The employee further acknowledges that the employee has been given the opportunity to discuss this agreement with the employee's private attorney.

_____    3-22-04
Employee Signature           Date

RALPH E. HERRERA

7

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

Printed Name                                    Division and Location

8

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

# EXHIBIT C

 **Katz Media Group**

# Policies Receipt

**ACKNOWLEDGMENT**

      I acknowledge that I have received, read, and understand the following Katz policies contained in the Employee Guide and/or provided separately. I further acknowledge receipt of informational flyers and viewing of videos as noted below:

1)  Open Door Policy (Employee Guide);

2)  Unlawful Harassment Policy (Employee Guide);

3)  Policy of Sexual Harassment (Employee Guide);

4)  Electronic Communication and Internet Usage Policy (Employee Guide);

5)  Threats, Violence, and Weapons Policy (Employee Guide);

6)  Substance Abuse and Drug Testing Policy (Employee Guide);

7)  Full Arbitration Agreement (Notice in Employee Guide; Full policy Form 4901; New Hires must sign separately Form 4117);

8)  Win/Win Problem Solving: Answer to Your Questions on Arbitration Brochure (Form 4901);

9)  ~~Welcome to Clear Channel Video~~

_____     3-22-04
Employee's/Intern's* Signature                                Date

RALPH E. HERRERA
Employee/Intern* Name (Printed)

*Interns, although not eligible for company pay or benefits, acknowledge receipt of the Katz Employee Guide and by signing above agree to abide by all the Company policies set forth therein.

Form 4129-Katz

# EXHIBIT D

3/7/05 — 6/30/07

# EMPLOYMENT AGREEMENT

This Employment Agreement is entered into and effective this 7th day of March, 2005 (the "Effective Date") between Katz Communications, Inc. (the "Company" or "Katz") and Ralph Herrera (the "Employee").

WHEREAS, the Company and the Employee desire to enter into an employment relationship under the terms and conditions set forth in this Agreement;

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

## 1.    TERM OF EMPLOYMENT.

The Employee's term of employment starts on the Effective Date and ends on the close of business on 30th day of June, 2007 (the "Initial Term").

## 2.    TITLE AND DUTIES.

The Employee's title is Sales Manager, Univision Radio Sales.  The Employee will perform job duties that are usual and customary for this position, and will perform additional services and duties that the Company may from time to time designate that are consistent with the usual and customary duties of this position. The Employee will report to the VP/General Sales Manager of Univision Radio Sales. The Employee will devote his full working time and efforts to the business and affairs of the Company.

## 3.    COMPENSATION AND BENEFITS

(a)    **Base Salary.**  The Company will pay the Employee an annual base salary of Ninety-Four Thousand Seven Hundred Sixty Dollars and No Cents ($94,760.00). The Employee will be eligible for annual raises commensurate with company policy, which policy may change at the Company's sole discretion. All payments of base salary will be made in installments according to the Company's regular payroll practice, prorated monthly or weekly where appropriate, and subject to any increases that are determined to be appropriate by the Board or the CEO of Katz.

(b)    **Sales Commission Override.**  During the Term of Employment, beginning with the calendar year 2005, Employee shall be entitled to participate in the Sales Commission Override Program established each year for Univision Radio. The criteria for said Sales Commission Override will be established by the CEO of Katz. Target Sales Commission Override for 2005 will be $23,690.00 subject to the achievement of the criteria established and achievement of individual goals and objectives as determined by the CEO of Katz. Sales Commission Override will be paid quarterly in arrears on May 15, August 15, November 30 and February 15.

(c)    **Employment Benefit Plans.**  The Employee will be entitled to participate in all pension, profit sharing, and other retirement plans, all incentive compensation plans, and all group health, hospitalization and disability or other insurance plans, paid vacation, sick leave and

other employee welfare benefit plans in which other similarly situated employees of the Company may participate as stated in the employee guide.

(d)    **Expenses.** The Company will pay or reimburse the Employee for all normal and reasonable travel and entertainment expenses incurred by the Employee in connection with the Employee's responsibilities to the Company upon submission of proper vouchers in accordance with the Company's expense reimbursement policy.

(e)    **Signing Bonus.** As further consideration for entering into this Employment Agreement, Company shall pay a one-time lump sum cash bonus equal to $5,000.00, less appropriate withholding taxes, upon the signing of this Employment Agreement.

## 4.    NONDISCLOSURE OF CONFIDENTIAL INFORMATION.

During the course of the Employee's employment with the Company, the Company will provide the Employee with access to certain confidential information, trade secrets, and other matters which are of a confidential or proprietary nature, including but not limited to the Company's customer lists, contracts, representation agreements, pricing information, production and cost data, compensation and fee information, strategic business plans, budgets, financial statements, and other information the Company treats as confidential or proprietary (collectively the "Confidential Information"). The Company provides on an ongoing basis such Confidential Information as the Company deems necessary or desirable to aid the Employee in the performance of his duties. The Employee understands and acknowledges that such Confidential Information is confidential and proprietary, and agrees not to disclose such Confidential Information to anyone outside the Company except to the extent that (i) the Employee deems such disclosure or use reasonably necessary or appropriate in connection with performing his duties on behalf of the Company; (ii) the Employee is required by order of a court of competent jurisdiction (by subpoena or similar process) to disclose or discuss any Confidential Information, provided that in such case, the Employee shall promptly inform the Company of such event, shall cooperate with the Company in attempting to obtain a protective order or to otherwise restrict such disclosure, and shall only disclose Confidential Information to the minimum extent necessary to comply with any such court order; or (iii) such Confidential Information becomes generally known to and available for use in the industries in which the Company does business, other than as a result of any action or inaction by the Employee. The Employee further agrees that he will not during employment and/or at any time thereafter use such Confidential Information in competing, directly or indirectly, with the Company. At such time as the Employee shall cease to be employed by the Company, he will immediately turn over to the Company all Confidential Information, including papers, documents, writings, electronically stored information, other property, and all copies of them, provided to or created by him during the course of his employment with the Company. This nondisclosure covenant is binding on the Employee, as well as his heirs, successors, and legal representatives, and will survive the termination of this Agreement for any reason.

## 5.    NONHIRE OF COMPANY EMPLOYEES.

To further preserve the rights of the Company pursuant to the nondisclosure covenant discussed above, and for the consideration promised by the Company under this Agreement, during the term of the Employee's employment with the Company and for a period of 90 days if terminated without cause, or for a period of twelve (12) months if terminated for any other

JAN-30-2007 18:47    KATZ HUMAN RESOURCES    212 424 6110    P.04/10

reason, the Employee will not, directly or indirectly, (i) hire any current or prospective employee of the Company, or any subsidiary or affiliate of the Company (including, without limitation, any current or prospective employee of the Company within the 6-month period preceding the Employee's last day of employment with the Company or within the 12-month period of this covenant) who worked, works, or has been offered employment by the Company; (ii) solicit or encourage any such employee to terminate their employment with the Company, or any subsidiary or affiliate of the Company; or (iii) solicit or encourage any such employee to accept employment with any business, operation, corporation, partnership, association, agency, or other person or entity with which the Employee may be associated. If, during the term of this non-hire covenant, the Employee learns that any such employee has accepted employment with any business, operation, corporation, partnership, association, agency, or other person or entity with which the Employee may be associated (other than the Company), the Employee will immediately send notice to the Company identifying the employee and certifying that the Employee did not breach any provision of this non-hire covenant.

## 6.    NON-COMPETITION.

To further preserve the rights of the Company pursuant to the nondisclosure covenant discussed above, and for the consideration promised by the Company under this Agreement, during the Employee's employment with the Company and for a period of six (6) months thereafter, regardless of the reason for termination of employment, the Employee will not, directly or indirectly, as an owner, director, principal, agent, officer, employee, partner, consultant, servant, or otherwise, carry on, operate, manage, control, or become involved in any manner with any business, operation, corporation, partnership, association, agency, or other person or entity which is in the same business as the Company, specifically a media representation firm, or enter into the employment of, perform services for, enter into any oral or written agreement for services, or give or accept an option for services, enter into the employment of, perform services for or grant or receive future rights of any kind to provide services to or from any person or entity engaged in any distribution of audio, video and/or data content, whether such distribution is in the form of analog, digital, cellular, broadband, streaming, "high definition" or otherwise, and whether such distribution is received via radio, television, cable, internet, satellite, wireless or otherwise, in any location in which the Company, or any subsidiary or affiliate of the Company, operates or has plans or has projected to operate during the Employee's employment with the Company, including any area within a 50-mile radius of any such location. The foregoing shall not prohibit the Employee from owning up to 5.0% of the outstanding stock of any publicly held company. Notwithstanding the foregoing, after the Employee's employment with the Company has terminated, upon receiving written permission by the Board, the Employee shall be permitted to engage in such competing activities that would otherwise be prohibited by this covenant if such activities are determined in the sole discretion of the Board in good faith to be immaterial to the operations of the Company, or any subsidiary or affiliate of the Company, in the location in question.

To further preserve the rights of the Company pursuant to the nondisclosure covenant discussed above, and for the consideration promised by the Company under this Agreement, during the term of the Employee's employment with the Company and for a period of twelve (12) months thereafter, regardless of the reason for termination of employment, the Employee will not, directly or indirectly, either for himself or for any other business, operation, corporation, partnership, association, agency, or other person or entity, call upon, compete for, solicit, divert, or take away, or attempt to divert or take away current or prospective customers

3

(including, without limitation, any customer with whom the Company, or any subsidiary or affiliate of the Company, (i) has an existing agreement or business relationship; (ii) has had an agreement or business relationship within the six-month period preceding the Employee's last day of employment with the Company; or (iii) has included as a prospect in its applicable pipeline) of the Company, or any subsidiary or affiliate of the Company.

The Company and the Employee agree that the restrictions contained in this noncompetition covenant are reasonable in scope and duration and are necessary to protect the Company's business interests and Confidential Information. If any provision of this noncompetition covenant as applied to any party or to any circumstance is adjudged by a court or arbitrator to be invalid or unenforceable, the same will in no way affect any other circumstance or the validity or enforceability of this Agreement. If any such provision, or any part thereof, is held to be unenforceable because of the scope, duration, or geographic area covered thereby, the parties agree that the court or arbitrator making such determination shall have the power to reduce the scope and/or duration and/or geographic area of such provision, and/or to delete specific words or phrases, and in its reduced form, such provision shall then be enforceable and shall be enforced. The parties agree and acknowledge that the breach of this noncompetition covenant will cause irreparable damage to the Company, and upon breach of any provision of this noncompetition covenant, the Company shall be entitled to injunctive relief, specific performance, or other equitable relief; provided, however, that this shall in no way limit any other remedies which the Company may have (including, without limitation, the right to seek monetary damages).

Should the Employee violate the provisions of this noncompetition covenant, then in addition to all other rights and remedies available to the Company at law or in equity, the duration of this covenant shall automatically be extended for the period of time from which the Employee began such violation until he permanently ceases such violation

7.    **TERMINATION.**

The Employee's employment with the Company may be terminated under the following circumstances:

(a)    **Death.** The Employee's employment with the Company shall terminate upon his death.

(b)    **Disability.** The Company may terminate the Employee's employment with the Company if, as a result of the Employee's incapacity due to physical or mental illness, the Employee is unable to perform his duties under this Agreement on a full-time basis for more than 90 days in any 12 month period, as determined by the Company.

(c)    **Termination By The Company.** The Company may also terminate his employment for Cause. A termination for Cause must be for one or more of the following reasons: (i) conduct by the Employee constituting a material act of willful misconduct in connection with the performance of his duties, including, without limitation, violation of the Company's policy on sexual harassment, misappropriation of funds or property of the Company or any of its affiliates other than the occasional, customary and de minimis use of Company property for personal purposes, or other willful misconduct as determined in the sole discretion of the Company; (ii) non-performance by the Employee of his duties hereunder (other than by

4

JAN-30-2007  18:49        KATZ HUMAN RESOURCES                212 424 6110    P.06/10

reason of the Employee's physical or mental illness, incapacity or disability) where such non-performance has continued for more than 10 days following written notice of such non-performance; (iii) the Employee's refusal or failure to follow lawful directives where such refusal or failure has continued for more than 30 days following written notice of such refusal or failure; (iv) a criminal or civil conviction of the Employee, a plea of nolo contendere by the Employee, or other conduct by the Employee that, as determined in the sole discretion of the Board, has resulted in, or would result in if he were retained in his position with the Company, material injury to the reputation of the Company, including, without limitation, conviction of fraud, theft, embezzlement, or a crime involving moral turpitude; (v) a breach by the Employee of any of the provisions of this Agreement; or (vi) a violation by the Employee of the Company's employment policies.

## 8.    COMPENSATION UPON TERMINATION.

(a)    **Death.**  If the Employee's employment with the Company terminates by reason of his death, the Company will, within 90 days, pay in a lump sum amount to such person as the Employee shall designate in a notice filed with the Company or, if no such person is designated, to the Employee's estate, the Employee's accrued and unpaid base salary and prorated bonus, if any, and any payments to which the Employee's spouse, beneficiaries, or estate may be entitled under any applicable employee benefit plan (according to the terms of such plans and policies).

(b)    **Disability.**  If the Employee's employment with the Company terminates by reason of his disability, the Company shall, within 90 days, pay in a lump sum amount to the Employee his accrued and unpaid base salary and prorated bonus, if any, and any payments to which he may be entitled under any applicable employee benefit plan (according to the terms of such plans and policies).

(c)    **Termination By The Company For Cause:** If the Employee's employment with the Company is terminated by the Company for Cause, the Company will, within 90 days, pay in a lump sum amount to the Employee his accrued and unpaid base salary and any payments to which he may be entitled under any applicable employee benefit plan (according to the terms of such plans and policies).

(d)    **Termination By The Company Without Cause.**  If the Employee's employment with the Company is terminated by the Company without Cause, the Company will, within 90 days, pay in a lump sum amount to the Employee his accrued and unpaid base salary and prorated bonus, if any, and any payments to which he may be entitled under any applicable employee benefit plan (according to the terms of such plans and policies).  In addition, if the Employee signs a general release of claims in a form and manner satisfactory to the Company, the Company will, within 90 days, pay to the Employee a lump sum equal to the greater of (1) six months of the Employee's annual base salary; or (2) the amount equal to Employee's salary for the remainder of the Employment Period of the Agreement.

(e)    **Effect Of Compliance With Compensation Upon Termination Provisions.** Upon complying with Subparagraphs 8(a) through 8(d) above, as applicable, the Company will have no further obligations to the Employee except as otherwise expressly provided under this Agreement, provided that such compliance will not adversely affect or alter the Employee's rights under any employee benefit plan of the Company in which the Employee has a vested

interest, unless, otherwise provided in such employee benefit plan or any agreement or other instrument attendant thereto.

## 9.    PARTIES BENEFITED; ASSIGNMENTS.

This Agreement shall be binding upon the Employee, his heirs and his personal representative or representatives, and upon the Company and its respective successors and assigns. Neither this Agreement nor any rights or obligations hereunder may be assigned by the Employee, other than by will or by the laws of descent and distribution.

## 10.    GOVERNING LAW.

This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York without giving effect to any choice of law or conflict provisions or rule (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New York and the Employee hereby expressly consents to the personal jurisdiction of the state and federal courts located in the State of New York for any lawsuit arising from or relating to this Agreement.

## 11.    DEFINITION OF COMPANY.

As used in this Agreement, the term "Company" shall include Katz Communications, Inc., Clear Channel Communications, Inc., and any of its past, present and future divisions, operating companies, subsidiaries and affiliates.

## 12.    LITIGATION AND REGULATORY COOPERATION.

During and after the Employee's employment, the Employee shall reasonably cooperate with the Company in the defense or prosecution of any claims or actions now in existence or which may be brought in the future against or on behalf of the Company which relate to events or occurrences that transpired while the Employee was employed by the Company; provided, however, that such cooperation shall not materially and adversely affect the Employee or expose the Employee to an increased probability of civil or criminal litigation. The Employee's cooperation in connection with such claims or actions shall include, but not be limited to, being available to meet with counsel to prepare for discovery or trial and to act as a witness on behalf of the Company at mutually convenient times. During and after the Employee's employment, the Employee also shall cooperate fully with the Company in connection with any investigation or review of any federal, state or local regulatory authority as any such investigation or review relates to events or occurrences that transpired while the Employee was employed by the Company. The Company will pay the Employee on an hourly basis (to be derived from his base salary) for requested litigation and regulatory cooperation that occurs after his termination of employment, and reimburse the Employee for all costs and expenses incurred in connection with his performance under this paragraph, including, but not limited to, reasonable attorneys' fees and costs.

## 13.    INDEMNIFICATION AND INSURANCE; LEGAL EXPENSES.

The Company shall indemnify the Employee to the fullest extent permitted by law, in effect at the time of the subject act or omission, and shall advance to the Employee reasonable attorneys' fees and expenses as such fees and expenses are incurred (subject to an undertaking

JAN-30-2007  18:50    KATZ HUMAN RESOURCES    212 424 6110    P.08/10

from the Employee to repay such advances if it shall be finally determined by a judicial decision which is not subject to further appeal that the Employee was not entitled to the reimbursement of such fees and expenses), and the Employee will be entitled to the protection of any insurance policies that the Company may elect to maintain generally for the benefit of its directors and officers against all costs, charges and expenses incurred or sustained by him in connection with any action, suit or proceeding to which he may be made a party by reason of his being or having been a director, officer or employee of the Company or any of its subsidiaries, or his serving or having served any other enterprise as a director, officer or employee at the request of the Company (other than any dispute, claim or controversy arising under or relating to this Agreement). The Company covenants to maintain during the Employee's employment for the benefit of the Employee (in her capacity as an officer and director of the Company) Directors and Officers Insurance providing benefits to the Employee no less favorable, taken as a whole, than the benefits provided to the other similarly situated employees of the Company by the Directors and Officers Insurance maintained by the Company on the date hereof; provided, however, that the Board may elect to terminate Directors and Officers Insurance for all officers and directors, including the Employee, if the Board determines in good faith that such insurance is not available or is available only at unreasonable expense.

## 14.    ARBITRATION.

The parties agree that any dispute, controversy or claim, whether based on contract, tort, statute, discrimination, retaliation, or otherwise, relating to, arising from or connected in any manner to this Agreement, or to the alleged breach of this Agreement, or arising out of or relating to Employee's employment or termination of employment, shall, upon timely written request of either party be submitted to and resolved by binding arbitration. The arbitration shall be conducted in New York, New York. The arbitration shall proceed in accordance with the National Rules for Resolution of Employment Disputes of the American Arbitration Association ("AAA") in effect at the time the claim or dispute arose, unless other rules are agreed upon by the parties. Unless otherwise agreed to by the parties in writing, the arbitration shall be conducted by one arbitrator who is a member of the AAA and who is selected pursuant to the methods set out in the National Rules for Resolution of Employment Disputes of the AAA. Any claims received after the applicable/relevant statute of limitations period has passed shall be deemed null and void. The award of the arbitrator shall be a reasoned award with findings of fact and conclusions of law. Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement, to enforce an arbitration award, and to vacate an arbitration award. However, in actions seeking to vacate an award, the standard of review to be applied by said court to the arbitrator's findings of fact and conclusions of law will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury. The Company will pay the actual costs of arbitration excluding attorney's fees. Each party will pay its own attorneys fees and other costs incurred by their respective attorneys.

## 15.    REPRESENTATIONS AND WARRANTIES OF THE EMPLOYEE.

The Employee represents and warrants to the Company that he is under no contractual or other restriction which is inconsistent with the execution of this Agreement, the performance of his duties hereunder or the other rights of Company hereunder. The Employee also represents and warrants to the Company that he is under no physical or mental disability that would hinder the performance of his duties under this Agreement. The Employee represents and warrants to the Company that all terms and conditions of this Agreement shall be kept strictly confidential.



7

JAN-30-2007  18:51          KATZ HUMAN RESOURCES          212 424 6110    P.09/10

**16.    MISCELLANEOUS.**

This Agreement contains the entire agreement of the parties relating to the subject matter hereof.  This Agreement supersedes any prior written or oral agreements or understandings between the parties relating to the subject matter hereof.  No modification or amendment of this Agreement shall be valid unless in writing and signed by or on behalf of the parties hereto.  The failure of a party to require performance of any provision of this Agreement shall in no manner affect the right of such party at a later time to enforce any provision of this Agreement.  A waiver of the breach of any term or condition of this Agreement shall not be deemed to constitute a waiver of any subsequent breach of the same or any other term or condition.  This Agreement is intended to be performed in accordance with, and only to the extent permitted by, all applicable laws, ordinances, rules and regulations.  If any provision of this Agreement, or the application thereof to any person or circumstance, shall, for any reason and to any extent, be held invalid or unenforceable, such invalidity and unenforceability shall not affect the remaining provisions hereof or the application of such provisions to other persons or circumstances, all of which shall be enforced to the greatest extent permitted by law.  The headings in this Agreement are inserted for convenience of reference only and shall not be a part of or control or affect the meaning of any provision hereof.

**17. KEYMAN TERMINATION OPTION**

In the event Laura Hagan ("Hagan") is no longer employed at Katz, Employee may elect to terminate this Employment Agreement by providing notice to the Company within 90 days from the date Hagan's employment is terminated. If Employee makes such election and provides timely notice this Employment Agreement will terminate and the provisions of Paragraph 6 of this Agreement restricting the Employee from competing with the Company will be waived. Notwithstanding the foregoing, Employee will still be bound by the provisions of Paragraph 6 of this Agreement related to disclosure of Confidential Information.

IN WITNESS WHEREOF, the parties have duly executed and delivered this Agreement as of the date first written above.

DATE: 5-14-05

RALPH HERRERA

KATZ COMMUNICATIONS, INC.

DATE: 4-28-05

By: _____

STU OLDS
CHIEF EXECUTIVE OFFICER

8

JAN-30-2007  18:52          KATZ HUMAN RESOURCES          212 424 6110    P.10/10

**Trade**

Employees may not utilize the service of a supplier, contractor, subcontractor, vendor, customer, client for personal gain or other purposes not related to Clear Channel's business.

**Gifts**

Employees may not directly or indirectly accept payments, kickbacks, services, loans, or other monetary or non-monetary considerations (including favors, trips, entertainment, or gifts) of $50.00 or more from a supplier, contractor, subcontractor, vendor, customer, client, or other entity with which Clear Channel either does business or seeks to do business. Discounts, reimbursements, commissions, rebates, and gratuities related to company business are the sole property of Clear Channel. Any exception to this policy must be approved by the head of your Division.

## Outside Employment

Employees may hold outside jobs so long as they meet the performance and attendance standards of their jobs at Clear Channel. Outside employment that is a conflict of interest (working for a competing outdoor advertising company or broadcaster, for example), or is related in any way to the broadcasting or outdoor advertising industry, is prohibited. Employees may not receive any income or other material gain from individuals outside the organization for materials produced or services rendered while performing their jobs for Clear Channel. Never accept full or temporary employment with any organization that is a competitor of Clear Channel.

## Nepotism

No employee may directly or indirectly supervise, or be supervised by a member of his or her immediate family. For purposes of this policy, "immediate family" is defined as spouse, children, siblings, parents, grandparents, grandchildren, sons-in-law, stepparents, stepchildren, legal guardians, parents-in-law, brothers-in-law, sisters-in-law, and grandparents-in-law. Any exception to this policy must be approved by the head of your Division. The only exception not requiring approval is for employees who were employed by prior employers acquired by Clear Channel. In the event that marriage of employees places them in violation of this policy, they will be given the opportunity to decide between themselves which of them is to request a transfer or resign. Clear Channel will consider such a transfer request, but cannot guarantee placement somewhere else. If the employees don't make this decision within sixty (60) calendar days, one of the employees will be transferred or discharged.

## Personal Relationships

Romantic or sexual relationships between a supervisor and an employee who reports to him or her are strongly discouraged.

- Clear Channel does not want to interfere unnecessarily with your activities away from the workplace. However, these kind of relationships can jeopardize the

22

# EXHIBIT E



Representing Management Exclusively in Workplace Law and Related Litigation

| | | | |
|---|---|---|---|
| **Jackson Lewis LLP** | ATLANTA, GA | LONG ISLAND, NY | PROVIDENCE, RI |
| | BIRMINGHAM, AL | LOS ANGELES, CA | RALEIGH-DURHAM, NC |
| **59 Maiden Lane** | BOSTON, MA | MIAMI, FL | RICHMOND, VA |
| | CHICAGO, IL | MINNEAPOLIS, MN | SACRAMENTO, CA |
| **New York, New York 10038** | CLEVELAND, OH | MORRISTOWN, NJ | SAN FRANCISCO, CA |
| | DALLAS, TX | NEW YORK, NY | SEATTLE, WA |
| **Tel 212 545-4000** | DENVER, CO | ORANGE COUNTY, CA | STAMFORD, CT |
| | GREENVILLE, SC | ORLANDO, FL | WASHINGTON, DC REGION |
| **Fax 212 972-3213** | HARTFORD, CT | PITTSBURGH, PA | WHITE PLAINS, NY |
| **www.jacksonlewis.com** | HOUSTON, TX | PORTLAND, OR | |

WRITER'S DIRECT DIAL: (212) 545-4028
EMAIL: WINDHOLD@JACKSONLEWIS.COM

November 8, 2007

**VIA FACSIMILE AND REGULAR MAIL**

David Gottlieb, Esq.
Mark L. Lubelsky & Associates
123 West 18th Street, Eighth Floor
New York, New York 10011

> Re:  **Ralph Herrera v. Katz Communications, Inc.,**
>        **Civil Action Case No.: 07cv8426**

Dear Mr. Gottlieb:

We represent Katz Communications, Inc. in the above-referenced matter. We are writing to reiterate our request that Plaintiff withdraw his Complaint and pursue his claims against Defendant in arbitration in accordance with the parties' Arbitration Agreement dated July 11, 2001, a copy of which is enclosed.

Plaintiff alleges in his Complaint that the arbitration clause in his employment contract is "null and void as the clause does not merely indicate arbitration as the choice of form, but deprives Plaintiff of substantive rights and remedies available under law." (Complaint, Para. 55). During our telephone conversation on October 23, I asked you to identify the substantive rights and remedies which Plaintiff allegedly was deprived of under the arbitration clause. In a telephone conversation later that day, you advised me that the arbitration clause does not allow for recovery of attorney fees. Although I asked you to specify where in the clause it prohibits recovery of attorneys fees you refused to do so.

In an attempt to resolve this matter without motion practice, on October 30, 2007, I again contacted you. I advised you that Plaintiff had signed an arbitration agreement when he commenced employment with Defendant which unequivocally allowed for an arbitrator to award attorneys fees. I offered to forward to you the arbitration agreement signed by Plaintiff.



Although you indicated that it would not alter Plaintiff's position regarding the appropriateness of arbitration in this matter, I promptly faxed to your office a copy of Plaintiff's signed arbitration agreement.

As you can see from the arbitration agreement, and contrary to Plaintiff's allegation in the Complaint, the Arbitration Agreement provides Plaintiff with all substantive rights to which he would otherwise be entitled by law, including attorneys' fees. The arbitration agreement states: "Each party shall bear his or her own attorney's fees and other costs not associated with the administration of the arbitration by the AAA. However, if a party is entitled to attorney's fees under any federal, state or local statute or law, the arbitrator may award those fees pursuant to the governing law, at his or her discretion."

It is well settled that an arbitration agreement is not rendered unconscionable and hence unenforceable simply because it requires each party to pay their own attorneys' fees. Stern v. Espeed, Inc., 2006 U.S. Dist. LEXIS 68655, at *9-10 (S.D.N.Y.). Indeed, an arbitration agreement that requires each party to pay its own fees is valid and binding when it simultaneously provides that attorneys' fees may be awarded if otherwise required by law. Id.

In Stern, the court upheld an arbitration agreement requiring each party to pay its own attorneys' fees because it included the vital phrase "unless otherwise required by law." Id. The court held that "the parties included the critical language [...] in order to ensure the enforceability of the agreement." See also, Carter v. Countrywide Credit Industries, Inc., 362 F.3d 294, 299 (3d Cir. 2004) (failure of arbitration agreement to explicitly mandate the grant of attorneys' fees not fatal given that agreement states arbitration "shall be adjudicated in accordance with state or federal law).

In the instant case, as in Stern, the arbitration agreement does not prohibit the grant of attorneys' fees where such fees are otherwise available by law. The Agreement specifically provides that each party must pay its own attorneys' fees unless "a party is entitled to attorneys' fees under any federal, state or local statute or law" and allows for the arbitrator to award attorneys' "fees pursuant to the governing law." Therefore, the Agreement is not substantively unconscionable and Plaintiff may not claim that he is deprived of his right to recover attorneys' fees.

Moreover, even if the court were to find the attorneys' fees provision unconscionable, the provision may be severed from the arbitration agreement and the remainder of the agreement enforced. Beletsis v. Credit Suisse First Boston, 2002 U.S. Dist. LEXIS 16586, at *15-18 (S.D.N.Y.).



David Gottlieb, Esq.
Mark L. Lubelsky & Associates
November 8, 2007
Page 3

Based in the foregoing, Defendant reiterates its request that Plaintiff dismiss his Complaint and pursue his claims in Arbitration.  If Plaintiff persists in his refusal to do so, Defendant will move the court to compel arbitration and seek costs and sanctions in connection with the filing of such a motion.

We hope that this will be unnecessary.

Very truly yours,

Diane Windholz

cc:     Liane Chinwalla, Esq.

# ARBITRATION AGREEMENT

If you and the Company have a legal dispute (i.e., a dispute that could otherwise be brought in court) and we can't resolve it through our Open Door Policy, then we will use arbitration. Private arbitration is a more efficient, less expensive, and usually faster way to resolve disputes than through a traditional lawsuit in state or federal court. Accordingly, we require that new, non-union employees sign an agreement promising that all covered claims as defined in this Agreement, will be submitted to final and binding determination by an impartial arbitrator under the Employment Dispute Resolution Rules of the American Arbitration Association. The Arbitration Agreement becomes effective immediately upon hire or six weeks following the date of close if employee gains Clear Channel/Eller employment by means of a Company acquisition.

Employees are still protected by all applicable employment laws, and are merely agreeing to have certain employment-related claims decided by a private arbitrator rather than by a judge or jury. *Employees are not giving up any substantive rights to recover damages.* All non-union employees are deemed to have agreed to this Arbitration Agreement by accepting or continuing employment with this Company (including raises, promotions, bonuses, etc.).

Arbitration is the procedure used for the resolution of certain covered claims that may arise between the Company and employees. In the interest of a prompt and fair resolution of these claims, each employee is required to enter into this Agreement in exchange for employment with the Company and the Company's agreement to resolve these claims in the same manner.

Many of the disputes or claims that might possibly arise between the Company and an employee could be made the subject of a formal charge or complaint before a state or federal agency and/or the subject of a lawsuit in a state or federal court. In most such cases, either party (the Company or employee) could ultimately have the case tried before a jury upon request.

By this Arbitration Agreement, however, employees give up their right to sue the Company, and the Company is giving up its right to sue employees in court, as well as the right to trial by jury. Instead, the Company and employees hereby agree that any covered legal claim that either may have against or with the other will be submitted solely to a private, impartial arbitrator (a "private judge," so to speak) for a final and binding decision.

## Scope of the Arbitration Agreement

As a condition of employment with the Company, each employee hereby *waives his/her right to sue* the Company, and the Company hereby waives its right to sue the employee, for any claim or cause of action covered by this Agreement. In lieu of suing, any such legal dispute may instead be submitted for final and binding resolution by a private, impartial arbitrator. The arbitration shall be governed by the Employment

1

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

Dispute Resolution Rules of the American Arbitration Association. A copy of these rules is available for each employee to review.

*Nothing in this Agreement is intended to prohibit the Employee from filing a claim or communicating with any governmental agency including the Equal Employment Opportunity Commission or the Department of Labor.*

**Covered Claims:**

This Agreement covers the following potential claims:

1. Any dispute regarding the arbitrability of any such claim;

2. Any dispute regarding this Agreement, including but not limited to its enforceability, scope or terms;

3. Any claim that could be asserted by Employee or Company in any state or federal civil court or before an administrative agency, including without limitation, claims for breach of any contract or covenant, express or implied; assault, battery, invasion of privacy, defamation of character, infliction of emotional distress, tortious interference with contract, or other tort claims, including any claim that an employee was injured or damaged because of the negligence of the Company or any of its employees; and claims for unlawful discharge and/or for violation of any federal, state or local law, statute, ordinance or regulation, or common law;

4. Any claim for discrimination, including but not limited to discrimination because of sex, pregnancy, race, national or ethnic origin, age, religion, creed, marital status, sexual harassment, sexual orientation, mental or physical disability or medical condition or other characteristics protected by statute;

5. Any claim of retaliation or discrimination against the Company for opposing the violation of any federal, state or local statute or ordinance, including but not limited to the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, state workers' compensation law or any "whistleblower" law; and

6. Any claim for commissions, wages, bonuses or any other form of compensation.

**Claims Not Covered:**

This Agreement does not cover:

1. Claims for workers' compensation benefits.

2. Claims for unemployment compensation benefits.

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

2

3. Claims for benefits based upon the Company's employee welfare benefit plans, if the plan contains a final and binding appeal procedure for the resolution of disputes under the plan.

4. Claims for injunctive and/or other equitable relief, including but not limited to claims to enforce a covenant not to compete or for unfair competition or use or unauthorized disclosure of trade secrets or confidential information as contained in express written agreements.

5. Wage and hour disputes within the jurisdiction of any state Labor Commissioner.

6. Any claims not specifically listed as a "Covered Claim".

## Rules Governing the Arbitration

### 1.    Demand for Arbitration

Any party to an Arbitration Agreement may initiate arbitration by serving upon the other party, by certified mail, a written notice containing a specific request to enter into arbitration. The written request shall identify and describe the nature of each claim asserted, the facts upon which each claim is based, and the relief or remedy sought. Written notice to the Employee will be sent to the most recent address contained in the Employee's personnel file. Written notice to the Company shall be sent to:

Clear Channel
General Counsel
200 East Basse
San Antonio, Texas 79209

Promptly after sending or receiving a written request to arbitrate a Covered Claim, the Company shall notify the American Arbitration Association ("AAA") that a demand for arbitration has been made and shall request that the AAA provide the parties with a list of arbitrators, as specified below. If, on the date that an arbitration demand is postmarked, any claim made in the demand would be barred by the applicable statute of limitations, that claim shall be deemed barred for purposes of arbitration.

An arbitration is also initiated by the receipt by AAA of an order from a court compelling arbitration. For purposes of the statute of limitations, the arbitration is deemed initiated on the date that the order compelling arbitration is issued by the court, or as otherwise ordered by the court.

### 2.    Selecting an Arbitrator

The arbitration will be held under the auspices of AAA in or near the city in which the Employee or former Employee, who is party to the arbitration, is or was last employed by the Company. The parties may, however, agree on an alternative location

3

If the AAA does not have an available office with a hearing room in or near such city, the arbitration shall be conducted in a meeting room in a hotel in such city.

Except as otherwise provided in this Agreement, the arbitration shall be in accordance with the AAA's Employment Dispute Resolution Rules that are in effect at the time that the demand for arbitration is made. The arbitrator shall be either a retired judge or an experienced attorney licensed to practice law in the state in which the arbitration is to be convened.

Promptly upon receipt of notice from the Company that arbitration has been initiated, AAA will provide each party with an identical list of eleven (11) arbitrators from its panel of employment dispute arbitrators. (For purposes of arbitrator selection, all defendants, whether or not separately represented, shall be deemed one party). Within ten (10) calendar days from the postmark date on the AAA list, the parties or their representatives will meet or participate in a telephone conference to select an arbitrator. At such time, the parties shall alternately strike the name of an arbitrator on the list (the party initiating arbitration shall strike first) until only one name remains. This remaining name shall be the arbitrator. If a party refuses to timely participate in such a meeting or telephone conference, the other party may select an arbitrator from the list provided by AAA. If the arbitrator designated by this process declines or is unable to serve, the selection process shall be repeated with a new list of eleven (11) arbitrators from AAA.

3.    **Hearing Date**

The arbitrator will promptly set a hearing date and time and will mail written notice to each of the parties at least sixty (60) days in advance of the hearing unless the parties otherwise agree or mutually waive notice.

4.    **Depositions and Other Discovery**

Each party at their own expense shall have the right to take up to three (3) depositions unless the arbitrator, on a showing of good cause, approves additional depositions. Each party also shall have the right to require the production of relevant documents from the other party. Unresolved discovery disputes will be presented to the arbitrator for final resolution. All discovery shall be concluded within 45 days from the date the arbitrator is informed of his or her selection.

5.    **Witnesses and Exhibits**

No later than fifteen (15) days before the arbitration, the parties will exchange lists of witnesses, including any experts, and copies of all exhibits intended to be used at the arbitration. Each party shall have the right to subpoena witnesses and documents for the arbitration as well as documents relevant to the case from third parties.

4

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

### 6.    Pre-Hearing Procedures

The arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person, as the arbitrator deems necessary. The arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure.

### 7.    Briefs

Either party, upon request at the close of the hearing, shall be given leave to file a post-hearing brief. The time for filing such a brief shall be set by the arbitrator.

### 8.    Filing Fee

The Company will pay for the AAA filing fee and expenses of the arbitrator and AAA for administering the arbitration, except as expressly provided herein.  The employee shall be responsible for their own attorney's fees, costs, and expenses, such as those incurred in discovery.

### 9.    The Arbitration Hearing

#### A.    Conduct of the Hearing

The arbitrator shall preside at the hearing and rule on the admission and exclusion of evidence and questions of procedure, and exercise other such powers as conferred by statute. Judicial rules relating to the order of proof, the conduct of the hearing and the presentation of admissibility of evidence will not be applicable. The arbitrator shall admit any relevant evidence if it is of the sort that reasonable persons are accustomed to relying upon in the conduct of serious affairs, regardless of the admissibility of such evidence in a court of law.

#### B.    The Law the Arbitrator will Apply

The arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the state law claim arose, or federal law of the circuit in which the federal law claim arose, or both, as applicable to the claim(s) asserted. The arbitrator is without jurisdiction to apply any different substantive law or law of remedies. The arbitrator may not disregard or alter the Company's rules or policies unless the arbitrator determines that a rule or policy violated existing law at the time of the alleged violation. The arbitration shall be final and binding upon the parties, except as provided in this Agreement.

Each party shall bear his or her own attorneys' fees and other costs no associated with the administration of the arbitration by the AAA. However, if a party is entitled to attorneys' fees under any federal, state or local statute or law, the arbitrato may award those fees pursuant to the governing law, at his or her discretion.

5

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

C.    Failure to Appear for Hearing

Should any party refuse or neglect to appear for, or participate in, the arbitration hearing, the arbitrator shall have the authority to decide the dispute based upon whatever evidence is presented.

D.    Transcription of Hearing

Either party, at their expense, may arrange for and pay the cost of a court reporter to provide a stenographic record of proceedings.

E.    Payment of Attorney and Witness Expenses

The parties shall pay its own attorneys' fees, witness fees, discovery costs and other expenses incurred for their own benefit, unless otherwise provided by contract or statute.

10.    The Arbitration Award

The arbitrator shall render an award and opinion which is signed and dated and which decides all issues submitted as well as the legal principles supporting each part of the award. Unless the parties and arbitrator agree otherwise, the arbitrator's award shall issue no later than thirty (30) days from the date the arbitration hearing concludes or the post-hearing briefs (if requested) are received, whichever is later. The arbitrator may grant any remedy or relief, legal or equitable, that would have been available had the claim been asserted in court. The award shall include a brief statement of the factual and legal bases for the ruling.

A.    Reconsideration

Either party shall have the right, within twenty (20) days of issuance of the arbitrator's opinion, to file with the arbitrator a motion to reconsider (accompanied by a supporting brief), and the other party shall have twenty (20) days from the date of the motion to respond. The arbitrator thereupon shall reconsider the issues raised by the motion and, promptly, either confirm or change the decision, which (except as provided by this Agreement) shall then be final and conclusive upon the parties. Each party shall bear his or her own costs and attorneys' fees relating to such a motion for reconsideration and written opinion of the arbitrator, unless the arbitrator orders otherwise.

B.    Enforcement

Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement. Either party may bring an action to enforce an arbitration award. A party opposing enforcement of an award may also bring an action or counteraction if there are enforcement proceedings pending in any court of

6

competent jurisdiction to set aside the award. In such proceedings, the standard of review will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury.

## Other Provisions

### Exclusive Forum

The Employee understands that this Agreement waives his or her right to a jury trial and waives the right to seek remedies in court.

### Construction of Agreement

Should any provision of this Agreement be found to be unenforceable, such portion will be severed from the Agreement and the remaining portions shall remain in full force and effect.

### Sole and Entire Agreement

This is the complete agreement of the parties on the subject of arbitration of disputes (except for any arbitration agreement in connection with any pension or benefit plan). This Agreement supersedes any prior or contemporaneous oral or written understandings on the subject. No party is relying on any representations, oral or written, on the subject of the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement.

### Voluntary Agreement

The employee's signature on the Arbitration Agreement certifies that the employee has carefully read this agreement and understands its terms. The employee acknowledges that all understandings and agreements between the Company and employee relating to the subjects covered in this agreement are contained in it, and that the employee has entered into this agreement voluntarily and not in reliance on any promises or representations by the Company other than those contained in this agreement itself.

## SIGNATURE AND ACKNOWLEDGEMENT:

The employee further acknowledges that the employee has been given the opportunity to discuss this agreement with the employee's private attorney.

_(signature)_                                         3-22-04

Employee Signature                                    Date

RALPH E. HERRERA

7

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

Printed Name                                              Division and Location

8

# EXHIBIT F

# MARK L. LUBELSKY AND ASSOCIATES
ATTORNEYS AT LAW

123 WEST 18ᵗʰ STREET, 8ᵗʰ FLOOR
NEW YORK, NEW YORK 10011
TELEPHONE: (212) 242-7480
FACSIMILE: (646) 619-4631

November 12, 2007

**VIA FACSIMILE AND FIRST CLASS MAIL**

Ms. Diane Winholdz, Esq.
Jackson Lewis
59 Maiden Lane, 39th Floor
New York, NY 10038

Re:    Herrera, Ralph v. Katz Communications

Dear Ms. Winholdz:

We are in receipt of your letter dated November 8, 2007. In that letter, defense counsel threatened to "seek costs and sanctions in connection with the filing of" a motion to compel arbitration if Plaintiff does not "dismiss the complaint." Plaintiff's counsel zealously represents all its clients, and will not grant advantages to defense counsel in response to such threats. Such actions do not constitute good faith, courteous, professional conduct.

The basis for defense counsel's position that the present matter ought to be resolved via arbitration is an arbitration agreement allegedly signed by plaintiff. Defense counsel alleged that plaintiff signed an arbitration agreement that allegedly provides the arbitrator with discretion to award attorneys fees where such a remedy is applicable under governing law. Plaintiff's counsel agrees that an arbitration agreement that specifically, explicitly and unequivocally provides an arbitrator with the discretion to award attorneys fees where such remedy is available under the governing law does not deny a plaintiff the substantive right to attorneys fees.

However, the arbitration agreement provided by defense counsel is not a contract or agreement between plaintiff and defendant. The arbitration agreement is allegedly signed by plaintiff, but is not signed by any counter-party, defendant or otherwise. Similarly, the full text and substance of the provided arbitration agreement does not indicate that the sole defendant Katz Communications, plaintiff's former employer, is the counter-party to the arbitration agreement. To the extent that defense counsel believes the arbitration agreement is a contract between plaintiff and ClearChannel/Eller, plaintiff's complaint has not named ClearChannel/Eller as a defendant. ClearChannel/Eller and Katz Communications are separate and distinct legal entities. Katz Communications, not ClearChannel/Eller, employed plaintiff at all material times set forth in the complaint.

Defense counsel failed to attach to its correspondence the employment contract between plaintiff and defendant that contained an explicit arbitration provision that limits plaintiff's substantive rights at arbitration, including forfeiture of entitlement to attorneys' fees. The arbitration provision explicitly states, "The Company will pay the actual costs of arbitration excluding attorney's fees. Each party will

- 2 -

pay its own attorneys fees and other costs incurred by their respective attorneys." The arbitration provision does not include any exception or limiting language that allows an arbitrator to award attorneys' fees where rights to attorneys' fees are an available substantive right under law. An arbitration provision that that forfeits a plaintiff's substantive rights such as entitlement to attorneys' fees shall render such an arbitration provision unenforceable. See, Stern v. Espeed, Inc., 2006 WL 2741635 at 3-4 (S.D.N.Y. 2006).

In light of the forgoing our office believes that the provided arbitration agreement is not a valid, binding contract between plaintiff and defendant and the arbitration provision of the employment contract between plaintiff and defendant is invalid as it is not merely a forum selection, but denies plaintiff substantive legal rights. Plaintiff will oppose a motion to compel arbitration on the basis set forth in defense counsel's correspondence.

We expect that defense counsel will not waste the time and resources of all parties and the court on a frivolous request for costs and sanctions. Any such request may result in counter-claims.

Very truly yours,

MARK L. LUBELSKY AND ASSOCIATES

Mark L. Lubelsky
MLL: dg

# EXHIBIT G

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1

Not Reported in F.Supp.2d, 2002 WL 1933780 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Fidelity and Guar. Ins. Co. v. West Point Realty,
Inc.
S.D.N.Y.,2002.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
FIDELITY AND GUARANTY INSURANCE
COMPANY, Plaintiff,
v.
WEST POINT REALTY, INC., Defendant.
**No. 02 Civ.1951 LMM.**

Aug. 21, 2002.

Surety brought action seeking to stay arbitration
proceeding commenced by property owner arising
out agreements to construct hotel on owner's
property. The District Court, McKenna, J., held
that: (1) evidence of negotiations leading up to
agreement to complete construction was barred by
parol evidence rule, and (2) arbitration clause in
agreement to complete construction project was
enforceable under Federal Arbitration Act (FAA)
on surety, despite fact that surety was not signatory
to original contract.

Denied.
West Headnotes
**[1] Evidence 157 ⚬⚬450(7)**

157 Evidence
    157XI Parol or Extrinsic Evidence Affecting
Writings
        157XI(D) Construction or Application of
Language of Written Instrument
            157k449 Nature of Ambiguity or
Uncertainty in Instrument
                157k450 In General
                    157k450(7) k. Contracts for
Buildings and Other Works. Most Cited Cases
Agreement to complete construction project was not
ambiguous as to whether arbitration clause applied
to disputes arising from agreement, and, thus,
evidence of negotiations leading up to agreement

was extrinsic evidence barred by parol evidence
rule, where although agreement did not specifically
address arbitration, incorporation by reference
clause extended arbitration clause in original
contract to disputes arising from agreement.

**[2] T ⚬⚬141**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(B) Agreements to Arbitrate
            25Tk141 k. Persons Affected or Bound.
Most Cited Cases
    (Formerly 33k7.3 Arbitration)
Arbitration clause in agreement to complete
construction project was enforceable under Federal
Arbitration Act (FAA) on surety for contractor
which was not signatory of original construction
contract; although agreement to complete did not
specifically address arbitration, incorporation by
reference clause extended broad arbitration clause
in original contract to disputes arising from
agreement. 9 U.S.C.A. §1 et seq.

**[3] T ⚬⚬141**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(B) Agreements to Arbitrate
            25Tk141 k. Persons Affected or Bound.
Most Cited Cases
    (Formerly 33k7.3 Arbitration)
Arbitration clause covering all claims or disputes
between property owner and contractor arising from
construction of property was broad enough to
encompass surety for contractor who was party to
later agreement to complete construction project for
purposes of enforcement of arbitration clause under
Federal Arbitration Act (FAA), despite fact that
surety was not signatory of original contract, where
agreement to complete construction project
expressly substituted surety in place of contractor
with respect to original agreement. 9 U.S.C.A. §1
et seq.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                           Page 2

Not Reported in F.Supp.2d, 2002 WL 1933780 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

*MEMORANDUM AND ORDER*
MCKENNA, J.

*1 Fidelity & Guaranty Insurance Company ("Fidelity"), brings this motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking to permanently stay the arbitration proceeding commenced by defendant West Point Realty, Inc. ("West Point"). West Point cross-moves for summary judgment arguing that the terms of the parties' agreements mandate that the parties submit to arbitration. For the reasons stated below, plaintiff's motion is denied and defendant's is granted.

FACTS

West Point, the owner of property in New Hempstead, New York (Patel Aff. ¶ 2) entered into a contract (the "Original Contract") with Marquis-Stevens, Inc. ("Marquis"), a contractor, to construct a Holiday Inn Express Hotel on West Point's property (the "Project"). (Pl.'s Mem. of Law at 2; Patel Aff. ¶ 2; Smith Affirm. Ex. A.) According to plaintiff, the Original Contract was entered into on December 30, 1999 and amended on January 24, 2000 (Pl.'s Mem. of Law at 2). According to defendant, the January 24, 2000 contract was the only signed contract. (Patel Aff. ¶ 4.) However, both parties agree that the final version of the Original Contract included a broad arbitration clause which read:

All claims or disputes between the Contractor and the Owner arising out of or relating to the Contract, or the breach thereof, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise ...

(Smith Affirm. Ex. A, § 10.8.)

As security for the faithful performance of its contractual obligations, Marquis furnished a performance bond (the "Performance Bond") on January 18, 2000, written by Fidelity. (Patel Aff. ¶ 6; Smith Affirm. ¶ 6 & Ex. B.) On October 26, 2000, West Point terminated the Original Contract by issuing a notice declaring Marquis in default

(Patel Aff. ¶ 8; Smith Affirm. ¶ 7 & Ex. C) and Fidelity and West Point entered into negotiations concerning the terms under which Fidelity would complete the Project. (Smith Affirm. ¶ 10.) After negotiations, on March 16, 2001, Fidelity and West Point entered into a Takeover Agreement (the "Takeover Agreement"). (Patel Aff. ¶¶ 9-10; Smith Affirm. Ex. D.)

On July 17, 2001, West Point terminated Fidelity's performance based on West Point's determination that Fidelity was not properly performing its obligations. (Patel Aff. ¶ 11; Smith Affirm. Ex. F.) According to defendant, West Point's need to terminate both Marquis and Fidelity from the Project resulted in a one year delay in opening the hotel on the property and damaged West Point. (Patel Aff. ¶ 12.)

West Point initiated an arbitration proceeding against both Marquis and Fidelity with the American Arbitration Association ("AAA") on February 14, 2002. (Patel Aff. ¶ 12 & Ex. B.) Fidelity wrote to the AAA on March 2, 2002, requesting that the arbitration be deferred until Fidelity could obtain a judicial determination of its obligation to arbitrate (Patel Aff. ¶ 13 & Ex. C), and filed the present lawsuit on March 8, 2002. (Patel Aff. ¶ 14.)

LEGAL STANDARD

*2 Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)."If reasonable minds could differ as to the import of the evidence," summary judgment is inappropriate. *Id.* at 250.For a dispute to be genuine requires more

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 3

Not Reported in F.Supp.2d, 2002 WL 1933780 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

than "metaphysical doubt." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)."If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."*Anderson,* 477 U.S. at 249-50 (citations omitted). The burden on the moving party may be discharged by "showing that there is an absence of evidence to support the nonmoving party's case."*Celotex,* 477 U.S. at 325.

### DISCUSSION

#### I.

[1] According to Fidelity, during the negotiations which culminated in the Takeover Agreement, both sides agreed that the agreement would not include an arbitration clause. (Pl.'s Mem. of Law at 3-4; Smith Affirm. ¶ 11.) West Point's counsel sent Fidelity's counsel a letter on January 22, 2001 (Smith Affirm. Ex. H), and Fidelity asserts that in this letter the parties eliminated the arbitration clause from the Takeover Agreement. (Smith Affirm. ¶¶ 19, 20.)

According to West Point, on January 22, 2001, Fidelity sent West Point a draft of the proposed Takeover Agreement which inserted a provision calling for an immediate accelerated arbitration of claims arising out of the contract. (Gaba Affirm. ¶ 19.) Stephen J. Gaba ("Gaba"), West Point's attorney, objected to this clause (id.¶ 20) and the parties removed the immediate arbitration provision. (Def.'s Mem. in Supp. of Cross-Mot. for S.J. at 3.) According to defendant, neither party intended to eliminate the arbitration provision in the Original Contract from the Takeover Agreement. (Gaba Affirm. ¶ 22.)

The Court need not address the parties' differing interpretations of the January 22 letter because this extrinsic evidence is barred by the parol evidence rule.[FN1]"[T]he parol evidence rule bars the consideration of extrinsic evidence of the meaning of a complete written agreement if the terms of the agreement, considered in isolation, are clear and unambiguous."*Wayland Inv. Fund, LLC v.*

*Millenium Seacarriers, Inc.,* 111 F.Supp.2d 450, 454 (S.D.N.Y.2000)."Whether or not a writing is ambiguous is a question of law to be resolved by the courts."*Id.* at 455 (citing *W.W.W. Assocs., Inc. v. Giancontieri,* 77 N.Y.2d 157, 565 N.Y.S.2d 440, 443, 566 N.E.2d 639 (1990)). A contract is ambiguous if its terms could suggest "more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."*Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 906 (2d Cir.1997).

> FN1. Extrinsic evidence includes negotiations leading up to an agreement. *United States Fire Ins. Co. v. General Reinsurance Corp. .,* 949 F.2d 569, 571 (2d Cir.1991).

*3 The language in the Takeover Agreement is not capable of more than a single meaning. While the Takeover Agreement does not specifically address arbitration, the incorporation by reference clause extends the arbitration clause in the Original Contract to disputes between West Point and Fidelity as discussed below. Therefore, the Takeover Agreement cannot be viewed as silent with respect to this issue. Since this Court holds in section II, *supra,* that Fidelity, although a non-signatory, is bound by the arbitration clause in the Original Contract, any possible ambiguity is eliminated. Therefore, evidence of the negotiations leading up to the Takeover Agreement is excluded from the Court's consideration of the applicability of the arbitration clause.

#### II.

[2][3] Because the Project involved interstate commerce, this case is governed by the Federal Arbitration Act ("FAA"),[FN2]9 U.S.C. § 1*et seq.,* which creates a body of federal substantive law of arbitrability.*PaineWebber Inc. v. Bybyk,* 81 F.3d 1193, 1198 (2d Cir.1996). When a district court considers a motion to compel arbitration under the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 4

Not Reported in F.Supp.2d, 2002 WL 1933780 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

FAA, the court must consider: "(1) whether there exists a valid agreement to arbitrate at all under the contract in question ... and if so, (2) whether the particular disputes sought to be arbitrated falls within the scope of the arbitration agreement." *Hartford Accident and Indem. Co. v. Swiss Reinsurance Am. Corp.,* 246 F.3d 219, 226 (2d Cir.2001) (quotation and internal citation omitted).

> FN2. The FAA provides that written agreements to arbitrate disputes in a contract involving commerce, "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1994).

Federal policy strongly favors arbitration, *id.,* and when the existence of an arbitration agreement is undisputed, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

The parties disagree on whether there is a valid agreement to arbitrate. According to West Point, the Original Contract, which contained an arbitration clause, was incorporated by reference into both the Performance Bond and the Takeover Agreement and therefore plaintiff is bound to arbitrate. (Def.'s Mem. in Supp. of Cross-Motion at 6.) Plaintiff argues that as a nonsignatory to the Original Contract, plaintiff is not bound by its arbitration provision. (Pl.'s Mem. of Law at 11.)

The Performance Bond stated in Article 1 that:
The Contractor [Marquis] and the Surety [Fidelity], jointly and severally, bind themselves ... to the Owner [West Point] for the performance of the Construction Contract, which is incorporated herein by reference.

(Smith Affirm. Ex. B at 1.)

The Takeover Agreement stated in paragraph 1:
The Surety hereby undertakes to cause the performance of each and every one of the terms,

covenants and conditions of the Original Contract, including all modifications thereto, a copy of which is attached hereto and made a part hereto, and agrees to be bound by the Original Contract except as modified by the attached "Pre-Takeover Agreement Punchlist", which is attached hereto as a part hereof.

*\*4* (Smith Affirm. Ex. E at 1.)

Courts apply generally accepted principles of contract law to determine whether parties have agreed to arbitrate. *Clarendon Nat'l Ins. Co. v. Lan,* 152 F.Supp.2d 506, 519 (S.D.N.Y.2001)."The Court of Appeals for the Second Circuit has made clear that a nonsignatory party may be bound to an arbitration agreement if so dictated by the ordinary principles of contract and agency."*Id.* (citing *Thomson-CSF, S.A. v. Am. Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir.1995), *McAllister Bros., Inc. v. A & S Transp. Co.,* 621 F.2d 519, 524 (2d Cir.1980). Incorporation by reference is one theory, arising out of common law principles, by which nonsignatories may be bound to arbitration agreements. *Id.* (citing *Thomson-CSF,* 64 F.3d at 776)."A nonsignatory to an agreement containing an arbitration provision can be compelled to arbitrate when the nonsignatory is a party to a separate contractual relationship with the signatory to the arbitration agreement which incorporates the existing arbitration clause."*Clarendon,* 152 F .Supp.2d at 520 (citations omitted). The Court finds that there exists a valid agreement to arbitrate binding on plaintiff because plaintiff incorporated the existing arbitration clauses into the Performance Bond and the Takeover Agreement.

In addition, in order for a nonsignatory to be bound by an arbitration clause incorporated by reference, the arbitration clause must be broad enough to allow the disputes of nonsignatories to be brought within its terms. *Limonium Maritime S.A. v. Mizushima Marinera, S.A.,* No. 96 Civ. 1888, 1999 WL 46721, at *5 (S.D.N.Y. Feb. 1, 1999). Broadly worded arbitration clauses are not restricted to signatories, in contrast to clauses that are narrow and restricted to identified parties. *Clarendon,* 152 F.Supp.2d at 520;*seealsoProgressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela,*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                   Page 5

Not Reported in F.Supp.2d, 2002 WL 1933780 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

991 F.2d 42, 48 (2d Cir.1993) (clause that provides for arbitration of disputes between "the contracting parties" is not restrictively worded).

According to Fidelity, Section 10.8 of the Original Contract limits arbitration of disputes to those between West Point and Marquis and therefore the arbitration clause is not broad enough to encompass Fidelity. (Pl.'s Mem. of Law at 10-11.) The relevant section reads:
All claims or disputes between the Contractor and the Owner arising out of or relating to the Contract, or the breach thereof, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association ...

(Smith Affirm. Ex. A § 10.8.)

West Point argues that because the last sentence of paragraph 1 of the Takeover Agreement expressly substitutes the surety in the place of the contractor plaintiff knew or should have known that it would be required to arbitrate disputes with the owner. (Def.'s Mem. in Opp'n at 22.) The paragraph reads:
**\*5** The term "Contractor" is [sic] used in the Original Contract shall be deemed, after the effective date of this Agreement, to refer to the Surety rather than to the Former Contractor.

(Smith Affirm. Ex. E at 1.) Therefore, according to West Point, the revised Section 10.8 binds the Surety and the Owner to arbitration. (Def.'s Mem. in Opp'n at 22.)

The Court agrees that this language in the Takeover Agreement, which explicitly substitutes Fidelity for the contractor, a party to the Original Contract, places Fidelity within the scope of the arbitration clause in the Original Contract. While the Performance Bond does not include language to this effect, the relationship between the Takeover Agreement and the Performance Bond is such that the two may be viewed as different stages of the same contract. Because the Court finds that the parties, through language in the Takeover Agreement, expressed their intent for the surety to assume the contractor's obligations under the Original Contract, and due to the nature of the

relationship between the Performance Bond and the Takeover Agreement, disputes between Fidelity and West Point pertaining to both the Performance Bond and the Takeover Agreement are arbitrable. [FN3]

FN3. The Court also rejects plaintiff's argument that since the Takeover Agreement expressly provides that it does not create new rights among the parties, arbitration must be limited to the original parties. (Pl.'s Mem. of Law at 12-13.) Fidelity cites the language in Section 11 of the Takeover Agreement, "nothing contained in this Agreement shall be deemed to enlarge Surety's obligation under the Performance Bond ..." and Section 13, "nothing contained herein shall create or be construed to create any new or additional rights against Surety ..." (Smith Affirm. Ex. E at 3.) However, Fidelity's obligations under the Performance Bond have not been enlarged because arbitration is required by the incorporation itself. Similarly, no additional rights have been created because the right to arbitration already existed in the Original Contract. Furthermore, while the Original Contract evinces an intent to limit its scope to the named parties in Article 7.2 (Pl.'s Reply Mem. at 5; Smith Affirm. Ex. A), the Takeover Agreement explicitly substitutes Fidelity for Marquis, the former contractor, as discussed *infra*.

III.

Fidelity also argues that the language of the Performance Bond, which created the relationship between Fidelity and West Point, contemplates the use of litigation in court rather than arbitration to resolve disputes. (Smith Affirm. ¶ 17.) Paragraph 9 of the Performance Bond requires that proceedings be instituted in a court of competent jurisdiction. (Pl.'s Mem. in Support at 6-7; Smith Affirm. Ex. B.) The Court finds that this provision merely provides for jurisdiction in New York courts for any proceeding arising out of the Performance

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 6

Not Reported in F.Supp.2d, 2002 WL 1933780 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Bond, and does not express an intent to litigate rather than arbitrate. *Clarendon,* 152 F.Supp.2d at 521.


## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is denied, and defendant's cross-motion for summary judgment is granted. The Court finds that because the Takeover Agreement, which incorporates by reference the Original Contract, explicitly substitutes Fidelity for Marquis, the parties are compelled to arbitrate, and the Clerk is directed to enter judgment in favor of defendant against plaintiff directing the parties to arbitrate.

S.D.N.Y.,2002.
Fidelity and Guar. Ins. Co. v. West Point Realty, Inc.
Not Reported in F.Supp.2d, 2002 WL 1933780 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                     Page 1

Not Reported in F.Supp.2d, 2001 WL 873204 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Tuskey v. Volt Information Sciences, Inc.
S.D.N.Y.,2001.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Dana TUSKEY, Plaintiff,
v.
VOLT INFORMATION SCIENCES, INC., Volt
Services Group, Steve Shaw, Louise Ross and John
Sexton, each in their official and individual
capacities, Defendants.
**No. 00CIV7410DABGWG.**

Aug. 3, 2001.

Law Offices of Daniel Cherner, New York, By
Daniel Cherner, Esq., for Plaintiff.
Jenkins & Gilchrist Parker Chapin LLP, New York,
By Sharon H. Stern, Esq., for Defendants Volt
Information Sciences, Inc., Volt Services Group
and Louise Ross.

OPINION AND ORDER
GORENSTEIN, Magistrate J.
*1 The defendants in this employment
discrimination case have moved to compel
arbitration of the plaintiff's claims pursuant to the
Federal Arbitration Act, 9 U.S.C. § 1*et seq.,* and to
stay this action pending the outcome of the
arbitration. They also seek to strike the plaintiff's
jury demand. For the reasons stated below, the
defendants' motion to compel arbitration and stay
proceedings is granted. Thus, the Court need not
reach the request to strike the jury demand.[FN1]

> FN1. While the parties have not raised the
> issue, the Court notes that a motion to stay
> an action and compel arbitration is not a
> motion for dispositive relief as set forth in
> 28 U.S.C. § 636(b)(1)(A). Accordingly,
> such a motion may be decided by a
> Magistrate Judge. *See, e.g., Touton, S.A. v.*

*M.V. Rizcun Trader,* 30 F.Supp.2d 508,
510 (E.D.Pa.1998); *Herko v. Metropolitan
Life Ins.,* 978 F.Supp. 149, 150
(W.D.N.Y.1997).

FACTUAL BACKGROUND

Plaintiff Dana Tuskey brought this action seeking
relief under Title VII, 42 U.S.C. § 2000e*et seq.;* the
New York State Human Rights Law, New York
Exec. Law § 296*et seq.;* and common-law claims of
breach of contract and intentional infliction of
emotional distress. All of Tuskey's claims relate to
her employment with Volt Information Sciences,
Inc ("Volt").

The complaint alleges that Tuskey was first
employed by Volt in March 1998. Complaint ¶ 9.
Volt is a corporation listed on the New York Stock
Exchange and is engaged in the business of
providing, among other things, technical and
clerical services in a consulting capacity to other
businesses. *Id.* ¶ 4. Tuskey's first position at Volt
was as a technical recruiter in its Advanced
Technology Services ("ATS") division of Volt. *Id.*
¶ 10.Sometime during November or December
1998, Tuskey was made Branch manager of Volt's
ATS division office located in Woodbridge, New
Jersey. *Id.* ¶ 12.

Shortly after being promoted to the Branch
Manager position, Tuskey entered into an
employment agreement with Volt in connection
with her position as Branch Manager. *See* Affidavit
of Dana Tuskey in Support of Plaintiff's Opposition
to Defendant's Motion to Compel Arbitration dated
March 20, 2001 at ¶ 2 (hereinafter, "Tuskey Aff."
). The employment agreement contained the
following arbitration provision:

*7. AGREEMENT TO ARBITRATE DISPUTES.*

Any dispute, controversy or claim arising out of,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                  Page 2

Not Reported in F.Supp.2d, 2001 WL 873204 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

involving, affecting or related to this Agreement, or breach of this Agreement, or arising out of, involving or related in any way to your employment or the conditions of your employment or the termination of your employment, including but not limited to disputes, controversies or claims arising out of or related to the actions of the Company's other employees, under Federal, State and/or local laws, shall be resolved by final and binding arbitration in accordance with the applicable rules of the American Arbitration Association in the state where you are or were last employed by the Company. The arbitrator shall be entitled to award reasonable attorneys' fees and costs to the prevailing party. The award shall be in writing, signed by the arbitrator, and shall provide the reasons for the award. Judgment upon the arbitrator's award may be filed in and enforced by any court having jurisdiction. This Agreement to Arbitrate Disputes does not prevent you from filing a charge or claim with any governmental agency as permitted by applicable law.
**\*2** *See* Employment Agreement Letter dated December 16, 1998, ¶ 7 (hereinafter "Employment Agreement"), reproduced as Exhibit B to Affidavit of Howard B. Weinreich in Support of Defendants' Motion to Compel Arbitration and Stay Action, dated February 16, 2001 (hereinafter, "Weinreich Aff."). Tuskey signed the Agreement on December 21, 1998. Employment Agreement at 8.

Tuskey signed an additional document concerning her employment with Volt on July 27, 1999. *See* Amendment Number 1, dated June 20, 1999 (Annexed as Exhibit A to Tuskey Aff.) (hereinafter " Amendment"). The Amendment was denominated " amendment Number 1" to the Employment Agreement. *Id.* at 1. It states that it "modifie[s] only "Paragraph 17 of the [Employment Agreement]." Amendment at 1. Following this statement are a number of terms that relate exclusively to Tuskey's compensation. Amendment at 1-2. Paragraph 17 of the original Employment Agreement also relates exclusively to compensation.

On February 11, 2000, Tuskey filed a charge of sex discrimination and retaliation with the EEOC. Complaint ¶ 46. Subsequent to the filing of this charge, Volt terminated Tuskey's employment. *Id.* ¶

47. On July 3, 2000, Tuskey received a right to sue letter from the EEOC. *Id.* ¶ 48. On September 29, 2000, Tuskey filed her Complaint in this case. Each factual allegation relates to her employment and termination at Volt.

On April 18, 2001, the defendants filed their motion to compel arbitration, to stay these proceedings pending its outcome, and to strike the plaintiff's jury demand.

DISCUSSION

I. MOTION TO COMPEL ARBITRATION

The Federal Arbitration Act provides that
If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The following four factors apply in determining whether or not a court should stay an action and compel arbitration under the Federal Arbitration Act:[F]irst, [the Court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of the agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration.

*Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 844 (2d Cir.1987) (internal citations omitted). If the four factors are answered in the affirmative, the Court must grant the application to stay the proceedings and compel the arbitration. *See, e.g.,*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                            Page 3

Not Reported in F.Supp.2d, 2001 WL 873204 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

*PaineWebber Inc. v. Bybyk,* 81 F.3d 1193, 1198 (2d Cir.1996).

**\*3** Tuskey has not challenged the applicability of the second and fourth factors. Accordingly, we will examine only (1) the agreement to arbitrate and (2) whether the claims are arbitrable.

A. *Agreement to Arbitrate*

As previously described, the Employment Agreement signed by Tuskey contained an " Agreement To Arbitrate Disputes" clause. Employment Agreement ¶ 7. In her response to the defendants motion and the accompanying affidavit, Tuskey does not contest that she signed the Employment Agreement. Rather, she appears to make three arguments to avoid its effect: (1) that the arbitration agreement is unenforceable because she did not understand it and it was never explained to her, *see* Tuskey Aff., ¶¶ 3, 5, 8; Plaintiff's Memorandum of Law In Opposition to Defendants' Motion to Compel Arbitration and Stay the Action or Alternative, to Strike the Jury Demand (hereinafter, "Plaintiff's Memorandum") at 5-6; (2) that the Employment Agreement was nullified by the Amendment, Plaintiff's Memorandum at 7-8; and (3) that the arbitration agreement did not contain "any specific waiver [of her statutory right to sue] as contemplated by the courts."Plaintiff's Memorandum at 5.

1. *Enforceability of the Arbitration Agreement.*With respect to the enforceability of the Employment Agreement, Tuskey makes numerous assertions in her affidavit that she did not "understand" the agreement, Tuskey Aff., ¶¶ 5, 8; that it was never "properly explained" to her, *id.* ¶ 3; that she did not "have the opportunity to negotiate any of [its] terms" or "consult with an attorney," *id.* ¶¶ 4, 5; and that she was "told" she "had to" sign it, *id.* ¶ 7. In her memorandum of law, however, Tuskey never makes clear why she believes those assertions are relevant. She states only that "[t]here was no level playing field here" and seems to analogize her situation to those cases holding that an employee cannot be bound by an agreement to arbitrate that has never been ratified by an employee because it is

contained in a collective bargaining agreement. *See* Plaintiff's Memorandum at 5. Tuskey cites to just two cases in support of her argument on this point: *Bird v. Shearson Lehman/American Express, Inc.,* 926 F.2d 116 (2d Cir.1991), and *Genesco, supra.* *See* Plaintiff's Memorandum at 5. These cases, however, have no relevance to her argument. *Bird* rejected an effort to avoid an arbitration agreement and *Genesco* enforced an agreement that had not even been signed by the party against whom it was being enforced.

As *Genesco* notes, arbitration agreements are to be interpreted "under federal law, which comprises generally accepted principles of contract law." *Genesco,* 815 F.2d at 845. Contract law is clear that parties are "conclusively bound by the contracts they sign whether or not the party has read the contract as long as there is no fraud, duress or some other wrongful act of the other party. *See, e.g, State Bank of India v. Star Diamonds, Inc.,* 901 F.Supp. 177, 179 (S.D.N.Y.1995) (party is legally bound by his or her signature to a contract and is conclusively presumed to know its contents and to assent to them); *Maines Paper and Food Service Inc. v. Adel,* 256 A.D.2d. 760, 761 (3d Dep't 1998) (holding that the rule applies even where the plaintiff suffers from "an inability to understand the English language") (citing cases); *Freda v. McNamara,* 254 A.D.2d 251, 252-53 (2d Dep't 1998) (plaintiff was bound by papers signed by him even though they were not explained to him); *Schmidt v. Magnetic Head Corp.,* 97 A.D.2d 151, 157 (2d Dep't 1983) (party's subjective knowledge of the contents of a contract at the time he signs it is irrelevant).

**\*4** These same principles have been applied to arbitration clauses. *See, e.g., Hart v. Canadian Imperial Bank of Commerce,* 43 F.Supp.2d 395, 405 (S.D.N.Y.1999) ("plaintiff's subjective knowledge of the scope of the arbitration clause is irrelevant and he is presumed to have agreed to all the terms of the contract") (citing cases); *Smith v. Lehman Bros., Inc.,* 1996 WL 383232 at *1 (S.D.N.Y. July 8, 1996) (plaintiff's assertion that he was not aware of arbitration clause does "not constitute economic duress, coercion, or fraud, [because he] is conclusively presumed to have assented to submit his claims to arbitration"); *Maye*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 4

Not Reported in F.Supp.2d, 2001 WL 873204 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

*v. Smith Barney Inc.,* 897 F.Supp. 100, 108 (S.D.N.Y.1995) ("one who signs or accepts a written contract ... is conclusively presumed to know its contents and assent to them") (citations and internal quotation marks omitted); *Hall v. Metlife Resources/Div. of Metro. Life Ins. Co.,* 1995 WL 258061, at *2-3 (S.D.N.Y. May 3, 1995) (arbitration clause binding where plaintiffs claimed in affidavits that they were unaware that forms they signed contained arbitration clauses). Thus, Tuskey's allegations that she did not "understand" the agreement or had no opportunity to negotiate the clause are irrelevant. This is all the more so in a case where the plaintiff herself alleges she was a capable, well-paid professional hired for managerial positions with significant job responsibilities. *See* Complaint ¶¶ 11-14; Amendment at 1-2.

*2. Effect of the Amendment.* Tuskey also argues that the Employment Agreement was superseded by the Amendment, which does not contain an arbitration clause. *See* Plaintiff's Memorandum at 7-8; Tuskey Aff., ¶¶ 9-10. This argument is frivolous. The Amendment states that it "constitute[s] amendment Number 1 ... to your Employment Agreement dated December 16, 1998" and that *"Paragraph 17 of the Agreement* is modified" by the contents of the Amendment. Amendment at 1 (emphasis added). As noted, the contents of the Amendment relate exclusively to Tuskey's compensation, which was also the topic of paragraph 17 of the Employment Agreement. Nowhere does the Amendment purport to supersede or modify the other 17 paragraphs of the Employment Agreement, which included the arbitration clause.

*3. Plaintiff's Waiver.* Finally, Tuskey argues that " the arbitration clause in this case does not contain any specific waiver as contemplated by the courts," Plaintiff's Memorandum at 5, arguing that "it contains a general, boilerplate provision which really carries no meaning whatsoever." *Id.* at 5-6. This argument is also frivolous. Tuskey is apparently referring to the Supreme Court's decision in *Wright v. Universal Maritime Serv. Corp.,* 525 U.S. 70 (1998), in which the Court held that it would not "infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is '

explicitly stated." ' *Id.* at 80 (citing cases). *See* Plaintiff's Memorandum at 4-5. *Wright,* however involved a clause in a collecting bargaining agreement that provided for arbitration only of " matters under dispute," which *Wright* noted could refer merely to matters disputed under the collective bargaining agreement. 525 U.S. at 80. Here, by contrast, the language of the arbitration clause is absolutely clear that "[a]ny dispute, controversy or claim arising out of, involving, affecting or related in any way to [Tuskey's] employment ... or the termination of [Tuskey's] employment" would be resolved by "final and binding arbitration." Employment Agreement ¶ 7. It would be difficult to imagine a clearer and more specific agreement to arbitrate.[FN2]

FN2. Tuskey's additional allegation that the Employment Agreement was not given to her until nine months after she was first employed by Volt, Tuskey Aff. at ¶ 2, is similarly unavailing. Tuskey does not explain the legal relevance of this fact to the arbitrability of her claims. To the extent that her argument can be construed as a claim that there was lack of consideration for her promise to arbitrate, Tuskey's submissions concede that she continued her employment following the signing of the Employment Agreement. *See* Complaint ¶¶ 30-46; Tuskey Aff. ¶ 9, 10. Continued employment is adequate consideration for agreements entered into by the parties after employment has commenced. *See Zellner v. Stephen D. Conrad, M.D., P.C.,* 183 A.D.2d 250, 256 (2d Dep't 1992) (continued employment is sufficient consideration for covenant not to compete signed after employment had already commenced); *cf. Andre v. Gaines Berland, Inc.,* 1996 WL 383239 at *2 (S.D.N.Y. July 8, 1996) (continued maintenance of customer account sufficient consideration for agreement to arbitrate disputes between client and brokerage firm signed after brokerage relationship was already established).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 5

Not Reported in F.Supp.2d, 2001 WL 873204 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

### B. *Arbitrability of Title VII Claims*

**\*5** The Second Circuit has ruled that claims arising under Title VII are arbitrable. *See Desiderio v. NASD,* 191 F.3d 198, 206 (2d Cir.1999); *see also Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 35 (1991) (claims brought under the Age Discrimination in Employment Act are arbitrable); *PriceWaterhouse-Coopers LLP v. Rutlen,* 2000 WL 460478 at \*2 (S.D.N.Y. April 20, 2000) (" consistent with [ ] federal policy ... Title VII claims, like other federal statutory claims, are arbitrable"); *Mahant v. Lehman Bros.,* 2000 WL 1738399 at \*3 (S.D.N.Y. November 22, 2000) (citing cases). Tuskey concedes that *Desiderio* is controlling authority but argues that it is "incorrect and flawed." Plaintiff's Memorandum at 3. Obviously, this Court is bound by its holding.

The plaintiff also argues that the FAA does not apply to labor and employment contracts, *see*9 U.S.C. § 1 (excluding from coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce"), relying on *Circuit City Stores, Inc. v. Adams,* 194 F.3d 1070 (9th Cir.1999) . Subsequent to the filing of plaintiff's brief, however, the Supreme Court reversed the Ninth Circuit's decision in *Circuit City.See Circuit City Stores, Inc. v. Adams,* 121 S.Ct. 1302 (2001). The Court squarely held that the FAA does not exclude employment contracts from the scope of arbitrable claims.

### II. *MOTION FOR STAY*

Section 3 of the Federal Arbitration Act provides that the district court shall stay the trial of an action brought "upon any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. *See also McMahan Sec. Co. v. Forum Capital Markets,* 35 F.3d 82, 85 (2d Cir.1994) (" Under the Federal Arbitration Act ..., a district court must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding."). Because the plaintiff's claims are subject to arbitration, this action must be stayed.

### Conclusion

For the foregoing reasons, defendants' motion to compel arbitration and to stay this action is granted. The Clerk is requested to place the matter on the suspense calendar pending any motion to confirm the arbitrator's award.

SO ORDERED.

S.D.N.Y.,2001.
Tuskey v. Volt Information Sciences, Inc.
Not Reported in F.Supp.2d, 2001 WL 873204 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                                     Page 1

Not Reported in F.Supp.2d, 2001 WL 396447 (S.D.N.Y.), 85 Fair Empl.Prac.Cas. (BNA) 878
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Meyer v. Starwood Hotels & Resorts Worldwide, Inc.
S.D.N.Y.,2001.

United States District Court, S.D. New York.
John MEYER, Plaintiff,
v.
STARWOOD HOTELS & RESORTS
WORLDWIDE, INC., Defendant.
**No. 00 Civ. 8339(JSR).**

April 18, 2001.

*MEMORANDUM ORDER*
RAKOFF, J.
*1 Starwood Hotels & Resorts Worldwide, Inc. (" Starwood") moves to stay this case and compel arbitration. On February 2, 2001, the Court telephonically informed the parties that the motion would be granted. This Memorandum formally confirms that determination and briefly states the reasons therefor.

In 1996, plaintiff John Meyer countersigned a letter offer of employment that included the following provision:
In the event of *any disputes with respect to your* [*i.e.* Meyer's] *employment* by the Company [*i.e.* Starwood], then you and the Company agree that the same *shall be resolved through binding arbitration* in the jurisdiction of the Company's headquarters and in accordance with the rules and procedures from time to time of the American Arbitration Association.

Moulinos Aff. Ex. C (emphasis added). The letter offer also provided, however, thatThis letter is the entire understanding between John Meyer and Doral Hotels of New York [the defendant's predecessor company]. I [*i.e.* Meyer] agree and understand that *this letter does not constitute a contract of employment.*I understand that the

Company is an at-will employer....

*Id.*(emphasis added). Plaintiff subsequently sued under the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621*etseq.,* and defendant now moves to stay that lawsuit and compel arbitration.

Plaintiff's main contention is that enforcement of the arbitration provision is foreclosed by the letter's explicit disavowal that it is "a contract of employment," since the Federal Arbitration Act (the "FAA") by its terms applies only to contracts, 9 U.S.C. § 2. This argument is unavailing, however, because whether or not the letter is a contract of employment, it is a contract to arbitrate disputes respecting employment, for which the mutually binding nature of the arbitration clause constitutes valid consideration, *Michalski v. Circuit City Stores, Inc.,* 177 F.3d 634, 636 (7th Cir.1999); *Wright v. Circuit City Stores, Inc.,* 82 F.Supp.2d 1279, 1284 (N.D.Ala.2000). An employer and its at-will employee, even while reaffirming, as here, the at-will nature of the employment relationship, can still contract to arbitrate disputes arising in the course of that relationship; and here they have done so.

Plaintiff's other arguments can be disposed of quickly. Plaintiff contends that the employment contract did not involve interstate commerce. But the FAA extends to the limits of Congress's Commerce Clause power, *Circuit City Stores, Inc. v. Adams,* 121 S.Ct. 1302, 2001 WL 273205, at *6 (2001); *Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 277 (1995), and a hotel clearly affects interstate commerce, see*Heart of Atlanta Motel, Inc. v. U.S.,* 379 U.S. 241 (1964). Indeed, the Supreme Court itself, even while restricting the Commerce Clause power, *see, e.g.,United States v. Lopez,* 514 U.S. 549 (1995), has recently reaffirmed that the FAA applies to local employment contracts affecting interstate commerce, *Circuit City,* 2001 WL 273205, at *5. Likewise, the Supreme Court

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2001 WL 396447 (S.D.N.Y.), 85 Fair Empl.Prac.Cas. (BNA) 878
**(Cite as: Not Reported in F.Supp.2d)**

has long since rejected plaintiff's argument that ADEA claims are not subject to arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 23 (1991).[FN1]

FN1. Shortly before *Gilmer,* Congress passed the Older Workers Benefit Protection Act (the "OWBPA"), codified in relevant part at 29 U.S.C. § 626(f)(1), which provides that an employee's waiver of any right or claim under the ADEA must be knowing and voluntary and can only be enforced if the waiver meets certain conditions. *Gilmer,* in dictum, noted that the OWBPA "did not explicitly preclude arbitration" of ADEA claims. 500 U.S. at 29. Nonetheless, the Ninth Circuit, in *Duffield v. Robertson Stephens & Co.,* 144 F.3d 1182, 1190 (9th Cir.1998), concluded that, since the ADEA expressly entitles individual plaintiffs to a jury trial, 29 U.S.C. § 626(c)(2), any waiver of that right (such as an arbitration agreement) must satisfy the conditions of the OWBPA. Although not addressed by the instant parties, *Duffield,* if followed here, would preclude arbitration, since the conditions of the OWBPA were not met. This Court, however, agrees with the courts of the Third and Fifth Circuits (as well as a judge of this District) who have expressly rejected *Duffield* and found the OWBPA's requirements to apply only to waivers of substantive rights under the ADEA and not to waiver of the right to a jury trial.*Seus v. John Nuveen & Co.,* 146 F.3d 175, 181-82 (3d Cir.1998); *Williams v. Cigna Fin. Advisors, Inc.,* 56 F.3d 656, 660-61 (5th Cir.1995); *Hart v. Canadian Imperial Bank of Commerce,* 43 F.Supp.2d 395, 400 (S.D.N .Y.1999). Indeed, Congress itself, soon after enactment of the OWBPA, expressly encouraged arbitration of ADEA claims, Civil Rights Act of 1991, Pub.L. No. 102-166 § 118, 105 Stat. 1071, 1081 (appended as note to 42 U.S.C.A. § 1981), a position implicitly inconsistent with that urged by the Ninth Circuit.

Accordingly, the Court concludes that the OWBPA does not affect the enforceability of the arbitration agreement here at issue.

*2 For the foregoing reasons, the Court hereby grants plaintiff's motion to stay this case and compel arbitration. The Clerk of the Court shall place the case on the Court's suspense calender pending completion of the arbitration, and counsel for the parties shall apprise the Court in writing at least once every six months hereafter as to the status of the arbitration.

SO ORDERED.

S.D.N.Y.,2001.
Meyer v. Starwood Hotels & Resorts Worldwide, Inc.
Not Reported in F.Supp.2d, 2001 WL 396447 (S.D.N.Y.), 85 Fair Empl.Prac.Cas. (BNA) 878

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                Page 1

Not Reported in F.Supp.2d, 2001 WL 103433 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Wright v. SFX Entertainment Inc.
S.D.N.Y.,2001.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Vernon WRIGHT, Plaintiff,
v.
SFX ENTERTAINMENT INC., SFX Radio
Network, Inc., Clear Channel Communications,
Inc., and Steven Saslow, Defendants.
**No. 00 CIV 5354 SAS.**

Feb. 7, 2001.

Jonathan Ben-Asher, Beranbaum Menken
Ben-Asher & Fishel LLP, New York, New York,
for Plaintiff.
Gerald D. Silver, Anne L. Quintal, Winston &
Strawn, New York, New York, for Defendants SFX
Entertainment, Inc., SFX Radio Network, Inc., and
Clear Channel Communications, Inc.
Richard Schaeffer, Brandon T. Davis, Teresa Boyle
, Dornbush Mensch Mandelstam & Shaeffer, LLP,
New York, New York, for Defendant Steven
Saslow.

*OPINION AND ORDER*
SCHEINDLIN, J.
**\*1** Vernon Wright brings this action against SFX
Entertainment, Inc., SFX Radio Network, Inc.,
Clear Channel Communications, Inc. (collectively,
the "Corporate Defendants"), and Steven Saslow,
asserting state law claims for breach of contract,
fraud, promissory estoppel and racial discrimination
in violation of the New York City Human Rights
Law, N.Y.C. Admin. Code, § 8-107 et seq., and the
New York State Human Rights Law, Exec. Law §
296 et seq.[FN1] The Corporate Defendants move,
pursuant to the Federal Arbitration Act ("FAA"), 9
U.S.C. § 1 et seq., to compel arbitration of
plaintiff's claims and to dismiss or stay this action.
In the event that the Corporate Defendants' motion
is granted, defendant Saslow cross moves to stay

this action pending arbitration. For the foregoing
reasons, the Corporate Defendants' motion to
compel arbitration is granted and Saslow's motion
to stay this action is denied.

> FN1. The Complaint is ambiguous
> concerning which claims are asserted
> against Saslow. Although Saslow contends
> that only the breach of contract claim is
> asserted against him, *see* Memorandum of
> Law in Support of Defendant Steven
> Saslow's Cross-Motion to Stay this Action
> Pending Arbitration ("Saslow Mem.") at 1,
> plaintiff maintains that all claims against
> the Corporate Defendants, except for the
> race discrimination claim under the New
> York State Human Rights Law, are
> asserted against Saslow. *See* Plaintiff's
> Memorandum of Law in Opposition to
> Defendant Steven Saslow's Cross-Motion
> to Stay this Action Pending Arbitration at
> 3 and n.1. This dispute need not be
> resolved at this time.

**I. BACKGROUND**

A. The Underlying Facts

In March 1993, plaintiff, a black male, began
working at Urban Entertainment Corp. ("Urban
Entertainment"), which later became SJS
Entertainment Corp. ("SJS").*See* Complaint ¶¶
48, 87. Plaintiff contends that he was induced to
accept this employment based on Saslow's
intentionally false representations. *See id.* ¶¶
38-40, 47.Saslow, an officer of Urban
Entertainment, promised plaintiff, *interalia*, a high
salary, commissions, and partial ownership of the
company. *See id.* ¶¶ 28, 33, 34, 37.Over the next
several years, Saslow continued to promise plaintiff
that he would become an "owner" of Urban
Entertainment and would soon be "rich." *See id.* ¶

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2

Not Reported in F.Supp.2d, 2001 WL 103433 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

¶ 56, 58-61, 74, 76, 97, 101-103, 112, 117, 118, 121.In early 1998, Saslow informed the staff that SJS had been sold to SFX Entertainment, Inc. ("SFX "), and assured plaintiff, once again, that he had already been "taken care of" and would become rich. *Id.* ¶ ¶ 129, 130.Saslow made these statements and promises knowing that they were not true. *Seeid.* ¶¶ 44, 45, 53, 92, 93, 123, 124, 154, 155.

On October 17, 1998, SFX terminated Saslow's employment. *Seeid.* ¶ 158.Shortly thereafter, in November, 1998, plaintiff was promoted to "Vice President and General Sales Manager" of SFX Radio Network, Inc. ("SFX Radio").*Id.* ¶ 167.Approximately one year later, on November 19, 1999, plaintiff was terminated. *Seeid.* ¶ 180.

### B. The Arbitration Agreement

Prior to his termination, on February 3, 1999, plaintiff executed an "Arbitration, Confidentiality, and At-Will Employment Agreement" with SFX Radio (the "Agreement"). The Agreement includes a confidentiality provision, a non-compete clause, and an at-will employment provision. *See* Agreement, Ex. B to 10/20/00 Affidavit of Gerald D. Silver, counsel to the Corporate Defendants (" 10/20/00 Silver Aff."), at 1-2. Also included in the Agreement is an arbitration clause, which states:
**\*2** 3. Arbitration
(a) Except to the extent otherwise provided by law, *any claim of any nature* alleging a violation of law by the Company and *arising out of, or related to, the Employee's employment with the Company or the termination thereof,* that might otherwise be subject to litigation, including but not limited to any claim of unlawful retaliation or civil rights violation, wrongful termination of employment, violation of public policy, or unlawful discrimination or harassment ...*shall be submitted to and resolved by final and binding arbitration....*
(b) The arbitration shall be conducted ... in accordance with the then existing rules of practice and procedure of the Judicial Arbitration and Mediation Services [ ("JAMS") ] or its successor....
(c) The arbitrator shall not have the right to add to, subtract or modify any of the terms of this

Agreement, nor shall he or she have the power to decide the justice or propriety of any specific provisions, which by the terms of this Agreement, are reserved solely to the Company's discretion.
IF A DISPUTE OR CLAIM ARISES ALLEGING A VIOLATION OF LAW BY THE COMPANY, THE PARTIES AGREE TO WAIVE ANY RIGHTS EACH MAY HAVE TO A JURY OR COURT TRIAL AND TO USE BINDING ARBITRATION TO RESOLVE ALL SUCH DISPUTES BETWEEN THEM.

*Id.* at 2-3 (underscored emphasis added, bold and capitalization in original).

The Agreement also includes a notice of claim provision, which states in relevant part:
4. Representations
(b) If I am already employed by the Company at the time of executing this Agreement:
I ACKNOWLEDGE AND CONFIRM THAT I HAVE NO CLAIMS AGAINST THE COMPANY, OR ANY OF ITS AFFILIATES, AND I HAVE NO AGREEMENTS OR UNDERSTANDINGS WITH THE COMPANY, OR ANY OF ITS AFFILIATES, THAT ARE INCONSISTENT WITH THE TERMS SET FORTH IN THIS AGREEMENT, UNLESS I DELIVER WRITTEN NOTICE OF ANY SUCH CLAIMS AND ALLEGED AGREEMENTS AND UNDERSTANDINGS TO THE PRESIDENT OF THE COMPANY, WITHIN THREE (3) BUSINESS DAYS OF EXECUTING THIS AGREEMENT.

*Id.* at 3 (emphasis in original).

### II. DISCUSSION

#### A. The Corporate Defendants' Motion to Compel Arbitration

The FAA provides that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."9 U.S.C. § 2. In

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 3

Not Reported in F.Supp.2d, 2001 WL 103433 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

deciding whether to compel arbitration, a district court must determine: (1) whether there is an agreement to arbitrate; (2) the scope of that agreement to arbitrate; (3) whether Congress intended the federal statutory claims, if any are asserted, to be nonarbitrable; and (4) whether to stay proceedings relating to any non-arbitrable claims pending arbitration. See *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 844 (2d Cir.1987); *Mahant v. Lehman Bros.,* No. 99 Civ. 4421, 2000 WL 1738399, at *1 (S.D.N.Y. Nov. 22, 2000).

*3 Plaintiff does not-nor could he-dispute the second, third, or fourth *Genesco* factors. The scope of the arbitration provision in the Agreement is clearly broad enough to encompass each of plaintiff's claims against the Corporate Defendants. See *Collins & Aikman Prods. Co. v. Building Sys., Inc.,* 58 F.3d 16, 20 (2d Cir.1995) (stating that a clause requiring "[a]ny claim or controversy arising out of or relating to th[e] agreement" to be submitted to arbitration is the "paradigm of a broad clause" warranting "a presumption that the claims are arbitrable"). Moreover, plaintiff does not assert any federal statutory claims.[FN2] See *Mahant,* 2000 WL 1738399, at *3. Rather, plaintiff focuses on the first factor, arguing that the Agreement is unenforceable. Specifically, plaintiff contends that the three day notice of claim provision in paragraph 4(b) is unconscionable [FN3] and that the entire Agreement is a contract of adhesion.[FN4] See Plaintiff's Memorandum of Law in Opposition to the Corporate Defendants' Motion to Compel Arbitration ("Pl.Mem.") at 15-16, 19-22. Plaintiff's argument is unavailing because the determination as to whether the Agreement is unenforceable must be made by the arbitrator, not this Court.

FN2. The only statutory claims asserted here-discrimination claims under the New York State and City Human Rights Laws-are arbitrable. See *Mahant,* 2000 WL 1738399, at *3 (citing *Fletcher v. Kidder, Peabody & Co., Inc.,* 81 N.Y.2d 623, 635 (1993)).

FN3. An unconscionable contract is one where "there is an 'absence of meaningful

choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." ' *Desiderio v. National Ass'n of Secs. Dealers,* 207 (2d Cir.1999) (citation omitted).

FN4. As explained by the Second Circuit: A court will find adhesion only when the party seeking to rescind the contract establishes that the other party used "high pressure tactics," or "deceptive language," or that the contract is unconscionable. " Typical contracts of adhesion are standard-form contracts offered by large, economically powerful corporations to unrepresented, uneducated, and needy individuals on a take-it-or-leave-it basis, with no opportunity to change the contract's terms." *Klos v. Lotnicze,* 133 F.3d 164, 168 (2d Cir.1997) (quoting *Aviall, Inc. v. Ryder Sys., Inc.,* 913 F.Supp. 826, 831 (S.D.N.Y.1996)).

1. The *Prima Paint* Doctrine

In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 402-04 (1967), the Supreme Court held that, under the FAA, a challenge to the making of a contract generally, as opposed to the making of the arbitration provision specifically, must be decided by the arbitrator. The Court adopted the view of the Second Circuit that "arbitration clauses as a matter of federal law are 'separable' from the contracts in which they are embedded, and that where no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud." *Id.* at 402.

Although *Prima Paint* involved a claim that the underlying contract was induced by fraud, its holding is not limited to such claims. As stated by the First Circuit: The teaching of *Prima Paint* is that a federal court must not remove from the arbitrators consideration of a substantive challenge to a contract unless there

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 4

Not Reported in F.Supp.2d, 2001 WL 103433 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

has been an independent challenge to the making of the arbitration clause itself. The basis of the underlying challenge to the contract does not alter the severability principle.[FN5]

> FN5. Leading commentators on arbitration law have summarized the reach of *Prima Paint:*
> [T]he separability doctrine [of *Prima Paint* ] has been applied to numerous issues affecting arbitrability other than fraud. These include: illegality; consensual requirements such as whether a draft was intended to be a finalized contract and mutual mistake; authority issues, such as ultra vires; supervening event issues, such as frustration of purpose; consensual defenses, such as duress, "overreaching," and unconscionability; procedural requirements such as time limits on submission of claims against seller for defective goods; and statute of limitations running on the contract containing the arbitration clause.
> 2 Ian R. Macneil et al., *Federal Arbitration Law* § 15.3.2, at 15:26 to 15:27 (1999) (footnotes omitted) ( "*Federal Arbitration Law*" ).

*Unionmutual Stock Life Ins. Co. of Am. v. Beneficial Life Ins. Co.,* 774 F.2d 524, 529 (1st Cir.1985). Claims of unconscionability and adhesion contracts are similarly included within the *Prima Paint* rule. See*Benoay v. Prudential-Bache Secs., Inc.,* 805 F.2d 1437, 1441 (11th Cir.1986) ( "If on the other hand, [plaintiff's] claims of adhesion [and] unconscionability ... pertain to the contract as a whole, and not to the arbitration provision alone, then these should be resolved in arbitration."). "As long as one party's agreement to arbitrate is supported by the other's, the agreements supply their own consideration, 'so objections to other parts of the contract, based on fraud or unconscionability or mistake or whatever, need not spill over to the arbitration clause.' " [FN6]*Belship Navigation, Inc. v. Sealift, Inc.,* 95 Civ. 2748, 1995 WL 447656, at *5 (S.D.N.Y. July 28, 1995)

(quoting *Matterhorn, Inc. v. NCR Corp.,* 763 F.2d 866, 869 (7th Cir.1985)); *see also Jeske v. Brooks,* 875 F.2d 71, 75 (4th Cir.1989) (stating that the alleged unconscionability of the entire contract must be decided by the arbitrator, not the court); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu,* 637 F.2d 391, 398 (5th Cir.1981) (same); *Dale v. Prudential-Bache Secs. Inc.,* 719 F.Supp. 1164, 1169 (E.D.N.Y.1989) ("Even if plaintiff's alleged misunderstanding would void the agreement, a claim of fraudulent inducement, duress or unconscionability involves the formation of the entire contract and must be determined by the arbitrator."); *Brener v. Becker Paribas Inc.,* 628 F.Supp. 442, 446 (S.D.N.Y.1985) ("Claims concerning duress, unconscionability, coercion, or confusion in signing should be determined by an arbitrator because those issues go to the formation of the contract.").

> FN6. However, the *Prima Paint* doctrine may not be applicable where the party resisting arbitration alleges "a bona fide claim of fraud in the factum."*Kyung In Lee v. Pacific Bullion (New York) Inc.,* 788 F.Supp. 155, 157 (E.D.N.Y.1992) (collecting cases)."The distinction between fraud in the factum and fraud in the inducement is basic: Fraud in the factum occurs when the maker [of the note] is tricked into believing that which he is signing is something other than a promissory or obligatory note. By contrast, fraud in the inducement consists of misrepresentations that cause the maker of the note to enter the transaction."*Revak v. SEC Realty Corp.,* 18 F.3d 81, 91 (2d Cir.1994) (quotation marks and citations omitted). Plaintiff has not alleged a bona fide claim of fraud in the factum. Indeed, plaintiff signed the Agreement knowing that it contained an arbitration provision. *See* 10/3/00 Deposition of Vernon Wright, Ex. C to 10/20/00 Silver Aff., at 42, 70.

*4 With respect to the notice of claim provision, plaintiff has not demonstrated the requisite "nexus" between the allegedly unconscionable provision and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 5

Not Reported in F.Supp.2d, 2001 WL 103433 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

the arbitration clause. *Campaniello Imps., Ltd. v. Saporiti Italia, S.p.A,* 117 F.3d 655, 668 (2d Cir.1997) ("Other courts in this Circuit have similarly required some nexus between the alleged fraud or misrepresentation and the arbitration clause in particular."). Not only is the notice of claim provision written in a separate part of the Agreement than the arbitration clause, but the word "arbitration" is never mentioned in paragraph 4(b). Indeed, paragraph 4(b) appears to apply to litigation in court as well. Moreover, paragraph 4(b) contains a complete waiver of all agreements and understandings that conflict with any of the terms of the Agreement-including the confidentiality provision, the at-will employment provision, and the non-compete clause-unless written notice is provided within three days of executing the Agreement. An attack on paragraph 4(b) is not an attack on the arbitration provision merely because the notice of claim provision may procedurally bar plaintiff from pursuing his claims in arbitration. *See Nuclear Elec. Ins. Ltd. v. Central Power & Light Co.,* 926 F.Supp. 428, 435 (S.D.N.Y.1996) ("[A]t least some of the allegations that the contract is invalid [must] be specifically directed to the arbitration provision ... in order to permit the court to decide the issue.").

Similarly, plaintiff's contract of adhesion claim does not specifically address the arbitration provision. Rather, plaintiff contends that the circumstances under which the Agreement was signed demonstrate that defendants used "high pressure tactics" and " misleading" statements to force a "virtually one-sided" agreement on plaintiff. Pl. Mem. at 19-22. "Even though challenges are nominally made to the validity both of the arbitration clause and of the underlying contract, there must be allegations of at least some defects pertaining specifically to the arbitration clause itself, not solely as one of many clauses in an allegedly defective contract." 2 *Federal Arbitration Law* § 15.3.4, at 15:41.

### 2. Whether the Notice of Claim Provision is Arbitrable

Plaintiff argues that even if *Prima Paint* is

applicable,[FN7] paragraph 3(c) of the Agreement-which prohibits the arbitrator from " decid[ing] the justice or propriety of any specific provisions" of the Agreement-prevents the arbitrator from determining whether the notice of claim provision is unconscionable. Pl. Mem. at 18. Therefore, plaintiff contends, this issue must be determined by the Court, notwithstanding *Prima Paint.*Once again, plaintiff's argument is unconvincing.

> FN7. Plaintiff wrongly contends that *Prima Paint* has been implicitly overruled or limited by the Supreme Court in *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995). That case held that, unless the contract specifies otherwise, the scope of an arbitration clause is to be determined by the court, rather than the arbitrator. By contrast, the *Prima Paint* court held that challenges to the making of a contract-as opposed to the making of an arbitration provision-must be decided by the arbitrator. These two rulings are not in conflict. Indeed, following *First Options,* the Second Circuit has made clear that *Prima Paint* remains the law in this Circuit. *SeeSmith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l Inc.,* 198 F.3d 88, 99 (2d Cir.1999); *Campaniello Imps.,* 117 F.3d at 666-68. Leading commentators agree. *See* 2 *Federal Arbitration Law* § 15.3.1, at 15:11 (1999 Supp.) ("Nothing in *First Options...* suggests that the Supreme Court intends to undermine *Prima Paint.*").

It is well established that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...."*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-5 (1983). The Second Circuit has held that courts must construe arbitration clauses as broadly as possible, *seeS.A. Mineracao da Trinidade-Samitri v. Utah Int'l, Inc.,* 745 F.2d 190, 194 (2d Cir.1984), and that "language excluding certain disputes from arbitration must be 'clear and unambiguous' or ' unmistakably clear." ' *Wire Serv. Guild v. United*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                           Page 6

Not Reported in F.Supp.2d, 2001 WL 103433 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

*Press Int'l, Inc.,* 623 F.2d 257, 260 (2d Cir.1980).

**\*5** The language in paragraph 3(c) limiting the power of the arbitrator "to decide the justice or propriety of any specific provision[ ]" is too ambiguous to foreclose the arbitrability of plaintiff's unconscionability claim. Interpreting paragraph 3(c) as broadly as plaintiff suggests would create a conflict between that provision and paragraph 3(b) of the Agreement, which provides that the arbitration will be conducted in accordance with the JAMS rules. Specifically, JAMS Rule 20 provides that "[i]n determining the Award, the Arbitrator will apply applicable law, including relevant statutes and statutes of limitations, to the facts found at the Arbitration."JAMS Employment Arbitration Rules and Procedures ("JAMS Rules"), Ex. A to 11/27/00 Affidavit of Gerald D. Silver ("11/27/00 Silver Aff." ), at 9. A claim that a contractual provision is unconscionable falls within a state's "applicable law. " Because the Corporate Defendants drafted the Agreement, any ambiguity must be resolved against them. *SeeMastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 62 (1995) (applying common-law contract principles to interpret arbitration clause, including principle that ambiguities should be interpreted against the drafter); *PaineWebber Inc. v. Bybyk,* 81 F.3d 1193, 1199 (2d Cir.1996) (same). Therefore, despite its language, paragraph 3(c) does not prevent the arbitrator from determining that certain provisions of the Agreement are enforceable.

Moreover, in their reply memorandum of law, the Corporate Defendants stated:
Plaintiff's claim that the arbitrator would not have the power to decide the "unconscionability" of the " notice of claim" provision ... is grossly off the mark.. .. [T]he "justice or propriety" language at [paragraph] 3(c) of the ... Agreement in no way limits the arbitrator's power to determine whether a provision in the agreement is *enforceable.*

Defendants' Reply Memorandum of Law in Further Support of Their Motion to Compel Arbitration, Dismiss the Complaint and/or Stay Proceedings (" Def. Reply Mem.") at 4 (emphasis in original). Based on their representation to the Court and to plaintiff, the Corporate Defendants are estopped

from asserting in any arbitration proceeding to which plaintiff is a party that paragraph 3(c) prohibits the arbitrator from declaring the notice of claim provision unenforceable.

Accordingly, the Corporate Defendants' motion to compel arbitration is granted.[FN8]

> FN8. Plaintiff requests that the Court delay its ruling until after the Supreme Court's decision in *Circuit City Stores, Inc. v. Adams,* 194 F.3d 1070 (9th Cir.1999), *cert. granted,*68 U.S.L.W. 3536 (U.S. May 22, 2000) (No. 99-1379), where the Ninth Circuit held that the FAA does not apply to employment contracts. However, the Ninth Circuit's decision is directly contrary to the holding of every other United States Court of Appeals, including the Second Circuit. *SeeErving v. Virginia Squires Basketball Club,* 468 F.2d 1064, 1069 (2d Cir.1972) ( "In light of the strong national policy in favor of arbitration as a means of settling private disputes we see no reason to give an expansive interpretation to the exclusionary language of [FAA] Section 1. "). Because there is no reason to believe that the Supreme Court will deviate from the majority rule, there is no reason to delay ruling on defendants' motion to compel arbitration.

B. Stay of Proceedings

"Under Section 3 of the FAA, 9 U.S.C. § 3, a district court 'must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceedings." ' *WorldCrisa Corp. v. Armstrong,* 129 F.3d 71, 74 (2d Cir.1997) (quoting *McMahan Secs. Co. L.P. v. Forum Capital Mkts. L.P.,* 35 F.3d 82, 85 (2d Cir.1994)). As a result, the Corporate Defendants are entitled to a stay pending arbitration.

**\*6** However, Saslow is not a party to the Agreement and is not entitled to a stay of proceedings under Section 3 of the FAA. *SeeCitrus Mktg. Bd. of Israel v. J. Lauritzen A/S,* 943 F.2d 220, 224-25 (2d

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 7

Not Reported in F.Supp.2d, 2001 WL 103433 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Cir.1991). Nonetheless, Saslow seeks a stay pursuant to the Court's inherent power to control its docket. *SeeWorldCrisa Corp.,* 129 F.3d at 76 (" [D]istrict courts, despite the inapplicability of the FAA, may stay a case pursuant to 'the power inherent in every court to control the disposition of t he cases on its docket with economy of time and effort for itself, for counsel, and for litigants." ') (quoting *Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.,* 339 F.2d 440, 441 (2d Cir.1964)). A defendant seeking such a stay bears the "heavy burden" of demonstrating " 'to the satisfaction of the court that [he] ha[s] not taken nor will [he] take any steps to hamper the progress of the arbitration proceeding, that the arbitration may be expected to conclude within a reasonable time, and that such delay as may occur will not work undue hardship." ' *Sierra Rutile Ltd. v. Katz,* 937 F.2d 743, 750 (2d Cir.1991) (quoting *Nederlandse,* 339 F.2d at 442). The issuance of a stay is firmly within a district court's discretion. *SeeAmerican Shipping Line, Inc. v. Massan Shipping Indus., Inc.,* 885 F.Supp. 499, 502 (S.D.N.Y.1995).

Saslow has not satisfied the heavy burden of demonstrating that he is entitled to a stay. *First,* because an arbitration proceeding is not yet pending, it is impossible to predict whether the arbitration will conclude within a reasonable time. *Second,* the possibility remains that plaintiff's claims against the Corporate Defendants will be dismissed on procedural grounds.[FN9] Therefore, contrary to Saslow's contention, the Court may not " gain the benefit of the factual and legal findings of the arbitration."Saslow Mem. at 9. *Third,* a stay would work undue hardship on plaintiff. Saslow is the central actor in many of the events at issue in the arbitration-indeed, the allegations against him are the basis for plaintiff's claims against the Corporate Defendants. However, as a non-party witness in the arbitration, he cannot be compelled to appear at a pre-arbitration deposition.[FN10]*SeeIntegrity Ins. Co. v. American Centennial Ins. Co.,* 885 F.Supp. 69, 73 (S.D.N.Y.1995) (holding that the FAA does not authorize an arbitrator to compel non-party witnesses to appear for pre-arbitration depositions); *National Broad. Co. v. Bear Stearns & Co.,* 165 F.3d 184, 187-88 (2d Cir.1999) ("[O]pen questions remain as to whether [9 U.S.C.] § 7 may be invoked

as authority for compelling pre-hearing depositions and pre-hearing document discovery, especially where such evidence is sought from non-parties ."); *cf.*Fed.R.Civ.P. 45 (authorizing a district court to issue a subpoena commanding a non-party to attend a deposition or produce documents). The interests of justice and judicial economy require that discovery proceed in this action. Accordingly, Saslow's cross motion to stay this action pending arbitration is denied.

> FN9. The Corporate Defendants have represented that they will assert the defense that plaintiff has waived any claims that predate the Agreement. *See* Def. Reply Mem. at 2-3.

> FN10. JAMS Rule 17 permits arbitrators to subpoena nonparty witnesses only for the arbitration hearing, not pre-arbitration depositions. *See* JAMS Rules at 8.

### III. CONCLUSION

\*7 For the reasons stated above, the Corporate Defendants' motion to compel arbitration and stay this action against them is granted. Saslow's cross motion to stay this action pending arbitration is denied. A conference is scheduled for February 26, 2001 at 4:30 p.m.

This decision, however, does not effect the holding in *Prima Paint,* as some courts wrongly contended. *See, e.g.,Berger v.. Cantor Fitzgerald Secs.,* 942 F.Supp. 963, 965 (S.D.N.Y.1996); *Aviall, Inc.,* 913 F.Supp. at 831;*Maye v. Smith Barney, Inc.,* 897 F.Supp. 100, 106 n.3 (S.D.N.Y.1995).

S.D.N.Y.,2001.
Wright v. SFX Entertainment Inc.
Not Reported in F.Supp.2d, 2001 WL 103433 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

LEXSEE 2002 US APP LEXIS 14124



Analysis
As of: Nov 16, 2007

**SALIM OLEOCHEMICALS, INC., Plaintiff-Appellant, -v.- M/V SHROPSHIRE,
her engines, boilers, tackle, etc., BIBBY INTERNATIONAL SERVICES (IOM)
LTD., LANGSTON SHIPPING LTD, BOTANY BAY PARCEL TANKERS
INTERNATIONAL, BOTANY BAY MANAGEMENT SERVICES PTY LTD.,
Defendants-Appellees, LANGSTON SHIPPING, Claimant-Appellee.**

01-7624

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

**40 Fed. Appx. 626; 2002 U.S. App. LEXIS 14124**

**July 9, 2002, Decided**

**NOTICE:** [**1] RULES OF THE SECOND CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Writ of certiorari denied: Salim Oleochemicals v. M/V Shropshire, 2002 U.S. LEXIS 9269 (U.S. Dec. 16, 2002).

**PRIOR HISTORY:** Appeal from the United States District Court for the Southern District of New York (Buchwald, J.).
 Salim Oleochemicals v. M/V Shropshire, 169 F. Supp. 2d 194, 2001 U.S. Dist. LEXIS 5161 (S.D.N.Y. 2001)

**DISPOSITION:** Affirmed.

**COUNSEL:** APPEARING FOR APPELLANT: STEVEN P. CALKINS, Kingsley, Kingsley & Calkins, Hicksville, NY.

APPEARING FOR APPELLEES: J. SCOT PROVAN, Hill Rivkins & Hayden LLP, New York, NY.

**JUDGES:** PRESENT: HON. DENNIS JACOBS, HON. PIERRE N. LEVAL, HON. ROBERT A. KATZMANN, Circuit Judges.

**OPINION**

[*627] *SUMMARY ORDER*

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED**.

Plaintiff-Appellant Salim Oleochemicals, Inc., ("Salim") appeals from the order entered in the United States District Court for the Southern District of New York (Buchwald, *J.*) granting [**2] defendants-appellees' motion to compel arbitration. We affirm because Salim has failed to identify any error or abuse of discretion by the district court that warrants reversal or remand.

The judgment of the district court is hereby **AFFIRMED**.

Westlaw.

Not Reported in F.Supp.2d                                           Page 1

Not Reported in F.Supp.2d, 2002 WL 1543875 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Weiss v. Travex Corp.
S.D.N.Y.,2002.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Adam WEISS, Plaintiff,
v.
TRAVEX CORP. d/b/a U.S. Healthclean, and
Evangeline Yabut, individually and as owner,
Defendants.
**No. 02 CIV. 2380(SAS).**

July 12, 2002.

Employee claiming he was sexually harassed sued his employer and his supervisor under Title VII, and additionally asserted common law and state law claims. On a defense motion to dismiss or to stay the action and compel arbitration, The District Court, Scheindlin, J., held that: (1) arbitration clause in employment required the employee to arbitrate his claims, and (2) employee's claim of fraudulent inducement had to be heard by an arbitrator.

Motion to compel granted.
West Headnotes
[1] T ⇒146

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(B) Agreements to Arbitrate
            25Tk142 Disputes and Matters Arbitrable Under Agreement
                25Tk146 k. Employment Disputes. Most Cited Cases
        (Formerly 33k7.5 Arbitration)
Arbitration clause in employment contract, providing that, "all disputes and/or controversies arising out of [employee's] employment [***] shall be settled by binding arbitration," required the employee to arbitrate his Title VII and common law and state law claims regarding alleged sexual harassment. 9 U.S.C.A. § 2; Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

[2] T ⇒205

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(D) Performance, Breach, Enforcement, and Contest
            25Tk204 Remedies and Proceedings for Enforcement in General
                25Tk205 k. In General. Most Cited Cases
        (Formerly 33k23.7 Arbitration)

T ⇒199

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(D) Performance, Breach, Enforcement, and Contest
            25Tk197 Matters to Be Determined by Court
                25Tk199 k. Existence and Validity of Agreement. Most Cited Cases
        (Formerly 33k23.13 Arbitration)
Employee's claim of fraudulent inducement, specifically, that he had been "surreptitiously" induced to sign an employment contract without advice of counsel and was deceived as to the effect of an arbitration clause, had to be heard by an arbitrator, and thus, the employee would not be allowed discovery on the issue; his allegation did not show the requisite substantial relationship between the purported fraudulent conduct and his assent to the arbitration clause in particular. 9 U.S.C.A. § 4.

Lawrence A Kushnick, Esq., Kushnick & Associates, P.C., Melville, for Plaintiff.
Peter T. Shapiro, Esq., Jones, Hirsch, Connors & Bull P.C., New York, for Defendants.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2

Not Reported in F.Supp.2d, 2002 WL 1543875 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

MEMORANDUM OPINION AND ORDER
SCHEINDLIN, D.J.

## I. INTRODUCTION

*1 On January 27, 2002, Adam Weiss brought this action against his employer, Travex Corporation (" Travex"), and his supervisor, Evangeline Yabut, under the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), along with other common law and state law claims.[FN1] *See* Complaint ("Compl.") ¶¶ 43, 55, 67, 70, 76, 88, 97, 107, 112. Defendants now move to dismiss or stay the action and compel arbitration. *See* Defendants' Memorandum of Law in Support of the Motion to Dismiss ("Def.Mem.") at 1. For the reasons discussed below, defendants' motion is granted.

> FN1. Plaintiff identifies nine causes of action in his Complaint. *See* Compl. ¶¶ 43, 55, 67, 70, 76, 88, 97, 107, 112. Five of these claims are for violations of Title VII due to defendants' alleged sexual harassment. *See id.* ¶¶ 43, 88, 96, 107, 112.The remaining claims are for intentional infliction of emotional distress, breach of contract and harassment. *See id.* ¶¶ 55, 67, 70, 76.

## II. FACTUAL BACKGROUND

On March 14, 2000, plaintiff entered into an employment contract with Travex. *See* Employment Agreement between Weiss and Travex (the " Contract"), Ex. A to the Affidavit of Evangeline Yabut, § 1. Plaintiff and Yabut executed this Contract despite the "consensual, personal relationship" that existed between them at the time. *Id.* The Contract contains the following language: [Plaintiff and defendants] hereby agree that *all* disputes and/or controversies arising out of Mr. Weiss's employment with [Travex], including, without limitation, any and all disputes as to the interpretation of this agreement and any and all claims arising under any federal, state, or local statute or the common law, including but not limited to Title VII ... the New York State Human Rights Law, and/or the New York City Human Rights Statutes shall be settled by binding arbitration.

Contract § 9 (emphasis in original).

Plaintiff alleges that Yabut and her attorney, Elliot Mendel, demanded that he sign the Contract as a condition of his employment. *See* Affidavit of Adam Weiss ("Weiss Aff."), Attachment to Affirmation of Lawrence Kushnick, plaintiff's attorney, in Opposition to Defendants' Motion, ¶ 3. Plaintiff further claims that he "was never afforded the opportunity to have this [Contract] reviewed by an attorney, and [he] was never afforded the opportunity to discuss this matter with an attorney." *Id.* ¶ 4. Plaintiff alleges that his signature was fraudulently induced because he lacked the advice of counsel and was unaware that the arbitration clause operated as a forfeiture of his rights to discovery and a trial. *See id.* ¶¶ 5-6.

In July 2000, plaintiff terminated his "consensual, sexual and personal relationship" with Yabut. Compl. ¶¶ 17-18.Soon after, plaintiff alleges that Yabut demanded sexual contact with him and engaged in further acts of sexual harassment. *See id.* ¶¶ 20-21.Plaintiff claims he spurned Yabut's advances and was fired on May 4, 2001 as a result. *See id.* ¶¶ 23-24.

On July 12, 2001, plaintiff filed a discrimination claim with the Equal Employment Opportunity Commission ("EEOC").*See id.* ¶ 13; 3/13/02 EEOC Notice of Right to Sue ("EEOC Letter"), Attachment to Compl. On March 13, 2002, plaintiff received a right-to-sue letter from the EEOC. *See* EEOC Letter. Plaintiff brought this action two weeks later.

## III. STANDARD OF REVIEW

*2 To compel arbitration, a court must find that: (1) the parties agreed to arbitrate; and (2) the arbitration clause encompasses the claims at issue. *See Raiola v. Union Bank of Switzerland, LLC,* 47 F.Supp.2d 499, 502 (S.D.N.Y.1999) (citing *Bird v. Shearson Lehman/American Express, Inc.,* 926 F.2d 116, 118 (2d Cir.1991)).[FN2] The Federal

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 3

Not Reported in F.Supp.2d, 2002 WL 1543875 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Arbitration Act states that "an agreement in writing to submit to arbitration ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."9 U.S.C. § 2.

> FN2. Courts traditionally decide two other issues before compelling arbitration: (1) whether the claims brought under a particular statute were intended by Congress to be arbitrable; and (2) whether to stay a case if some of the claims are not arbitrable. *See Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 844 (2d Cir.1987). It is well settled that Title VII claims are arbitrable. *See Raiola,* 47 F.Supp.2d at 505 (citing cases). Because all of plaintiff's claims are arbitrable, there is no need to decide whether to grant a stay. *See id.* at n. 2.

To find a valid agreement to arbitrate, a court must apply the "generally accepted principles of contract law."*Genesco,* 815 F.2d at 845. "[A] party is bound by the provisions of a contract that he signs, unless he can show special circumstances that would relieve him of such obligation."*Id.* A court should consider only "whether there was an objective agreement with respect to the entire contract."*Id.*

To determine the scope of the arbitration agreement, "arbitration clauses must be construed ' as broadly as possible' and arbitration should be ordered" unless there is no "interpretation that covers the asserted dispute."*Raiola,* 47 F.Supp.2d at 502 (quoting *McMahan Sec. Co. L.P. v. Forum Capital Markets L.P.,* 35 F.3d 82, 88 (2d Cir.1994) ). All questions about " 'the scope of arbitrable issues should be resolved in favor of arbitration." ' *Raiola,* 47 F.Supp.2d at 502 (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-5, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ).

"Claims regarding fraud in a contract containing an arbitration clause are, for the most part, also subject to arbitration."*Garten v. Kurth,* 265 F.3d 136, 142 (2d Cir.2001) (citing *Campaniello Imports, Ltd. v.*

*Saporiti Italia, S.p.A.,* 117 F.3d 655, 666 (2d Cir.1997)). Courts "should consider the question of fraud only in the *arbitration clause itself* " and " courts may not adjudicate claims of fraud in the inducement of the contract generally."*Garten,* 265 F.3d at 142-43 (internal quotation marks and citations omitted). There must be "some substantial relationship between the fraud or misrepresentation and the arbitration clause in particular" for a court to retain jurisdiction over an arbitrable dispute. *Campaniello,* 117 F.3d at 667. If there is no evidence of fraud specific to the arbitration clause, " the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement ."*Garten,* 265 F.3d at 142 (citing 9 U.S.C. § 4).

## IV. DISCUSSION

### A. Defendants' Motion to Compel Arbitration Must Be Granted

[1] Defendants move to compel arbitration because plaintiff executed the Contract, which contained a clause requiring that all disputes be settled by binding arbitration. *See* Contract § 9; Def. Mem. at 1. Plaintiff and defendants signed the Contract. Because parties are deemed to agree to and understand the terms of the contracts they sign, plaintiff is bound to arbitrate any dispute arising out of his employment with Travex. See, e.g., *Halligan v. Piper Jaffray, Inc.,* 148 F.3d 197, 200 n. 2 (2d Cir.1998) (holding that an employee who signed a contract with a broad arbitration clause had agreed to resolve his age discrimination claim through arbitration).

***3** Plaintiff's claims are within the scope of the arbitration clause of the Contract. This clause specifically provides that "*all* disputes and/or controversies arising out of Mr. Weiss's employment ... shall be settled by binding arbitration." Contract § 9. The clause covers all Title VII claims, as well as New York State law claims and the common law claims alleged in the Complaint. *See id.*Because all of plaintiff's claims arose from his employment with Travex, plaintiff is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.