# EXHIBIT A

3/7/05 — 6/30/07

# EMPLOYMENT AGREEMENT

This Employment Agreement is entered into and effective this 7th day of March, 2005 (the "Effective Date") between Katz Communications, Inc. (the "Company" or "Katz") and Ralph Herrera (the "Employee").

WHEREAS, the Company and the Employee desire to enter into an employment relationship under the terms and conditions set forth in this Agreement;

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

## 1. TERM OF EMPLOYMENT.

The Employee's term of employment starts on the Effective Date and ends on the close of business on 30th day of June, 2007 (the "Initial Term").

## 2. TITLE AND DUTIES.

The Employee's title is Sales Manager, Univision Radio Sales. The Employee will perform job duties that are usual and customary for this position, and will perform additional services and duties that the Company may from time to time designate that are consistent with the usual and customary duties of this position. The Employee will report to the VP/General Sales Manager of Univision Radio Sales. The Employee will devote his full working time and efforts to the business and affairs of the Company.

## 3. COMPENSATION AND BENEFITS

(a)  Base Salary. The Company will pay the Employee an annual base salary of Ninety-Four Thousand Seven Hundred Sixty Dollars and No Cents ($94,760.00). The Employee will be eligible for annual raises commensurate with company policy, which policy may change at the Company's sole discretion. All payments of base salary will be made in installments according to the Company's regular payroll practice, prorated monthly or weekly where appropriate, and subject to any increases that are determined to be appropriate by the Board or the CEO of Katz.

(b)  Sales Commission Override. During the Term of Employment, beginning with the calendar year 2005, Employee shall be entitled to participate in the Sales Commission Override Program established each year for Univision Radio. The criteria for said Sales Commission Override will be established by the CEO of Katz. Target Sales Commission Override for 2005 will be $23,690.00 subject to the achievement of the criteria established and achievement of individual goals and objectives as determined by the CEO of Katz. Sales Commission Override will be paid quarterly in arrears on May 15, August 15, November 30 and February 15.

(c)  Employment Benefit Plans. The Employee will be entitled to participate in all pension, profit sharing, and other retirement plans, all incentive compensation plans, and all group health, hospitalization and disability or other insurance plans, paid vacation, sick leave and

other employee welfare benefit plans in which other similarly situated employees of the Company may participate, as stated in the employee guide.

(d)     Expenses. The Company will pay or reimburse the Employee for all normal and reasonable travel and entertainment expenses incurred by the Employee in connection with the Employee's responsibilities to the Company upon submission of proper vouchers in accordance with the Company's expense reimbursement policy.

(e)     Signing Bonus. As further consideration for entering into this Employment Agreement, Company shall pay a one-time lump sum cash bonus equal to $5,000.00, less appropriate withholding taxes, upon the signing of this Employment Agreement.

## 4.     NONDISCLOSURE OF CONFIDENTIAL INFORMATION.

During the course of the Employee's employment with the Company, the Company will provide the Employee with access to certain confidential information, trade secrets, and other matters which are of a confidential or proprietary nature, including but not limited to the Company's customer lists, contracts, representation agreements, pricing information, production and cost data, compensation and fee information, strategic business plans, budgets, financial statements, and other information the Company treats as confidential or proprietary (collectively the "Confidential Information"). The Company provides on an ongoing basis such Confidential Information as the Company deems necessary or desirable to aid the Employee in the performance of his duties. The Employee understands and acknowledges that such Confidential Information is confidential and proprietary, and agrees not to disclose such Confidential Information to anyone outside the Company except to the extent that (i) the Employee deems such disclosure or use reasonably necessary or appropriate in connection with performing his duties on behalf of the Company; (ii) the Employee is required by order of a court of competent jurisdiction (by subpoena or similar process) to disclose or discuss any Confidential Information, provided that in such case, the Employee shall promptly inform the Company of such event, shall cooperate with the Company in attempting to obtain a protective order or to otherwise restrict such disclosure, and shall only disclose Confidential Information to the minimum extent necessary to comply with any such court order; or (iii) such Confidential Information becomes generally known to and available for use in the industries in which the Company does business, other than as a result of any action or inaction by the Employee. The Employee further agrees that he will not during employment and/or at any time thereafter use such Confidential Information in competing, directly or indirectly, with the Company. At such time as the Employee shall cease to be employed by the Company, he will immediately turn over to the Company all Confidential Information, including papers, documents, writings, electronically stored information, other property, and all copies of them, provided to or created by him during the course of his employment with the Company. This nondisclosure covenant is binding on the Employee, as well as his heirs, successors, and legal representatives, and will survive the termination of this Agreement for any reason.

## 5.     NONHIRE OF COMPANY EMPLOYEES.

To further preserve the rights of the Company pursuant to the nondisclosure covenant discussed above, and for the consideration promised by the Company under this Agreement, during the term of the Employee's employment with the Company and for a period of 90 days if terminated without cause, or for a period of twelve (12) months if terminated for any other

2

reason, the Employee will not, directly or indirectly, (i) hire any current or prospective employee of the Company, or any subsidiary or affiliate of the Company (including, without limitation, any current or prospective employee of the Company within the 6-month period preceding the Employee's last day of employment with the Company or within the 12-month period of this covenant) who worked, works, or has been offered employment by the Company; (ii) solicit or encourage any such employee to terminate their employment with the Company, or any subsidiary or affiliate of the Company; or (iii) solicit or encourage any such employee to accept employment with any business, operation, corporation, partnership, association, agency, or other person or entity with which the Employee may be associated. If, during the term of this non-hire covenant, the Employee learns that any such employee has accepted employment with any business, operation, corporation, partnership, association, agency, or other person or entity with which the Employee may be associated (other than the Company), the Employee will immediately send notice to the Company identifying the employee and certifying that the Employee did not breach any provision of this non-hire covenant.

6.    **NON-COMPETITION.**

To further preserve the rights of the Company pursuant to the nondisclosure covenant discussed above, and for the consideration promised by the Company under this Agreement, during the Employee's employment with the Company and for a period of six (6) months thereafter, regardless of the reason for termination of employment, the Employee will not, directly or indirectly, as an owner, director, principal, agent, officer, employee, partner, consultant, servant, or otherwise, carry on, operate, manage, control, or become involved in any manner with any business, operation, corporation, partnership, association, agency, or other person or entity which is in the same business as the Company, specifically a media representation firm, or enter into the employment of, perform services for, enter into any oral or written agreement for services, or give or accept an option for services, enter into the employment of, perform services for or grant or receive future rights of any kind to provide services to or from any person or entity engaged in any distribution of audio, video and/or data content, whether such distribution is in the form of analog, digital, cellular, broadband, streaming, "high definition" or otherwise, and whether such distribution is received via radio, television, cable, internet, satellite, wireless or otherwise, in any location in which the Company, or any subsidiary or affiliate of the Company, operates or has plans or has projected to operate during the Employee's employment with the Company, including any area within a 50-mile radius of any such location. The foregoing shall not prohibit the Employee from owning up to 5.0% of the outstanding stock of any publicly held company. Notwithstanding the foregoing, after the Employee's employment with the Company has terminated, upon receiving written permission by the Board, the Employee shall be permitted to engage in such competing activities that would otherwise be prohibited by this covenant if such activities are determined in the sole discretion of the Board in good faith to be immaterial to the operations of the Company, or any subsidiary or affiliate of the Company, in the location in question.

To further preserve the rights of the Company pursuant to the nondisclosure covenant discussed above, and for the consideration promised by the Company under this Agreement, during the term of the Employee's employment with the Company and for a period of twelve (12) months thereafter, regardless of the reason for termination of employment, the Employee will not, directly or indirectly, either for himself or for any other business, operation, corporation, partnership, association, agency, or other person or entity, call upon, compete for, solicit, divert, or take away, or attempt to divert or take away current or prospective customers

3

JAN-30-2007  18:48        KATZ HUMAN RESOURCES              212 424 6110   P.05/10

(including, without limitation, any customer with whom the Company, or any subsidiary or affiliate of the Company, (i) has an existing agreement or business relationship; (ii) has had an agreement or business relationship within the six-month period preceding the Employee's last day of employment with the Company; or (iii) has included as a prospect in its applicable pipeline) of the Company, or any subsidiary or affiliate of the Company.

The Company and the Employee agree that the restrictions contained in this noncompetition covenant are reasonable in scope and duration and are necessary to protect the Company's business interests and Confidential Information. If any provision of this noncompetition covenant as applied to any party or to any circumstance is adjudged by a court or arbitrator to be invalid or unenforceable, the same will in no way affect any other circumstance or the validity or enforceability of this Agreement. If any such provision, or any part thereof, is held to be unenforceable because of the scope, duration, or geographic area covered thereby, the parties agree that the court or arbitrator making such determination shall have the power to reduce the scope and/or duration and/or geographic area of such provision, and/or to delete specific words or phrases, and in its reduced form, such provision shall then be enforceable and shall be enforced. The parties agree and acknowledge that the breach of this noncompetition covenant will cause irreparable damage to the Company, and upon breach of any provision of this noncompetition covenant, the Company shall be entitled to injunctive relief, specific performance, or other equitable relief; provided, however, that this shall in no way limit any other remedies which the Company may have (including, without limitation, the right to seek monetary damages).

Should the Employee violate the provisions of this noncompetition covenant, then in addition to all other rights and remedies available to the Company at law or in equity, the duration of this covenant shall automatically be extended for the period of time from which the Employee began such violation until he permanently ceases such violation

7.   **TERMINATION.**

The Employee's employment with the Company may be terminated under the following circumstances:

(a)   Death.   The Employee's employment with the Company shall terminate upon his death.

(b)   Disability.   The Company may terminate the Employee's employment with the Company if, as a result of the Employee's incapacity due to physical or mental illness, the Employee is unable to perform his duties under this Agreement on a full-time basis for more than 90 days in any 12 month period, as determined by the Company.

(c)   Termination By The Company.   The Company may also terminate his employment for Cause. A termination for Cause must be for one or more of the following reasons: (i) conduct by the Employee constituting a material act of willful misconduct in connection with the performance of his duties, including, without limitation, violation of the Company's policy on sexual harassment, misappropriation of funds or property of the Company or any of its affiliates other than the occasional, customary and de minimis use of Company property for personal purposes, or other willful misconduct as determined in the sole discretion of the Company; (ii) non-performance by the Employee of his duties hereunder (other than by

4

Case 2:07-cv-08426-JSR     Document 7     Filed 12/07/2007     Page 6 of 18

Case 1:07-cv-08426-JSR     Document 5-3     Filed 11/19/2007     Page 6 of 25
JAN-30-2007  18:49        KATZ HUMAN RESOURCES                212 424 6118    P.06/10

reason of the Employee's physical or mental illness, incapacity or disability) where such non-performance has continued for more than 10 days following written notice of such non-performance; (iii) the Employee's refusal or failure to follow lawful directives where such refusal or failure has continued for more than 30 days following written notice of such refusal or failure; (iv) a criminal or civil conviction of the Employee, a plea of nolo contendere by the Employee, or other conduct by the Employee that, as determined in the sole discretion of the Board, has resulted in, or would result in if he were retained in his position with the Company, material injury to the reputation of the Company, including, without limitation, conviction of fraud, theft, embezzlement, or a crime involving moral turpitude; (v) a breach by the Employee of any of the provisions of this Agreement; or (vi) a violation by the Employee of the Company's employment policies.

## 8.    COMPENSATION UPON TERMINATION.

(a)    **Death.** If the Employee's employment with the Company terminates by reason of his death, the Company will, within 90 days, pay in a lump sum amount to such person as the Employee shall designate in a notice filed with the Company or, if no such person is designated, to the Employee's estate, the Employee's accrued and unpaid base salary and prorated bonus, if any, and any payments to which the Employee's spouse, beneficiaries, or estate may be entitled under any applicable employee benefit plan (according to the terms of such plans and policies).

(b)    **Disability.** If the Employee's employment with the Company terminates by reason of his disability, the Company shall, within 90 days, pay in a lump sum amount to the Employee his accrued and unpaid base salary and prorated bonus, if any, and any payments to which he may be entitled under any applicable employee benefit plan (according to the terms of such plans and policies).

(c)    **Termination By The Company For Cause.** If the Employee's employment with the Company is terminated by the Company for Cause, the Company will, within 90 days, pay in a lump sum amount to the Employee his accrued and unpaid base salary and any payments to which he may be entitled under any applicable employee benefit plan (according to the terms of such plans and policies).

(d)    **Termination By The Company Without Cause.** If the Employee's employment with the Company is terminated by the Company without Cause, the Company will, within 90 days, pay in a lump sum amount to the Employee his accrued and unpaid base salary and prorated bonus, if any, and any payments to which he may be entitled under any applicable employee benefit plan (according to the terms of such plans and policies). In addition, if the Employee signs a general release of claims in a form and manner satisfactory to the Company, the Company will, within 90 days, pay to the Employee a lump sum equal to the greater of (1) six months of the Employee's annual base salary; or (2) the amount equal to Employee's salary for the remainder of the Employment Period of the Agreement.

(e)    **Effect Of Compliance With Compensation Upon Termination Provisions.** Upon complying with Subparagraphs 8(a) through 8(d) above, as applicable, the Company will have no further obligations to the Employee except as otherwise expressly provided under this Agreement, provided that such compliance will not adversely affect or alter the Employee's rights under any employee benefit plan of the Company in which the Employee has a vested

JAN-30-2007  18:50    KATZ HUMAN RESOURCES    212 424 6110    P.07/10

interest, unless, otherwise provided in such employee benefit plan or any agreement or other instrument attendant thereto.

### 9.    PARTIES BENEFITED; ASSIGNMENTS.

This Agreement shall be binding upon the Employee, his heirs and his personal representative or representatives, and upon the Company and its respective successors and assigns. Neither this Agreement nor any rights or obligations hereunder may be assigned by the Employee, other than by will or by the laws of descent and distribution.

### 10.    GOVERNING LAW.

This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York without giving effect to any choice of law or conflict provisions or rule (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New York and the Employee hereby expressly consents to the personal jurisdiction of the state and federal courts located in the State of New York for any lawsuit arising from or relating to this Agreement.

### 11.    DEFINITION OF COMPANY.

As used in this Agreement, the term "Company" shall include Katz Communications, Inc., Clear Channel Communications, Inc., and any of its past, present and future divisions, operating companies, subsidiaries and affiliates.

### 12.    LITIGATION AND REGULATORY COOPERATION.

During and after the Employee's employment, the Employee shall reasonably cooperate with the Company in the defense or prosecution of any claims or actions now in existence or which may be brought in the future against or on behalf of the Company which relate to events or occurrences that transpired while the Employee was employed by the Company; provided, however, that such cooperation shall not materially and adversely affect the Employee or expose the Employee to an increased probability of civil or criminal litigation. The Employee's cooperation in connection with such claims or actions shall include, but not be limited to, being available to meet with counsel to prepare for discovery or trial and to act as a witness on behalf of the Company at mutually convenient times. During and after the Employee's employment, the Employee also shall cooperate fully with the Company in connection with any investigation or review of any federal, state or local regulatory authority as any such investigation or review relates to events or occurrences that transpired while the Employee was employed by the Company. The Company will pay the Employee on an hourly basis (to be derived from his base salary) for requested litigation and regulatory cooperation that occurs after his termination of employment, and reimburse the Employee for all costs and expenses incurred in connection with his performance under this paragraph, including, but not limited to, reasonable attorneys' fees and costs.

### 13.    INDEMNIFICATION AND INSURANCE; LEGAL EXPENSES.

The Company shall indemnify the Employee to the fullest extent permitted by law, in effect at the time of the subject act or omission, and shall advance to the Employee reasonable attorneys' fees and expenses as such fees and expenses are incurred (subject to an undertaking

6

Case 2:07-cv-08426-JSR    Document 7    Filed 12/07/2007    Page 8 of 18

Case 1:07-cv-08426-JSR    Document 5-3    Filed 11/19/2007    Page 8 of 25
JAN-30-2007  18:50      KATZ HUMAN RESOURCES            212 424 6110    P.08/10

from the Employee to repay such advances if it shall be finally determined by a judicial decision which is not subject to further appeal that the Employee was not entitled to the reimbursement of such fees and expenses), and the Employee will be entitled to the protection of any insurance policies that the Company may elect to maintain generally for the benefit of its directors and officers against all costs, charges and expenses incurred or sustained by him in connection with any action, suit or proceeding to which he may be made a party by reason of his being or having been a director, officer or employee of the Company or any of its subsidiaries, or his serving or having served any other enterprise as a director, officer or employee at the request of the Company (other than any dispute, claim or controversy arising under or relating to this Agreement). The Company covenants to maintain during the Employee's employment for the benefit of the Employee (in her capacity as an officer and director of the Company) Directors and Officers Insurance providing benefits to the Employee no less favorable, taken as a whole, than the benefits provided to the other similarly situated employees of the Company by the Directors and Officers Insurance maintained by the Company on the date hereof; provided, however, that the Board may elect to terminate Directors and Officers Insurance for all officers and directors, including the Employee, if the Board determines in good faith that such insurance is not available or is available only at unreasonable expense.

## 14. ARBITRATION.

The parties agree that any dispute, controversy or claim, whether based on contract, tort, statute, discrimination, retaliation, or otherwise, relating to, arising from or connected in any manner to this Agreement, or to the alleged breach of this Agreement, or arising out of or relating to Employee's employment or termination of employment, shall, upon timely written request of either party be submitted to and resolved by binding arbitration. The arbitration shall be conducted in New York, New York. The arbitration shall proceed in accordance with the National Rules for Resolution of Employment Disputes of the American Arbitration Association ("AAA") in effect at the time the claim or dispute arose, unless other rules are agreed upon by the parties. Unless otherwise agreed to by the parties in writing, the arbitration shall be conducted by one arbitrator who is a member of the AAA and who is selected pursuant to the methods set out in the National Rules for Resolution of Employment Disputes of the AAA. Any claims received after the applicable/relevant statute of limitations period has passed shall be deemed null and void. The award of the arbitrator shall be a reasoned award with findings of fact and conclusions of law. Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement, to enforce an arbitration award, and to vacate an arbitration award. However, in actions seeking to vacate an award, the standard of review to be applied by said court to the arbitrator's findings of fact and conclusions of law will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury. The Company will pay the actual costs of arbitration excluding attorney's fees. Each party will pay its own attorneys fees and other costs incurred by their respective attorneys.

## 15. REPRESENTATIONS AND WARRANTIES OF THE EMPLOYEE.

The Employee represents and warrants to the Company that he is under no contractual or other restriction which is inconsistent with the execution of this Agreement, the performance of his duties hereunder or the other rights of Company hereunder. The Employee also represents and warrants to the Company that he is under no physical or mental disability that would hinder the performance of his duties under this Agreement. The Employee represents and warrants to the Company that all terms and conditions of this Agreement shall be kept strictly confidential. 

7

### 16.    MISCELLANEOUS.

This Agreement contains the entire agreement of the parties relating to the subject matter hereof. This Agreement supersedes any prior written or oral agreements or understandings between the parties relating to the subject matter hereof. No modification or amendment of this Agreement shall be valid unless in writing and signed by or on behalf of the parties hereto. The failure of a party to require performance of any provision of this Agreement shall in no manner affect the right of such party at a later time to enforce any provision of this Agreement. A waiver of the breach of any term or condition of this Agreement shall not be deemed to constitute a waiver of any subsequent breach of the same or any other term or condition. This Agreement is intended to be performed in accordance with, and only to the extent permitted by, all applicable laws, ordinances, rules and regulations. If any provision of this Agreement, or the application thereof to any person or circumstance, shall, for any reason and to any extent, be held invalid or unenforceable, such invalidity and unenforceability shall not affect the remaining provisions hereof or the application of such provisions to other persons or circumstances, all of which shall be enforced to the greatest extent permitted by law. The headings in this Agreement are inserted for convenience of reference only and shall not be a part of or control or affect the meaning of any provision hereof.

### 17. KEYMAN TERMINATION OPTION

In the event Laura Hagan ("Hagan") is no longer employed at Katz, Employee may elect to terminate this Employment Agreement by providing notice to the Company within 90 days from the date Hagan's employment is terminated. If Employee makes such election and provides timely notice this Employment Agreement will terminate and the provisions of Paragraph 6 of this Agreement restricting the Employee from competing with the Company will be waived. Notwithstanding the foregoing, Employee will still be bound by the provisions of Paragraph 6 of this Agreement related to disclosure of Confidential Information.

IN WITNESS WHEREOF, the parties have duly executed and delivered this Agreement as of the date first written above.

DATE: 5-14-05                              RALPH HERRERA


                                           KATZ COMMUNICATIONS, INC.

DATE: 4-28-05                    By:
                                           STU OLDS
                                           CHIEF EXECUTIVE OFFICER

8

# EXHIBIT B

# ARBITRATION AGREEMENT

If you and the Company have a legal dispute (i.e., a dispute that could otherwise be brought in court) and we can't resolve it through our Open Door Policy, then we will use arbitration. Private arbitration is a more efficient, less expensive, and usually faster way to resolve disputes than through a traditional lawsuit in state or federal court. Accordingly, we require that new, non-union employees sign an agreement promising that all covered claims as defined in this Agreement, will be submitted to final and binding determination by an impartial arbitrator under the Employment Dispute Resolution Rules of the American Arbitration Association. The Arbitration Agreement becomes effective immediately upon hire or six weeks following the date of close if employee gains Clear Channel/Eller employment by means of a Company acquisition.

Employees are still protected by all applicable employment laws, and are merely agreeing to have certain employment-related claims decided by a private arbitrator rather than by a judge or jury. *Employees are not giving up any substantive rights to recover damages.* All non-union employees are deemed to have agreed to this Arbitration Agreement by accepting or continuing employment with this Company (including raises, promotions, bonuses, etc.).

Arbitration is the procedure used for the resolution of certain covered claims that may arise between the Company and employees. In the interest of a prompt and fair resolution of these claims, each employee is required to enter into this Agreement in exchange for employment with the Company and the Company's agreement to resolve these claims in the same manner.

Many of the disputes or claims that might possibly arise between the Company and an employee could be made the subject of a formal charge or complaint before a state or federal agency and/or the subject of a lawsuit in a state or federal court. In most such cases, either party (the Company or employee) could ultimately have the case tried before a jury upon request.

By this Arbitration Agreement, however, employees give up their right to sue the Company, and the Company is giving up its right to sue employees in court, as well as the right to trial by jury. Instead, the Company and employees hereby agree that any covered legal claim that either may have against or with the other will be submitted solely to a private, impartial arbitrator (a "private judge," so to speak) for a final and binding decision.

## Scope of the Arbitration Agreement

As a condition of employment with the Company, each employee hereby *waives his/her right to sue* the Company, and the Company hereby waives its right to sue the employee, for any claim or cause of action covered by this Agreement. In lieu of suing, any such legal dispute may instead be submitted for final and binding resolution by a private, impartial arbitrator. The arbitration shall be governed by the Employment

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

1

Dispute Resolution Rules of the American Arbitration Association. A copy of these rules is available for each employee to review.

Nothing in this Agreement is intended to prohibit the Employee from filing a claim or communicating with any governmental agency including the Equal Employment Opportunity Commission or the Department of Labor.

**Covered Claims:**

This Agreement covers the following potential claims:

1. Any dispute regarding the arbitrability of any such claim;

2. Any dispute regarding this Agreement, including but not limited to its enforceability, scope or terms;

3. Any claim that could be asserted by Employee or Company in any state or federal civil court or before an administrative agency, including without limitation, claims for breach of any contract or covenant, express or implied; assault, battery, invasion of privacy, defamation of character, infliction of emotional distress, tortious interference with contract, or other tort claims, including any claim that an employee was injured or damaged because of the negligence of the Company or any of its employees; and claims for unlawful discharge and/or for violation of any federal, state or local law, statute, ordinance or regulation, or common law;

4. Any claim for discrimination, including but not limited to discrimination because of sex, pregnancy, race, national or ethnic origin, age, religion, creed, marital status, sexual harassment, sexual orientation, mental or physical disability or medical condition or other characteristics protected by statute;

5. Any claim of retaliation or discrimination against the Company for opposing the violation of any federal, state or local statute or ordinance, including but not limited to the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, state workers' compensation law or any "whistleblower" law; and

6. Any claim for commissions, wages, bonuses or any other form of compensation.

**Claims Not Covered:**

This Agreement does not cover:

1. Claims for workers' compensation benefits.

2. Claims for unemployment compensation benefits.

Form 4117
Arbitration Agreement
Sep Doo
7/11/01

2

3.    Claims for benefits based upon the Company's employee welfare benefit plans, if the plan contains a final and binding appeal procedure for the resolution of disputes under the plan.

4.    Claims for injunctive and/or other equitable relief, including but not limited to claims to enforce a covenant not to compete or for unfair competition or use or unauthorized disclosure of trade secrets or confidential information as contained in express written agreements.

5.    Wage and hour disputes within the jurisdiction of any state Labor Commissioner.

6.    Any claims not specifically listed as a "Covered Claim".

### Rules Governing the Arbitration

1.    **Demand for Arbitration**

Any party to an Arbitration Agreement may initiate arbitration by serving upon the other party, by certified mail, a written notice containing a specific request to enter into arbitration. The written request shall identify and describe the nature of each claim asserted, the facts upon which each claim is based, and the relief or remedy sought. Written notice to the Employee will be sent to the most recent address contained in the Employee's personnel file. Written notice to the Company shall be sent to:

Clear Channel
General Counsel
200 East Basse
San Antonio, Texas 79209

Promptly after sending or receiving a written request to arbitrate a Covered Claim, the Company shall notify the American Arbitration Association ("AAA") that a demand for arbitration has been made and shall request that the AAA provide the parties with a list of arbitrators, as specified below. If, on the date that an arbitration demand is postmarked, any claim made in the demand would be barred by the applicable statute of limitations, that claim shall be deemed barred for purposes of arbitration.

An arbitration is also initiated by the receipt by AAA of an order from a court compelling arbitration. For purposes of the statute of limitations, the arbitration is deemed initiated on the date that the order compelling arbitration is issued by the court, or as otherwise ordered by the court.

2.    **Selecting an Arbitrator**

The arbitration will be held under the auspices of AAA in or near the city in which the Employee or former Employee, who is party to the arbitration, is or was last employed by the Company. The parties may, however, agree on an alternative location

3

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

If the AAA does not have an available office with a hearing room in or near such city, the arbitration shall be conducted in a meeting room in a hotel in such city.

Except as otherwise provided in this Agreement, the arbitration shall be in accordance with the AAA's Employment Dispute Resolution Rules that are in effect at the time that the demand for arbitration is made. The arbitrator shall be either a retired judge or an experienced attorney licensed to practice law in the state in which the arbitration is to be convened.

Promptly upon receipt of notice from the Company that arbitration has been initiated, AAA will provide each party with an identical list of eleven (11) arbitrators from its panel of employment dispute arbitrators. (For purposes of arbitrator selection, all defendants, whether or not separately represented, shall be deemed one party). Within ten (10) calendar days from the postmark date on the AAA list, the parties or their representatives will meet or participate in a telephone conference to select an arbitrator. At such time, the parties shall alternately strike the name of an arbitrator on the list (the party initiating arbitration shall strike first) until only one name remains. This remaining name shall be the arbitrator. If a party refuses to timely participate in such a meeting or telephone conference, the other party may select an arbitrator from the list provided by AAA. If the arbitrator designated by this process declines or is unable to serve, the selection process shall be repeated with a new list of eleven (11) arbitrators from AAA.

### 3.    Hearing Date

The arbitrator will promptly set a hearing date and time and will mail written notice to each of the parties at least sixty (60) days in advance of the hearing unless the parties otherwise agree or mutually waive notice.

### 4.    Depositions and Other Discovery

Each party at their own expense shall have the right to take up to three (3) depositions unless the arbitrator, on a showing of good cause, approves additional depositions. Each party also shall have the right to require the production of relevant documents from the other party. Unresolved discovery disputes will be presented to the arbitrator for final resolution. All discovery shall be concluded within 45 days from the date the arbitrator is informed of his or her selection.

### 5.    Witnesses and Exhibits

No later than fifteen (15) days before the arbitration, the parties will exchange lists of witnesses, including any experts, and copies of all exhibits intended to be used at the arbitration. Each party shall have the right to subpoena witnesses and documents for the arbitration as well as documents relevant to the case from third parties.

6.    Pre-Hearing Procedures

The arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person, as the arbitrator deems necessary. The arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure.

7.    Briefs

Either party, upon request at the close of the hearing, shall be given leave to file a post-hearing brief. The time for filing such a brief shall be set by the arbitrator.

8.    Filing Fee

The Company will pay for the AAA filing fee and expenses of the arbitrator and AAA for administering the arbitration, except as expressly provided herein. The employee shall be responsible for their own attorney's fees, costs, and expenses, such as those incurred in discovery.

9.    The Arbitration Hearing

A.    Conduct of the Hearing

The arbitrator shall preside at the hearing and rule on the admission and exclusion of evidence and questions of procedure, and exercise other such powers as conferred by statute. Judicial rules relating to the order of proof, the conduct of the hearing and the presentation of admissibility of evidence will not be applicable. The arbitrator shall admit any relevant evidence if it is of the sort that reasonable persons are accustomed to relying upon in the conduct of serious affairs, regardless of the admissibility of such evidence in a court of law.

B.    The Law the Arbitrator will Apply

The arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the state law claim arose, or federal law of the circuit in which the federal law claim arose, or both, as applicable to the claim(s) asserted. The arbitrator is without jurisdiction to apply any different substantive law or law of remedies. The arbitrator may not disregard or alter the Company's rules or policies unless the arbitrator determines that a rule or policy violated existing law at the time of the alleged violation. The arbitration shall be final and binding upon the parties, except as provided in this Agreement.

Each party shall bear his or her own attorneys' fees and other costs not associated with the administration of the arbitration by the AAA. However, if a party is entitled to attorneys' fees under any federal, state or local statute or law, the arbitrator may award those fees pursuant to the governing law, at his or her discretion.

5

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

## C.    Failure to Appear for Hearing

Should any party refuse or neglect to appear for, or participate in, the arbitration hearing, the arbitrator shall have the authority to decide the dispute based upon whatever evidence is presented.

## D.    Transcription of Hearing

Either party, at their expense, may arrange for and pay the cost of a court reporter to provide a stenographic record of proceedings.

## E.    Payment of Attorney and Witness Expenses

The parties shall pay its own attorneys' fees, witness fees, discovery costs and other expenses incurred for their own benefit, unless otherwise provided by contract or statute.

## 10.    The Arbitration Award

The arbitrator shall render an award and opinion which is signed and dated and which decides all issues submitted as well as the legal principles supporting each part of the award. Unless the parties and arbitrator agree otherwise, the arbitrator's award shall issue no later than thirty (30) days from the date the arbitration hearing concludes or the post-hearing briefs (if requested) are received, whichever is later. The arbitrator may grant any remedy or relief, legal or equitable, that would have been available had the claim been asserted in court. The award shall include a brief statement of the factual and legal bases for the ruling.

## A.    Reconsideration

Either party shall have the right, within twenty (20) days of issuance of the arbitrator's opinion, to file with the arbitrator a motion to reconsider (accompanied by a supporting brief), and the other party shall have twenty (20) days from the date of the motion to respond. The arbitrator thereupon shall reconsider the issues raised by the motion and, promptly, either confirm or change the decision, which (except as provided by this Agreement) shall then be final and conclusive upon the parties. Each party shall bear his or her own costs and attorneys' fees relating to such a motion for reconsideration and written opinion of the arbitrator, unless the arbitrator orders otherwise.

## B.    Enforcement

Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement. Either party may bring an action to enforce an arbitration award. A party opposing enforcement of an award may also bring an action or counteraction if there are enforcement proceedings pending in any court of

6

competent jurisdiction to set aside the award. In such proceedings, the standard of review will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury.

## Other Provisions

### Exclusive Forum

The Employee understands that this Agreement waives his or her right to a jury trial and waives the right to seek remedies in court.

### Construction of Agreement

Should any provision of this Agreement be found to be unenforceable, such portion will be severed from the Agreement and the remaining portions shall remain in full force and effect.

### Sole and Entire Agreement

This is the complete agreement of the parties on the subject of arbitration of disputes (except for any arbitration agreement in connection with any pension or benefit plan). This Agreement supersedes any prior or contemporaneous oral or written understandings on the subject. No party is relying on any representations, oral or written, on the subject of the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement.

### Voluntary Agreement

The employee's signature on the Arbitration Agreement certifies that the employee has carefully read this agreement and understands its terms. The employee acknowledges that all understandings and agreements between the Company and employee relating to the subjects covered in this agreement are contained in it, and that the employee has entered into this agreement voluntarily and not in reliance on any promises or representations by the Company other than those contained in this agreement itself.

### SIGNATURE AND ACKNOWLEDGEMENT:

The employee further acknowledges that the employee has been given the opportunity to discuss this agreement with the employee's private attorney.

_____          3-22-04
Employee Signature                 Date

RALPH E. HERRERA

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

7

Printed Name                                      Division and Location

**EXHIBIT C**

# jackson|lewis

Attorneys at Law

Representing Management Exclusively in Workplace Law and Related Litigation

| | | |
|---|---|---|
| Jackson Lewis LLP | ATLANTA, GA | LONG ISLAND, NY | PROVIDENCE, RI |
| 59 Maiden Lane | BIRMINGHAM, AL | LOS ANGELES, CA | RALEIGH-DURHAM, NC |
| | BOSTON, MA | MIAMI, FL | RICHMOND, VA |
| New York, New York 10038 | CHICAGO, IL | MINNEAPOLIS, MN | SACRAMENTO, CA |
| | CLEVELAND, OH | MORRISTOWN, NJ | SAN FRANCISCO, CA |
| Tel 212 545-4000 | DALLAS, TX | NEW YORK, NY | SEATTLE, WA |
| | DENVER, CO | ORANGE COUNTY, CA | STAMFORD, CT |
| Fax 212 972-3213 | GREENVILLE, SC | ORLANDO, FL | WASHINGTON, DC REGION |
| | HARTFORD, CT | PITTSBURGH, PA | WHITE PLAINS, NY |
| www.jacksonlewis.com | HOUSTON, TX | PORTLAND, OR | |

WRITER'S DIRECT DIAL: (212) 545-4028
EMAIL: WINDHOLD@JACKSONLEWIS.COM

November 8, 2007

## VIA FACSIMILE AND REGULAR MAIL

David Gottlieb, Esq.
Mark L. Lubelsky & Associates
123 West 18th Street, Eighth Floor
New York, New York 10011

Re: **Ralph Herrera v. Katz Communications, Inc.,**
**Civil Action Case No.: 07cv8426**

Dear Mr. Gottlieb:

We represent Katz Communications, Inc. in the above-referenced matter. We are writing to reiterate our request that Plaintiff withdraw his Complaint and pursue his claims against Defendant in arbitration in accordance with the parties' Arbitration Agreement dated July 11, 2001, a copy of which is enclosed.

Plaintiff alleges in his Complaint that the arbitration clause in his employment contract is "null and void as the clause does not merely indicate arbitration as the choice of form, but deprives Plaintiff of substantive rights and remedies available under law." (Complaint, Para. 55). During our telephone conversation on October 23, I asked you to identify the substantive rights and remedies which Plaintiff allegedly was deprived of under the arbitration clause. In a telephone conversation later that day, you advised me that the arbitration clause does not allow for recovery of attorney fees. Although I asked you to specify where in the clause it prohibits recovery of attorneys fees you refused to do so.

In an attempt to resolve this matter without motion practice, on October 30, 2007, I again contacted you. I advised you that Plaintiff had signed an arbitration agreement when he commenced employment with Defendant which unequivocally allowed for an arbitrator to award attorneys fees. I offered to forward to you the arbitration agreement signed by Plaintiff.



David Gottlieb, Esq.
Mark L. Lubelsky & Associates
November 8, 2007
Page 2

Although you indicated that it would not alter Plaintiff's position regarding the appropriateness of arbitration in this matter, I promptly faxed to your office a copy of Plaintiff's signed arbitration agreement.

As you can see from the arbitration agreement, and contrary to Plaintiff's allegation in the Complaint, the Arbitration Agreement provides Plaintiff with all substantive rights to which he would otherwise be entitled by law, including attorneys' fees. The arbitration agreement states: "Each party shall bear his or her own attorney's fees and other costs not associated with the administration of the arbitration by the AAA. However, if a party is entitled to attorney's fees under any federal, state or local statute or law, the arbitrator may award those fees pursuant to the governing law, at his or her discretion."

It is well settled that an arbitration agreement is not rendered unconscionable and hence unenforceable simply because it requires each party to pay their own attorneys' fees. Stern v. Espeed, Inc., 2006 U.S. Dist. LEXIS 68655, at *9-10 (S.D.N.Y.). Indeed, an arbitration agreement that requires each party to pay its own fees is valid and binding when it simultaneously provides that attorneys' fees may be awarded if otherwise required by law. Id.

In Stern, the court upheld an arbitration agreement requiring each party to pay its own attorneys' fees because it included the vital phrase "unless otherwise required by law." Id. The court held that "the parties included the critical language [...] in order to ensure the enforceability of the agreement." See also, Carter v. Countrywide Credit Industries, Inc., 362 F.3d 294, 299 (3d Cir. 2004) (failure of arbitration agreement to explicitly mandate the grant of attorneys' fees not fatal given that agreement states arbitration "shall be adjudicated in accordance with state or federal law).

In the instant case, as in Stern, the arbitration agreement does not prohibit the grant of attorneys' fees where such fees are otherwise available by law. The Agreement specifically provides that each party must pay its own attorneys' fees unless "a party is entitled to attorneys' fees under any federal, state or local statute or law" and allows for the arbitrator to award attorneys' "fees pursuant to the governing law." Therefore, the Agreement is not substantively unconscionable and Plaintiff may not claim that he is deprived of his right to recover attorneys' fees.

Moreover, even if the court were to find the attorneys' fees provision unconscionable, the provision may be severed from the arbitration agreement and the remainder of the agreement enforced. Beletsis v. Credit Suisse First Boston, 2002 U.S. Dist. LEXIS 16586, at *15-18 (S.D.N.Y.).



David Gottlieb, Esq.
Mark L. Lubelsky & Associates
November 8, 2007
Page 3

        Based in the foregoing, Defendant reiterates its request that Plaintiff dismiss his Complaint and pursue his claims in Arbitration.  If Plaintiff persists in his refusal to do so, Defendant will move the court to compel arbitration and seek costs and sanctions in connection with the filing of such a motion.

        We hope that this will be unnecessary.

                                        Very truly yours,

                                        Diane Windholz


cc:    Liane Chinwalla, Esq.

# ARBITRATION AGREEMENT

If you and the Company have a legal dispute (i.e., a dispute that could otherwise be brought in court) and we can't resolve it through our Open Door Policy, then we will use arbitration. Private arbitration is a more efficient, less expensive, and usually faster way to resolve disputes than through a traditional lawsuit in state or federal court. Accordingly, we require that new, non-union employees sign an agreement promising that all covered claims as defined in this Agreement, will be submitted to final and binding determination by an impartial arbitrator under the Employment Dispute Resolution Rules of the American Arbitration Association. The Arbitration Agreement becomes effective immediately upon hire or six weeks following the date of close if employee gains Clear Channel/Eller employment by means of a Company acquisition.

Employees are still protected by all applicable employment laws, and are merely agreeing to have certain employment-related claims decided by a private arbitrator rather than by a judge or jury. *Employees are not giving up any substantive rights to recover damages.* All non-union employees are deemed to have agreed to this Arbitration Agreement by accepting or continuing employment with this Company (including raises, promotions, bonuses, etc.).

Arbitration is the procedure used for the resolution of certain covered claims that may arise between the Company and employees. In the interest of a prompt and fair resolution of these claims, each employee is required to enter into this Agreement in exchange for employment with the Company and the Company's agreement to resolve these claims in the same manner.

Many of the disputes or claims that might possibly arise between the Company and an employee could be made the subject of a formal charge or complaint before a state or federal agency and/or the subject of a lawsuit in a state or federal court. In most such cases, either party (the Company or employee) could ultimately have the case tried before a jury upon request.

By this Arbitration Agreement, however, employees give up their right to sue the Company, and the Company is giving up its right to sue employees in court, as well as the right to trial by jury. Instead, the Company and employees hereby agree that any covered legal claim that either may have against or with the other will be submitted solely to a private, impartial arbitrator (a "private judge," so to speak) for a final and binding decision.

## Scope of the Arbitration Agreement

As a condition of employment with the Company, each employee hereby *waives his/her right to sue* the Company, and the Company hereby waives its right to sue the employee, for any claim or cause of action covered by this Agreement. In lieu of suing, any such legal dispute may instead be submitted for final and binding resolution by a private, impartial arbitrator. The arbitration shall be governed by the Employment

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

1

Dispute Resolution Rules of the American Arbitration Association. A copy of these rules is available for each employee to review.

*Nothing in this Agreement is intended to prohibit the Employee from filing a claim or communicating with any governmental agency including the Equal Employment Opportunity Commission or the Department of Labor.*

**Covered Claims:**

This Agreement covers the following potential claims:

1.  Any dispute regarding the arbitrability of any such claim;

2.  Any dispute regarding this Agreement, including but not limited to its enforceability, scope or terms;

3.  Any claim that could be asserted by Employee or Company in any state or federal civil court or before an administrative agency, including without limitation, claims for breach of any contract or covenant, express or implied; assault, battery, invasion of privacy, defamation of character, infliction of emotional distress, tortious interference with contract, or other tort claims, including any claim that an employee was injured or damaged because of the negligence of the Company or any of its employees; and claims for unlawful discharge and/or for violation of any federal, state or local law, statute, ordinance or regulation, or common law;

4.  Any claim for discrimination, including but not limited to discrimination because of sex, pregnancy, race, national or ethnic origin, age, religion, creed, marital status, sexual harassment, sexual orientation, mental or physical disability or medical condition or other characteristics protected by statute;

5.  Any claim of retaliation or discrimination against the Company for opposing the violation of any federal, state or local statute or ordinance, including but not limited to the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, state workers' compensation law or any "whistleblower" law; and

6.  Any claim for commissions, wages, bonuses or any other form of compensation.

**Claims Not Covered:**

This Agreement does not cover:

1.  Claims for workers' compensation benefits.

2.  Claims for unemployment compensation benefits.

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

2

3.  Claims for benefits based upon the Company's employee welfare benefit plans, if the plan contains a final and binding appeal procedure for the resolution of disputes under the plan.

4.  Claims for injunctive and/or other equitable relief, including but not limited to claims to enforce a covenant not to compete or for unfair competition or use or unauthorized disclosure of trade secrets or confidential information as contained in express written agreements.

5.  Wage and hour disputes within the jurisdiction of any state Labor Commissioner.

6.  Any claims not specifically listed as a "Covered Claim".

## Rules Governing the Arbitration

### 1.   Demand for Arbitration

Any party to an Arbitration Agreement may initiate arbitration by serving upon the other party, by certified mail, a written notice containing a specific request to enter into arbitration. The written request shall identify and describe the nature of each claim asserted, the facts upon which each claim is based, and the relief or remedy sought. Written notice to the Employee will be sent to the most recent address contained in the Employee's personnel file. Written notice to the Company shall be sent to:

Clear Channel
General Counsel
200 East Basse
San Antonio, Texas 79209

Promptly after sending or receiving a written request to arbitrate a Covered Claim, the Company shall notify the American Arbitration Association ("AAA") that a demand for arbitration has been made and shall request that the AAA provide the parties with a list of arbitrators, as specified below. If, on the date that an arbitration demand is postmarked, any claim made in the demand would be barred by the applicable statute of limitations, that claim shall be deemed barred for purposes of arbitration.

An arbitration is also initiated by the receipt by AAA of an order from a court compelling arbitration. For purposes of the statute of limitations, the arbitration is deemed initiated on the date that the order compelling arbitration is issued by the court, or as otherwise ordered by the court.

### 2.   Selecting an Arbitrator

The arbitration will be held under the auspices of AAA in or near the city in which the Employee or former Employee, who is party to the arbitration, is or was last employed by the Company. The parties may, however, agree on an alternative location

3

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

If the AAA does not have an available office with a hearing room in or near such city, the arbitration shall be conducted in a meeting room in a hotel in such city.

Except as otherwise provided in this Agreement, the arbitration shall be in accordance with the AAA's Employment Dispute Resolution Rules that are in effect at the time that the demand for arbitration is made. The arbitrator shall be either a retired judge or an experienced attorney licensed to practice law in the state in which the arbitration is to be convened.

Promptly upon receipt of notice from the Company that arbitration has been initiated, AAA will provide each party with an identical list of eleven (11) arbitrators from its panel of employment dispute arbitrators. (For purposes of arbitrator selection, all defendants, whether or not separately represented, shall be deemed one party). Within ten (10) calendar days from the postmark date on the AAA list, the parties or their representatives will meet or participate in a telephone conference to select an arbitrator. At such time, the parties shall alternately strike the name of an arbitrator on the list (the party initiating arbitration shall strike first) until only one name remains. This remaining name shall be the arbitrator. If a party refuses to timely participate in such a meeting or telephone conference, the other party may select an arbitrator from the list provided by AAA. If the arbitrator designated by this process declines or is unable to serve, the selection process shall be repeated with a new list of eleven (11) arbitrators from AAA.

3.     Hearing Date

The arbitrator will promptly set a hearing date and time and will mail written notice to each of the parties at least sixty (60) days in advance of the hearing unless the parties otherwise agree or mutually waive notice.

4.     Depositions and Other Discovery

Each party at their own expense shall have the right to take up to three (3) depositions unless the arbitrator, on a showing of good cause, approves additional depositions. Each party also shall have the right to require the production of relevant documents from the other party. Unresolved discovery disputes will be presented to the arbitrator for final resolution. All discovery shall be concluded within 45 days from the date the arbitrator is informed of his or her selection.

5.     Witnesses and Exhibits

No later than fifteen (15) days before the arbitration, the parties will exchange lists of witnesses, including any experts, and copies of all exhibits intended to be used at the arbitration. Each party shall have the right to subpoena witnesses and documents for the arbitration as well as documents relevant to the case from third parties.

### 6. Pre-Hearing Procedures

The arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person, as the arbitrator deems necessary. The arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure.

### 7. Briefs

Either party, upon request at the close of the hearing, shall be given leave to file a post-hearing brief. The time for filing such a brief shall be set by the arbitrator.

### 8. Filing Fee

The Company will pay for the AAA filing fee and expenses of the arbitrator and AAA for administering the arbitration, except as expressly provided herein. The employee shall be responsible for their own attorney's fees, costs, and expenses, such as those incurred in discovery.

### 9. The Arbitration Hearing

#### A. Conduct of the Hearing

The arbitrator shall preside at the hearing and rule on the admission and exclusion of evidence and questions of procedure, and exercise other such powers as conferred by statute. Judicial rules relating to the order of proof, the conduct of the hearing and the presentation of admissibility of evidence will not be applicable. The arbitrator shall admit any relevant evidence if it is of the sort that reasonable persons are accustomed to relying upon in the conduct of serious affairs, regardless of the admissibility of such evidence in a court of law.

#### B. The Law the Arbitrator will Apply

The arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the state law claim arose, or federal law of the circuit in which the federal law claim arose, or both, as applicable to the claim(s) asserted. The arbitrator is without jurisdiction to apply any different substantive law or law of remedies. The arbitrator may not disregard or alter the Company's rules or policies unless the arbitrator determines that a rule or policy violated existing law at the time of the alleged violation. The arbitration shall be final and binding upon the parties, except as provided in this Agreement.

Each party shall bear his or her own attorneys' fees and other costs no associated with the administration of the arbitration by the AAA. However, if a party is entitled to attorneys' fees under any federal, state or local statute or law, the arbitrato may award those fees pursuant to the governing law, at his or her discretion.

5

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

### C.    Failure to Appear for Hearing

Should any party refuse or neglect to appear for, or participate in, the arbitration hearing, the arbitrator shall have the authority to decide the dispute based upon whatever evidence is presented.

### D.    Transcription of Hearing

Either party, at their expense, may arrange for and pay the cost of a court reporter to provide a stenographic record of proceedings.

### E.    Payment of Attorney and Witness Expenses

The parties shall pay its own attorneys' fees, witness fees, discovery costs and other expenses incurred for their own benefit, unless otherwise provided by contract or statute.

## 10.    The Arbitration Award

The arbitrator shall render an award and opinion which is signed and dated and which decides all issues submitted as well as the legal principles supporting each part of the award. Unless the parties and arbitrator agree otherwise, the arbitrator's award shall issue no later than thirty (30) days from the date the arbitration hearing concludes or the post-hearing briefs (if requested) are received, whichever is later. The arbitrator may grant any remedy or relief, legal or equitable, that would have been available had the claim been asserted in court. The award shall include a brief statement of the factual and legal bases for the ruling.

### A.    Reconsideration

Either party shall have the right, within twenty (20) days of issuance of the arbitrator's opinion, to file with the arbitrator a motion to reconsider (accompanied by a supporting brief), and the other party shall have twenty (20) days from the date of the motion to respond. The arbitrator thereupon shall reconsider the issues raised by the motion and, promptly, either confirm or change the decision, which (except as provided by this Agreement) shall then be final and conclusive upon the parties. Each party shall bear his or her own costs and attorneys' fees relating to such a motion for reconsideration and written opinion of the arbitrator, unless the arbitrator orders otherwise.

### B.    Enforcement

Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement. Either party may bring an action to enforce an arbitration award. A party opposing enforcement of an award may also bring an action or counteraction if there are enforcement proceedings pending in any court ol

6

competent jurisdiction to set aside the award. In such proceedings, the standard of review will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury.

## Other Provisions

### Exclusive Forum

The Employee understands that this Agreement waives his or her right to a jury trial and waives the right to seek remedies in court.

### Construction of Agreement

Should any provision of this Agreement be found to be unenforceable, such portion will be severed from the Agreement and the remaining portions shall remain in full force and effect.

### Sole and Entire Agreement

This is the complete agreement of the parties on the subject of arbitration of disputes (except for any arbitration agreement in connection with any pension or benefit plan). This Agreement supersedes any prior or contemporaneous oral or written understandings on the subject. No party is relying on any representations, oral or written, on the subject of the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement.

### Voluntary Agreement

The employee's signature on the Arbitration Agreement certifies that the employee has carefully read this agreement and understands its terms. The employee acknowledges that all understandings and agreements between the Company and employee relating to the subjects covered in this agreement are contained in it, and that the employee has entered into this agreement voluntarily and not in reliance on any promises or representations by the Company other than those contained in this agreement itself.

### SIGNATURE AND ACKNOWLEDGEMENT:

The employee further acknowledges that the employee has been given the opportunity to discuss this agreement with the employee's private attorney.

_____          3-22-04
Employee Signature                      Date

RALPH E. HERRERA                                    7

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

# EXHIBIT D

# MARK L. LUBELSKY AND ASSOCIATES
### ATTORNEYS AT LAW

123 WEST 18th STREET, 8th FLOOR
NEW YORK, NEW YORK 10011
TELEPHONE: (212) 242-7480
FACSIMILE: (646) 619-4631

November 12, 2007

**VIA FACSIMILE AND FIRST CLASS MAIL**

Ms. Diane Winholdz, Esq.
Jackson Lewis
59 Maiden Lane, 39th Floor
New York, NY 10038

Re:    Herrera, Ralph v. Katz Communications

Dear Ms. Winholdz:

We are in receipt of your letter dated November 8, 2007. In that letter, defense counsel threatened to "seek costs and sanctions in connection with the filing of" a motion to compel arbitration if Plaintiff does not "dismiss the complaint." Plaintiff's counsel zealously represents all its clients, and will not grant advantages to defense counsel in response to such threats. Such actions do not constitute good faith, courteous, professional conduct.

The basis for defense counsel's position that the present matter ought to be resolved via arbitration is an arbitration agreement allegedly signed by plaintiff. Defense counsel alleged that plaintiff signed an arbitration agreement that allegedly provides the arbitrator with discretion to award attorneys fees where such a remedy is applicable under governing law. Plaintiff's counsel agrees that an arbitration agreement that specifically, explicitly and unequivocally provides an arbitrator with the discretion to award attorneys fees where such remedy is available under the governing law does not deny a plaintiff the substantive right to attorneys fees.

However, the arbitration agreement provided by defense counsel is not a contract or agreement between plaintiff and defendant. The arbitration agreement is allegedly signed by plaintiff, but is not signed by any counter-party, defendant or otherwise. Similarly, the full text and substance of the provided arbitration agreement does not indicate that the sole defendant Katz Communications, plaintiff's former employer, is the counter-party to the arbitration agreement. To the extent that defense counsel believes the arbitration agreement is a contract between plaintiff and ClearChannel/Eller, plaintiff's complaint has not named ClearChannel/Eller as a defendant. ClearChannel/Eller and Katz Communications are separate and distinct legal entities. Katz Communications, not ClearChannel/Eller, employed plaintiff at all material times set forth in the complaint.

Defense counsel failed to attach to its correspondence the employment contract between plaintiff and defendant that contained an explicit arbitration provision that limits plaintiff's substantive rights at arbitration, including forfeiture of entitlement to attorneys' fees. The arbitration provision explicitly states, "The Company will pay the actual costs of arbitration excluding attorney's fees. Each party will

- 2 -

pay its own attorneys fees and other costs incurred by their respective attorneys." The arbitration provision does not include any exception or limiting language that allows an arbitrator to award attorneys' fees where rights to attorneys' fees are an available substantive right under law. An arbitration provision that that forfeits a plaintiff's substantive rights such as entitlement to attorneys' fees shall render such an arbitration provision unenforceable. See, Stern v. Espeed, Inc., 2006 WL 2741635 at 3-4 (S.D.N.Y. 2006).

In light of the forgoing our office believes that the provided arbitration agreement is not a valid, binding contract between plaintiff and defendant and the arbitration provision of the employment contract between plaintiff and defendant is invalid as it is not merely a forum selection, but denies plaintiff substantive legal rights. Plaintiff will oppose a motion to compel arbitration on the basis set forth in defense counsel's correspondence.

We expect that defense counsel will not waste the time and resources of all parties and the court on a frivolous request for costs and sanctions. Any such request may result in counter-claims.

Very truly yours,

MARK L. LUBELSKY AND ASSOCIATES

Mark L. Lubelsky
MLL: dg

**EXHIBIT E**

JUDGE RAKOFF

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF THE STATE OF NEW YORK
-------------------------------------------------------------------x

RALPH HERRERA,

        Plaintiff

  -against-

KATZ COMMUNICATIONS, INC.

        Defendant .
-------------------------------------------------------------------x

**VERIFIED COMPLAINT**

**07 CIV 8426**

JURY TRIAL DEMANDED

SEP 28 2007
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff, by her attorneys, MARK L. LUBELSKY AND ASSOCIATES, complaining of the defendants, alleges as follows:

## NATURE OF CASE

1. This is an action for damages caused by defendant's termination of plaintiff in violation of the Family Medical Leave Act, 29 U.S.C. 260, et seq. and for breach of contract.

## PROCEDURAL AND JURISDICTION PREREQUISITES

2. The jurisdiction of this court over this controversy is invoked pursuant 28 U.S.C. 1331 and 29 U.S.C. 2617 and pendent jurisdiction thereto.

3. The Southern District of New York is proper venue pursuant to contract between the parties and residence of the defendant.

## PARTIES

4. Plaintiff RALPH HERRERA is, and has been at all relevant times, a male resident of the United States.

5. Plaintiff RALPH HERRERA was employed by defendant KATZ COMMUNICATIONS, INC. as a Sales Manager for Univision National Radio Sales from March 7, 2005 to July 13, 2006.

6.    On or about July 13, 2006 plaintiff RALPH HERRERA's employment with defendant KATZ

COMMUNICATIONS, INC. was terminated on account of plaintiff RALPH HERRERA's recent leave

of absence due to a serious medical condition.

7.    Defendant KATZ COMMUNICATIONS, INC., upon information and belief, is a corporation duly

organized in the State of New York maintaining a place of business within the County of New York,

City and State of New York.

8.    Defendant KATZ COMMUNICATIONS, INC., upon information and belief, is a domestic

corporation maintaining a place of business within the County of New York, City and State of New

York with its principal office located at 125 West 55th Street, New York, NY.

## MATERIAL FACTS

9.    Plaintiff RALPH HERRERA commenced employment with defendant KATZ

COMMUNICATIONS, INC. on or about March, 2005 as a Sales Manager for Univision National Radio

Sales.

10.    Plaintiff RALPH HERRERA was a good and valuable employee at all material times herein.

11.    Plaintiff RALPH HERRERA consistently exceeded office sales budgets at all material times

herein.

12.    Plaintiff RALPH HERRERA and defendant KATZ COMMUNICATIONS, INC. thereafter agreed

to and executed a written employment contract effective March 7, 2005.

13.    The written employment contract explicitly provided for a definite term of employment.

14.    The employment contract stated, "The Employee's term of employment starts on the Effective

Date and ends on the close of business on the 30th day of June, 2007." The effective date of the contract

was March 7, 2005.

2

15.    Plaintiff RALPH HERRERA was employed by defendant KATZ COMMUNICATIONS, INC. as a Sales Manager for Univision National Radio Sales between March 7, 2005 and July 13, 2006.

16.    The employment contract entitled plaintiff RALPH HERRERA to an annual base salary of $94,760.00.00, with eligibility for annual raises, sales commissions, employment benefits, and other expenses.

17.    At all times between March 7, 2005 and July 13, 2006 plaintiff was a good and valuable employee of defendant KATZ COMMUNICATIONS, INC.

18.    Plaintiff RALPH HERRERA began his employment with Defendant KATZ COMMUNICATIONS, INC. as a Sales Manager for Univision National Radio Sales on March 15 2004.

19.    On or about March 9, 2006 Plaintiff RALPH HERRERA broke his ankle and took four days off from work to recover and visit with doctors.

20.    During medical examinations with an orthopedic surgeon in the days following the onset of the broken ankle, a doctor determined that plaintiff RALPH HERRERA had a herniated disk.

21.    On or about March 15, 2006 plaintiff RALPH HERRERA returned to work wearing a cast on his broken ankle.

22.    On or about March 16, 2006 plaintiff RALPH HERRRERA met with Dr. Plas T. James of the Atlanta Spine Center regarding the herniated disk in his back.

23.    On or about March 16, 2006 Dr. Plas T. James confirmed the presence of a herniated disk and discussed treatment options with plaintiff RALPH HERRERA.

24.    On or about March 16, 2006 Dr. Plas T. James suggested plaintiff RALPH HERRERA take time off from work, and issued a no-work note for four weeks.

3

25. On or about March 17, 2006, plaintiff RALPH HERRERA advised his direct supervisor Peter Kakoyiannis of the no-work note and plaintiff RALPH HERRERA was told to think about it and decide how he wanted to proceed.

26. On or about March 20, 2006 the President of Univision Radio National Sales Laura Hagan and plaintiff RALPH HERRERA's direct supervisor Peter Kakoyiannis called him in and Laura Hagan stated that: "in this business you cannot go out on disability unless you are bleeding to death."

27. On or about March 20, 2006 Laura Hagan told plaintiff RALPH HERRERA about her back problems, as well as her husband's, and explained to plaintiff RALPH HERRERA to "suck it up" and to schedule physical therapy around the day and continue to work.

28. On or about March 21, 2006 plaintiff RALPH HERRERA contacted the Human Resources department of his employer to discuss the proper way to proceed.

29. On or about March 21, 2006, the Human Resources department advised plaintiff RALPH HERRERA to follow his doctor's orders immediately and to go home.

30. On or about March 23, 2006 plaintiff RALPH HERRERA received a disciplinary memo from his supervisor Peter Kakoyiannis regarding his performance.

31. Said disciplinary memo was the only disciplinary memo issued to plaintiff RALPH HERRERA during the term of his employment.

32. On or about March 24, 2006 plaintiff RALPH HERRERA signed and returned the performance memo to Peter Kakoyiannis.

33. On or about March 27, 2006, plaintiff RALPH HERRERA began his medical leave.

34. In or about mid-April, 2006 Peter Kakoyiannis, VP. GSM visited Atlanta and hired Jeff Bagshaw as a Senior Account Executive for the Atlanta office.

35. Jeff Bagshaw eventually constituted plaintiff's replacement.

4

36.   On or about April 13, 2006 plaintiff RALPH HERRERA's doctors issued a no-work continuance for an additional 3 weeks.

37.   On or about May 4, 2006 plaintiff RALPH HERRERA's doctors issued a no-work continuance for an additional 3 weeks.

38.   On or about June 2, 2006 plaintiff RALPH HERRERA's doctors issued a no-work continuance for an additional 3 weeks.

39.   On or about June 23, 2006 plaintiff RALPH HERRERA was issued a note from his doctors that permitted a to return to work with certain restrictions, effective June 26, 2006.

40.   On or about June 23, 2006 plaintiff RALPH HERRERA called Human Resources and was advised of his ability to return to work, contingent on restrictions, and plaintiff RALPH HERRERA was told that someone would call him back.

41.   On or about June 23, 2006 plaintiff RALPH HERRERA faxed correspondence to Human Resources advising of his ability to return to work, contingent on restrictions.

42.   On or about June 23, 2006 plaintiff RALPH HERRERA received a call from Human Resources that confirmed receipt of plaintiff RALPH HERRERA's fax and advised that Peter Kakoyiannis would contact plaintiff RALPH HERRERA shortly.

43.   On or about June 26, 2006 plaintiff RALPH HERRERA contacted Peter Kakoyiannis and both agreed that plaintiff RALPH HERRERA would return to work on June 28, 2006.

44.   On or about June 28, 2006 plaintiff RALPH HERRERA returned to work on a schedule of 4 hours per day.

45.   Plaintiff RALPH HERRERA worked the allowable 4 hours per day during each business day between June 28, 2006 and July 6, 2006.

46.    On or about June 28, 2006 Peter Kakoyiannis called plaintiff RALPH HERRERA to inform him that he and Laura Hagan were not happy with his work and sent plaintiff RALPH HERRERA a letter to sign, which he did not sign.

47.    On or about July 5, 2006 plaintiff RALPH HERRERA received a call from Peter Kakoyiannis and was informed that Univision National Radio Sales, he and Laura Hagan were not happy with plaintiff RALPH HERRERA's work, and said, "maybe it would be a good idea to separate quietly."

48.    On or about July 7, 2006 plaintiff RALPH HERRERA returned to full-time work.

49.    On or about July 7, 2006 Human Resources contacted plaintiff RALPH HERRERA and requested a note regarding plaintiff RALPH HERRERA's fitness to work.

50.    On or about July 12, 2006 plaintiff RALPH HERRERA received doctor's note on his fitness to work.

51.    On or about July 13, 2006 plaintiff RALPH HERRERA received a call from Peter Kakoyiannis and was told he was being terminated and had to leave immediately.

52.    On the date of termination, almost a full calendar year remained on the contractually bound term of Plaintiff RALPH HERRERA's employment.

53.    Defendant KATZ COMMUNICATIONS, INC. breached the employment contract when they terminated the employment of plaintiff RALPH HERRERA without cause, prior to the expiration of the definite contract term.

54.    Plaintiff RALPH HERRERA may have been told that he was discharged on account of violation of a non-compete clause, but this was a mere pretext as Plaintiff RALPH HERRERA was clearly fired without just cause, on account of his medical condition and/or the taking of medical leave, in violation of the Family Medical Leave Act.

55.   The employment contract purports to have an arbitration clause, however the arbitration clause is null and void as the clause does not merely indicate arbitration as the choice of forum, but deprives Plaintiff of substantive rights and remedies available under law.

## INJURIES AND DAMAGES

56.   As a result of defendants' unlawful employment practices, and tortious conduct, plaintiff has suffered loss of current and future earnings and other benefits of employment, as well as injury to his reputation and mental, emotional and physical injury, distress, pain and suffering, punitive damages, all to be specified at trial.

## AS A FIRST CAUSE OF ACTION FOR UNDER 29 U.S.C. 2601

57.   Plaintiff RALPH HERRERA restates, realleges and reavers and hereby reincorporates by reference any and all allegations in paragraphs "1" through "56" inclusive herein.

58.   Plaintiff RALPH HERRERA alleges that defendant KATZ COMMUNICATIONS unlawfully terminated plaintiff's employment in violation of the laws of the Family Medical Leave Act, 29 U.S.C. 2601 et seq.

## AS A SECOND CAUSE OF ACTION UNDER 29 U.S.C. 2601

59.   Plaintiff RALPH HERRERA restates, realleges and reavers and hereby reincorporates by reference any and all allegations in paragraphs "1" through "58" inclusive herein.

60.   Plaintiff RALPH HERRERA alleges that upon plaintiff's return from medical leave, defendant KATZ COMMUNICATIONS unlawfully refused to restore plaintiff to position of employment held by plaintiff when the leave commenced, or to an equivalent position with equivalent benefits, pay and other terms and conditions of employment in violation of the Family Medical Leave Act, 29 U.S.C. 2601 et seq.

## AS A THIRD CAUSE OF ACTION FOR BREACH OF CONTRACT

61.   Plaintiff RALPH HERRERA restates, realleges and reavers and hereby reincorporates by reference any and all allegations in paragraphs "1" through "60" inclusive herein.

62.   Plaintiff RALPH HERRERA and Defendant KATZ COMMUNICATIONS, INC. were bound by an employment contract.

63.   Plaintiff RALPH HERRERA performed his obligations under the contract.

64.   Defendant KATZ COMMUNICATIONS, INC. breached its obligations under the contract when it terminated Plaintiff RALPH HERRERA's employment without cause.

65.   Plaintiff RALPH HERRERA seeks damages attributable to Defendant's breach of contract including lost wages, bonuses and sales commissions, and all other benefits of employment, injury to reputation and punitive damages.

66.   Plaintiff RALPH HERRERA seem damages in the amount of in an amount not less than $100,000.00.

## AS A FOURTH CAUSE OF ACTION FOR PUNITIVE DAMAGES

67.   Plaintiff RALPH HERRERA restates, realleges and reavers and hereby reincorporates by reference any and all allegations in paragraphs "1" through "66" inclusive herein.

68.   Defendant KATZ COMMUNICATIONS, INC. acted with malice and/or reckless and/or callous disregard of plaintiff's civil rights and defendant's civil obligations.

69.   Defendant KATZ COMMUNICATIONS, INC. acted with a criminal like indifference to plaintiff's civil rights and to defendant's civil obligations.

70.   Defendant KATZ COMMUNICATIONS, INC. conduct was directed at the public generally.

71.   An award of punitive damages is necessary to deter the Defendants and other similarly situated from engaging in similarly egregious conduct in the future.

8

## PRAYER FOR RELIEF

WHEREFORE, plaintiff RALPH HERRERA respectfully prays for judgment against defendant as follows:

A. For a money judgment representing compensatory damages, including lost wages, past and future wages, all other sums of money, including any and all benefits and any other employment benefits together with interest on said amounts, in addition to tort damages;

B. For a money judgment representing punitive damages for defendant's willful violations of law;

C. Awarding plaintiff attorneys' fees, costs and expenses incurred in the prosecution of this action;

D. Awarding plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:    New York, New York
          May 1, 2007

MARK L. LUBELSKY AND ASSOCIATES

By _____
MARK L. LUBELSKY, ESQ (7958)
Attorneys for Plaintiff
123 West 18th Street, Eighth Floor
New York, New York 10011
212-242-7480
File No.: 6537

9

## ATTORNEY' S VERIFICATION

MARK L. LUBELSKY, an attorney duly admitted to practice in the Courts of the State of New York, hereby affirms truth of the following under the penalties of perjury:

I am a member of the firm of MARK L. LUBELSKY AND ASSOCIATES, attorneys for plaintiffs in the within action, and as such, I am fully familiar with all the facts and circumstances herein.

I have read the foregoing Summons and Complaint, and know the contents thereof; the same is true to my own knowledge, except as to the matters therein alleged to be on information and belief, and as to those matters, I believe them to be true.

The reason this Verification is made by me and not by plaintiff is that plaintiff does not reside in New York County, the County where affirmant maintains his offices.

Dated:     New York, New York
           September 25, 2007

                                              MARK L. LUBELSKY

**EXHIBIT A**

3/7/05 — 6/30/07

# EMPLOYMENT AGREEMENT

This Employment Agreement is entered into and effective this 7th day of March, 2005 (the "Effective Date") between Katz Communications, Inc. (the "Company" or "Katz") and Ralph Herrera (the "Employee").

WHEREAS, the Company and the Employee desire to enter into an employment relationship under the terms and conditions set forth in this Agreement;

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

## 1.    TERM OF EMPLOYMENT.

The Employee's term of employment starts on the Effective Date and ends on the close of business on 30th day of June, 2007 (the "Initial Term").

## 2.    TITLE AND DUTIES.

The Employee's title is Sales Manager, Univision Radio Sales. The Employee will perform job duties that are usual and customary for this position, and will perform additional services and duties that the Company may from time to time designate that are consistent with the usual and customary duties of this position. The Employee will report to the VP/General Sales Manager of Univision Radio Sales. The Employee will devote his full working time and efforts to the business and affairs of the Company.

## 3.    COMPENSATION AND BENEFITS

(a)    **Base Salary.** The Company will pay the Employee an annual base salary of Ninety-Four Thousand Seven Hundred Sixty Dollars and No Cents ($94,760.00). The Employee will be eligible for annual raises commensurate with company policy, which policy may change at the Company's sole discretion. All payments of base salary will be made in installments according to the Company's regular payroll practice, prorated monthly or weekly where appropriate, and subject to any increases that are determined to be appropriate by the Board or the CEO of Katz.

(b)    **Sales Commission Override.** During the Term of Employment, beginning with the calendar year 2005, Employee shall be entitled to participate in the Sales Commission Override Program established each year for Univision Radio. The criteria for said Sales Commission Override will be established by the CEO of Katz. Target Sales Commission Override for 2005 will be $23,690.00 subject to the achievement of the criteria established and achievement of individual goals and objectives as determined by the CEO of Katz. Sales Commission Override will be paid quarterly in arrears on May 15, August 15, November 30 and February 15.

(c)    **Employment Benefit Plans.** The Employee will be entitled to participate in all pension, profit sharing, and other retirement plans, all incentive compensation plans, and all group health, hospitalization and disability or other insurance plans, paid vacation, sick leave and

JAN-30-2007  18:47      KATZ HUMAN RESOURCES                    212 424 6110    P.03/10

other employee welfare benefit plans in which other similarly situated employees of the Company may participate as stated in the employee guide.

(d)     Expenses. The Company will pay or reimburse the Employee for all normal and reasonable travel and entertainment expenses incurred by the Employee in connection with the Employee's responsibilities to the Company upon submission of proper vouchers in accordance with the Company's expense reimbursement policy.

(e)     Signing Bonus. As further consideration for entering into this Employment Agreement, Company shall pay a one-time lump sum cash bonus equal to $5,000.00, less appropriate withholding taxes, upon the signing of this Employment Agreement.

## 4.     NONDISCLOSURE OF CONFIDENTIAL INFORMATION.

During the course of the Employee's employment with the Company, the Company will provide the Employee with access to certain confidential information, trade secrets, and other matters which are of a confidential or proprietary nature, including but not limited to the Company's customer lists, contracts, representation agreements, pricing information, production and cost data, compensation and fee information, strategic business plans, budgets, financial statements, and other information the Company treats as confidential or proprietary (collectively the "Confidential Information"). The Company provides on an ongoing basis such Confidential Information as the Company deems necessary or desirable to aid the Employee in the performance of his duties. The Employee understands and acknowledges that such Confidential Information is confidential and proprietary, and agrees not to disclose such Confidential Information to anyone outside the Company except to the extent that (i) the Employee deems such disclosure or use reasonably necessary or appropriate in connection with performing his duties on behalf of the Company; (ii) the Employee is required by order of a court of competent jurisdiction (by subpoena or similar process) to disclose or discuss any Confidential Information, provided that in such case, the Employee shall promptly inform the Company of such event, shall cooperate with the Company in attempting to obtain a protective order or to otherwise restrict such disclosure, and shall only disclose Confidential Information to the minimum extent necessary to comply with any such court order; or (iii) such Confidential Information becomes generally known to and available for use in the industries in which the Company does business, other than as a result of any action or inaction by the Employee. The Employee further agrees that he will not during employment and/or at any time thereafter use such Confidential Information in competing, directly or indirectly, with the Company. At such time as the Employee shall cease to be employed by the Company, he will immediately turn over to the Company all Confidential Information, including papers, documents, writings, electronically stored information, other property, and all copies of them, provided to or created by him during the course of his employment with the Company. This nondisclosure covenant is binding on the Employee, as well as his heirs, successors, and legal representatives, and will survive the termination of this Agreement for any reason.

## 5.     NONHIRE OF COMPANY EMPLOYEES.

To further preserve the rights of the Company pursuant to the nondisclosure covenant discussed above, and for the consideration promised by the Company under this Agreement, during the term of the Employee's employment with the Company and for a period of 90 days if terminated without cause, or for a period of twelve (12) months if terminated for any other

2

Case 2:07-cv-08426-JSR    Document 7-3    Filed 12/07/2007    Page 4 of 18

Case 1:07-cv-08426-JSR    Document 5-3    Filed 11/19/2007    Page 4 of 25
JAN-30-2007  18:47    KATZ HUMAN RESOURCES    212 424 5110    P.04/10

reason, the Employee will not, directly or indirectly, (i) hire any current or prospective employee of the Company, or any subsidiary or affiliate of the Company (including, without limitation, any current or prospective employee of the Company within the 6-month period preceding the Employee's last day of employment with the Company or within the 12-month period of this covenant) who worked, works, or has been offered employment by the Company; (ii) solicit or encourage any such employee to terminate their employment with the Company, or any subsidiary or affiliate of the Company; or (iii) solicit or encourage any such employee to accept employment with any business, operation, corporation, partnership, association, agency, or other person or entity with which the Employee may be associated. If, during the term of this non-hire covenant, the Employee learns that any such employee has accepted employment with any business, operation, corporation, partnership, association, agency, or other person or entity with which the Employee may be associated (other than the Company), the Employee will immediately send notice to the Company identifying the employee and certifying that the Employee did not breach any provision of this non-hire covenant.

6.    **NON-COMPETITION.**

To further preserve the rights of the Company pursuant to the nondisclosure covenant discussed above, and for the consideration promised by the Company under this Agreement, during the Employee's employment with the Company and for a period of six (6) months thereafter, regardless of the reason for termination of employment, the Employee will not, directly or indirectly, as an owner, director, principal, agent, officer, employee, partner, consultant, servant, or otherwise, carry on, operate, manage, control, or become involved in any manner with any business, operation, corporation, partnership, association, agency, or other person or entity which is in the same business as the Company, specifically a media representation firm, or enter into the employment of, perform services for, enter into any oral or written agreement for services, or give or accept an option for services, enter into the employment of, perform services for or grant or receive future rights of any kind to provide services to or from any person or entity engaged in any distribution of audio, video and/or data content, whether such distribution is in the form of analog, digital, cellular, broadband, streaming, "high definition" or otherwise, and whether such distribution is received via radio, television, cable, internet, satellite, wireless or otherwise, in any location in which the Company, or any subsidiary or affiliate of the Company, operates or has plans or has projected to operate during the Employee's employment with the Company, including any area within a 50-mile radius of any such location. The foregoing shall not prohibit the Employee from owning up to 5.0% of the outstanding stock of any publicly held company. Notwithstanding the foregoing, after the Employee's employment with the Company has terminated, upon receiving written permission by the Board, the Employee shall be permitted to engage in such competing activities that would otherwise be prohibited by this covenant if such activities are determined in the sole discretion of the Board in good faith to be immaterial to the operations of the Company, or any subsidiary or affiliate of the Company, in the location in question.

To further preserve the rights of the Company pursuant to the nondisclosure covenant discussed above, and for the consideration promised by the Company under this Agreement, during the term of the Employee's employment with the Company and for a period of twelve (12) months thereafter, regardless of the reason for termination of employment, the Employee will not, directly or indirectly, either for himself or for any other business, operation, corporation, partnership, association, agency, or other person or entity, call upon, compete for, solicit, divert, or take away, or attempt to divert or take away current or prospective customers

3

JAN-30-2007  18:48        KATZ HUMAN RESOURCES              212 424 5110    P.05/10

(including, without limitation, any customer with whom the Company, or any subsidiary or affiliate of the Company, (i) has an existing agreement or business relationship; (ii) has had an agreement or business relationship within the six-month period preceding the Employee's last day of employment with the Company; or (iii) has been included as a prospect in its applicable pipeline) of the Company, or any subsidiary or affiliate of the Company.

The Company and the Employee agree that the restrictions contained in this noncompetition covenant are reasonable in scope and duration and are necessary to protect the Company's business interests and Confidential Information. If any provision of this noncompetition covenant as applied to any party or to any circumstance is adjudged by a court or arbitrator to be invalid or unenforceable, the same will in no way affect any other circumstance or the validity or enforceability of this Agreement. If any such provision, or any part thereof, is held to be unenforceable because of the scope, duration, or geographic area covered thereby, the parties agree that the court or arbitrator making such determination shall have the power to reduce the scope and/or duration and/or geographic area of such provision, and/or to delete specific words or phrases, and in its reduced form, such provision shall then be enforceable and shall be enforced. The parties agree and acknowledge that the breach of this noncompetition covenant will cause irreparable damage to the Company, and upon breach of any provision of this noncompetition covenant, the Company shall be entitled to injunctive relief, specific performance, or other equitable relief; provided, however, that this shall in no way limit any other remedies which the Company may have (including, without limitation, the right to seek monetary damages).

Should the Employee violate the provisions of this noncompetition covenant, then in addition to all other rights and remedies available to the Company at law or in equity, the duration of this covenant shall automatically be extended for the period of time from which the Employee began such violation until he permanently ceases such violation

## 7.    TERMINATION.

The Employee's employment with the Company may be terminated under the following circumstances:

(a)     **Death.** The Employee's employment with the Company shall terminate upon his death.

(b)     **Disability.** The Company may terminate the Employee's employment with the Company if, as a result of the Employee's incapacity due to physical or mental illness, the Employee is unable to perform his duties under this Agreement on a full-time basis for more than 90 days in any 12 month period, as determined by the Company.

(c)     **Termination By The Company.** The Company may also terminate his employment for Cause. A termination for Cause must be for one or more of the following reasons: (i) conduct by the Employee constituting a material act of willful misconduct in connection with the performance of his duties, including, without limitation, violation of the Company's policy on sexual harassment, misappropriation of funds or property of the Company or any of its affiliates other than the occasional, customary and de minimis use of Company property for personal purposes, or other willful misconduct as determined in the sole discretion of the Company; (ii) non-performance by the Employee of his duties hereunder (other than by

4

reason of the Employee's physical or mental illness, incapacity or disability) where such non-performance has continued for more than 10 days following written notice of such non-performance; (iii) the Employee's refusal or failure to follow lawful directives where such refusal or failure has continued for more than 30 days following written notice of such refusal or failure; (iv) a criminal or civil conviction of the Employee, a plea of nolo contendere by the Employee, or other conduct by the Employee that, as determined in the sole discretion of the Board, has resulted in, or would result in if he were retained in his position with the Company, material injury to the reputation of the Company, including, without limitation, conviction of fraud, theft, embezzlement, or a crime involving moral turpitude; (v) a breach by the Employee of any of the provisions of this Agreement) or (vi) a violation by the Employee of the Company's employment policies.

## 8.    COMPENSATION UPON TERMINATION.

(a)    **Death.** If the Employee's employment with the Company terminates by reason of his death, the Company will, within 90 days, pay in a lump sum amount to such person as the Employee shall designate in a notice filed with the Company or, if no such person is designated, to the Employee's estate, the Employee's accrued and unpaid base salary and prorated bonus, if any, and any payments to which the Employee's spouse, beneficiaries, or estate may be entitled under any applicable employee benefit plan (according to the terms of such plans and policies).

(b)    **Disability.** If the Employee's employment with the Company terminates by reason of his disability, the Company shall, within 90 days, pay in a lump sum amount to the Employee his accrued and unpaid base salary and prorated bonus, if any, and any payments to which he may be entitled under any applicable employee benefit plan (according to the terms of such plans and policies).

(c)    **Termination By The Company For Cause.** If the Employee's employment with the Company is terminated by the Company for Cause, the Company will, within 90 days, pay in a lump sum amount to the Employee his accrued and unpaid base salary and any payments to which he may be entitled under any applicable employee benefit plan (according to the terms of such plans and policies).

(d)    **Termination By The Company Without Cause.** If the Employee's employment with the Company is terminated by the Company without Cause, the Company will, within 90 days, pay in a lump sum amount to the Employee his accrued and unpaid base salary and prorated bonus, if any, and any payments to which he may be entitled under any applicable employee benefit plan (according to the terms of such plans and policies).  In addition, if the Employee signs a general release of claims in a form and manner satisfactory to the Company, the Company will, within 90 days, pay to the Employee a lump sum equal to the greater of (1) six months of the Employee's annual base salary; or (2) the amount equal to Employee's salary for the remainder of the Employment Period of the Agreement.

(e)    **Effect Of Compliance With Compensation Upon Termination Provisions.** Upon complying with Subparagraphs 8(a) through 8(d) above, as applicable, the Company will have no further obligations to the Employee except as otherwise expressly provided under this Agreement, provided that such compliance will not adversely affect or alter the Employee's rights under any employee benefit plan of the Company in which the Employee has a vested

JAN-30-2007  18:50    KATZ HUMAN RESOURCES    212 424 6110  P.07/10

interest, unless, otherwise provided in such employee benefit plan or any agreement or other instrument attendant thereto.

### 9.    PARTIES BENEFITED; ASSIGNMENTS.

This Agreement shall be binding upon the Employee, his heirs and his personal representative or representatives, and upon the Company and its respective successors and assigns. Neither this Agreement nor any rights or obligations hereunder may be assigned by the Employee, other than by will or by the laws of descent and distribution.

### 10.    GOVERNING LAW.

This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York without giving effect to any choice of law or conflict provisions or rule (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New York and the Employee hereby expressly consents to the personal jurisdiction of the state and federal courts located in the State of New York for any lawsuit arising from or relating to this Agreement.

### 11.    DEFINITION OF COMPANY.

As used in this Agreement, the term "Company" shall include Katz Communications, Inc., Clear Channel Communications, Inc., and any of its past, present and future divisions, operating companies, subsidiaries and affiliates.

### 12.    LITIGATION AND REGULATORY COOPERATION.

During and after the Employee's employment, the Employee shall reasonably cooperate with the Company in the defense or prosecution of any claims or actions now in existence or which may be brought in the future against or on behalf of the Company which relate to events or occurrences that transpired while the Employee was employed by the Company; provided, however, that such cooperation shall not materially and adversely affect the Employee or expose the Employee to an increased probability of civil or criminal litigation. The Employee's cooperation in connection with such claims or actions shall include, but not be limited to, being available to meet with counsel to prepare for discovery or trial and to act as a witness on behalf of the Company at mutually convenient times. During and after the Employee's employment, the Employee also shall cooperate fully with the Company in connection with any investigation or review of any federal, state or local regulatory authority as any such investigation or review relates to events or occurrences that transpired while the Employee was employed by the Company. The Company will pay the Employee on an hourly basis (to be derived from his base salary) for requested litigation and regulatory cooperation that occurs after his termination of employment, and reimburse the Employee for all costs and expenses incurred in connection with his performance under this paragraph, including, but not limited to, reasonable attorneys' fees and costs.

### 13.    INDEMNIFICATION AND INSURANCE; LEGAL EXPENSES.

The Company shall indemnify the Employee to the fullest extent permitted by law, in effect at the time of the subject act or omission, and shall advance to the Employee reasonable attorneys' fees and expenses as such fees and expenses are incurred (subject to an undertaking

Case 2:07-cv-08426-JSR　　Document 7-3　　Filed 12/07/2007　　Page 8 of 18

Case 1:07-cv-08426-JSR　　Document 5-3　　Filed 11/19/2007　　Page 8 of 25
JAN-30-2007　18:50　　KATZ HUMAN RESOURCES　　　　　212 424 6110　P.08/10

from the Employee to repay such advances if it shall be finally determined by a judicial decision which is not subject to further appeal that the Employee was not entitled to the reimbursement of such fees and expenses), and the Employee will be entitled to the protection of any insurance policies that the Company may elect to maintain generally for the benefit of its directors and officers against all costs, charges and expenses incurred or sustained by him in connection with any action, suit or proceeding to which he may be made a party by reason of his being or having been a director, officer or employee of the Company or any of its subsidiaries, or his serving or having served any other enterprise as a director, officer or employee at the request of the Company (other than any dispute, claim or controversy arising under or relating to this Agreement). The Company covenants to maintain during the Employee's employment for the benefit of the Employee (in her capacity as an officer and director of the Company) Directors and Officers Insurance providing benefits to the Employee no less favorable, taken as a whole, than the benefits provided to the other similarly situated employees of the Company by the Directors and Officers Insurance maintained by the Company on the date hereof, provided, however, that the Board may elect to terminate Directors and Officers Insurance for all officers and directors, including the Employee, if the Board determines in good faith that such insurance is not available or is available only at unreasonable expense.

## 14.　ARBITRATION.

The parties agree that any dispute, controversy or claim, whether based on contract, tort, statute, discrimination, retaliation, or otherwise, relating to, arising from or connected in any manner to this Agreement, or to the alleged breach of this Agreement, or arising out of or relating to Employee's employment or termination of employment, shall, upon timely written request of either party be submitted to and resolved by binding arbitration. The arbitration shall be conducted in New York, New York. The arbitration shall proceed in accordance with the National Rules for Resolution of Employment Disputes of the American Arbitration Association ("AAA") in effect at the time the claim or dispute arose, unless other rules are agreed upon by the parties. Unless otherwise agreed to by the parties in writing, the arbitration shall be conducted by one arbitrator who is a member of the AAA and who is selected pursuant to the methods set out in the National Rules for Resolution of Employment Disputes of the AAA. Any claims received after the applicable/relevant statute of limitations period has passed shall be deemed null and void. The award of the arbitrator shall be a reasoned award with findings of fact and conclusions of law. Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement, to enforce an arbitration award, and to vacate an arbitration award. However, in actions seeking to vacate an award, the standard of review to be applied by said court to the arbitrator's findings of fact and conclusions of law will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury. The Company will pay the actual costs of arbitration excluding attorney's fees. Each party will pay its own attorneys fees and other costs incurred by their respective attorneys.

## 15.　REPRESENTATIONS AND WARRANTIES OF THE EMPLOYEE.

The Employee represents and warrants to the Company that he is under no contractual or other restriction which is inconsistent with the execution of this Agreement, the performance of his duties hereunder or the other rights of Company hereunder. The Employee also represents and warrants to the Company that he is under no physical or mental disability that would hinder the performance of his duties under this Agreement. The Employee represents and warrants to the Company that all terms and conditions of this Agreement shall be kept strictly confidential. 

7

16.    **MISCELLANEOUS.**

This Agreement contains the entire agreement of the parties relating to the subject matter hereof. This Agreement supersedes any prior written or oral agreements or understandings between the parties relating to the subject matter hereof. No modification or amendment of this Agreement shall be valid unless in writing and signed by or on behalf of the parties hereto. The failure of a party to require performance of any provision of this Agreement shall in no manner affect the right of such party at a later time to enforce any provision of this Agreement. A waiver of the breach of any term or condition of this Agreement shall not be deemed to constitute a waiver of any subsequent breach of the same or any other term or condition. This Agreement is intended to be performed in accordance with, and only to the extent permitted by, all applicable laws, ordinances, rules and regulations. If any provision of this Agreement, or the application thereof to any person or circumstance, shall, for any reason and to any extent, be held invalid or unenforceable, such invalidity and unenforceability shall not affect the remaining provisions hereof or the application of such provisions to other persons or circumstances, all of which shall be enforced to the greatest extent permitted by law. The headings in this Agreement are inserted for convenience of reference only and shall not be a part of or control or affect the meaning of any provision hereof.

**17. KEYMAN TERMINATION OPTION**

In the event Laura Hagan ("Hagan") is no longer employed at Katz, Employee may elect to terminate this Employment Agreement by providing notice to the Company within 90 days from the date Hagan's employment is terminated. If Employee makes such election and provides timely notice this Employment Agreement will terminate and the provisions of Paragraph 6 of this Agreement restricting the Employee from competing with the Company will be waived. Notwithstanding the foregoing, Employee will still be bound by the provisions of Paragraph 6 of this Agreement related to disclosure of Confidential Information.

IN WITNESS WHEREOF, the parties have duly executed and delivered this Agreement as of the date first written above.

DATE: 5-14-05                           RALPH HERRERA


                                        KATZ COMMUNICATIONS, INC.

DATE: 4-28-05                     By:
                                        STU OLDS
                                        CHIEF EXECUTIVE OFFICER

8

# EXHIBIT B

# ARBITRATION AGREEMENT

If you and the Company have a legal dispute (i.e., a dispute that could otherwise be brought in court) and we can't resolve it through our Open Door Policy, then we will use arbitration. Private arbitration is a more efficient, less expensive, and usually faster way to resolve disputes than through a traditional lawsuit in state or federal court. Accordingly, we require that new, non-union employees sign an agreement promising that all covered claims as defined in this Agreement, will be submitted to final and binding determination by an impartial arbitrator under the Employment Dispute Resolution Rules of the American Arbitration Association. The Arbitration Agreement becomes effective immediately upon hire or six weeks following the date of close if employee gains Clear Channel/Eller employment by means of a Company acquisition.

Employees are still protected by all applicable employment laws, and are merely agreeing to have certain employment-related claims decided by a private arbitrator rather than by a judge or jury. *Employees are not giving up any substantive rights to recover damages.* All non-union employees are deemed to have agreed to this Arbitration Agreement by accepting or continuing employment with this Company (including raises, promotions, bonuses, etc.).

Arbitration is the procedure used for the resolution of certain covered claims that may arise between the Company and employees. In the interest of a prompt and fair resolution of these claims, each employee is required to enter into this Agreement in exchange for employment with the Company and the Company's agreement to resolve these claims in the same manner.

Many of the disputes or claims that might possibly arise between the Company and an employee could be made the subject of a formal charge or complaint before a state or federal agency and/or the subject of a lawsuit in a state or federal court. In most such cases, either party (the Company or employee) could ultimately have the case tried before a jury upon request.

By this Arbitration Agreement, however, employees give up their right to sue the Company, and the Company is giving up its right to sue employees in court, as well as the right to trial by jury. Instead, the Company and employees hereby agree that any covered legal claim that either may have against or with the other will be submitted solely to a private, impartial arbitrator (a "private judge," so to speak) for a final and binding decision.

## Scope of the Arbitration Agreement

As a condition of employment with the Company, each employee hereby *waives his/her right to sue* the Company, and the Company hereby waives its right to sue the employee, for any claim or cause of action covered by this Agreement. In lieu of suing, any such legal dispute may instead be submitted for final and binding resolution by a private, impartial arbitrator. The arbitration shall be governed by the Employment

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

1

Dispute Resolution Rules of the American Arbitration Association. A copy of these rules is available for each employee to review.

Nothing in this Agreement is intended to prohibit the Employee from filing a claim or communicating with any governmental agency including the Equal Employment Opportunity Commission or the Department of Labor.

**Covered Claims:**

This Agreement covers the following potential claims:

1. Any dispute regarding the arbitrability of any such claim;

2. Any dispute regarding this Agreement, including but not limited to its enforceability, scope or terms;

3. Any claim that could be asserted by Employee or Company in any state or federal civil court or before an administrative agency, including without limitation, claims for breach of any contract or covenant, express or implied; assault, battery, invasion of privacy, defamation of character, infliction of emotional distress, tortious interference with contract, or other tort claims, including any claim that an employee was injured or damaged because of the negligence of the Company or any of its employees; and claims for unlawful discharge and/or for violation of any federal, state or local law, statute, ordinance or regulation, or common law;

4. Any claim for discrimination, including but not limited to discrimination because of sex, pregnancy, race, national or ethnic origin, age, religion, creed, marital status, sexual harassment, sexual orientation, mental or physical disability or medical condition or other characteristics protected by statute;

5. Any claim of retaliation or discrimination against the Company for opposing the violation of any federal, state or local statute or ordinance, including but not limited to the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, state workers' compensation law or any "whistleblower" law; and

6. Any claim for commissions, wages, bonuses or any other form of compensation.

**Claims Not Covered:**

This Agreement does not cover:

1. Claims for workers' compensation benefits.

2. Claims for unemployment compensation benefits.

Form 4117
Arbitration Agreement
Sep Doo
7/11/01

2

3.     Claims for benefits based upon the Company's employee welfare benefit plans, if the plan contains a final and binding appeal procedure for the resolution of disputes under the plan.

4.     Claims for injunctive and/or other equitable relief, including but not limited to claims to enforce a covenant not to compete or for unfair competition or use or unauthorized disclosure of trade secrets or confidential information as contained in express written agreements.

5.     Wage and hour disputes within the jurisdiction of any state Labor Commissioner.

6.     Any claims not specifically listed as a "Covered Claim".

## Rules Governing the Arbitration

### 1.   Demand for Arbitration

Any party to an Arbitration Agreement may initiate arbitration by serving upon the other party, by certified mail, a written notice containing a specific request to enter into arbitration. The written request shall identify and describe the nature of each claim asserted, the facts upon which each claim is based, and the relief or remedy sought. Written notice to the Employee will be sent to the most recent address contained in the Employee's personnel file. Written notice to the Company shall be sent to:

Clear Channel
General Counsel
200 East Basse
San Antonio, Texas 79209

Promptly after sending or receiving a written request to arbitrate a Covered Claim, the Company shall notify the American Arbitration Association ("AAA") that a demand for arbitration has been made and shall request that the AAA provide the parties with a list of arbitrators, as specified below. If, on the date that an arbitration demand is postmarked, any claim made in the demand would be barred by the applicable statute of limitations, that claim shall be deemed barred for purposes of arbitration.

An arbitration is also initiated by the receipt by AAA of an order from a court compelling arbitration. For purposes of the statute of limitations, the arbitration is deemed initiated on the date that the order compelling arbitration is issued by the court, or as otherwise ordered by the court.

### 2.   Selecting an Arbitrator

The arbitration will be held under the auspices of AAA in or near the city in which the Employee or former Employee, who is party to the arbitration, is or was last employed by the Company. The parties may, however, agree on an alternative location

3

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

If the AAA does not have an available office with a hearing room in or near such city, the arbitration shall be conducted in a meeting room in a hotel in such city.

Except as otherwise provided in this Agreement, the arbitration shall be in accordance with the AAA's Employment Dispute Resolution Rules that are in effect at the time that the demand for arbitration is made. The arbitrator shall be either a retired judge or an experienced attorney licensed to practice law in the state in which the arbitration is to be convened.

Promptly upon receipt of notice from the Company that arbitration has been initiated, AAA will provide each party with an identical list of eleven (11) arbitrators from its panel of employment dispute arbitrators. (For purposes of arbitrator selection, all defendants, whether or not separately represented, shall be deemed one party). Within ten (10) calendar days from the postmark date on the AAA list, the parties or their representatives will meet or participate in a telephone conference to select an arbitrator. At such time, the parties shall alternately strike the name of an arbitrator on the list (the party initiating arbitration shall strike first) until only one name remains. This remaining name shall be the arbitrator. If a party refuses to timely participate in such a meeting or telephone conference, the other party may select an arbitrator from the list provided by AAA. If the arbitrator designated by this process declines or is unable to serve, the selection process shall be repeated with a new list of eleven (11) arbitrators from AAA.

### 3.    Hearing Date

The arbitrator will promptly set a hearing date and time and will mail written notice to each of the parties at least sixty (60) days in advance of the hearing unless the parties otherwise agree or mutually waive notice.

### 4.    Depositions and Other Discovery

Each party at their own expense shall have the right to take up to three (3) depositions unless the arbitrator, on a showing of good cause, approves additional depositions. Each party also shall have the right to require the production of relevant documents from the other party. Unresolved discovery disputes will be presented to the arbitrator for final resolution. All discovery shall be concluded within 45 days from the date the arbitrator is informed of his or her selection.

### 5.    Witnesses and Exhibits

No later than fifteen (15) days before the arbitration, the parties will exchange lists of witnesses, including any experts, and copies of all exhibits intended to be used at the arbitration. Each party shall have the right to subpoena witnesses and documents for the arbitration as well as documents relevant to the case from third parties.

6.    Pre-Hearing Procedures

The arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person, as the arbitrator deems necessary. The arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure.

7.    Briefs

Either party, upon request at the close of the hearing, shall be given leave to file a post-hearing brief. The time for filing such a brief shall be set by the arbitrator.

8.    Filing Fee

The Company will pay for the AAA filing fee and expenses of the arbitrator and AAA for administering the arbitration, except as expressly provided herein. The employee shall be responsible for their own attorney's fees, costs, and expenses, such as those incurred in discovery.

9.    The Arbitration Hearing

A.    Conduct of the Hearing

The arbitrator shall preside at the hearing and rule on the admission and exclusion of evidence and questions of procedure, and exercise other such powers as conferred by statute. Judicial rules relating to the order of proof, the conduct of the hearing and the presentation of admissibility of evidence will not be applicable. The arbitrator shall admit any relevant evidence if it is of the sort that reasonable persons are accustomed to relying upon in the conduct of serious affairs, regardless of the admissibility of such evidence in a court of law.

B.    The Law the Arbitrator will Apply

The arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the state law claim arose, or federal law of the circuit in which the federal law claim arose, or both, as applicable to the claim(s) asserted. The arbitrator is without jurisdiction to apply any different substantive law or law of remedies. The arbitrator may not disregard or alter the Company's rules or policies unless the arbitrator determines that a rule or policy violated existing law at the time of the alleged violation. The arbitration shall be final and binding upon the parties, except as provided in this Agreement.

Each party shall bear his or her own attorneys' fees and other costs no associated with the administration of the arbitration by the AAA. However, if a party is entitled to attorneys' fees under any federal, state or local statute or law, the arbitrator may award those fees pursuant to the governing law, at his or her discretion.

5

### C.    Failure to Appear for Hearing

Should any party refuse or neglect to appear for, or participate in, the arbitration hearing, the arbitrator shall have the authority to decide the dispute based upon whatever evidence is presented.

### D.    Transcription of Hearing

Either party, at  their expense, may arrange for and pay the cost of a court reporter to provide a stenographic record of proceedings.

### E.    Payment of Attorney and Witness Expenses

The parties shall pay its own attorneys' fees, witness fees, discovery costs and other expenses incurred for their own benefit, unless otherwise provided by contract or statute.

### 10.    The Arbitration Award

The arbitrator shall render an award and opinion which is signed and dated and which decides all issues submitted as well as the legal principles supporting each part of the award. Unless the parties and arbitrator agree otherwise, the arbitrator's award shall issue no later than thirty (30) days from the date the arbitration hearing concludes or the post-hearing briefs (if requested) are received, whichever is later. The arbitrator may grant any remedy or relief, legal or equitable, that would have been available had the claim been asserted in court. The award shall include a brief statement of the factual and legal bases for the ruling.

### A.    Reconsideration

Either party shall have the right, within twenty (20) days of issuance of the arbitrator's opinion, to file with the arbitrator a motion to reconsider (accompanied by a supporting brief), and the other party shall have twenty (20) days from the date of the motion to respond. The arbitrator thereupon shall reconsider the issues raised by the motion and, promptly, either confirm or change the decision, which (except as provided by this Agreement) shall then be final and conclusive upon the parties. Each party shall bear his or her own costs and attorneys' fees relating to such a motion for reconsideration and written opinion of the arbitrator, unless the arbitrator orders otherwise.

### B.    Enforcement

Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement.  Either party may bring an action to enforce an arbitration award. A party opposing enforcement of an award may also bring an action or counteraction if there are enforcement proceedings pending in any court of

6

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

competent jurisdiction to set aside the award. In such proceedings, the standard of review will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury.

## Other Provisions

### Exclusive Forum

The Employee understands that this Agreement waives his or her right to a jury trial and waives the right to seek remedies in court.

### Construction of Agreement

Should any provision of this Agreement be found to be unenforceable, such portion will be severed from the Agreement and the remaining portions shall remain in full force and effect.

### Sole and Entire Agreement

This is the complete agreement of the parties on the subject of arbitration of disputes (except for any arbitration agreement in connection with any pension or benefit plan). This Agreement supersedes any prior or contemporaneous oral or written understandings on the subject. No party is relying on any representations, oral or written, on the subject of the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement.

### Voluntary Agreement

The employee's signature on the Arbitration Agreement certifies that the employee has carefully read this agreement and understands its terms. The employee acknowledges that all understandings and agreements between the Company and employee relating to the subjects covered in this agreement are contained in it, and that the employee has entered into this agreement voluntarily and not in reliance on any promises or representations by the Company other than those contained in this agreement itself.

### SIGNATURE AND ACKNOWLEDGEMENT:

The employee further acknowledges that the employee has been given the opportunity to discuss this agreement with the employee's private attorney.

_____          3-22-04
Employee Signature                          Date

RALPH E. HERRERA

                                              7

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

Printed Name                                   Division and Location

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

8

# EXHIBIT F

Westlaw.

Not Reported in F.Supp.2d                                                                                     Page 1

Not Reported in F.Supp.2d, 2003 WL 22119182 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

**H**
Gambardella v. Pentec, Inc.
D.Conn.,2003.
Only the Westlaw citation is currently available.
United States District Court,D. Connecticut.
GAMBARDELLA
v.
PENTEC, INC., et al.
No. 3:01CV1827(JBA).

Aug. 25, 2003.

John Ivar Bolton, Bridgeport, CT, US Court of
Appeals, Office of the Clerk, New York, NY, for
Plaintiff.
Alan I. Scheer, O'Connell, Flaherty & Attmore,
Michael Alan Kurs, Pullman & Comley, Hartford,
CT, for Defendants.

*Ruling on Motion for Leave to File Rule 60(b)
Motion [Doc. # 44]*
ARTERTON, J.
*1  Plaintiff  commenced  this  employment
discrimination suit against her former employer
despite having signed an agreement to arbitrate such
disputes. When defendants filed their motion to
compel arbitration, plaintiff opposed by asserting
that she was fraudulently induced to sign the
arbitration agreement and that the provision of the
agreement providing that she would pay one-half of
the cost of arbitration deprives her of rights
guaranteed to Title VII plaintiffs. The Court's ruling
on  the  motion  rejected  both  contentions,  *see*
*Gambardella v. Pentec, Inc.*, 218 F.Supp.2d 237,
244-246 (D.Conn.2002), but raised a related ground
*suasponte:* the unavailability of legal fees for a
prevailing Title VII complainant.[FN1]

> FN1."But for the arbitration agreement,
> [Gambardella] would presumptively be
> entitled to recover both her attorney's fees
> and costs under Title VII if she prevailed.

By  denying  Gambardella  access  to  a
remedy Congress made available to ensure
that violations of Title VII are effectively
remedied  and  deterred,  the  arbitration
agreement drafted by Pentec impermissibly
erodes the ability of arbitration to serve
those purposes as effectively as litigation."
*Id.* at 247.

Following the Court's ruling declining to compel
arbitration,  defendants  filed  their  pending
interlocutory appeal, and this case was stayed. After
the appeal was filed, defendants indicated to the
Second Circuit that "it is Pentec's position that the
arbitration agreement does not foreclose the award
to a prevailing plaintiff of reasonable attorney's fees
or taxable costs from Pentec," and that defendants
would assert this position on appeal. [Doc. # 44] ¶
4. Rather than raise this argument for the first time
at the appellate level, defendants filed the instant
motion for permission for leave to file a Rule 60(b)
motion [Doc. # 44], asking that the Court express
its inclination to grant such a motion.[FN2]

> FN2. Because Pentec's notice of appeal
> divests the Court of jurisdiction to revisit
> and reconsider its denial of defendants'
> motion to compel arbitration, defendants
> followed  the  proper  procedure  under
> *Toliver v. County of Sullivan*, 957 F.2d 47
> (2d Cir.1992), in that they have asked this
> Court to first express its inclination to
> grant such a motion, at which time the
> Court of Appeals could be asked to return
> jurisdiction to this Court so that the motion
> may be granted.

In support of the motion for leave, defendants argue
that the Court's *suasponte* consideration of the
attorney's fees issue deprived them of the chance to
express their position here that fees and costs are
not precluded by the arbitration agreement. They
argue that the agreement should be construed to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2

Not Reported in F.Supp.2d, 2003 WL 22119182 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

allow for an award of attorney's fees to a prevailing party, thus guaranteeing Gambardella's right to fees and costs if she prevails while preserving the arbitration agreement to which the parties were bound. Gambardella asserts that construing the agreement to allow for attorney's fees would constitute *expost* "blue penciling" of the agreement, which she contends is poor public policy.

The agreement in this case provides: "You and Pentec, Inc. shall each bear respective costs for legal representation at any such arbitration." *Gambardella*, 218 F.Supp.2d at 244 n. 5. While the agreement's complete silence on the subject of shifting these fees and costs to the non-prevailing party is in contrast with Title VII's explicit provisions on this issue, [FN3] the agreement does not affirmatively foreclose the possibility of attorney's fees. *Compare e.g., Spinetti v. Service Corp. Int'l,* 324 F.3d 212, 215 (3rd Cir.2003) (agreement provided that "[e]ach party may retain legal counsel and shall pay its own costs and attorney's fees, *regardless of the outcome of the arbitration*" ) (emphasis added); *Armendariz v. Foundation Health Psychcare Servs., Inc.,* 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669, 675 (Cal.2000) (agreement limited available remedies to back pay and explicitly excluded "any other remedy, at law or in equity, including but not limited to reinstatement and/or injunctive relief").

> FN3. *See* 42 U.S.C. § 2000e-5(k) (providing for award of attorney's fees and costs to " the prevailing party"); *Bridges v. Eastman Kodak Co.,* 102 F.3d 56, 58 (2d Cir.1996) ( "To be eligible for attorney's fees and costs under § 2000e-5(k), a plaintiff (or a defendant) must be a prevailing party. A plaintiff prevails when she succeeds on any significant issue in litigation which achieves some of the benefit the party sought in bringing suit ." ) (citations, quotations and alterations omitted); *seealso Hanrahan v. Hampton,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (party may "prevail" on some issues and thus be entitled to an interlocutory award of attorney's fees even before final judgment).

\*2  In  contrast  to  the  silence  of  the Gambardella/Pentec agreement, the agreements at issue in each case [FN4] cited by the Court's original ruling (save one) were either unambiguous in their contravention of Title VII or had actually been interpreted by the arbitrator in a manner inconsistent with Title VII.[FN5] The agreement in *McCaskill,* identical to the *Spinetti* agreement quoted above, affirmatively foreclosed the possibility of an award of attorney's fees to a prevailing party by providing that each party would be responsible for its own attorney's fees " regardless of the outcome of the arbitration."[FN6] The arbitration rules in *Hooters* provided that " attorney's fees can only be awarded upon a showing of frivolity or bad faith of the unsuccessful litigant," 39 F.Supp.2d at 599, which is a higher standard than Title VII's guarantee of presumptive attorney's fees.[FN7] While  the  arbitration  provision  in *DeGaetano* itself did not foreclose an attorney's fee award to a prevailing party, the arbitrator had refused to award such fees, which the district court thereafter added as part of its confirmation of the arbitration award. The arbitration provision in *Gourley* expressly required that "[a]ll documents to be considered by the arbitrator shall be filed at the hearing" and reiterated that "[t]here shall be no post-hearing briefs,"178 F.Supp.2d at 1204, which the *Gourley* court concluded would preclude prevailing  plaintiffs  from  ever  seeking  a post-hearing award of attorney's fees.

> FN4. *Graham Oil Co. v. ARCO Prods. Co.,* 43 F.3d 1244 (9th Cir.1994); *McCaskill v. SCI Management Corp.,* 285 F.3d 623 (7th Cir.2002); *Hooters of America, Inc. v. Phillips;* 39 F.Supp.2d 582 (D.S.C.1998); *DeGaetano v. Smith Barney, Inc.,* 983 F.Supp. 459 (S.D.N.Y.1997); and *Gourley v. Yellow Transp. LLC,* 178 F.Supp.2d 1196 (D.Colo.2001).

> FN5. *Graham Oil* is the sole exception, as the clause at issue there provided only that "[e]ach party shall pay its own costs and expenses, including attorneys' fees related to such arbitration."43 F.3d at 1247. There is  no  indication,  however,  that  the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 22119182 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

defendant in that case proffered an alternative construction of the clause (as defendant does here), and other provisions of the agreement at issue were found to invalidate the agreement, as well, *id.* at 1247-1248 (delineating three separate ways in which the agreement contravened the statute, only one of which was the attorney's fee issue).

FN6. This opinion in *McCaskill* was vacated for rehearing. 294 F.3d 879. On rehearing, the court again held that the arbitration provision was unenforceable because of the prohibition on attorney's fees for a prevailing party, 298 F.3d at 680, but noted that the arbitration issue " was not well presented, as SCI has waived the intertwined issues of severability and construction of arbitration agreements by the arbitrator and may not now raise them on rehearing,"*id.* at 680 n. 1. These intertwined issues were again presented by the same defendant company and decided in *Spinetti,* discussed *infra.*

FN7.*SeeLyte v. Sara Lee Corp.,* 950 F.2d 101, 103 (2d Cir.1991) ( "While the language of the Title VII fee provision refers to the award as discretionary, a prevailing plaintiff is in fact entitled to fees unless special circumstances would render such an award unjust in light of the congressional goals underlying enforcement of fee awards in civil rights litigation.") (citation and internal quotation omitted).

This silence on the availability of an award of attorney's fees to a prevailing claimant also distinguishes the Gambardella/Pentec arbitration agreement from those in the cases relied on by Gambardella in opposing the instant motion, each of which contained an express provision which the court found to be unlawful.FN8The arbitration agreements in *Cooper* and *Popovich* adopted the rules of the American Arbitration Association, which each court found to expressly and unlawfully require a claimant to bear certain prohibitive costs,

*Cooper,* 199 F.Supp.2d at 781;*Popovich,* 2002 WL 449003 at *1, and the *Shankle* and *Perez* agreements themselves specified (unlawfully, according to the both courts) that an employee would be liable for one-half of the costs of arbitration, *Shankle,* 163 F.3d at 1232;*Perez,* 253 F.3d at 1285.FN9The agreement in *Armendariz* could not have been clearer, providing that a successful claimant's "exclusive" remedies were " limited to a sum equal to the wages I would have earned from the date of any discharge until the date of the arbitration award [and] I shall not be entitled to any other remedy, at law or in equity, including but not limited to reinstatement and/or injunctive relief."99 Cal.Rptr.2d 745, 6 P.3d at 675. Thus, in every case cited by Gambardella in opposition to defendants' motion, the offending provisions of the arbitration agreements at issue were explicit and were not open to differing interpretations.

FN8.*Cooper v. MRM Inv. Co.,* 199 F.Supp.2d 771, 782 (M.D.Tenn.2002) (" Defendants will not be allowed, at this point, to abandon a provision that KFC's attorneys carefully drafted, in order to ' save' the Arbitration Agreement."); *Shankle v. B-G Maint. Mgmt. of Colorado, Inc.,* 163 F.3d 1230, 1235 n. 6 (10th Cir.1999) ("The Agreement clearly makes the employee responsible for one-half of the arbitrator's fees and we are not at liberty to interpret it otherwise.") (citation omitted); *Perez v Globe Airport Sec. Servs., Inc.,* 253 F.3d 1280, 1287 (11th Cir.2001), *vacated pursuant to parties' stipulation of dismissal,*294 F.3d 1275 (11th Cir.2002); *Armendariz,supra;* and *Popovich v. McDonald's Corp.,* No. 01C662, 2002 WL 449003 (N.D.Ill. March 20, 2002).

FN9. Gambardella raised the cost argument present in *Cooper,Shankle,Perez* and *Popovich* in this case as well, but the Court's earlier opinion rejected it, relying on Gambardella's failure to carry her burden of proof under *Green Tree Financial Corp. v. Randolph,* 531 U.S. 79,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                      Page 4

Not Reported in F.Supp.2d, 2003 WL 22119182 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

121 S.Ct. 513, 148 L.Ed.2d 373 (2000). In *Green Tree,* the Supreme Court held that " where ... a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs."*Id.* at 92.Because Gambardella provided "nothing from which the Court could conclude that the costs are likely to personally burden her financial ability to pursue her statutory claims,"*Gambardella,* 218 F.Supp.2d at 246, she failed to meet her *Green Tree* burden, and thus cannot rely on prohibitive expense as grounds to avoid arbitration.

\*3 Defendants point to the Third Circuit's decision in *Spinetti,supra,* which severed the provision of the arbitration agreement which expressly precluded award of attorney's fees and costs to prevailing party [FN10] and enforced the remainder of agreement, reflecting the opinion that "[y]ou don't cut down the trunk of a tree because some of its branches are sickly,"324 F.3d at 214. While courts have differed on whether to sever an express provision contravening Title VII and enforce the remainder of the arbitration agreement (*e.g.,Spinetti* ) or not (*Cooper,Shankle,Perez,Armendariz* and *Popovich* ), the Court need not reach that question here. Viewing the canons of contract construction as requiring the arbitration agreement *subjudice* to be read as to (if possible) make the agreement lawful, construe ambiguity in the agreement against the drafter, and serve the public interest, the silence on prevailing claimant attorney's fees must be construed to allow for a presumptive entitlement to such fees as part of a successful claimant's award, thus paralleling Title VII's provisions. So viewed, the arborist-like decision is not implicated in this case.

> FN10. The language of the *Spinetti* agreement was identical to that of the agreement in *McCaskill.*"Each party may obtain legal counsel and shall pay its own costs and attorney's fees, *regardless of the outcome of arbitration.* "(emphasis added).

First, an agreement should be construed, when possible, to render it lawful rather than unlawful. *See Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465, 1485-1486 (D.C.Cir.1997) (silence in an arbitration agreement as to certain costs construed to render the agreement valid and enforceable: "It is well understood that, where a contract is unclear on a point, an interpretation that makes the contract lawful is preferred to one that renders it unlawful.") (citations omitted); *accord*Restatement (Second) of Contracts § 203(a) ("an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect").

Second, ambiguity in agreements should be construed against the drafter. *See*Hartford Elec. *Applicators of Thermalux, Inc. v. Alden,* 169 Conn. 177, 182, 363 A.2d 135 (1975) (*citing*Ravitch v. *Stollman Poultry Farms, Inc.,* 165 Conn. 135, 328 A.2d 711 (1973))."If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous."*United Illuminating Co. v. Wisvest-Connecticut LLC,* 259 Conn. 665, 671, 791 A.2d 546 (2002) (*citing Lopinto v. Haines,* 185 Conn. 527, 538, 441 A.2d 151 (1981)). As set out above, the language of this contract is subject to two reasonable interpretations: (1) that each party will bear attorney's fees and costs regardless of the outcome; or (2) that while attorney's fees are initially the burden of the party incurring them, a successful claimant may, in keeping with the substantive law of Title VII, recover such fees as part of an award. Construing the ambiguity against Pentec (undisputedly the drafter of this agreement) means adopting the second interpretation, as it is that interpretation which exposes Pentec to greater legal liability.[FN11]

> FN11. It is of no moment that the second interpretation is the one Pentec is advancing here. *See*Cole, 105 F.3d at 1466 (construing ambiguous provision regarding costs of arbitration "against the drafter" such that the drafter would have to pay the costs of arbitration, even though construing the provision the opposite way would have voided the arbitration

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 5

Not Reported in F.Supp.2d, 2003 WL 22119182 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

agreement and thus achieved the result sought in the litigation by the draftee).

\*4 Finally, "[i]n choosing among the reasonable meanings of a promise or agreement or a term thereof, a meaning that serves the public interest is generally preferred."Restatement (Second) of Contracts § 207. While this rule "applies only to agreements which affect a public interest,"*id.* § 207 cmt. a, "awarding attorney's fees to prevailing plaintiffs, and thereby encouraging ameliorative lawsuits, serve[s] broader policy goals" than simply "mak[ing] it easier for a plaintiff of limited means to bring a meritorious suit."*DeGaetano,* 983 F.Supp. at 465 (citations and internal quotations omitted). Rather, Title VII's attorney's fee provision effectuates Congressional policy against invidious discrimination in employment. See*Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 716 (5th Cir.1974). Of two competing interpretations, the one which would read the agreement to protect this important policy choice is the better of the two. While it is true that reading the agreement to preclude a fee and thus be unenforceable would permit Gambardella to proceed with a jury trial in federal court, voiding the agreement to protect public policy addresses only one of the principles of construction, while construing the agreement to allow attorney's fees both conforms it with public policy and preserves its validity. *Cf.also*Progressive *Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela,* 991 F.2d 42, 45 (2d Cir.1993) ("Federal policy, as embodied in the Federal Arbitration Act, strongly favors arbitration as an alternative dispute resolution process.") (footnote omitted) (*citing,inter alia,Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

For all of these reasons, construing the silence in the arbitration agreement in the manner now urged by Pentec is the proper course of action. The parties' agreement will be rendered valid rather than void, and Gambardella will enjoy her full panoply of Title VII rights and remedies (except a jury trial), including her right to presumptive attorney's fees in the event she is a "prevailing party." Because the issue of attorney's fees was raised *suasponte* and without notice,[FN12] Pentec never had occasion to

advance this argument. Thus, the Court concludes that relief from its prior opinion denying defendants' motion to compel arbitration is in order, should the Court of Appeals return jurisdiction over this matter.

> FN12. While there is a half-sentence reference to attorney's fees in Gambardella's memorandum in opposition to defendants' motion to compel arbitration, *see* [Doc. # 24] at 7-8 ("There exist no limitations as to the arbitrator's fees and no formula for the calculation of attorney's fees."), this reference was presented in the context of Gambardella's assertion that the uncertainty and expense of the arbitration envisioned in the agreement were sufficient grounds to void the agreement. This sparse reference was insufficient to put defendants on notice that the agreement's provisions regarding attorney's fees were the grounds for Gambardella's challenge to the agreement.

Therefore, for the reasons set out above, the motion [Doc. # 44] for leave to file a Rule 60(b) motion is GRANTED. If the Court of Appeals returns jurisdiction over this matter, see*Toliver,* 957 F.2d at 49, the Court will vacate its prior ruling, appoint an arbitrator pursuant to 9 U.S.C. § 5, [FN13] and dismiss the case.[FN14]

> FN13.*Gambardella,* 218 F.Supp.2d at 239 ("Defendants have also requested that the Court appoint an arbitrator pursuant to 9 U.S.C. § 5 because no method of appointment of an arbitrator is specified in the arbitration agreement.").

> FN14. All of Gambardella's claims against all parties are subject to the arbitration agreement, see*Gambaradella,* 218 F.Supp.2d at 242 (noting that all claims against Pentec are "indisputably within the scope of the arbitration agreement" and concluding that the claims against the individual defendants are "directly related to [those defendants'] employment with

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 22119182 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

> Pentec and to Gambardella's claims against Pentec" such that they are within the scope of the agreement), and thus dismissal of the complaint (rather than a stay pending arbitration) is warranted, *Lewis Tree Serv., Inc. v. Lucent Techs., Inc.,* 239 F.Supp.2d 332, 340 (S.D.N.Y.2002) (citations omitted), although the dismissal will be without prejudice, *see Jureczki v. Banc One Texas, N.A.,* 252 F.Supp.2d 268, 380 (S.D.Tex.2003) (*citing, interalia, Fedmet Corp. v. M/V Buyalyk,* 194 F.3d 674 (5th Cir.1999)).

IT IS SO ORDERED.

D.Conn.,2003.
Gambardella v. Pentec, Inc.
Not Reported in F.Supp.2d, 2003 WL 22119182 (D.Conn.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2003 WL 21222541 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Gruber v. Louis Hornick & Co., Inc.
S.D.N.Y.,2003.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Jenny GRUBER, Plaintiffs,
v.
LOUIS HORNICK & CO., INC., Louis Hornick,
Steven Berger and Steven Rand Defendants.
**No. 02 Civ. 5092(SHS).**

May 23, 2003.

Former employee brought Title VII action against
employer, alleging sexual harassment and
retaliation. On employer's motion to compel
arbitration, the District Court, Stein, J., held that
arbitration provision in employment agreement was
enforceable.

Motion granted.
West Headnotes
**[1] T ☞ 134(3)**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(B) Agreements to Arbitrate
            25Tk131 Requisites and Validity
                25Tk134 Validity
                    25Tk134(3) k. Validity of Assent.
Most Cited Cases
    (Formerly 33k6.2 Arbitration)
Under New York law, employer's requirement that
employee sign employment agreement as condition
for continued employment did not, without more,
give rise to duress such as would render arbitration
clause in agreement unenforceable.

**[2] T ☞ 134(1)**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(B) Agreements to Arbitrate
            25Tk131 Requisites and Validity

                25Tk134 Validity
                    25Tk134(1) k. In General. Most
Cited Cases
    (Formerly 33k6.2 Arbitration)
Fee schedule for arbitrating former employee's
sexual harassment claim against employer was not
so high as to constitute barrier to vindication of
employee's Title VII rights, and thus was not
ground for declining to enforce arbitration provision
in parties' employment agreement. Civil Rights Act
of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[3] T ☞ 134(1)**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(B) Agreements to Arbitrate
            25Tk131 Requisites and Validity
                25Tk134 Validity
                    25Tk134(1) k. In General. Most
Cited Cases
    (Formerly 33k6.2 Arbitration)
Possibility that, under arbitration rules, Title VII
plaintiff might be assessed employer's attorney fees
even if her sexual harassment claim was not
frivolous did not constitute barrier to vindication of
plaintiff's statutory rights, and thus was not ground
for declining to enforce arbitration provision in
parties' employment agreement. Civil Rights Act of
1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

*OPINION AND ORDER*
STEIN, J.
*1 Plaintiff Jenny Gruber brings this employment
discrimination action against her employers
(collectively "Louis Hornick"), alleging that she
was subjected to sexual harassment and retaliation
in violation of Title VII of the Civil Rights Act of
1964 and the New York City Human Rights Law.
Defendants have moved to compel arbitration and
stay further judicial proceedings pending
arbitration. For the following reasons, that motion is
granted.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                     Page 2

Not Reported in F.Supp.2d, 2003 WL 21222541 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

## I. BACKGROUND

Plaintiff was employed by Louis Hornick, a curtain and draperies manufacturer, for 10 months-from April 2001 to January 2002-as an Assistant Designer in its New York City office. As a condition of employment, Louis Hornick requires its employees to sign an "Undertaking and Inducement to Louis Hornick & Co., Inc," (" Agreement") that contains the following agreement to arbitrate:

Any dispute or controversy between the Company and Applicant relating to or arising out of the employment of Applicant or the termination of such employment for any reason and under any circumstance ... shall be determined in arbitration in the City of New York pursuant to the Commercial Rules then in effect of the American Arbitration Association ... The arbitration award shall be final and binding upon the parties and judgment may be entered thereon in the Supreme Court of the State of New York or in any other court of competent jurisdiction.

(Anatole Aff. Ex.A ¶ 3). On April 4, 2001, plaintiff signed the Agreement, acknowledging that she had read and understood it.[FN1]

> FN1. The Agreement contains an acknowledgement provision that states " Applicant has carefully read and considered this undertaking and inducement, and understands it, and expressly acknowledges receipt of a copy hereof and the opportunity to discuss it with any person or advisor of her/[his] choosing before signing."(Anatole Aff. Ex A ¶ 4).

On January 18, 2002, for reasons that are in dispute, Gruber was terminated by Louis Hornick. She claims that she was sexually harassed and terminated in retaliation for raising complaints. Defendants argue that Gruber was terminated for proper business reasons. Six months after being terminated, Gruber filed this action, asserting claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a, et seq., and the New

York City Civil Rights Law, N.Y. City Admin. Code §§ 8-107 et. seq. Defendants have now moved to compel Gruber to arbitrate their disputes.

## II. DISCUSSION

The Federal Arbitration Act ("FAA") provides that " an agreement in writing to submit to arbitration an existing controversy ... shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. There is a strong federal policy favoring alternative means of dispute resolution, and in light of that policy, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Arakawa v. Japan Network Group,* 56 F.Supp. 349, 352 (S.D.N.Y.1999)(citing *Oldroyd v. Elmira Savings Bank,* FSB, 134 F.3d 72, 76 (2d Cir.1998) and *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)). In determining whether to compel arbitration pursuant to the FAA, a court considers: 1) whether the parties agreed to arbitrate; 2) what the scope of the arbitration agreement is; and 3) whether Congress intended the federal statutory claims asserted by the plaintiff to be nonarbitrable. *SeeGenesco, Inc. v. T. Kaiuchi & Co.,* 815 F.2d 840, 844 (2d Cir.1987).

*2 In response to defendants' motion to compel arbitration, Gruber contends her claims are nonarbitrable because first, she did not knowingly and willfully enter into the agreement to arbitrate, and second, the arbitration provisions with respect to costs and attorney's fees render the agreement unenforceable in the context of a Title VII suit. The litigants do not dispute the scope of the arbitration agreement.

### A. Gruber Agreed to Arbitrate

[1] In determining whether parties have agreed to arbitrate, courts apply generally accepted principles of contract law. *See id.* at 845.A person who signs a contract is presumed to know its contents and assent to them. *SeeArakawa,* 56 F.Supp.2d at 352;*Berger v. Cantor Fitzgerald Securities,* 967 F.Supp. 91, 93

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                        Page 3

Not Reported in F.Supp.2d, 2003 WL 21222541 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

(S.D.N.Y.1997). Plaintiff is bound by the agreement to arbitrate unless she can show special circumstances, such as duress or coercion, which would justify non-enforcement of the contract. *Arakawa*, 56 F.Supp.2d at 352 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33, 111 S.Ct. 1647, , 1655, 114 L.Ed.2d 26, L.Ed.2d 26 (1991)).

Gruber contends that she signed the Agreement under duress. She asserts that she was hired on Friday, March 30, 2001, and left her prior employment to begin work for Louis Hornick the following Monday. (Gruber Aff.). In support of her contention of duress, she states merely that the Agreement "was not discussed with me. I was told I had to sign it and return it."(Gruber Aff. ¶ 3) and that, when she was given the Agreement two days after starting work, "I was told that if I did not sign the Agreement, I would not be able to work for [Louis Hornick]" (Gruber Aff. ¶ 5).

In order for a party to show that a contract was signed under duress, she must show "(1) a threat, (2) which was unlawfully made, and (3) caused involuntary acceptance of contract terms, (4) because the circumstances permitted no other alternative."*DeGaetano v. Smith Barney, Inc.*, No. 95 Civ. 1613(DLC), 1996 WL 44226 at *5 (S.D.N.Y. Feb.5, 1996)("DeGaetano I"). Despite the inequality in bargaining power between employers and employees, conditioning employment upon an agreement to arbitrate does not by itself constitute duress. *SeeGilmer*, 500 U.S. at 33, 11 S.Ct. 1647. Nor does conditioning further employment to a current employee's agreement to arbitrate by itself constitute duress. *SeeBrennan v. Bally Total Fitness*, 198 F.Supp.2d 377, 383 (S.D.N.Y.2002)(holding arbitration agreement invalid because of coercive circumstances of employer's presentation of agreement to employees); *see alsoArawaka*, 56 F.Supp.2d at 352 (holding arbitration agreement was not invalid because employee signed it in order to keep her job, absent other allegations of unfairness, oppression or unconscionability.

Here, Gruber has failed to establish or even allege the additional circumstances required to establish

that she lacked a meaningful choice in deciding whether or not to sign the Agreement. Her sole allegation is that she was told that if she did not sign, she would not be able to work for defendants. (Gruber Aff. ¶ 5). In contrast to cases where duress has been found in the signing of agreements to arbitrate employment disputes, there are no allegations that plaintiff was not given sufficient time to read the agreement or that defendants misled her about its contents. *SeeBrennan*, 198 F.Supp.2d at 383 (holding arbitration agreement invalid due to duress where plaintiff given insufficient time to review agreement and defendant used additional pressure tactics); *Berger v. Cantor Fitzgerald Securities*, 942 F.Supp. 963, 966 (S.D.N.Y.1996) (ordering discovery on issue of whether plaintiff agreed to arbitrate where plaintiff alleged that he was misled about the arbitration agreement's contents and given insufficient time to review the agreement). Accordingly, the Court holds that Gruber has not shown that the Agreement was signed under duress, and therefore agreed to arbitrate.

### B. The Title VII Claims are Arbitrable Pursuant to the Agreement

*3 Title VII claims are not subject to a general legislative exception to arbitrability, and are therefore generally arbitrable. *SeeDesiderio v. National Ass'n of Secs. Dealers, Inc.*, 191 F.3d 198, 204-05 (2d Cir.1999). Such claims, however, cannot be subject to arbitration where the forum requires a party to forgo a substantive right afforded by the statute. *SeeGilmer*, 500 U .S. AT 28 (finding ADEA claims arbitrable because substantive rights of the statute could be vindicated in arbitral forum); *Martens v. Smith Barney, In c.*, 181 F.R.D. 243, 255-56 (S.D.N.Y.1998)(setting forth requirements to ensure arbitration will not subvert statutory scheme).

The Agreement provides that arbitration is to be held pursuant to the rules of the American Arbitration Association ("AAA"). Gruber contends that two provisions of these rules render the Agreement invalid. First, she contends that the AAA's administrative fee schedule makes the costs

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 4

Not Reported in F.Supp.2d, 2003 WL 21222541 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

to her to arbitrate prohibitive. Second, she contends that the AAA's attorney's fees provisions, which award attorney's fees to employers who prevail against non-frivolous complaints, unduly "chills" plaintiffs from vindicating their substantive rights afforded by the statute.

### 1. Arbitration Fees

[2] The existence of significant arbitration costs may preclude a litigant from effectively vindicating her federal statutory rights in the arbitral forum. *Green Tree Financial v. Randolph,* 531 U.S. 79, 90, 121 S.Ct. 513, 522, 148 L.Ed.2d 373 (2000). The party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive "bears the burden of showing the likelihood of incurring such costs."*Id.* at 92, 121 S.Ct. at 522.

Plaintiff submits that in an employment dispute such as hers, she would be assessed an initial filing fee of $1250, a case service fee of $750, and an administrative fee of $150 per day of the hearing. In addition, there are daily fees for the rental of hearing rooms and compensation for the arbitrator which can exceed $1,000 per day. (Plt.Exh. 1, pp. 3-4). Louis Hornick responds that Gruber's information is out of date, and that effective November 1, 2002, the AAA adopted a new, lower, administrative fee schedule for employment disputes. (Rudderman Aff. II, Ex.A). Under the new fee schedule, plaintiff's filing fee is capped at $125, and all other expenses, including hearing fees, administrative fees, rental fees, and the arbitrator's compensation are paid by the employer. *Id.*

It is unclear from the competing submissions of the parties what the AAA fee schedule is for this case. Plaintiff's submission provides the AAA administrative fee schedule for disputes arising out of "individually-negotiated employment agreements" as of January 1, 2001. (Gruber Aff. Exh.1). Defendant's submission, on the other hand, is the AAA administrative fee schedule for disputes arising out of "employer-promulgated plans" as of November 1, 2002. Neither side has provided any

information as to whether according to the AAA's rules this employment agreement is " individually-negotiated" or "employer-promulgated. "

*4 It is clear that under the fee schedule for " employer-promulgated" agreements, plaintiff is not effectively precluded from vindicating her rights due to the fees of arbitrating. The higher, " individually-negotiated" schedule, presents a more difficult question However, plaintiff has not submitted any information that demonstrates what the higher schedule would amount to in this case, or that she would be unable to pay any fees incurred. The record, therefore, is inadequate for the Court to conclude that even the higher fee schedule would constitute a barrier to the vindication of plaintiff's rights. *SeeMildworm v. Ashcroft,* 200 F.Supp.2d 171, 180 (declining to invalidate similar arbitration agreement in advance of the arbitration when it was unclear what fees would in fact be assessed). Accordingly, this Court will maintain jurisdiction over any subsequent petition to confirm or vacate the award.*Id.;Arakawa,* 56 F.Supp.2d at 355.

### 2. Attorney's Fees

[3] Title VII provides for the discretionary award of attorney's fees to the prevailing party. 42 U.S.C. § 2000e-5(k). A prevailing plaintiff ordinarily is to be awarded attorney's fees in all but special circumstances.*Chrisitansburg Garment Co. v. EEOC,* 434 U.S. 412, 417, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978). When an action is brought in good faith, a prevailing defendant is only entitled to an award of attorney's fees upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation.*Id.* at 421,87 S .Ct. at 700. To the extent an arbitration agreement waives a plaintiff's right to obtain attorney's fees, the agreement is invalid. *DeGaetano v. Smith Barney, Inc.,* 983 F.Supp. 459, 468-69 (S.D.N.Y.1997)( " DeGaetano II").

Unlike the agreement in *DeGaetano II,* the AAA's attorney's fees provision does not limit Gruber's right to obtain attorney's fees should she prevail. It is therefore analogous to any other potentially

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 5

Not Reported in F.Supp.2d, 2003 WL 21222541 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

burdensome arbitration cost addressed by the
Supreme Court in *Green Tree.*As it is quite unclear
at this point in the litigation whether plaintiff will be
assessed defendant's attorney's fees at all and if so,
how large those fees will be, plaintiff has not shown
the arbitration will be prohibitively expensive
because of this provision. *SeeArawaka,* 56
F.Supp.2d 349, 355 (holding that plaintiff had not
shown a fee splitting arrangement to be a barrier to
her statutory rights when it was not yet determined
what, if any, amount would be assessed against the
plaintiff). The validity of any attorney's fees
awarded can be addressed within the context of a
petition to confirm or vacate the arbitration award at
the conclusion of the arbitration. *SeeDeGaetano II,*
983 F.Supp. at 470 (granting motion to vacate or
modify portion of arbitration award relating to
attorney's fees). As noted above, this Court will
maintain jurisdiction over any subsequent petition
to confirm or vacate the award. *Arakawa,* 56
F.Supp.2d at 355.


### III. CONCLUSION

*5 Accordingly, defendants' motion to compel
arbitration is granted, the complaint is dismissed,
and the parties are directed to proceed to arbitration
forthwith. This Court will maintain jurisdiction over
any subsequent petition to vacate or confirm the
award.

S.D.N.Y.,2003.
Gruber v. Louis Hornick & Co., Inc.
Not Reported in F.Supp.2d, 2003 WL 21222541
(S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

STATE OF NEW YORK    )
                     )    ss. :
COUNTY OF NEW YORK   )

DIANA MORALES, being duly sworn, deposes and says:
Deponent is not a party to the action, is over 18 years of age, and resides at Bronx, New York.

That on the 7th day of December, 2007, deponent served the PLAINTIFF'S
MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT AND COMPEL ARBITRATION *BY HAND VIA
MESSENAGER*, upon:

Diane Winholdz
Jackson Lewis
Attorney for Defendant
59 Maiden Lane, 39th Floor
New York, NY 10038

Diana Morales

Sworn before me On 7th day of December, 2007

Notary Public:State of New York

MARK L LUBELSKY
Notary Public, State of New York
No. 02LU5037419
Qualified in Nassau County
Commission Expires Dec. 27, 2010

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the Matter of The Arbitriation of Certain Controversies
Between

RALPH HERRERA,

        Petitioner,

  -against-

KATZ COMMUNICATIONS, INC.

        Respondent.

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND COMPEL ARBITRATION

---

MARK L. LUBELSKY AND ASSOCIATES
Attorneys for Ralph Herrera
ATTORNEYS AT LAW
123 WEST 18TH STREET
EIGHTH FLOOR
NEW YORK, NEW YORK 10011
(212) 242-7480
File No.: 6537

---

TO

Attorney(s) for

---

Service of a copy of the within
is hereby admitted.

Dated,

Attorney(s) for