JACKSON LEWIS LLP
59 Maiden Lane, 40th Floor
New York, New York 10038
(212) 545-4000
Diane Windholz (DW 9806)

ATTORNEYS OF RECORD FOR DEFENDANT

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

Ralph Herrera,

      Plaintiff,

          v.

Katz Communications, Inc.,

      Defendant.

07 CV 8426 (JSR)

---

## DEFENDANT'S REPLY MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT
## AND TO COMPEL ARBITRATION

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii - iii

POINT I:

PLAINTIFF'S COMPLAINT IS BASED, IN LARGE PART, ON THE SAME
EMPLOYMENT AGREEMENT WHICH HE NOW ALLEGES IS
UNENFORCEABLE. ............................................................................................................. 1

POINT II:
THE ARBITRATION CLAUSE IN THE EMPLOYMENT AGREEMENT
DOES NOT PRECLUDE PLAINTIFF FROM RECOVERING ATTORNEY'S FEES............... 2

POINT III:
SEVERING THE ATTORNEY'S FEES PROVISION DOES NOT VIOLATE
PUBLIC POLICY, IS SUPPORTED BY THE WEIGHT OF AUTHORITY,
AND IS PRACTICABLE. .................................................................................................... 5

   A.   Severing the Attorney's Fees Provision from the Arbitration Clause is Not an Affront to
Legislative Intent and Public Policy and is in Accordance with the Weight of Authority......... 6

   B.   Plaintiff's Public Policy Arguments Are Wholly Without Merit. ...................................... 7

POINT IV:
THE EMPLOMENT AGREEMENT EXPRESSLY ALLOWS FOR THE
SEVERANCE OF AN INVALID PROVISION WITHOUT AFFECTING THE
REMAINDER OF THE AGREEMENT. .................................................................................. 9

CONCLUSION..................................................................................................................... 10

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page**

Beletsis v. Credit Suisse First Boston, Corp.,
  01 Civ. 6266, 2002 U.S. Dist. LEXIS 16586 (S.D.N.Y. Aug. 28, 2002) ........................5, 6, 7

DeGaetano v. Smith Barney, Inc.,
  95 Civ. 1613, 1996 U.S. Dist. LEXIS 1140 (S.D.N.Y. Feb. 5, 1996) ....................................6

DeGaetano v. Smith Barney, Inc.,
  983 F. Supp. 459 (S.D.N.Y. 1997) ....................................................................................6

Delta Funding Corp. v. Alberta Harris,
  466 F.3d 273 (3d Cir. 2006) .............................................................................................7

Gambardella v. Pentec, Inc.,
  3 2003 U.S. Dist. LEXIS 15957 (D. Ct. Aug. 25, 2003) ....................................................3, 4

Gruber v. Louis Hornick & Co., Inc.,
  02 Civ. 5092, 2003 U.S. Dist. LEXIS 8764 (S.D.N.Y. May 22, 2003)..................................3

Klos v. Lotnicze,
  133 F.3d 164 (2d Cir. 1997) ..............................................................................................5

Mastrobuono v. Shearson Lehman Hutton, Inc.,
  514 U.S. 52 (1995).............................................................................................................4

McCaskill v. SCI Management Corp.,
  285 F.3d 623 (7th Cir. 2002) ...........................................................................................2, 3

PaineWebber Inc. v. Bybyk,
  81 F.3d 1193 (2d Cir. 1995) ..............................................................................................4

Perez v. Globe Airport Sec. Services,
  253 F.3d 1280 (11th Cir. 2001) ........................................................................................9

Spinetti v. Service Corp. International,
  324 F.3d 212 (3d Cir. 2003) ..............................................................................................7

United States v. Hamdi,
  432 F.3d 115 (2d Cir. 2005) ..............................................................................................4

**Page**

<u>Walsh v. Schlecht,</u>
    429 U.S. 401 (1977)..............................................................................................................4

**MISCELLANEOUS**

Restatement (Second) of Contracts §203(a) ......................................................................4

iii

**POINT I: PLAINTIFF'S COMPLAINT IS BASED, IN LARGE PART, ON THE SAME EMPLOYMENT AGREEMENT WHICH HE NOW ALLEGES IS UNENFORCEABLE.**

Plaintiff correctly represents in his Memorandum of Law in Opposition to Defendant's Motion (hereafter "Plaintiff's Opposition Brief") that the Arbitration Agreement contains a clause superseding any prior agreements. Contrary to Plaintiff's repeated aspersions in his Opposition Brief that Defendant has attempted to deliberately deceive the Court, Defendant's failure to identify the superceding clause was simply an error and for which Defendant apologizes to the Court. Significantly, Plaintiff apparently made the same error before the instant motion was filed by Defendant. During the parties' oral and written communications prior to the filing of the instant motion, Plaintiff similarly failed to identify the superseding provision. Once again, Defendant regrets this error and apologizes to the Court.

Defendant respectfully submits that its motion to compel arbitration should, nonetheless, be granted based on the Employment Agreement which was indisputably signed on March 14, 2005 and upon which Plaintiff relies for his breach of contract claim. (See ¶13 of the Verified Complaint; see also Exhibit "D" attached to Defendant's Memorandum of Law in Support of Its Motion to Dismiss the Complaint and Compel Arbitration ("Defendant's Initial Memorandum of Law.")) Plaintiff claims in his Complaint that Plaintiff and Defendant were bound by an employment contract and Defendant breached its obligations under the employment contract when it terminated his employment allegedly without cause. (Complaint ¶¶ 62 and 64). Plaintiff further alleges that the employment agreement specified his annual base salary of $94,760.00 and potential annual raises, sales commissions, employment benefits, and other expenses and provided for a definite term of employment. (Complaint ¶¶ 13, 14 and 16.)

Plaintiff now disingenuously, and in a contradictory fashion, takes the position that a portion of the same Employment Agreement upon which he relied and which he alleges Defendant breached, is unenforceable. Despite negotiating, signing, and operating under the Employment Agreement from

1

March 2005 until his termination in July 2006, he now seeks to disregard its terms.  Plaintiff's argument is based on his selective application of the Employment Agreement.  Plaintiff contends the agreement to arbitrate provision should not be enforced because of allegedly unlawful restrictions relating to attorney's fees, while at the same time asserting a claim for damages based on the Termination clause of the Employment Agreement.  Plaintiff cannot have it both ways.  By signing the Employment Agreement, Plaintiff represented that he knowingly and voluntarily agreed to its terms – including the Arbitration Clause.  Therefore, Plaintiff should not now be permitted to argue that the Arbitration Clause is unenforceable since it states that each party will pay its own attorney's fees.[1]

## POINT II: THE ARBITRATION CLAUSE IN THE EMPLOYMENT AGREEMENT DOES NOT PRECLUDE PLAINTIFF FROM RECOVERING ATTORNEY'S FEES.

Plaintiff erroneously represents that the Arbitration Clause of the Employment Agreement "absolutely requires, without exception, that each party will, shall and must pay its own attorneys fees." (Plaintiff's Opposition Brief, p. 9).  As explained in Defendant's initial Memorandum of Law, the arbitration provision directs that each party "will pay its own attorneys fees and costs."  The provision does not, however, include the language which Plaintiff apparently represents it does; i.e., "without exception," "shall" and "must."  As Defendant further explained in its initial Memorandum of Law, the requirement that the parties pay their own attorneys fees is not tantamount to a provision precluding a party from recovering an award of attorney's fees.

In support of his claim that the arbitration provision is invalid, Plaintiff relies on the Seventh Circuit's holding in McCaskill v. SCI Management Corp., 285 F.3d 623 (7th Cir. 2002).  In McCaskill, the Seventh Circuit invalidated an arbitration clause which specified that "[e]ach party [...] shall pay its own costs and attorneys fees, *regardless of the outcome at arbitration*." (Emphasis added.)  The

---

[1] Plaintiff argues that the arbitration provision is invalid because it does not allow him to recover attorney's fees if he prevails on his claim under the Family Medical Leave Act.  As explained above, Plaintiff also alleges a claim for breach of contract.  Since Plaintiff is not entitled to attorney's fees for a breach of contract claim, the arbitration provision is not invalidated as to Plaintiff's breach of contract claim.

court noted that the obvious implication of <u>disregarding the outcome of arbitration</u> is that a plaintiff cannot receive an award of attorney's fees and neither party may be required to pay the attorney's fees of the other party.

In his Opposition Brief, Plaintiff disregards this critical language ("regardless of the outcome at arbitration") which significantly is absent from the Arbitration Clause between the parties herein. While the Arbitration Clause requires each party to pay their own attorney's fees, it does not prohibit the arbitrator from awarding attorney's fees. <u>See also</u> <u>Gruber v. Louis Hornick & Co., Inc.</u>, 02 Civ. 5092, 2003 U.S. Dist LEXIS 8764, *12 (S.D.N.Y. May 22, 2003)[2] (court held "[u]nlike the Agreement in <u>DeGaetano II</u>, the AAA's attorney's fees provision does not limit Gruber's right to obtain attorney's fees should she prevail.")  Similarly, the Arbitration Clause in this case does not affirmatively foreclose or in any way limit the possibility of an award of attorney's fees if Plaintiff prevails.

Defendant submits that the facts presented in <u>Gambardella v. Pentec, Inc.</u>, 3:01cv1827, 2003 U.S. Dist. LEXIS 15957 (D. Ct. Aug. 25, 2003) more closely resemble those presented in this case.  In that case, the court granted the defendant's motion to compel arbitration and relied upon the same "regardless of the outcome" language to distinguish the <u>McCaskill</u> decision.  The attorney's fees provision contained in the arbitration agreement in <u>Gambardella</u> involved similar language to that contained in the instant case.  Specifically, the agreement provided that "you and Pentec, Inc. shall each bear respective costs for legal representation at any arbitration."  The court noted that "[w]hile the agreement's complete silence on the subject of shifting these fees and costs to the non-prevailing party is in contrast with Title VII's explicit provisions on this issue, <u>the agreement does not affirmatively</u> foreclose the possibility of attorney's fees." 2003 U.S. Dist LEXIS 15957, at *3.  The court, citing the <u>McCaskill</u> case, emphasized the significance of the "regardless of the outcome of the arbitration" language, and advised that "the agreement in <u>McCaskill</u> . . . affirmatively foreclosed the possibility of

---

[2] A copy of all unreported decisions cited herein are attached alphabetically hereto as Exhibit "A."

an award of attorney's fees to a prevailing party by providing that each party would be responsible for its own attorney's fees "regardless of the outcome of the arbitration." 2003 U.S. Dist LEXIS 15957, at *5.

The Arbitration Clause in this case, as in <u>Gambardella</u>, is silent on the availability of an award of attorney's fees if Plaintiff prevails at arbitration. It is well settled that an agreement should be construed, when possible, to render it lawful rather than unlawful. <u>Gambardella</u>, 2003 U.S. Dist. LEXIS 15957, at *12; <u>see also</u> <u>Walsh v. Schlecht</u>, 429 U.S. 401, 408 (1977); <u>United States v. Hamdi</u>, 432 F.3d 115, 124 (2d Cir. 2005); Restatement (Second) of Contracts §203(a) ("an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leave a part unreasonable, unlawful, or of no effect.")

It is further well settled that any ambiguity in an agreement should be construed against the drafter. <u>Mastrobuono v. Shearson Lehman Hutton, Inc.</u>, 514 U.S. 52, 63 (1995); <u>see also</u> <u>PaineWebber Inc. v. Bybyk</u>, 81 F.3d 1193, 1199 (2d Cir. 1995); <u>Gambardella</u>, 2003 U.S. Dist. LEXIS 15957, at *12. As stated by the Court in <u>Gambardella</u>, the attorney's fees provision in the instant case is subject to two reasonable interpretations: (1) each party will bear their own attorney's fees and costs regardless of the outcome; or (2) while attorney's fees must initially be paid by the party incurring them, a successful plaintiff may recover such fees as part of an award. The court in <u>Gambardella</u> held that construing the ambiguity in the agreement against the drafter, means it must adopt the second interpretation, since that interpretation exposes the defendant to greater legal liability, regardless of the fact that this is the interpretation advanced by the defendant. Defendant submits that a similar interpretation should be adopted in the instant case. Moreover, such an interpretation is consistent with the language of the Employment Agreement which expressly provides that it is "intended to be performed in accordance with, and only to the extent permitted by, all applicable laws, ordinances, rules and regulations." (<u>See</u> ¶ 16 of Exhibit "D"). "[I]t is a cardinal principle of contract interpretation

that the intentions of the parties should control." <u>Klos v. Lotnicze</u>, 133 F.3d 164, 168 (2d Cir. 1997).

A contract which contains two conflicting clauses should, if possible, be read to give meaning to both

clauses, rather than accept one clause over the other. <u>Id</u>.

   This Court was presented with similar "conflicting" provisions in <u>Beletsis v. Credit Suisse First</u>

<u>Boston, Corp.</u>, 01 Civ. 6266, 2002 U.S. Dist. LEXIS 16586 (S.D.N.Y. Aug. 28, 2002).  In that case,

the arbitration agreement provided that "an employee who chooses to be represented by counsel will

be responsible for paying the fees and disbursements of such counsel."  The arbitration agreement

further provided that the arbitrator "will be ... required to apply all applicable law, including remedies

for violations of such law."  The Court found that "the attorney fee clause should be read simply to

state the 'American Rule', that 'parties are ordinarily required to bear their own attorney's fees.'" 2002

U.S. Dist. LEXIS 16586, at *14.  The Court held that, considering the entire agreement, the attorney's

fees clause had no bearing on the plaintiff's potential remedies.  The Court also considered the fact

that, as in the instant case, the defendant was prepared to stipulate at arbitration that plaintiff could

recover attorney's fees.  Accordingly, Defendant respectfully submits that the Arbitration Clause does

not deprive Plaintiff of statutorily prescribed remedies under the FMLA and should be enforced.

## POINT III: SEVERING THE ATTORNEY'S FEES PROVISION DOES NOT VIOLATE PUBLIC POLICY, IS SUPPORTED BY THE WEIGHT OF AUTHORITY, AND IS PRACTICABLE.

   Defendant respectfully submits that if the Court finds the arbitration agreement precludes an

arbitrator from awarding attorney's fees, this provision may be severed.  In response, Plaintiff contends

that the term "sever" is misleading and that the more accurate question is whether the Court should

"redraft" the Arbitration Clause "to rescue the Defendant from its own assault upon the federal anti-

discrimination statutes." (Plaintiff's Opposition Brief, p. 13).  Plaintiff unnecessarily complicates the

issue and disregards the fact that severance is a long-standing judicial mechanism for enforcing

agreements.  As discussed below, courts have routinely severed unlawful portions of arbitration

agreements and upheld the remainder of them – without finding the term "sever" misleading and without requiring parties to "redraft" their disputed agreements.

**A.      Severing the Attorney's Fees Provision from the Arbitration Clause is Not an Affront to Legislative Intent and Public Policy and is in Accordance with the Weight of Authority.**

Plaintiff claims that "redrafting" the attorney's fees provision is a "direct affront to the legislative intent and public policy concerns that underlie anti-discrimination statutes that provide prevailing plaintiffs with an entitlement to attorney's fees." Plaintiff's argument is unsupported by cases within this Circuit. Beletsis, 2002 U.S. Dist. LEXIS 16586, *15.

This Court's decisions in DeGaetano v. Smith Barney, Inc., 95 Civ. 1613, 1996 U.S. Dist. LEXIS 1140 (S.D.N.Y. Feb. 5, 1996) ("DeGaetano I") and DeGaetano v. Smith Barney, Inc., 983 F. Supp. 459 (S.D.N.Y. 1997) ("DeGaetano II") are particularly instructive of Plaintiff's erroneous position. In DeGaetano I, this Court compelled arbitration even when the arbitration agreement was construed to restrict plaintiff's potential recovery of attorney's fees and punitive damages. The Court held that "the mere fact that these statutory remedies may be unavailable in arbitration does not in itself establish that Title VII claims must be resolved in a court of law." Id., at *5. The Court went on to state in unequivocal terms that it is not inconsistent with Title VII to submit claims to arbitration merely because attorney's fees are unavailable in that forum. The text of Title VII itself evinces "clear Congressional intent to make arbitration an alternative method of dispute resolution." Id., at *17.

Upon review of the arbitrator's actual award, the Court in DeGaetano II held that to the extent an arbitration agreement does in fact deny an award of attorney's fees, the relevant portions of the Arbitration Policy are therefore void as against public policy. Id. at 470. (emphasis added). The Court did not however, suggest that the entire arbitration agreement be invalidated; rather it held only that "relevant portions" of the agreement which deprived plaintiff of her entitlement to attorney's fees were unlawful. Id.

Similarly, in <u>Beletsis</u>, 2002 U.S. Dist. LEXIS 16586, at *18, this Court refused to invalidate the entire arbitration agreement based on a clause in the agreement which restricted the plaintiff's right to attorney's fees.    The Court held that "[w]hen a contract contains both lawful and unlawful objectives, courts typically enforce legal components of an agreement where the illegal provisions are incidental to the legal aspects and are not the main objective of the agreement." <u>Id.</u>, at *18, <u>citing Kidder, Peabody & Co., Inc. v. IAG Int'l Acceptance Group N.V.</u>, 28 F. Supp. 2d 126, 139 (S.D.N.Y. 1998); <u>see</u> <u>also</u> <u>Delta Funding Corp. v. Alberta Harris</u>, 466 F.3d 273 (3d Cir. 2006) (unconscionable provisions could be severed and the remainder of the arbitration agreement enforced); <u>Spinetti v. Service Corp. Int'l</u>, 324 F.3d 212 (3d Cir. 2003) (severing attorney's fees and costs provision from arbitration agreement, finding that these requirements offended ruling case law and federal statutes.)

The Court in <u>Beletsis</u> further recognized that, although the Second Circuit has not ruled on this issue, "a majority of the courts in this district do not invalidate the entire arbitration agreement for restricting a plaintiff's right to attorney's fees." <u>Beletsis</u>, 2002 U.S. Dist LEXIS 16586, at *15.    While the Court recognized that an "overabundance of invalid provisions can void an entire agreement", "the inclusion of a damages-limitation clause does not infect the agreement with any defect that requires invalidation of the entire contract. <u>Id.</u>, at *16-17.    Here, Plaintiff does not claim that any other provision of the arbitration provision is invalid.    Consequently, Defendant requests that the Court similarly find that the attorney's fees provision does not invalidate the entire Arbitration Clause.

**B.    Plaintiff's Public Policy Arguments Are Wholly Without Merit.**

Plaintiff claims that if Defendant's request that the attorney's fees provision be severed is granted, "it will lead to an abundance of unacceptable consequences." (Plaintiff's Opposition Brief, p. 15).    Defendant submits that Plaintiff's litany of dire inconsequence is a gross exaggeration, entirely speculative and unsupported by any facts or evidence.    First and foremost, Defendant is not attempting to deprive Plaintiff of his right to attorney's fees.    Defendant has repeatedly made clear since the

inception of this litigation and before filing this motion that it does not interpret the attorney's fees provision to preclude Plaintiff from recovering an award of attorney's fees. Accordingly, contrary to Plaintiff's statement, Defendant is not attempting to "circumvent the will of Congress." (Plaintiff's Opposition Brief, p. 15).

Plaintiff's specifically enumerated "unacceptable consequences" are all untenable. First, Plaintiff's argument that redrafting the Arbitration Clause will provide employers with an overwhelming incentive to assault the statutory rights of employees by including unlawful provisions in arbitration agreements is complete hyperbole and speculative. Plaintiff has absolutely no basis for assuming that employers would engage in such inappropriate behavior. In fact, it is in Defendant's best interest to draft an agreement which, on its face, and in its entirety, is enforceable, rather than incur the cost of enforcing agreements with potentially invalid provisions.

Similarly, Plaintiff's claim that "redrafting" the Arbitration Clause will deter other plaintiffs from pursuing their statutory rights is unfounded in fact. If the Court "redrafts" the Arbitration Clause to expressly provide that Plaintiff may recover attorney's fees, other plaintiffs would be encouraged, not discouraged, to pursue their individual statutory rights. Moreover, Plaintiff's argument that other plaintiffs will be forced to undergo an onerous process merely to vindicate their rights under anti-discrimination statutes is completely unfounded. Plaintiff herein has not been forced to undergo an onerous process to vindicate his rights. At the inception of this litigation, Defendant advised Plaintiff that the arbitration provision in the Employment Agreement did not prohibit Plaintiff's recovery of attorney's fees and, if he prevailed at arbitration, he could recover such fees. Plaintiff's decision to oppose Defendant's Motion to Compel arbitration is simply an attempt to select a forum, not an attempt to enforce his rights under anti-discrimination statutes. Plaintiff further argues that the courts will be burdened with increased litigation if they are required to redraft (or sever) the Arbitration

Provision. In fact, courts are more likely to be burdened by the wholesale strike of arbitration agreements, requiring every affected case to be heard in a judicial forum.

Finally, Plaintiff claims that "redrafting" arbitration agreements will give employers a shift in the balance of power over employees. In support of his argument, Plaintiff cites to the Eleventh Circuit's decision in <u>Perez v. Globe Airport Sec. Servs.</u>, 253 F.3d 1280 (11th Cir. 2001), striking an arbitration agreement in its entirety and refusing to sever the portion of the arbitration agreement which prohibited the plaintiff from recovering an award of attorney's fees and costs. The facts presented in <u>Perez</u> are inapposite to those presented herein. First, the <u>Perez</u> arbitration agreement required the plaintiff to pay the defendant's legal costs if the plaintiff refused to submit to arbitration. Second, the agreement specifically required that "despite any rule providing that one party must bear the cost of filing and/or the arbitrator's fees, all costs of the American Arbitration Association and all fees imposed by any arbitrator hearing the dispute, will be shared equally between you and the Company." Third, the arbitration provision required the plaintiff to submit all claims to the American Arbitration Association within 60 days or forever forego such a claim in any forum whatsoever. Fourth, the arbitration clause did not contain a severance provision. The Eleventh Circuit's expressed public policy concerns – which are borne out of the numerous imperfections in the <u>Perez</u> arbitration agreement – are inapplicable here where the only provision Plaintiff contests concerns attorney's fees. Severing the attorney's fees provision from the Arbitration Clause will not have the deleterious effect that would arise from severing an agreement such as the one in <u>Perez</u>. For the foregoing reasons, Plaintiff's public policy arguments are entirely without merit.

## POINT IV: THE EMPLOMENT AGREEMENT EXPRESSLY ALLOWS FOR THE SEVERANCE OF AN INVALID PROVISION WITHOUT AFFECTING THE REMAINDER OF THE AGREEMENT.

Plaintiff contends that the parties have indicated their intent that they cannot modify the Employment Agreement, absent a writing signed by or on behalf of the parties. Plaintiff's claim that

this provision in the Agreement deprives the Court of the discretion to sever a clause which it finds invalid is unsupported by citation to any legal precedent. Defendant respectfully submits that it is within the Court's power or domain to sever what it finds to be an invalid provision.

Furthermore, the parties' Employment Agreement expressly provides that:

> if any provision of this Agreement, or the application thereof to any person or circumstance, shall, for any reason and to any extent, be held invalid or unenforceable, such invalidity and unenforceability shall not affect the remaining provisions hereof or the application of such provisions to other persons or circumstances, all of which shall be enforced to the greatest extent permitted by law.

(See ¶ 16 of Exhibit "D.") Based on this language, if the attorney's fees provision is held invalid, the remaining provisions of the Arbitration Clause shall be enforceable.

## CONCLUSION

For the reasons set forth herein and in Defendant's initial Memorandum of Law, Defendant's Motion to Dismiss the Complaint and to Compel Arbitration should be granted, and Plaintiff should be required to submit his claims to arbitration.

Respectfully submitted,

JACKSON LEWIS, LLP

59 Maiden Lane, 40th Floor
New York, New York 10038
(212) 545-4000

By: _____
    Diane Windholz (DW 9806)

ATTORNEYS FOR DEFENDANTS

Dated:  December 14, 2007
        New York, New York

10

# EXHIBIT A

LEXSEE 2002 US DIST LEXIS 16586



Positive
As of: Dec 14, 2007

**CLEO BELETSIS, Plaintiff, -against- CREDIT SUISSE FIRST BOSTON, CORP.,
Defendant.**

**Case No. 01 Civ. 6266 (RCC)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK**

**2002 U.S. Dist. LEXIS 16586**

**August 28, 2002, Decided
September 4, 2002, Filed**

**DISPOSITION:**    [*1] Defendant's motion to stay proceedings and compel arbitration granted.

**COUNSEL:** For Plaintiff: Laurence S. Moy, Liddle & Robinson, L.L.P., New York, New York.

For Defendants: James R. Warnot, Jr., Esq, Alex V. Chachkes, Esq., Shearman & Sterling, Richard S. Boris, Esq., Neal D. Haber, Esq., Moss & Boris P.C., New York, New York.

**JUDGES:** KEVIN THOMAS DUFFY, U.S.D.J.

**OPINION BY:** KEVIN THOMAS DUFFY

**OPINION**

MEMORANDUM & ORDER

**KEVIN THOMAS DUFFY, U.S.D.J.,**

Plaintiff Cleo Beletsis ("Beletsis" or "Plaintiff") brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. § 2000e et seq. ("Title VII"); the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"); the Federal

Equal Pay Act, 29 U.S.C. § 206; the New York State Human Rights Law, N.Y. Exec. Law § 296; the New York State Equal Pay Law, N.Y. Labor Law § 194; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107. Beletsis alleges that defendant Credit Suisse First Boston Corporation ("CSFBC" or "Defendant") unlawfully [*2] discharged her because of her age and gender. CSFBC now moves to stay proceedings and compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. 1, et seq., ("FAA"). This memorandum and order will address the above motion and for the reasons explained below, the motion is granted.

**BACKGROUND**

Beletsis began working for CSFBC in early 1996. In December of 1997, CSFBC distributed to all U.S. employees a memorandum captioned "Re: Credit Suisse First Boston Employment Dispute Resolution Program" (hereinafter "1997 Memorandum"). (Millard Aff. P 4 and Ex. D.) The memorandum announced that CSFBC was adopting an employee dispute resolution program (hereinafter "EDR Program"), (Millard Aff., Ex. D), and stated that effective January 1, 1988 all employment related claims would be subject to arbitration as a condition of employment. (Id. at 1-2.) Attached to the memorandum was a complete copy of CSFBC's EDR

Program, entitled "Statement of Policy, Credit Suisse First Boston, Employment Dispute Resolution Program." (Millard Aff., Ex. D.) In October of 1998, CSFB distributed to all its U.S. employees a "U.S. Employment Policies and Practices Handbook" [*3] (hereinafter "Employee Handbook"). (Millard Aff. P 6 and Ex. B.) The Employee Handbook contained both a summary of the EDR Program and a complete copy attached as Appendix A. (Id., Ex. B at 7-8, Appendix A.)

The EDR Program attached to the 1997 Memorandum and included in the Employee Handbook states that all employment related claims will be subject to mandatory arbitration. The EDR Program specifically defines Title VII, ADEA, and other civil rights claims as employment-related claims subject to arbitration. (Millard Aff. P 9.)

In early 1999, CSFBC distributed a "Compliance Certification" document to all US employees. (Millard Aff. P 7.) The document states that the employee is "familiar with all policies, procedures, and ethical standards of [CSFBC], including ... the U.S. Employment Policies and Practices Handbook and the Statement of Policy regarding the Dispute Resolution Programs" and that the employee will "agree to comply fully with these policies, procedures and standards." (Millard Aff., Ex. A at 2.) On February 24, 1999, Beletsis signed the Compliance Certification. (Millard Aff. P 8 and Ex. A at 2.)

On March 1, 2000, CSFBC terminated Plaintiff's employment. Thereafter, [*4] Plaintiff brought this suit in federal court. Defendant subsequently filed this motion to stay proceedings and compel arbitration. Defendant argues that pursuant to CSFBC's EDR Program and in accordance with the FAA, Beletsis cannot bring her claim in federal court but must resolve the dispute through arbitration.

Plaintiff's argument against the motion is twofold. First she alleges that by signing the Compliance Certification she did not consent to the arbitration of her civil rights claims. Second, she asserts that the EDR Program improperly restricts the arbitrator's authority to award attorney's fees to Plaintiffs under both the ADEA and Title VII: "An employee who chooses to be represented by counsel will be responsible for paying the fees and disbursements of such counsel." (EDR Program at 5; see id. at 6.) Plaintiff contends that because the above clause is unlawful, the entire arbitration agreement

must be voided.

Defendant argues that the EDR Program does not unlawfully restrict plaintiff's remedies and cites the following clause contained in the EDR Program:

[The arbitrator] will be bound by and will be required to apply all applicable law, including that [*5] relating to the allocation of the burden of proof and remedies for violations of such law, if any, as well as all points of substantive law. He or she will have no authority either to abridge or to enlarge substantive rights available under existing law ....

(EDR Program at 6.) Defendant further argues that even if the arbitration agreement does unduly limit the plaintiff's remedies, only the offending clause and not the entire agreement should not be voided.

## STANDARD FOR MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION

CSFBC's motion, to stay proceedings and compel arbitration, falls within the scope of the FAA. Circuit City Stores v. Adams, 532 U.S. 105, 121, 149 L. Ed. 2d 234, 121 S. Ct. 1302 (2001) (holding that employment contracts, except for those covering workers engaged in transportation, are covered by the FAA). Section 3 of the FAA provides for a stay of proceedings where the court is satisfied that the issue before it is arbitrable under the agreement, and Section 4 of the FAA directs a federal court to compel arbitration if there has been a "'failure, neglect, or refusal' of any party to honor an agreement to arbitrate." Genesco v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 844 (2d Cir. 1987) [*6] (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 511, 41 L. Ed. 2d 270, 94 S. Ct. 2449 (1974)); 9 U.S.C. §§ 3, 4. The Supreme Court has read these provisions to "manifest a 'liberal federal policy favoring arbitration agreements.'" Gilmer v. Interstate/ Johnson Lane Corp., 500 U.S. 20, 25, 114 L. Ed. 2d 26, 111 S. Ct. 1647 (1991) (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983)). The Court has held that there is no reason to depart from this policy where a party bound by an arbitration agreement raises claims founded on statutory rights. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 87 L. Ed. 2d 444, 105 S. Ct. 3346 (1985). The FAA

simply requires that a court enforce a written arbitration agreement as it would any other contract: "[a] written provision to settle by arbitration a controversy shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see also Gilmer 500 U.S. at 24.

[*7] Accordingly, in deciding whether to stay proceedings and compel arbitration, the Second Circuit in Genesco held the court must consider the following factors: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; and third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable. 815 F.2d at 844. [1]

   1 Genesco also held that a court should consider a fourth factor if a plaintiff's claim does not satisfy the three factors described above. 815 F.2d at 844. For the reasons explained below, all of the plaintiff's claims satisfy the first three Genesco factors and therefore the fourth factor need not be addressed. E.g. Chanchani v. Salomon/ Smith Barney, Inc., 2001 U.S. Dist. LEXIS 2036, No. 99 CIV 9219 RCC, 2001 WL 204214, *2 (S.D.N.Y. Mar. 1, 2001).

## I. Agreement to Arbitrate

In determining whether parties have agreed to arbitrate, courts generally [*8] apply accepted principles of contract law. Id. at 845. Beletsis alleges that by signing the Compliance Certification she did not agree to the arbitration of her civil rights claims. It is axiomatic however, that a party who signs a contract in the absence of fraud or other wrongful acts on the part of another contracting party, is presumed to know its contents and to have assented to them. Id.; see also DeGaetano v. Smith Barney, Inc., 1996 U.S. Dist. LEXIS 1140, No. 95 Civ. 1613 (DLC), 1996 WL 44226, *7-8 (S.D.N.Y. Feb. 5, 1996) ("DeGaetano I"). The court must not inquire "on whether there was subjective agreement as to each clause in the contract, but on whether there was an objective agreement with respect to the entire contract." Genesco, 815 F.2d at 846. The plain and unambiguous language of the signed Certification Agreement along with the Employee Handbook, evidences an objective manifestation of assent; Beletsis's subjective understanding is irrelevant. "Courts in this district routinely uphold arbitration agreements contained in

employee handbooks where, as here, the employee has signed an acknowledgement form." Chanchani, 2001 U.S. Dist. LEXIS 2036, at [WL]*3 [*9] (citing Arakawa v. Japan Network Group, 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999)); see also Degaetano, 1996 U.S. Dist. LEXIS 1140, at [WL]*7-8.

Chanchani additionally notes that when an arbitration agreement is a condition of employment, as it is here, an employee "will be deemed to have accepted" an arbitration agreement when she continues to work after the promulgation of the arbitration policy. 2001 U.S. Dist. LEXIS 2036 at [WL]*3. In this case, Plaintiff not only signed the Compliance Certification she also continued to work after the 1997 Memorandum announced that the EDR Policy would go into effect. Because Plaintiff alleges no special circumstances, such as duress or coercion, the parties have agreed to arbitrate all employment-related claims. See Gilmer, 500 U.S. at 33; Genesco, 815 F.2d at 845-46.

## II. Scope of the Agreement

A mere agreement to arbitrate is not sufficient to compel arbitration; the plaintiff's claims must also fall within the scope of that agreement. Genesco, 815 F.2d at 844. In determining the scope of the EDR Policy, the federal policy favoring arbitration requires that [*10] the court construe arbitration clauses as broadly as possible, and that "arbitration should be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." McMahan Secs. Co. v. Forum Capital Mkts. L.P., 35 F.3d 82, 88 (2d Cir. 1994). In this case the EDR Policy specifically defines Title VII, ADEA, and other civil rights claims, as employment related claims subject to mandatory arbitration. This language is therefore sufficient to ensure that all the claims raised in this case fall within the scope of the EDR Policy. Arakawa, 56 F. Supp. 2d at 352-53 (holding that Title VII claims where employment related claims within the scope of an arbitration agreement contained in an employee handbook). In sum, the first two factors of the Genesco test demonstrate that contra to Plaintiff's argument, she assented to the arbitration of all claims raised in this case.

## III. Arbitrability of Claims

Finally, since the plaintiff raises statutory claims, I must ensure that these claims are not subject to a legislative exception to arbitrability. Mitsubishi Motors

Corp., 473 U.S. at 626. [*11] It is well settled that civil rights claims such as those in the instant action are not subject to a legislative exception. See Gilmer, 500 U.S. at 27-28 (finding ADEA claims arbitrable); Desiderio v. National Ass'n of Secs. Dealers, Inc., 191 F.3d 198, 204-05 (2d Cir. 1999) (finding Title VII claims arbitrable); Fletcher v. Kidder, Peabody & Co., 81 N.Y.2d 623, 619 N.E.2d 998, 1004, 601 N.Y.S.2d 686, (N.Y. 1993) (finding discrimination claims under New York Executive Law § 296 arbitrable); Rice v. Brown Bros. Harriman & Co., 1997 U.S. Dist. LEXIS 3628, No. (Civ.) 96-6326, 1997 WL 129396, at *3 (S.D.N.Y. Mar. 21, 1997) (holding that "Fletcher's reasoning would apply also to local law-based discrimination claims").

However, the fact that there is no general legislative exception to the arbitrability of the claims raised does not end the inquiry. A party "by agreeing to arbitrate a statutory claim ... does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." Mitsubishi Motors Corp., 473 U.S. at 628. The court in Martens v. Smith Barney Inc., 181 F.R.D. 243, 255 (S.D.N.Y. 1998), [*12] held in dicta that plaintiffs may arbitrate civil rights claims in an arbitral forum that meets three requirements to ensure that the arbitration will not subvert the statutory scheme: first, the arbitration must meet certain standards of procedural fairness; second, the arbitration agreement cannot impose financial burdens on plaintiff's access to the arbitral forum; and third, the arbitration must allow remedies central to the statutory scheme. It should be noted however, that the extent to which a violation of any of Martens's requirements actually precludes arbitrability is not agreed upon by courts in this circuit and therefore should not be viewed as a firm rule. E.g., Stewart v. Paul, Hastings, Janofsky & Walker, LLP, 201 F. Supp. 2d 291, 292-93 (S.D.N.Y. 2002) (holding that "the assertion that [a] cost sharing provision *per se* invalidates the entire agreement is not supported either by the law of this Circuit or by the better considered authorities elsewhere."). Rather, arbitrability should be viewed on a case-by-case basis. Id. at 293.

This dispute centers on Martens' third requirement for arbitrability. Courts in this district [*13] have held that attorney's fees are remedies central to civil rights claims; thus limitations on this remedy have been deemed unlawful. DeGaetano v. Smith Barney, Inc., 983 F. Supp. 459, 468-69 (S.D.N.Y. 1997) ("DeGaetano II"). Plaintiff argues that CSFB's EDR Policy, in its requirement that

"an employee who chooses to be represented by counsel will be responsible for paying the fees and disbursements of such counsel," unlawfully restricts her right to the ADEA and Title VII attorney fee remedy. However, as the defendant compellingly argues, taken in the context of the entire arbitration agreement, the above described attorney fee clause does not in fact limit Plaintiff's potential remedies.

The EDR Policy clearly states that the arbitrator "will be ... required to apply all applicable law, including remedies for violations of such law." In resolving the seemingly contradictory meaning of the above clause with the attorney fee clause, it is a cardinal principle of contract interpretation that the intentions of the parties should control. Klos v. Lotnicze, 133 F.3d 164, 168 (2d Cir. 1997). The parties' intent should be discerned by reading the contract [*14] as a whole, and by considering all its clauses together to determine if and to what extent one may modify, explain or limit another. Allendale Mut. Ins. Co. v. Excess Ins. Co., Ltd., 992 F. Supp. 271, 274 (S.D.N.Y. 1997). From this it follows that a contract containing two clauses which conflict should, if possible, be read to give meaning to both rather than accept one to the exclusion of the other. Id. In this case, the attorney fee clause should be read simply to state the "American Rule", that "parties are ordinarily required to bear their own attorney's fees." Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Res., 532 U.S. 598, 602, 149 L. Ed. 2d 855, 121 S. Ct. 1835 (2001). In light of the entire agreement, this attorney fee clause has no bearing on Plaintiff's potential ADEA or Title VII attorney fee remedies and CSFBC has stated that it is prepared to stipulate this before the arbitrator. Therefore, the EDR Program does not infringe upon a plaintiff's right to statutorily prescribed remedies and it does not subvert the Title VI and ADEA statutory schemes.

Even assuming, however, that Plaintiff's assertion regarding [*15] the unlawful nature of the attorney fee clause is correct, it would not invalidate the entire EDR Program. Plaintiff urges that the court adopt the Eleventh Circuit's holding in Perez v. Globe Airport Sec. Services, Inc., where the court voided an entire arbitration agreement that required the plaintiff to share the cost and fees of arbitration with the defendant. 253 F.3d 1280 (11th Cir. 2001). The Perez court however acknowledged that such a decision was in conflict with the law in other circuits. Id. at 1286. While the Second Circuit has not

ruled on this issue, a majority of courts in this district do not invalidate the entire arbitration agreement for restricting a plaintiff's right to attorney's fees.

In DeGaetano I, the court compelled arbitration even when the arbitration agreement was read to restrict the plaintiff's potential remedy and noted that "the mere fact that these statutory remedies may be unavailable in the arbitral forum does not in itself establish that Title VII claims must be resolved in a court of law." 1996 U.S. Dist. LEXIS 1140, at [WL]*5. Upon review of the arbitrator's actual remedy, the court in DeGaetano II held [*16] that the extent to which an arbitration agreement does in fact deny an award of attorney's fees "*the relevant portions* of the Arbitration Policy are therefore void as against public policy." 983 F. Supp. at 470 (emphasis added). The court in DeGaetano II however did not suggest that the entire agreement should have been invalidated; rather it held only that "relevant portions" of the agreement were unlawful. Id. Furthermore, the court in Raiola v. Union Bank of Switzerland, LLC stated that arguments in favor of precluding agreements containing a waiver of judicial remedies for violations of Title VII do not overcome the weight of authority in this Circuit. 47 F. Supp. 2d 499, 505 (S.D.N.Y. 1999).

It is true that an overabundance of invalid provisions can void an entire agreement. Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 940 (4th Cir. 1999) (Hooters promulgated "so many biased rules" that it created "a sham system unworthy even of the name of arbitration."). In this case, however, the inclusion of a damages-limitation clause does not infect the agreement with any defect that requires invalidation of the entire contract. [*17] See Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 681 (8th Cir. 2001). As the Eigth Circuit held in Gannon the main objective of the arbitration agreement is to require the arbitration of all employment-related claims and not, as Plaintiff implies, to ensure that a CSFBC employee pays her own attorneys fees when she arbitrates those claims. See id. The court in Gannon ultimately held that severance of the illegal provision rather than invalidating the entire agreement was in line with the Supreme Court's jurisprudence concerning the FAA:

If we were to hold entire arbitration

agreements unenforceable every time a particular term is held invalid, it would discourage parties from forming contracts under the FAA and severely chill parties from structuring their contracts in the most efficient manner for fear that minor terms eventually could be used to undermine the validity of the entire contract. Such an outcome would represent the antithesis of the 'liberal federal policy favoring arbitration agreements.'

Id. at 682 (quoting Moses H. Cone Mem. Hosp., 460 U.S. at 24).

The principles outlined in Gannon [*18] are more closely aligned with the predominant view in this district and are in accordance with generally held principles of contract law. When a contract contains both lawful and unlawful objectives, courts typically enforce legal components of an agreement where the illegal provisions are incidental to the legal aspects and are not the main objective of the agreement. Peabody & Co., Inc. v. IAG Intern. Acceptance Group N.V., 28 F. Supp. 2d 126, 139 (S.D.N.Y. 1998). In such cases, the illegal provisions of the contract can be severed from the main agreement. Coolidge Co., Inc. v. Mokrynski, 472 F. Supp. 459, 463 (S.D.N.Y. 1979). Even assuming that the attorney fee clause is unlawful, it can easily be severed allowing the rest of the EDR Policy to remain in full force and effect. In conclusion, Plaintiff's right to statutory remedies will not be infringed upon and therefore the claims are arbitrable under the third prong of the Genesco test.

**CONCLUSION**

In sum the CSFBC's arbitration agreement meets all three prongs of the Genesco test and therefore the motion to stay proceedings and compel arbitration is granted.

**SO ORDERED.**

[*19] Dated: New York, New York

Aug 28, 2002

KEVIN THOMAS DUFFY, U.S.D.J.

LEXSEE 1996 US DIST LEXIS 1140



Caution
As of: Dec 14, 2007

**ALICIA DEGAETANO, Plaintiff, -v- SMITH BARNEY, INC. and FREDERICK HESSLER, Defendants.**

**95 CIV. 1613 (DLC)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**1996 U.S. Dist. LEXIS 1140; 70 Fair Empl. Prac. Cas. (BNA) 401; 68 Empl. Prac. Dec. (CCH) P44,024**

**February 5, 1996, Dated
February 5, 1996, FILED**

**COUNSEL:** [*1] APPEARANCES:

For Plaintiff: Judith P. Vladeck, Esq., Laura S. Schnell, Esq., Anne L. Clark, Esq., VLADECK, WALDMAN, ELIAS & ENGELHARD, P.C., New York, NY.

For Defendants: Stuart H. Bompey, Esq., Andrea H. Stempel, Esq., ORRICK, HERRINGTON & SUTCLIFFE, New York, NY.

**JUDGES:** Denise Cote, United States District Judge

**OPINION BY:** Denise Cote

**OPINION**

*OPINION & ORDER*

DENISE COTE, District Judge:

Plaintiff Alicia DeGaetano filed this sex discrimination in employment action on March 8, 1995, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, the Human Rights Law, New York State Executive Law § 296 *et seq*

., the Administrative Code of the City of New York § 8-107 *et seq.*, and the common law of New York for intentional infliction of emotional distress against defendant Frederick Hessler. The defendants move to compel arbitration and stay the litigation, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3, 4 (1988). They also pray for attorneys' fees and costs. For the reasons set forth below, defendants' motion is granted in part and denied in part.

**BACKGROUND**

The defendant, Smith Barney Shearson, Inc. (hereinafter, [*2] "Smith Barney"), hired the plaintiff in July 1993 as an analyst in the public finance department upon her graduation from Cornell University. As part of the hiring process, on July 10, 1993, the plaintiff signed an agreement titled "Principles of Employment" (hereinafter, the "Agreement"), which provides, in relevant part:

You must observe the policies which we publish from time to time for employees. . . . These expectations are included in . . . the Primerica/Smith Barney Dispute Resolution Procedure, the Primerica/Smith Barney Arbitration Policy, and the

1996 U.S. Dist. LEXIS 1140, *2; 70 Fair Empl. Prac. Cas. (BNA) 401;
68 Empl. Prac. Dec. (CCH) P44,024

Employee Handbook, all of which are available for your review prior to your acceptance of employment, if you choose to review them. You will be asked to acknowledge receiving copies of the current versions of these with your New Hire paperwork when you begin employment. *Remember -- it is your responsibility to read and understand these policies and expectations. If you have any questions, now or in the future, please ask.*

. . .

You agree to observe our dispute resolution/arbitration procedures for employment disputes . . . . These procedures include all employment disputes (including termination of employment) [*3] that you might have with Primerica/Smith Barney. These procedures do not preclude us from taking disciplinary actions . . . but if you dispute those actions, we both agree that the disagreement will be resolved through this process. Our procedures are divided into two parts. First, an internal grievance procedure, the "Dispute Resolution Procedure," which allows you to seek review of any decision regarding your employment or termination of employment which you think is unfair. Second, in the unusual situation when this procedure does not fully resolve an employment related dispute, you and we agree to waive any applicable statute of limitations and to submit the dispute, within one year of the date it arose, to binding arbitration before the arbitration facilities of the New York Stock Exchange, Inc. ("NYSE") in accordance with the arbitration rules of that body then in effect and as supplemented by the Primerica/Smith Barney Arbitration Policy. A detailed description of these procedures is available in the Human Resources department for your review. *Again, it is your responsibility to read and understand the dispute*

*resolution/arbitration procedures. If you have any questions, now* [*4] *or in the future, please ask.*

(Emphasis in original). Additionally, the Agreement expressly included the following language:

These [employment disputes covered by the dispute resolution/arbitration procedures] *include,* but are not limited to, *all claims* demands or actions *under Title VII* of the Civil Rights Act of 1964, Civil Rights Act of 1866, Civil Rights Act of 1991, . . . and all amendments to the aforementioned, any other federal, state or local statute or regulation regarding employment discrimination in employment, or the termination of employment, and the common law of any state.

(Emphasis supplied).

The Arbitration Policy, which applies to all persons employed by Smith Barney since September 1, 1992, *makes arbitration the required and exclusive forum for the resolution of all disputes* relating to or arising out of employment or the termination of employment that may arise . . . including but not limited to claims, demands or actions *under Title VII of the Civil Right Act of 1964,* . . . and all amendments to the aforementioned and any other federal, state or local statute, regulation or common law doctrine regarding employment [*5] discrimination, conditions of employment or termination of employment.

(Emphasis supplied).

During the course of her employment, in July 1993 and again in November 1994, Smith Barney distributed to all employees two Employee Handbooks that set forth, *inter alia,* Smith Barney's policies and procedures for handling employment-related disputes. Both handbooks reiterated Smith Barney's arbitration policy, to wit, that arbitration is a required and exclusive forum for the resolution of all employment disputes, including those arising under Title VII and related federal, state, or local laws.

From March 1, 1994, until her alleged constructive discharge, plaintiff was assigned to the Public Finance Division's Healthcare Group, under the supervision of defendant Hessler. Plaintiff alleges that from August

1996 U.S. Dist. LEXIS 1140, *5; 70 Fair Empl. Prac. Cas. (BNA) 401;
68 Empl. Prac. Dec. (CCH) P44,024

1994 to January 1995, Hessler subjected her to unwelcome sexual advances and made numerous statements suggesting that her performance evaluation, bonus, and promotion would depend upon her acceptance of his sexual advances. Plaintiff alleges that she repeatedly told Hessler that she wanted a purely professional relationship with him, but he persisted in his unwelcome conduct. When [*6] plaintiff complained about Hessler's conduct to Smith Barney's Human Resources department and its counsel, she was told that no action would be taken in response to her complaints. Plaintiff alleges that she was forced to resign on February 15, 1995, because she could no longer tolerate the pressure of working under Hessler's supervision and because Smith Barney refused to take any action against Hessler. Plaintiff filed the complaint on or about March 8, 1995, and through her attorney, she refused defendants' demand to submit to arbitration. [1]

> 1 According to the Complaint, the plaintiff filed charges of discrimination against Smith Barney with the Equal Employment Opportunity Commission ("EEOC") on January 19, 1995, and against Hessler on March 7, 1995. Plaintiff received a Notice of Right to Sue against Smith Barney on or about February 25, 1995, and against Hessler on or about March 29, 1995.

## LAW

The United States Arbitration Act, 9 U.S.C. §§ 1-14 (1988), (hereinafter, the "Act") "reflects a legislative [*7] recognition of the 'desirability of arbitration as an alternative to the complications of litigation,'" and "'reversed centuries of judicial hostility to arbitration agreements.'" *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 844 (2d Cir. 1987) (quoting *Wilko v. Swan,* 346 U.S. 427, 431, 98 L. Ed. 168, 74 S. Ct. 182 (1953); *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 510, 41 L. Ed. 2d 270, 94 S. Ct. 2449 (1974)). The Act was designed to allow parties to avoid the costliness and delays of litigation and to place arbitration agreements upon the same footing as other contracts. *Bird v. Shearson Lehman/American Express, Inc.,* 926 F.2d 116, 119 (2d Cir.), *cert. denied,* 501 U.S. 1251, 115 L. Ed. 2d 1056, 111 S. Ct. 2891 (1991) (citing *Scherk,* 417 U.S. at 510-11). Section 2 of the Act provides, in relevant part:

> an agreement in writing to submit to arbitration an existing controversy . . .

shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (1988). Section 2 "'is a congressional declaration of a liberal federal policy favoring arbitration agreements.'" [*8] *Bird,* 926 F.2d at 119 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983)). Once the Court finds an arbitration agreement to be covered by the Act, [2] it must refer the matter to arbitration. *Genesco,* 815 F.2d at 844 ("'the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed'") (quoting *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218, 84 L. Ed. 2d 158, 105 S. Ct. 1238 (1985)).

> 2 Plaintiff does not dispute that the arbitration provision of the Agreement with Smith Barney satisfies the jurisdictional requirements under the Act -- *i.e.,* it is part of a "contract evidencing a transaction involving commerce." 9 U.S.C. §§ 1, 2 (1988).

The duty to enforce an arbitration agreement is as strong when the party opposing arbitration has raised a claim based [*9] on statutory rights. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 114 L. Ed. 2d 26, 111 S. Ct. 1647 (1991); *Bird,* 926 F.2d at 119 (citing *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 96 L. Ed. 2d 185, 107 S. Ct. 2332 (1987)). In *Genesco,* the Second Circuit outlined a four-prong test for a district court to follow in considering a motion to compel arbitration in the context of a claim based on statutory rights:

> First, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration.

1996 U.S. Dist. LEXIS 1140, *9; 70 Fair Empl. Prac. Cas. (BNA) 401;
68 Empl. Prac. Dec. (CCH) P44,024

*Genesco*, 815 F.2d at 844 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614, 87 L. Ed. 2d 444, 105 S. Ct. 3346 (1985)).

In deciding whether the parties agreed to arbitrate, the Court must apply the "'federal substantive law of arbitrability,'" *Mitsubishi*, [*10] 473 U.S. at 626 (quoting *Moses H. Cone Memorial Hospital*, 460 U.S. at 24), "which comprises generally accepted principles of contract law." *Genesco*, 815 F.2d at 845. "Under general contract principles a party is bound by the provisions of a contract that he signs, unless he can show special circumstances that would relieve him of such obligation." *Id.* The Court must not inquire "whether there was subjective agreement as to each clause in the contract," including the arbitration clause, "but on whether there was an objective agreement with respect to the entire contract." Id. at 846. The Court may look to the law of the State whose law governs the arbitration agreement. *See First Options of Chicago, Inc. v. Kaplan,* 131 L. Ed. 2d 985, 115 S. Ct. 1920, 1924 (1995); *see also Mastrobuono v. Shearson Lehman Hutton, Inc.,* 131 L. Ed. 2d 76, 115 S. Ct. 1212, 1219 & n.9 (1995); *cf. Rush v. Oppenheimer & Co., Inc.,* 681 F. Supp. 1045, 1046 n.3 (S.D.N.Y. 1988) (it is "well-settled that issues relating to the 'making of an agreement to arbitrate' are resolved according to state contract law") (citing, *inter alia, Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 n.12, [*11] 18 L. Ed. 2d 1270, 87 S. Ct. 1801 (1967)).

With respect to the scope of the arbitration agreement, the Court is aware that the

> "federal policy favoring arbitration requires [it] to construe arbitration clauses as broadly as possible and that "arbitration should be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."

*McMahan Securities Co. v. Forum Capital Markets L.P.,* 35 F.3d 82, 88 (2d Cir. 1994) (quoting *S.A. Mineracao Da Trindade-Samitri v. Utah Int'l Inc.,* 745 F.2d 190, 194-95 (2d Cir. 1984) (internal quotations and citations omitted)). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*

*H. Cone Memorial Hospital,* 460 U.S. at 24-25.

The burden of demonstrating the third *Genesco* prong -- whether Congress intended to preclude the arbitrability of a claim founded on statutory rights -- is on the party opposing arbitration. *Bird,* 926 F.2d at 119 (citing *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 483, 104 L. Ed. 2d 526, 109 S. Ct. 1917 (1989); [*12] *McMahon,* 482 U.S. at 227). In order to establish that Congress intended to exclude Title VII claims from arbitration under the Act, the Court must look to the statute's text or legislative history, or infer such an intent "'from an inherent conflict between arbitration and the statute's underlying purposes.'" *Bird,* 926 F.2d at 119 (quoting *McMahon,* 482 U.S. at 227). Throughout this inquiry, the Court must keep in mind that "'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'"*Gilmer,* 500 U.S. at 26 (quoting *Moses H. Cone Memorial Hospital,* 460 U.S. at 24).

As recent Supreme Court decisions have made it clear, the plaintiff is faced with a difficult task in arguing that Congress must have intended to preclude arbitration when it enacted Title VII because of the important public policies behind the statute. *See Gilmer,* 500 U.S. at 23 (Age Discrimination in Employment Act ("ADEA") claims may be subject to compulsory arbitration); *Rodriguez de Quijas,* 490 U.S. at 484 (Securities Act of 1933); *McMahon,* 482 U.S. at 227-38 (Section 10(b) of the Securities Exchange Act of 1934); *id.* at 238-42 [*13] (civil provisions of Racketeer Influenced and Corrupt Organizations Act ("RICO")); *Mitsubishi,* 473 U.S. at 628-40 (Sherman Antitrust Act). The Second Circuit has extended the above-cited line of cases to claims arising under the Employee Retirement Income Security Act ("ERISA"), *see Bird,* 926 F.2d at 117, and New York's Court of Appeals has followed suit with respect to discrimination claims arising under New York's Human Rights Law. *Fletcher v. Kidder, Peabody & Company, Inc.,* 81 N.Y.2d 623, 601 N.Y.S.2d 686, 619 N.E.2d 998 (N.Y.), *cert. denied,* 126 L. Ed. 2d 455, 114 S. Ct. 554 (1993). Finally, and although not of binding authority, other Circuits have held that, in the wake of *Gilmer,* Title VII claims are also subject to compulsory arbitration pursuant to the Act. *See Alford v. Dean Witter Reynolds, Inc.,* 939 F.2d 229 (5th Cir. 1991) (on vacation and remand from *Gilmer); Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305 (6th Cir. 1991); *Mago v. Shearson Lehman Hutton Inc.,* 956 F.2d 932 (9th Cir. 1992);

1996 U.S. Dist. LEXIS 1140, *13; 70 Fair Empl. Prac. Cas. (BNA) 401;
68 Empl. Prac. Dec. (CCH) P44,024

*Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698 (11th Cir. 1992).

## DISCUSSION

### A. Claims against Smith Barney

The plaintiff [*14] does not dispute signing the Agreement, which, according to its terms, unambiguously obligates plaintiff to comply with the Arbitration Policy. Unless plaintiff can demonstrate special, mitigating circumstances, such as duress or coercion, plaintiff is bound by the terms of the Agreement, including its arbitration provision. *Gilmer,* 500 U.S. at 33. In this regard, plaintiff states that she does not believe that she ever received a copy of the Arbitration Policy before signing the Agreement; she also claims that she had very limited time to review the Agreement before signing it. This, however, does not amount to duress or coercion. Under New York law, the following elements of economic duress or coercion[3] must be shown:

"(1) a threat, (2) which was unlawfully made, and (3) caused involuntary acceptance of contract terms, (4) because the circumstances permitted no other alternative."

Kamerman v. Steinberg, 891 F.2d 424, 431 (2d Cir. 1989) (quoting *Gulf & W. Corp. v. Craftique Prods., Inc.,* 523 F. Supp. 603, 610 (S.D.N.Y. 1981)). Plaintiff alleges no threat or wrongful act, and she cannot argue that she had no alternative but to sign the Agreement. Indeed, [*15] she admits having had "attractive offers from four other employers" in addition to Smith Barney's employment offer. Therefore, the plaintiff agreed to arbitrate her dispute with Smith Barney. Further, the scope of the arbitration agreement encompasses each one of plaintiff's claims against Smith Barney, and this is also not disputed by the plaintiff.

3  Duress and coercion are used interchangeably in this Circuit. *See, e.g., Kamerman,* 891 F.2d at 431; *Ally v. F.E.D. Concrete Co.,* 1990 U.S. Dist. LEXIS 33, *24, 1990 WL 1273, at *9 n.8 (S.D.N.Y. Jan. 4, 1990) (Not Reported in F. Supp.); *Korn v. Franchard Corp.,* 388 F. Supp. 1326, 1333 (S.D.N.Y. 1975) ("A crucial element of coercion or duress is lack of free choice.")

The crux of plaintiff's argument pertains to the third prong of the *Genesco* test, that is, whether Congress intended Title VII claims to be nonarbitrable. Plaintiff argues that, as a matter of law, Smith Barney cannot require employees to prospectively waive "substantive rights" under Title VII, including the right [*16] to attorneys' fees, punitive damages, and injunctive relief. [4] In the alternative, plaintiff argues that even if such rights can be prospectively waived, as a matter of law such prospective waiver must be made "knowingly and voluntarily."

4  Under the arbitration policy currently in force, to which the plaintiff is bound by virtue of signing the Agreement, each party must pay its own legal fees and expenses, and the arbitrator may order reinstatement only if money damages are an insufficient remedy. In addition, the arbitrator cannot award punitive damages or injunctive relief of any kind.

In making her argument, plaintiff fails to point out where, either in the text of Title VII or its legislative history, Congress has stated its intent "to preclude a waiver of judicial remedies" by means of arbitration. *Rodriguez de Quijas,* 490 U.S. at 483. This is not surprising, however, because the text of Title VII, itself, evidences a clear Congressional intent to make arbitration an alternative method of dispute [*17] resolution. Section 118 of the 1991 amendments to Title VII states, in relevant part:

Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution including . . . arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title.

Civil Rights Act of 1991, § 118 Pub. L. 102-166, set forth in the notes following 42 U.S.C. § 1981 (West 1994). Further, plaintiff has not shown, and the Court cannot find, any evidence in Title VII's legislative history that Congress intended to preclude the arbitrability of claims under Title VII.

Plaintiff's argument, apparently, is to say that even if arbitration is generally permissible under Title VII, this particular arbitration agreement, which, as stated before, precludes certain remedies (attorneys' fees, punitive

1996 U.S. Dist. LEXIS 1140, *17; 70 Fair Empl. Prac. Cas. (BNA) 401;
68 Empl. Prac. Dec. (CCH) P44,024

damages, and injunctive relief) is inherently inconsistent with the purposes of Title VII. With respect to punitive damages, which the 1991 amendments made available in cases of intentional discrimination, *see* 42 U.S.C. § 1981a, such an argument is impossible to square with Section 118, which was part of the same 1991 [*18] Civil Rights Act. The same can be said with respect to attorneys' fees, which the Court may award to a prevailing party, *see id.* at § 2000e-5(k), or, as a result of the 1991 amendments, to a party who proved that a discriminatory motive played a part in the employer's decision, even if the employer successfully escaped liability by proving that it would have taken the same action in any event. *See id.* at § 2000e-5(g)(2)(B). It is therefore not inconsistent to submit plaintiff's claim to arbitration simply because punitive damages and attorneys' fees are unavailable in that forum. The mere fact that these statutory remedies may be unavailable in the arbitral forum does not in itself establish that Title VII claims must be resolved in a court of law. As the Supreme Court in *Mitsubishi* stated:

> Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.

*Mitsubishi,* 473 U.S. at 628. [5]

> 5   Plaintiff also argues that Title VII's punitive damages and attorneys' fees provisions -- by creating incentives for citizens to act as private attorneys general -- are an important part of the statute's enforcement scheme. This public policy argument, however, was also raised in *Mitsubishi,* which held that, notwithstanding the remedial and policing functions of the Clayton Act's treble damages cause of action, it is not necessarily inconsistent to subject antitrust claims to mandatory arbitration. *Mitsubishi,* 473 U.S. at 635-36.

[*19] Finally, with respect to the unavailability of injunctive relief, the plaintiff appears to argue that such an outcome would undermine the enforcement of Title VII. Plaintiff's argument, however, has already been answered by the Supreme Court in *Gilmer,* which in the context of ADEA, wrote "it should be remembered that arbitration agreements will not preclude the EEOC from

bringing actions seeking . . . equitable relief."*Gilmer,* 500 U.S. at 32. As in *Gilmer,* nothing in this Agreement precludes the plaintiff from filing a charge with the EEOC. *See id.* at 28. In addition, the Supreme Court recognized that arbitration, like judicial proceedings, "can further broader social purposes." *Id.* at 28. Therefore, there is no inherent conflict between arbitration of plaintiff's complaint against Smith Barney and Title VII's underlying purposes. Although arbitration may not afford the full panoply of remedies otherwise available in a court of law,

> "So long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function."

*Id.* (quoting [*20] *Mitsubishi,* 473 U.S. at 637). [6]

> 6   In the end, plaintiff's public policy arguments must be analyzed in light of *Gilmer,* which establishes that the central inquiry is whether arbitration of a statutory claim is inconsistent with Congressional intent. For example, the Supreme Court's answer to the argument that "arbitration procedures cannot adequately further the purposes of the ADEA because they do not provide for" class actions was:
>
> > "Even if the arbitration could not go forward as a class action or class relief could not be granted by the arbitrator, the fact that the [ADEA] provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred."
>
> *Gilmer,* 500 U.S. at 32 (quoting *Nicholson v. CPC Int'l Inc.,* 877 F.2d 221, 241 (3d Cir. 1989) (Becker, J., dissenting)).

The Court also notes that the plaintiff's arguments ignore the way in which arbitration and Title VII's policies converge. As the Supreme [*21] Court in *Gilmer* recognized with respect to ADEA, in Title VII cases the EEOC is "directed to pursue 'informal methods of conciliation, conference, and persuasion.'" *Id.* at 29

1996 U.S. Dist. LEXIS 1140, *21; 70 Fair Empl. Prac. Cas. (BNA) 401;
68 Empl. Prac. Dec. (CCH) P44,024

(quoting 29 U.S.C. § 626(b)). *See* 42 U.S.C. § 2000e-5(a) ("the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion"). This "suggests that out-of-court dispute resolution, such as arbitration, is consistent with the statutory scheme established by Congress."*Gilmer, 500 U.S.* at 29.

Plaintiff argues, in the alternative, that even if the arbitration agreement is not inconsistent with Title VII, the plaintiff did not knowingly and voluntarily waive her rights to a judicially determined resolution of her complaint. In her affidavit, the plaintiff states that on her first day of work at Smith Barney, she was given a stack of forms to sign. One of these forms, she believes, was the Agreement. However, she does not recall being given the 1993 handbook or being told to read the handbook prior to signing the Agreement. She claims that she had no idea what the provisions of the civil rights laws were, nor of [*22] the availability of attorneys' fees, injunctive relief, and punitive damages under such laws. In fact, she claims she did not even know what arbitration was until she commenced this litigation. According to the plaintiff, no one drew her attention to the Agreement or its significance; rather, all the forms had to be signed immediately, with the exception of the dental and medical insurance forms.

In support of her position, the plaintiff relies principally on the Ninth Circuit's decision in *Prudential Insurance Co. v. Lai,* 42 F.3d 1299 (9th Cir. 1994), *cert. denied,* 133 L. Ed. 2d 24, 116 S. Ct. 61 (1995). In *Lai,* the Ninth Circuit held that

> Congress intended there to be at least a knowing agreement to arbitrate employment disputes before an employee may be deemed to have waived the comprehensive statutory rights, remedies and procedural protections prescribed in Title VII and related state statutes.

*Id.* at 1304. The *Lai* Court's interpretation of Congress' intent derives from a House committee report [7] and a statement by Senator Robert Dole. [8] The Court notes, first, that the *Lai* decision is obviously not binding on this Court. Second, other [*23] courts in this Circuit have expressed their disagreement with *Lai. See Maye v. Smith Barney Inc.,* 897 F. Supp. 100, 107 (S.D.N.Y. 1995); *Hall v. MetLife Resources,* 1995 U.S. Dist. LEXIS 5812,

*9, 1995 WL 258061, at *4 (S.D.N.Y. May 3, 1995). *Accord Lockhart v. A.G. Edwards & Sons,* 1994 U.S. Dist. LEXIS 1201, 1994 WL 34870, at *3-*4 (D. Kan. Jan. 25, 1994). Third, unlike the arbitration agreement in *Lai,* the agreement in the instant case expressly described the types of disputes that would be subject to arbitration. *See Maye,* 897 F. Supp. at 107. *Lai,* therefore, is distinguishable. Fourth, even if the Court were persuaded by the *Lai* Court's use of legislative history, the agreement plaintiff signed could not have done more to put her on notice that she was agreeing to submit any and all Title VII and similar claims to arbitration. The Agreement specifically makes reference to the Arbitration Policy, as well as the Employee Handbook, and emphasizes twice the importance of getting acquainted with these documents prior to signing the Agreement. At the bottom of the one-page Agreement, there is a paragraph that expressly defines the employment disputes that are subject to the Agreement's arbitration procedures. Finally, [*24] the plaintiff's signature appears on a line immediately beneath a clause that reads, "Understood and agreed." Applying, as this Court must, "ordinary state-law principles that govern the formation of contracts," *First Options of Chicago,* 115 S. Ct. at 1924, plaintiff's claim that she did not knowingly sign the Agreement is to no avail. Under New York law, one

> who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them.

*Maye,* 897 F. Supp. at 108 (internal quotations omitted) (citing cases).

7    The report explained the purpose of Section 118 as follows:

> The committee emphasizes . . . that the use of alternative dispute resolution mechanisms is intended to supplement, not supplant, the remedies provided by Title VII. Thus, for example, the committee believes that any agreement to submit disputed issues to arbitration, whether in the context of a collective bargaining agreement or in an employment

1996 U.S. Dist. LEXIS 1140, *24; 70 Fair Empl. Prac. Cas. (BNA) 401;
68 Empl. Prac. Dec. (CCH) P44,024

contract, does not preclude the affected person from seeking relief under the enforcement provisions of Title VII.

*See Lai,* 42 F.3d at 1304 (quoting H.R. Rep. No. 40(I), 102nd Cong. 1st Sess., *reprinted in* 1991 U.S.C.C.A.N. 549, 635).

[*25]

8    According to Senator Dole, Section 118 encourages arbitration only "'where the parties knowingly and voluntarily elect to use these methods.'" *Lai,* 42 F.3d at 1305 (quoting 137 Cong. Rec. S. 15472, S. 15478 (Daily Ed. Oct. 30, 1991)).

**B. Claim against Kessler**

The plaintiff argues that even if the Court finds the Agreement enforceable with respect to plaintiff's claims against Smith Barney, the plaintiff did not agree to arbitrate any employment disputes with defendant Hessler. This argument, however, is not persuasive for two reasons. First, the Agreement makes reference to the Arbitration Policy, which expressly encompasses "disagreements [that] may arise between an individual employee and [Smith Barney] or between employees in a context that involves his/her employer." The plaintiff alleges in her complaint that Hessler intentionally caused her emotional distress by making unwelcome sexual advances and conditioning a favorable evaluation and a promotion on her willingness to submit to such advances. Thus, her dispute with Hessler arose in a context that involved Smith [*26] Barney.

Second, the Agreement compels the plaintiff to follow the arbitration rules of the NYSE, which provide, in relevant part:

Any dispute, claim or controversy between a customer or non-member and a member, allied member, member organization and/or associated person arising in connection with the business of such member, allied member, member organization and/or associated person in

connection with his activities as an associated person shall be arbitrated under the Constitution and Rules of the New York Stock Exchange, Inc.

New York Stock Exchange Guide, P 2600, Rule 600(a) (1992). The plaintiff is a non-member, and Hessler, the Managing Director of Smith Barney's Public Finance Division, is an associated person of Smith Barney, a member organization. *See Fleck v. E.F. Hutton Group, Inc.,* 891 F.2d 1047, 1054 (2d Cir. 1989) (noting that under NYSE Rule 600 "associated person" includes, *inter alia,* officers, directors, and branch managers of member organizations). If Hessler in fact engaged in the kind of *quid pro quo* sexual harassment that is alleged, then plaintiff's dispute with Hessler arises in connection with Hessler's activities as Managing Director. [*27] Therefore, plaintiff's claim against Hessler is also arbitrable under the arbitration rules of the NYSE.

**ATTORNEYS' FEES & COSTS**

Defendants request attorneys' fees and costs for bringing this motion to compel arbitration. No briefing, however, was submitted to the Court. In any event, this motion presents an issue of law not yet decided by the Second Circuit and, therefore, this Court in an exercise of its discretion will decline to impose attorneys' fees on the plaintiff. Therefore, defendants' request for fees and costs is denied.

**CONCLUSION**

For the reasons set forth above, defendants' motion to compel arbitration is granted. Defendants' motion for attorneys' fees is denied. The action is hereby stayed pending arbitration.

SO ORDERED:

Dated: New York, New York

February 5, 1996

Denise Cote

United States District Judge

LEXSEE 2006 US APP LEXIS 24649



Analysis
As of: Dec 14, 2007

**DELTA FUNDING CORPORATION v. ALBERTA HARRIS, Appellant**

**No. 04-1951**

**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

**466 F.3d 273; 2006 U.S. App. LEXIS 24649**

**May 10, 2005, Argued**
**October 3, 2006, Filed**

**PRIOR HISTORY:**    [**1]  On Appeal from the United States District Court for the District of New Jersey. (D.C. Civil No. 02-cv-04080). District Judge: Hon. John C. Lifland.
Delta Funding Corp. v. Harris, 189 N.J. 28, 912 A.2d 104, 2006 N.J. LEXIS 1155 (N.J., Aug. 9, 2006)

**COUNSEL:** Madeline L. Houston (Argued), Houston & Totaro, Bloomfield, New Jersey, Attorney for Appellant.

Alan S. Kaplinsky, Martin C. Bryce, Jr. (Argued), Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, PA, Attorneys for Appellee.

Baher A. Azmy, Andrew McNally, Erin Kahn, Steven Klutkowski, Seton Hall Law School, Center for Social Justice, Newark, New Jersey, Attorneys for Amici Curiae, American Civil Liberties Union of New Jersey, New Jersey Institute for Social Justice, New Jersey Citizen Action Coalition, New Jersey Public Policy Research Institute, American Association of Retired Persons, and National Association of Consumer Advocates in Support of Appellant Alberta Harris.

**JUDGES:** Before: SLOVITER, FISHER and ALDISERT, Circuit Judges.

**OPINION BY:** SLOVITER

**OPINION**

[*273] *OPINION OF THE COURT*

SLOVITER, Circuit Judge.

This matter is before us following issuance of an opinion by the Supreme Court of New Jersey in response to a question of law that we certified to it. [1] *See Delta Funding Corp. v. Harris*, No. 04-1951, 426 F.3d 671, 2005 U.S. App. LEXIS 24531, [**2] at *13-14 (3d Cir. July 27, 2005). A brief summary of the background and issue is called for.

> 1  We express our appreciation to that court for accepting our certified question. The certified question procedure is a useful vehicle for federal courts to give the state supreme courts an opportunity to elucidate an important issue of state law, thereby avoiding erroneous predictions that will confuse rather than clarify the issue. The Supreme Court has stated that certification "does . . . in the long run save time, energy, and resources and helps build a cooperative judicial federalism." *Lehman Bros. v. Schein*, 416 U.S. 386, 391, 94 S. Ct. 1741, 40 L. Ed. 2d 215 (1974).

In 1999, Alberta Harris, a 78-year-old African-American woman with a sixth-grade education and very little financial sophistication, entered into a mortgage loan contract with Delta Funding Corporation,

466 F.3d 273, *273; 2006 U.S. App. LEXIS 24649, **2

a lender specializing in the sub-prime market. [2] Under the contract, Delta provided Harris with a $ 37,700 loan secured by a mortgage on her house. [**3] Harris owned her home outright and had lived in it for more than thirty years. Harris's only basis for financial support in 1999 was the social security payment of approximately $ 900 per month. The annual percentage rate on the Delta loan was 14%, resulting in monthly payments of approximately $ 444.44; nearly half of Harris's monthly income. Delta subsequently assigned the loan to Wells Fargo as trustee. [*274] Harris was unable to afford the required monthly payments and Wells Fargo instituted a mortgage foreclosure suit against her in the Superior Court of New Jersey, Essex County, Chancery Division.

> 2  Sub-prime lending refers to lending to persons who, because of poor credit history or even discrimination by traditional lenders, have been historically excluded from obtaining credit. These loans charge higher interest rates, points, and fees than comparable loans in the prime market. *See generally* HUD-TREASURY TASK FORCE ON PREDATORY LENDING, CURBING PREDATORY HOME MORTGAGE LENDING 27-28 (June 2000), *available at* http://www.huduser.org/Publications/pdf/treasrpt.pdf.

[**4] The loan agreement contains an arbitration provision that allows either party to elect binding arbitration as the forum to resolve covered claims. In response to Wells Fargo's mortgage foreclosure action, Harris filed an Answer and Counterclaim and a Third-Party Complaint against Delta, alleging violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 to -67, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 to -17 , and the New Jersey Consumer Fraud Act ("CFA"), N. J. Stat. Ann. §§ 56:8-1 to -135 .

Delta filed a petition in the United States District Court for the District of New Jersey seeking to compel arbitration of Harris's claims against it. Harris filed an answer to Delta's petition and thereafter she filed a motion for summary judgment. In that motion, she argued, *inter alia*, that the arbitration clause was unconscionable under New Jersey state law because it (1) imposes prohibitive costs which preclude her from effectively vindicating her statutory rights; and (2) requires her to adjudicate her claims in two forums; i.e., she must contest the foreclosure action in state [**5]

court, but bring all related claims in arbitration. The District Court denied Harris's motion for summary judgment and granted Delta's motion to compel arbitration. [3]

> 3  The state court presiding over the foreclosure action then dismissed Harris's third-party complaint against Delta.

Believing that the issue presented a question of New Jersey law that was undecided, we issued a petition pursuant to New Jersey Court Rule 2:12A-3 certifying a question to the New Jersey Supreme Court. That Court accepted and reformulated the question as follows: "Is the arbitration agreement at issue, or any provision thereof, unconscionable under New Jersey law, and, if so, should such provision or provisions be severed?" *Delta Funding Corp. v. Harris*, 185 N.J. 255, 883 A.2d 1055 (N.J. 2005). The New Jersey Supreme Court issued its decision on August 9, 2006. See *Delta Funding Corp. v. Harris*, 189 N.J. 28, 912 A.2d 104, 2006 N. J. LEXIS 1155 (N.J. Aug. 9, 2006).

We will not rescribe the analysis and reasoning of the New [**6] Jersey Supreme Court because it is available in the published opinion. We summarize it briefly.

That Court stated that "Most of the disputed provisions in the instant arbitration agreement are, to some degree, ambiguous. To the extent that the unconscionability of those provisions ultimately turns on how the arbitrator resolves the ambiguities, we are unable to determine whether the provisions are, in fact, unconscionable." 2006 N.J. LEXIS 1155, at *17-18. [4] The Court then identified general principles of New Jersey contract law that this court and the arbitrator can apply to the agreement.

> 4  All citations to the text of the New Jersey Supreme Court's decision are to the version in LEXIS because the opinion has not been printed in the official reporter.

The Court first considered the claim of procedural unconscionability and referred to its opinion in *Rudbart v. North Jersey District Water Supply Commission*, 127 N.J. 344, 605 A.2d 681, 687 (N.J. 1992), which focused on the procedural and substantive aspects [**7] of a contract of adhesion in order to determine whether the contract is so oppressive or inconsistent with the [*275]

466 F.3d 273, *275; 2006 U.S. App. LEXIS 24649, **7

vindication of public policy that it would be unconscionable to permit its enforcement. The Court noted that "Harris alleges certain facts surrounding her signing of the contract that suggest a high level of procedural unconscionability" that "must be taken into account." *Delta Funding*, 2006 N.J. LEXIS 1155, at *21, 22.

With respect to Harris's reference to the provision of the arbitration agreement regarding payment of hearing-level costs, the Court reviewed the parties' respective arguments and noted, "The agreement as written, and as yet uninterpreted by an arbitrator, could force Harris to bear the risk that she will be required to pay all arbitration costs. That risk is unconscionable in that it is a deterrent to the vindication of her statutory rights." 2006 N.J. LEXIS 1155, at *26.

The Court next considered the provision in the arbitration agreement that states, "[u]nless inconsistent with applicable law, each [**8] party shall bear the expense of that party's attorneys', experts' and witness fees, regardless of which party prevails in the arbitration." 2006 N.J. LEXIS 1155, at *27. The New Jersey Supreme Court concluded that "To the extent that this provision in Harris's consumer contract would prevent her from recovering discretionary attorney's fees and costs under RESPA, it is unconscionable." 2006 N.J. LEXIS 1155, at *29.

The arbitration agreement also provides that "the cost of . . . an appeal will be borne by the appealing party regardless of the outcome of the appeal." 2006 N.J. LEXIS 1155, at *30. With respect to that provision, the Court stated that "[t]he same conclusion in respect of the unconscionability of the hearing-level costs provision applies to the allocation of costs related to appeals available within the arbitral forum." *Id.*

Noting that "the arbitration provisions are subject to interpretation, but only by an arbitrator," 2006 N.J. LEXIS 1155, at *31, the Court stated that "if an arbitrator were to interpret all of the disputed provisions in a manner that would render them unconscionable, we have no doubt that those provisions could be severed and that the remainder of the arbitration agreement would be capable of enforcement." 2006 N.J. LEXIS 1155, at *32.

Finally, the Court ruled that the "class-arbitration waiver in [Harris's] arbitration agreement is not unconscionable per [**9] se," 2006 N.J. LEXIS 1155, at *32, that the provision of the arbitration agreement that excludes any foreclosure actions that may be brought against Harris is burdensome but not unconscionable, 2006 N.J. LEXIS 1155, at *34-35, and that Harris's challenge to the discovery and confidentiality provisions of the arbitration agreement, which are a form of generalized attacks on arbitration as a method of dispute resolution, are "not persuasive." 2006 N.J. LEXIS 1155, at *38.

We have undertaken to summarize the New Jersey Supreme Court's opinion only because the result is undoubtedly of interest to the district courts in this circuit. Of course, the New Jersey Supreme Court opinion speaks for itself, and those interested in its conclusions are directed to the opinion.

For the reasons set forth above, we will remand this matter to the District Court with directions that it should enforce the arbitration agreement, attaching to its order [*276] a copy of the New Jersey Supreme Court opinion.

LEXSEE 2003 US DIST LEXIS 15957



Analysis
As of: Dec 14, 2007

**Gambardella v. Pentec, Inc., et al.**

**No. 3:01cv1827(JBA)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

**2003 U.S. Dist. LEXIS 15957**

**August 25, 2003, Decided**

**PRIOR HISTORY:** Gambardella v. Pentec, Inc., 218 F. Supp. 2d 237, 2002 U.S. Dist. LEXIS 17623 (D. Conn., 2002)

**DISPOSITION:** Motion for leave to file Rule 60(b) motion was granted.

**COUNSEL:** [*1] For Rossi Gambardella, PLAINTIFF: John Ivar Bolton, Bridgeport, CT USA.

For Pentec, Inc, Sheila Evon, Ind, Michael Callahan, Ind, Michael Varrengia, Ind, DEFENDANTS: Alan I Scheer, O'Connell, Flaherty & Attmore, Hartford, CT USA. Michael Alan Kurs, Pullman & Comley, Hartford, CT USA.

**JUDGES:** Janet Bond Arterton, U.S.D.J.

**OPINION BY:** Janet Bond Arterton

**OPINION**

*Ruling on Motion for Leave to File Rule 60(b) Motion [Doc. # 44]*

Plaintiff commenced this employment discrimination suit against her former employer despite having signed an agreement to arbitrate such disputes. When defendants filed their motion to compel arbitration, plaintiff opposed by asserting that she was fraudulently induced to sign the arbitration agreement and that the provision of the agreement providing that she would pay one-half of the cost of arbitration deprives her of rights guaranteed to Title VII plaintiffs. The Court's ruling on the motion rejected both contentions, *see Gambardella v. Pentec, Inc.*, 218 F. Supp. 2d 237, 244-246 (D. Conn. 2002), but raised a related ground *sua sponte*: the unavailability of legal fees for a prevailing Title VII complainant. [1]

> 1    "But for the arbitration agreement, [Gambardella] would presumptively be entitled to recover both her attorney's fees and costs under Title VII if she prevailed. By denying Gambardella access to a remedy Congress made available to ensure that violations of Title VII are effectively remedied and deterred, the arbitration agreement drafted by Pentec impermissibly erodes the ability of arbitration to serve those purposes as effectively as litigation." *Id.* at 247.

[*2] Following the Court's ruling declining to compel arbitration, defendants filed their pending interlocutory appeal, and this case was stayed. After the appeal was filed, defendants indicated to the Second Circuit that "it is Pentec's position that the arbitration agreement does not foreclose the award to a prevailing plaintiff of reasonable attorney's fees or taxable costs from Pentec," and that defendants would assert this position on appeal. [Doc. # 44] P 4. Rather than raise this argument for the first time at the appellate level, defendants filed the instant motion for permission for

leave to file a Rule 60(b) motion [Doc. # 44], asking that the Court express its inclination to grant such a motion. [2]

> 2    Because Pentec's notice of appeal divests the Court of jurisdiction to revisit and reconsider its denial of defendants' motion to compel arbitration, defendants followed the proper procedure under *Toliver v. County of Sullivan*, 957 F.2d 47 (2d Cir. 1992), in that they have asked this Court to first express its inclination to grant such a motion, at which time the Court of Appeals could be asked to return jurisdiction to this Court so that the motion may be granted.

[*3] In support of the motion for leave, defendants argue that the Court's *sua sponte* consideration of the attorney's fees issue deprived them of the chance to express their position here that fees and costs are not precluded by the arbitration agreement. They argue that the agreement should be construed to allow for an award of attorney's fees to a prevailing party, thus guaranteeing Gambardella's right to fees and costs if she prevails while preserving the arbitration agreement to which the parties were bound. Gambardella asserts that construing the agreement to allow for attorney's fees would constitute *ex post* "blue penciling" of the agreement, which she contends is poor public policy.

The agreement in this case provides: "You and Pentec, Inc. shall each bear respective costs for legal representation at any such arbitration." *Gambardella*, 218 F. Supp. 2d at 244 n.5. While the agreement's complete silence on the subject of shifting these fees and costs to the non-prevailing party is in contrast with Title VII's explicit provisions on this issue, [3] the agreement does not affirmatively foreclose the possibility of attorney's fees. *Compare, e.g., Spinetti v. Service Corp. Int'l*, 324 F.3d 212, 215 (3rd Cir. 2003) [*4] (agreement provided that "each party may retain legal counsel and shall pay its own costs and attorney's fees, *regardless of the outcome of the arbitration*") (emphasis added); *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 99 Cal. Rptr. 2d 745, 6 P.3d 669, 675 (Cal. 2000) (agreement limited available remedies to back pay and explicitly excluded "any other remedy, at law or in equity, including but not limited to reinstatement and/or injunctive relief").

> 3    *See* 42 U.S.C. § 2000e-5(k) (providing for award of attorney's fees and costs to "the prevailing party"); *Bridges v. Eastman Kodak Co.*,

102 F.3d 56, 58 (2d Cir. 1996) ("To be eligible for attorney's fees and costs under § 2000e-5(k), a plaintiff (or a defendant) must be a prevailing party. A plaintiff prevails when she succeeds on any significant issue in litigation which achieves some of the benefit the party sought in bringing suit.") (citations, quotations and alterations omitted); *see also Hanrahan v. Hampton*, 446 U.S. 754, 64 L. Ed. 2d 670, 100 S. Ct. 1987 (1980) (party may "prevail" on some issues and thus be entitled to an interlocutory award of attorney's fees even before final judgment).

[*5] In contrast to the silence of the Gambardella/Pentec agreement, the agreements at issue in each case [4] cited by the Court's original ruling (save one) were either unambiguous in their contravention of Title VII or had actually been interpreted by the arbitrator in a manner inconsistent with Title VII. [5] The agreement in *McCaskill*, identical to the *Spinetti* agreement quoted above, affirmatively foreclosed the possibility of an award of attorney's fees to a prevailing party by providing that each party would be responsible for its own attorney's fees "regardless of the outcome of the arbitration." [6] The arbitration rules in *Hooters* provided that "attorney's fees can only be awarded upon a showing of frivolity or bad faith of the unsuccessful litigant," 39 F. Supp. 2d at 599, which is a higher standard than Title VII's guarantee of presumptive attorney's fees. [7] While the arbitration provision in *DeGaetano* itself did not foreclose an attorney's fee award to a prevailing party, the arbitrator had refused to award such fees, which the district court thereafter added as part of its confirmation of the arbitration award. The arbitration provision in *Gourley* [*6] expressly required that "all documents to be considered by the arbitrator shall be filed at the hearing" and reiterated that "there shall be no post-hearing briefs," 178 F. Supp. 2d at 1204, which the *Gourley* court concluded would preclude prevailing plaintiffs from ever seeking a post-hearing award of attorney's fees.

> 4    *Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244 (9th Cir. 1994); *McCaskill v. SCI Management Corp.*, 285 F.3d 623 (7th Cir. 2002); *Hooters of America, Inc. v. Phillips*; 39 F. Supp. 2d 582 (D.S.C. 1998); *DeGaetano v. Smith Barney, Inc.*, 983 F. Supp. 459 (S.D.N.Y. 1997); and *Gourley v. Yellow Transp. LLC*, 178 F. Supp. 2d 1196 (D. Colo. 2001).

5 *Graham Oil* is the sole exception, as the clause at issue there provided only that "each party shall pay its own costs and expenses, including attorneys' fees related to such arbitration." 43 F.3d at 1247. There is no indication, however, that the defendant in that case proffered an alternative construction of the clause (as defendant does here), and other provisions of the agreement at issue were found to invalidate the agreement, as well, *id.* at 1247-1248 (delineating three separate ways in which the agreement contravened the statute, only one of which was the attorney's fee issue).

[*7]

6    This opinion in *McCaskill* was vacated for rehearing. 294 F.3d 879. On rehearing, the court again held that the arbitration provision was unenforceable because of the prohibition on attorney's fees for a prevailing party, 298 F.3d 677, 680, but noted that the arbitration issue "was not well presented, as SCI has waived the intertwined issues of severability and construction of arbitration agreements by the arbitrator and may not now raise them on rehearing," *id.* at 680 n.1. These intertwined issues were again presented by the same defendant company and decided in *Spinetti, discussed infra.*

7    *See Lyte v. Sara Lee Corp.*, 950 F.2d 101, 103 (2d Cir. 1991) ("While the language of the Title VII fee provision refers to the award as discretionary, a prevailing plaintiff is in fact entitled to fees unless special circumstances would render such an award unjust in light of the congressional goals underlying enforcement of fee awards in civil rights litigation.") (citation and internal quotation omitted).

This silence on the [*8] availability of an award of attorney's fees to a prevailing claimant also distinguishes the Gambardella/Pentec arbitration agreement from those in the cases relied on by Gambardella in opposing the instant motion, each of which contained an express provision which the court found to be unlawful. 8 The arbitration agreements in *Cooper* and *Popovich* adopted the rules of the American Arbitration Association, which each court found to expressly and unlawfully require a claimant to bear certain prohibitive costs, *Cooper*, 199 F. Supp. 2d at 781; *Popovich*, 189 F. Supp. 2d 772, 2002 WL 449003 at *1, and the *Shankle* and *Perez* agreements themselves specified (unlawfully, according to the both

courts) that an employee would be liable for one-half of the costs of arbitration, *Shankle*, 163 F.3d at 1232; *Perez*, 253 F.3d at 1285. 9 The agreement in *Armendariz* could not have been clearer, providing that a successful claimant's "exclusive" remedies were "limited to a sum equal to the wages I would have earned from the date of any discharge until the date of the arbitration award [and] I shall not be entitled to any other remedy, [*9] at law or in equity, including but not limited to reinstatement and/or injunctive relief." 6 P.3d at 675. Thus, in every case cited by Gambardella in opposition to defendants' motion, the offending provisions of the arbitration agreements at issue were explicit and were not open to differing interpretations.

8    *Cooper v. MRM Inv. Co.*, 199 F. Supp. 2d 771, 782 (M.D. Tenn. 2002) ("Defendants will not be allowed, at this point, to abandon a provision that KFC's attorneys carefully drafted, in order to 'save' the Arbitration Agreement."); *Shankle v. B-G Maint. Mgmt. of Colorado, Inc.*, 163 F.3d 1230, 1235 n.6 (10th Cir. 1999) ("The Agreement clearly makes the employee responsible for one-half of the arbitrator's fees and we are not at liberty to interpret it otherwise.") (citation omitted); *Perez v. Globe Airport Sec. Servs., Inc.*, 253 F.3d 1280, 1287 (11th Cir. 2001), *vacated pursuant to parties' stipulation of dismissal*, 294 F.3d 1275 (11th Cir. 2002); *Armendariz, supra*; and *Popovich v. McDonald's Corp.*, No. 01C662, 189 F. Supp. 2d 772, 2002 WL 449003 (N.D. Ill. March 20, 2002 ).

[*10]

9    Gambardella raised the cost argument present in *Cooper, Shankle, Perez* and *Popovich* in this case as well, but the Court's earlier opinion rejected it, relying on Gambardella's failure to carry her burden of proof under *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 148 L. Ed. 2d 373, 121 S. Ct. 513 (2000). In *Green Tree*, the Supreme Court held that "where . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92. Because Gambardella provided "nothing from which the Court could conclude that the costs are likely to personally burden her financial ability to pursue her statutory claims," *Gambardella*, 218 F. Supp. 2d at 246, she failed to meet her *Green Tree*

burden, and thus cannot rely on prohibitive expense as grounds to avoid arbitration.

Defendants point to the Third Circuit's decision in *Spinetti, supra,* which severed the provision of the arbitration [*11] agreement which expressly precluded award of attorney's fees and costs to prevailing party [10] and enforced the remainder of agreement, reflecting the opinion that "you don't cut down the trunk of a tree because some of its branches are sickly," 324 F.3d at 214. While courts have differed on whether to sever an express provision contravening Title VII and enforce the remainder of the arbitration agreement (*e.g., Spinetti*) or not (*Cooper, Shankle, Perez, Armendariz* and *Popovich*), the Court need not reach that question here. Viewing the canons of contract construction as requiring the arbitration agreement *sub judice* to be read as to (if possible) make the agreement lawful, construe ambiguity in the agreement against the drafter, and serve the public interest, the silence on prevailing claimant attorney's fees must be construed to allow for a presumptive entitlement to such fees as part of a successful claimant's award, thus paralleling Title VII's provisions. So viewed, the arborist-like decision is not implicated in this case.

> 10   The language of the *Spinetti* agreement was identical to that of the agreement in *McCaskill:* "Each party may obtain legal counsel and shall pay its own costs and attorney's fees, *regardless of the outcome of arbitration.*" (emphasis added).

[*12] First, an agreement should be construed, when possible, to render it lawful rather than unlawful. *See Cole v. Burns Int'l Sec. Servs.*, 323 U.S. App. D.C. 133, 105 F.3d 1465, 1485-1486 (D.C. Cir. 1997) (silence in an arbitration agreement as to certain costs construed to render the agreement valid and enforceable: "It is well understood that, where a contract is unclear on a point, an interpretation that makes the contract lawful is preferred to one that renders it unlawful.") (citations omitted); *accord* Restatement (Second) of Contracts § 203(a) ("an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect").

Second, ambiguity in agreements should be construed against the drafter. *See Hartford Elec. Applicators of Thermalux, Inc. v. Alden*, 169 Conn. 177, 182, 363 A.2d 135 (1975) (*citing Ravitch v. Stollman Poultry Farms, Inc.*, 165 Conn. 135, 328 A.2d 711

(1973)). "If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." *United Illuminating Co. v. Wisvest-Connecticut LLC*, 259 Conn. 665, 671, 791 A.2d 546 (2002) [*13] (*citing Lopinto v. Haines*, 185 Conn. 527, 538, 441 A.2d 151 (1981)). As set out above, the language of this contract is subject to two reasonable interpretations: (1) that each party will bear attorney's fees and costs regardless of the outcome; or (2) that while attorney's fees are initially the burden of the party incurring them, a successful claimant may, in keeping with the substantive law of Title VII, recover such fees as part of an award. Construing the ambiguity against Pentec (undisputedly the drafter of this agreement) means adopting the second interpretation, as it is that interpretation which exposes Pentec to greater legal liability. [11]

> 11   It is of no moment that the second interpretation is the one Pentec is advancing here. *See Cole,* 105 F.3d at 1466 (construing ambiguous provision regarding costs of arbitration "against the drafter" such that the drafter would have to pay the costs of arbitration, even though construing the provision the opposite way would have voided the arbitration agreement and thus achieved the result sought in the litigation by the draftee).

[*14] Finally, "in choosing among the reasonable meanings of a promise or agreement or a term thereof, a meaning that serves the public interest is generally preferred." Restatement (Second) of Contracts § 207. While this rule "applies only to agreements which affect a public interest," *id.* § 207 cmt. a, "awarding attorney's fees to prevailing plaintiffs, and thereby encouraging ameliorative lawsuits, serves broader policy goals" than simply "making it easier for a plaintiff of limited means to bring a meritorious suit." *DeGaetano*, 983 F. Supp. at 465 (citations and internal quotations omitted). Rather, Title VII's attorney's fee provision effectuates Congressional policy against invidious discrimination in employment. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 716 (5th Cir. 1974). Of two competing interpretations, the one which would read the agreement to protect this important policy choice is the better of the two. While it is true that reading the agreement to preclude a fee and thus be unenforceable would permit Gambardella to proceed with a jury trial in federal court, voiding the agreement to protect public

policy addresses [*15] only one of the principles of construction, while construing the agreement to allow attorney's fees both conforms it with public policy and preserves its validity. *Cf. also Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*, 991 F.2d 42, 45 (2d Cir. 1993) ("Federal policy, as embodied in the Federal Arbitration Act, strongly favors arbitration as an alternative dispute resolution process.") (footnote omitted) (citing, inter alia, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983).

For all of these reasons, construing the silence in the arbitration agreement in the manner now urged by Pentec is the proper course of action. The parties' agreement will be rendered valid rather than void, and Gambardella will enjoy her full panoply of Title VII rights and remedies (except a jury trial), including her right to presumptive attorney's fees in the event she is a "prevailing party." Because the issue of attorney's fees was raised *sua sponte* and without notice, [12] Pentec never had occasion to advance this argument. Thus, the Court concludes that relief from its prior opinion [*16] denying defendants' motion to compel arbitration is in order, should the Court of Appeals return jurisdiction over this matter.

12 While there is a half-sentence reference to attorney's fees in Gambardella's memorandum in opposition to defendants' motion to compel arbitration, *see* [Doc. # 24] at 7-8 ("There exist no limitations as to the arbitrator's fees and no formula for the calculation of attorney's fees."), this reference was presented in the context of Gambardella's assertion that the uncertainty and expense of the arbitration envisioned in the agreement were sufficient grounds to void the agreement. This sparse reference was insufficient to put defendants on notice that the agreement's provisions regarding attorney's fees were the grounds for Gambardella's challenge to the agreement.

Therefore, for the reasons set out above, the motion [Doc. # 44] for leave to file a Rule 60(b) motion is GRANTED. If the Court of Appeals returns jurisdiction over this matter, *see Toliver*, 957 F.2d at 49, [*17] the Court will vacate its prior ruling, appoint an arbitrator pursuant to 9 U.S.C. § 5, [13] and dismiss the case. [14]

13 *Gambardella*, 218 F. Supp. 2d at 239 ("Defendants have also requested that the Court appoint an arbitrator pursuant to 9 U.S.C. § 5 because no method of appointment of an arbitrator is specified in the arbitration agreement.").

14 All of Gambardella's claims against all parties are subject to the arbitration agreement, *see Gambardella*, 218 F. Supp. 2d at 242 (noting that all claims against Pentec are "indisputably within the scope of the arbitration agreement" and concluding that the claims against the individual defendants are "directly related to [those defendants'] employment with Pentec and to Gambardella's claims against Pentec" such that they are within the scope of the agreement), and thus dismissal of the complaint (rather than a stay pending arbitration) is warranted, *Lewis Tree Serv., Inc. v. Lucent Techs., Inc.*, 239 F. Supp. 2d 332, 340 (S.D.N.Y. 2002) (citations omitted), although the dismissal will be without prejudice, *see Jureczki v. Banc One Texas, N.A.*, 252 F. Supp. 2d 368, 380 (S.D. Tex. 2003) (citing, inter alia, *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674 (5th Cir. 1999)).

[*18] IT IS SO ORDERED.

/s/ Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut, this 25th day of August, 2003.**

LEXSEE 2003 US DIST LEXIS 8764



Cited
As of: Dec 14, 2007

**JENNY GRUBER, Plaintiffs, -against- LOUIS HORNICK & CO., INC., LOUIS HORNICK, STEVEN BERGER AND STEVEN RAND, Defendants.**

**02Civ. 5092 (SHS)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**2003 U.S. Dist. LEXIS 8764**

**May 22, 2003, Decided
May 23, 2003, Filed**

**DISPOSITION:**    [*1] Defendants motion to compel arbitration and stay further judicial proceedings pending arbitration granted. Complaint dismissed.

**COUNSEL:** For Jenny Gruber, PLAINTIFF: Leonard N Flamm, The Law Offices of Leonard N Flamm, New York, NY USA.

For Louis Hornick & Co, Inc, DEFENDANT: Robyn K Ruderman, Epstein, Becker & Green, PC, New York, NY USA.

**JUDGES:** SIDNEY H. STEIN, U.S. District Judge.

**OPINION BY:** SIDNEY H. STEIN

**OPINION**

*OPINION AND ORDER*

SIDNEY H. STEIN, U.S. District Judge.

Plaintiff Jenny Gruber brings this employment discrimination action against her employers (collectively "Louis Hornick"), alleging that she was subjected to sexual harassment and retaliation in violation of Title VII

of the Civil Rights Act of 1964 and the New York City Human Rights Law. Defendants have moved to compel arbitration and stay further judicial proceedings pending arbitration. For the following reasons, that motion is granted.

I. BACKGROUND

Plaintiff was employed by Louis Hornick, a curtain and draperies manufacturer, for 10 months -- from April 2001 to January 2002 -- as an Assistant Designer in its New York City [*2] office. As a condition of employment, Louis Hornick requires its employees to sign an "Undertaking and Inducement to Louis Hornick & Co., Inc," ("Agreement") that contains the following agreement to arbitrate:

Any dispute or controversy between the Company and Applicant relating to or arising out of the employment of Applicant or the termination of such employment for any reason and under any circumstance ... shall be determined in arbitration in the City of New York pursuant to the Commercial Rules then in effect of the American Arbitration Association ... The arbitration award shall be final and binding upon the parties and

judgment may be entered thereon in the Supreme Court of the State of New York or in any other court of competent jurisdiction.

(Anatole Aff. Ex.A P3). On April 4, 2001, plaintiff signed the Agreement, acknowledging that she had read and understood it. [1]

> 1   The Agreement contains an acknowledgement provision that states "Applicant has carefully read and considered this undertaking and inducement, and understands it, and expressly acknowledges receipt of a copy hereof and the opportunity to discuss it with any person or advisor of her/[his] choosing before signing." (Anatole Aff. Ex A P4).

[*3]  On January 18, 2002, for reasons that are in dispute, Gruber was terminated by Louis Hornick. She claims that she was sexually harassed and terminated in retaliation for raising complaints. Defendants argue that Gruber was terminated for proper business reasons. Six months after being terminated, Gruber filed this action, asserting claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., and the New York City Civil Rights Law, N.Y. City Admin. Code §§ 8-107 et. seq. Defendants have now moved to compel Gruber to arbitrate their disputes.

## II. DISCUSSION

The Federal Arbitration Act ("FAA") provides that "an agreement in writing to submit to arbitration an existing controversy ... shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. There is a strong federal policy favoring alternative means of dispute resolution, and in light of that policy, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Arakawa v. Japan Network Group,* 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999) [*4] (citing *Oldroyd v. Elmira Savings Bank,* FSB, 134 F.3d 72, 76 (2d Cir. 1998) and *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983)). In determining whether to compel arbitration pursuant to the FAA, a court considers: 1) whether the parties agreed to arbitrate; 2) what the scope of the arbitration agreement is; and 3) whether Congress intended the federal statutory claims asserted by the plaintiff to be nonarbitrable. *See Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 844

(2d Cir. 1987).

In response to defendants' motion to compel arbitration, Gruber contends her claims are nonarbitrable because first, she did not knowingly and willfully enter into the agreement to arbitrate, and second, the arbitration provisions with respect to costs and attorney's fees render the agreement unenforceable in the context of a Title VII suit. The litigants do not dispute the scope of the arbitration agreement.

## A. Gruber Agreed to Arbitrate

In determining whether parties have agreed to arbitrate, courts apply generally accepted principles of contract law. *See id.* at 845. [*5] A person who signs a contract is presumed to know its contents and assent to them. *See Arakawa,* 56 F. Supp.2d at 352; *Berger v. Cantor Fitzgerald Securities,* 967 F. Supp. 91, 93 (S.D.N.Y. 1997). Plaintiff is bound by the agreement to arbitrate unless she can show special circumstances, such as duress or coercion, which would justify non-enforcement of the contract. *Arakawa,* 56 F. Supp.2d at 352 (citing *Gilmer v. Interstate /Johnson Lane Corp.,* 500 U.S. 20, 33, 111 S. Ct. 1647, 1655, 114 L. Ed. 2d 26 (1991)).

Gruber contends that she signed the Agreement under duress. She asserts that she was hired on Friday, March 30, 2001, and left her prior employment to begin work for Louis Hornick the following Monday. (Gruber Aff.). In support of her contention of duress, she states merely that the Agreement "was not discussed with me. I was told I had to sign it and return it." (Gruber Aff. P3) and that, when she was given the Agreement two days after starting work, "I was told that if I did not sign the Agreement, I would not be able to work for [Louis Hornick]" (Gruber Aff. P5).

In order for a party to show [*6] that a contract was signed under duress, she must show "(1) a threat, (2) which was unlawfully made, and (3) caused involuntary acceptance of contract terms, (4) because the circumstances permitted no other alternative." *DeGaetano v. Smith Barney, Inc.,* 1996 U.S. Dist. LEXIS 1140, No. 95 Civ. 1613 (DLC), 1996 WL 44226 at *5 (S.D.N.Y. Feb. 5, 1996)("DeGaetano I"). Despite the inequality in bargaining power between employers and employees, conditioning employment upon an agreement to arbitrate does not by itself constitute duress. *See Gilmer,* 500 U.S. at 33, 11 S. Ct. 1647. Nor does

conditioning further employment to a current employee's agreement to arbitrate by itself constitute duress. *See Brennan v. Bally Total Fitness,* 198 F. Supp.2d 377, 383 (S.D.N.Y. 2002)(holding arbitration agreement invalid because of coercive circumstances of employer's presentation of agreement to employees); *see also Arawaka,* 56 F. Supp.2d at 352 (holding arbitration agreement was not invalid because employee signed it in order to keep her job, absent other allegations of unfairness, oppression or unconscionability).

Here, Gruber has failed to establish or even allege [*7] the additional circumstances required to establish that she lacked a meaningful choice in deciding whether or not to sign the Agreement. Her sole allegation is that she was told that if she did not sign, she would not be able to work for defendants. (Gruber Aff. P5). In contrast to cases where duress has been found in the signing of agreements to arbitrate employment disputes, there are no allegations that plaintiff was not given sufficient time to read the agreement or that defendants misled her about its contents. *See Brennan,* 198 F. Supp.2d at 383 (holding arbitration agreement invalid due to duress where plaintiff given insufficient time to review agreement and defendant used additional pressure tactics); *Berger v. Cantor Fitzgerald Securities,* 942 F.Supp 963, 966 (S.D.N.Y. 1996)(ordering discovery on issue of whether plaintiff agreed to arbitrate where plaintiff alleged that he was misled about the arbitration agreement's contents and given insufficient time to review the agreement). Accordingly, the Court holds that Gruber has not shown that the Agreement was signed under duress, and therefore agreed to arbitrate.

B. The Title VII Claims [*8] are Arbitrable Pursuant to the Agreement

Title VII claims are not subject to a general legislative exception to arbitrability, and are therefore generally arbitrable. *See Desiderio v. National Ass'n of Secs. Dealers, Inc.,* 191 F.3d 198, 204-05 (2d Cir. 1999). Such claims, however, cannot be subject to arbitration where the forum requires a party to forgo a substantive right afforded by the statute. *See Gilmer,* 500 U.S. at 28 (finding ADEA claims arbitrable because substantive rights of the statute could be vindicated in arbitral forum); *Martens v. Smith Barney, Inc.,* 181 F.R.D. 243, 255-56 (S.D.N.Y. 1998)(setting forth requirements to ensure arbitration will not subvert statutory scheme).

The Agreement provides that arbitration is to be held pursuant to the rules of the American Arbitration Association ("AAA"). Gruber contends that two provisions of these rules render the Agreement invalid. First, she contends that the AAA's administrative fee schedule makes the costs to her to arbitrate prohibitive. Second, she contends that the AAA's attorney's fees provisions, which award attorney's fees to employers who prevail against non-frivolous [*9] complaints, unduly "chills" plaintiffs from vindicating their substantive rights afforded by the statute.

1. Arbitration Fees

The existence of significant arbitration costs may preclude a litigant from effectively vindicating her federal statutory rights in the arbitral forum. *Green Tree Financial v. Randolph,* 531 U.S. 79, 90, 121 S. Ct. 513, 522, 148 L. Ed. 2d 373 (2000). The party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive "bears the burden of showing the likelihood of incurring such costs." *Id.* at 92, 121 S. Ct. at 522.

Plaintiff submits that in an employment dispute such as hers, she would be assessed an initial filing fee of $ 1250, a case service fee of $ 750, and an administrative fee of $ 150 per day of the hearing. In addition, there are daily fees for the rental of hearing rooms and compensation for the arbitrator which can exceed $ 1,000 per day. (Plt. Exh. 1, pp.3-4). Louis Hornick responds that Gruber's information is out of date, and that effective November 1, 2002, the AAA adopted a new, lower, administrative fee schedule for employment disputes. (Rudderman Aff. [*10] II, Ex. A). Under the new fee schedule, plaintiff's filing fee is capped at $ 125, and all other expenses, including hearing fees, administrative fees, rental fees, and the arbitrator's compensation are paid by the employer. *Id.*

It is unclear from the competing submissions of the parties what the AAA fee schedule is this case. Plaintiff's submission provides the AAA administrative fee schedule for disputes arising out of "individually-negotiated employment agreements" as of January 1, 2001. (Gruber Aff. Exh. 1). Defendant's submission, on the other hand, is the AAA administrative fee schedule for disputes arising out of "employer-promulgated plans" as of November 1, 2002. Neither side has provided any information as to whether according to the AAA's rules this employment agreement is "individually-negotiated" or "employer-promulgated."

2003 U.S. Dist. LEXIS 8764, *10

It is clear that under the fee schedule for "employer-promulgated" agreements, plaintiff is not effectively precluded from vindicating her rights due to the fees of arbitrating. The higher, "individually-negotiated" schedule, presents a more difficult question However, plaintiff has not submitted any information that demonstrates what the higher [*11] schedule would amount to in this case, or that she would be unable to pay any fees incurred. The record, therefore, is inadequate for the Court to conclude that even the higher fee schedule would constitute a barrier to the vindication of plaintiff's rights. *See Mildworm v. Ashcroft*, 200 F. Supp.2d 171, 180 (declining to invalidate similar arbitration agreement in advance of the arbitration when it was unclear what fees would in fact be assessed). Accordingly, this Court will maintain jurisdiction over any subsequent petition to confirm or vacate the award. *Id.; Arakawa*, 56 F. Supp.2d at 355.

2. Attorney's Fees

Title VII provides for the discretionary award of attorney's fees to the prevailing party. 42 U.S.C. § 2000e-5(k). A prevailing plaintiff ordinarily is to be awarded attorney's fees in all but special circumstances. *Chrisitansburg Garment Co. v. EEOC*, 434 U.S. 412, 417, 98 S. Ct. 694, 698, 54 L. Ed. 2d 648 (1978). When an action is brought in good faith, a prevailing defendant is only entitled to an award of attorney's fees upon a finding that the plaintiff's action was frivolous, unreasonable, [*12] or without foundation. *Id.* at 421, 87 S. Ct. at 700. To the extent an arbitration agreement waives a plaintiff's right to obtain attorney's fees, the agreement is invalid. *DeGaetano v. Smith Barney, Inc.*, 983 F. Supp. 459, 468-69 (S.D.N.Y. 1997)("DeGaetano II").

Unlike the agreement in *DeGaetano II*, the AAA's attorney's fees provision does not limit Gruber's right to obtain attorney's fees should she prevail. It is therefore analogous to any other potentially burdensome arbitration cost addressed by the Supreme Court in *Green Tree*. As it is quite unclear at this point in the litigation whether plaintiff will be assessed defendant's attorney's fees at all and if so, how large those fees will be, plaintiff has not shown the arbitration will be prohibitively expensive because of this provision. *See Arawaka*, 56 F. Supp.2d 349, 355 (holding that plaintiff had not shown a fee splitting arrangement to be a barrier to her statutory rights when it was not yet determined what, if any, amount would be assessed against the plaintiff). The validity of any attorney's fees awarded can be addressed within the context of a petition to confirm [*13] or vacate the arbitration award at the conclusion of the arbitration. *See DeGaetano II*, 983 F. Supp. at 470 (granting motion to vacate or modify portion of arbitration award relating to attorney's fees). As noted above, this Court will maintain jurisdiction over any subsequent petition to confirm or vacate the award. *Arakawa*, 56 F. Supp.2d at 355.

III. CONCLUSION

Accordingly, defendants' motion to compel arbitration is granted, the complaint is dismissed, and the parties are directed to proceed to arbitration forthwith. This Court will maintain jurisdiction over any subsequent petition to vacate or confirm the award.

Dated: New York, New York

May 22, 2003

SO ORDERED:

Sidney H. Stein, U.S.D.J.